

United States District Court
Southern District of Texas
FILED

DEC 0 5 2001

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| FREDDY RAY JOHNSON, | ) | Hon. |
| DAVID RAMOS, | ) | |
| | ) | Case No.: C A B-01-197 |
| Plaintiffs | ) | |
| | ) | |
| V. | ) | State Court Case No. 2000114816-G |
| | ) | |
| ACandS, INC., et al. | ) | |
| | ) | Jury |
| Defendants. | ) | |

## NOTICE OF FILING OF APPENDIX TO MEMORANDUM OF DAIMLERCHRYLSER CORPORATION, FORD MOTOR COMPANY, AND GENERAL MOTORS CORPORATION IN SUPPORT OF THEIR MOTION TO TRANSFER AND RELATED CASES

DamilerChrylser Corporation, Ford Motor Company and General Motors Corporation ("the Removing Defendants") hereby submit the attached Appendix to the Memorandum of DaimlerChrylser Corporation, Ford Motor Company and General Motors Corporation in support of their Motion to Transfer and Related Cases.

Respectfully submitted,

By: _John R. Henderson_
John R. Henderson
State Bar No. 09424200
Federal I.D. No. 9857
Brown McCarroll, L.L.P.
2001 Ross Avenue, Suite 2000
Dallas, Texas 75201
(214) 999-6100

**ATTORNEYS FOR DEFENDANT**

DAL:415578.1
37354.1

**FORD MOTOR COMPANY**

By: *Robert Thackston* *by perm*
Robert Thackston
State Bar No.00785487
Federal I.D. No. Bar No. 17568
Joseph Blizzard
State Bar No. 00789156
Federal I.D. No.17736
Jenkens & Gilchrist
1445 Ross Avenue, Suite 3200
Dallas, Texas 75202
(214) 855-4500

**ATTORNEYS FOR DEFENDANT
DAIMLERCHRYSLER**

By: *Dawn Wright* *by perm*
Dawn Wright
State Bar No. 12742030
Federal I.D. No. 11545
Thompson & Knight, L.L.P.
1700 Pacific Avenue
Suite 3300
Dallas, TX 75201
Telephone: (214) 969-1700
Facsimile: (214) 969-1751

**ATTORNEYS FOR DEFENDANT
G E N E R A L     M O T O R S
CORPORATION**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Appendix to the Memorandum of DaimlerChrylser Corporation, Ford Motor Company and General Motors Corporation in support of their Motion to Transfer and Related Cases  was served on December 4, 2001 by U.S. Mail, first-class, postage prepaid upon the all known counsel of record.


John R. Henderson

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FEDERAL-MOGUL GLOBAL INC., | ) | Case No. 01-10578 (SLR) |
| T&N LIMITED, ET AL. | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |

**APPENDIX TO MEMORANDUM OF DAIMLERCHRYSLER CORPORATION,
FORD MOTOR COMPANY, AND GENERAL MOTORS CORPORATION
IN SUPPORT OF THEIR MOTION TO TRANSFER RELATED CLAIMS**

KIRKLAND & ELLIS
David M. Bernick
John Donley
Douglas G. Smith
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000
(312) 861-2200 (fax)

KLETT, ROONEY, LIEBER &
SCHORLING
Teresa K.D. Currier
(Del. Id. No. 3080)
Daniel Rath (Del. Id. No. 3022)
1000 West Street
Suite 1410
P.O. Box 1397
Wilmington, Delaware
(302) 552-4200
(302) 552-4295 (fax)

Attorneys for DaimlerChrysler Corp.,
Ford Motor Company, and General Motors
Corp.

Dated: November 20, 2001

# Declaration of William D. Redford

I, William D. Redford, being duly sworn, depose and state that I have personal knowledge of the facts and matters stated in this Declaration and if called as a witness can testify competently.

1. I am a retiree of Chrysler Corporation ("Chrysler"), now known as DaimlerChrysler Corporation.

2. I began my employment with Chrysler in 1955 and retired from the Company in 1987.

3. From 1964 to 1987, I was employed in the Company's Procurement & Supply (P&S) Department. P&S is responsible for purchasing goods and services for Chrysler.

4. In the preparation of this declaration, I reviewed certain puchase orders and General Terms and Conditions, attached as Attachments A and B, respectively. I execute this Declaration based upon my review of these documents and my memory of my work for Chrysler in the P&S Department.

5. While working in P&S, I worked in various job classifications, including a "Buyer". My responsibilities as a Buyer included the procurement of automotive brake components, such as brake shoes, pads, linings, etc.

6. Throughout the term of my employment, Chrysler purchased brake components by issuing a document called a purchase order. A purchase order document would identify information relating to a specific transaction and include language incorporating General Terms and Conditions.

7. The General Terms and Conditions would establish general contract terms applicable to each purchase order.

8. I recall issuing purchase orders on Chrysler's behalf to Wagner Electric Corporation ("Wagner") in the late 1960s and in the 1970s for the procurement of automotive brake components, including brake shoes, pads, linings, etc.

9. The documents attached as Attachment A are examples of purchase orders I issued to Wagner for the procurement of brake shoes, pads, linings, etc. These purchase orders reference Chrysler General Terms and Conditions that were applicable to purchase orders.

10.  I recall issuing purchase orders on Chrysler's behalf to Abex Corporation similar to the one attached as Exhibit C.  These purchase orders were for brake components, including brake shoes, pads, linings, etc.

11. The documents attached as Attachment B are various versions of General Terms and Conditions that applied to all purchase orders I issued on behalf of Chrysler in the late 1960s and in the 1970s.

12.  Article 14 contained in the General Terms and Conditions called for suppliers to "defend, indemnify, and protect Purchaser against all claims, liabilities, losses, and damages due to injury to or death of any person and damage to or loss of any property arising out of the improper performance or negligent work under this order or arising out of allegedly defective material or workmanship in the goods and services provided ..."

13.  I recall this clause being incorporated into the purchase orders identified in Attachment A, and C and others.

Executed Birmingham, Michigan on November 16, 2001.

_____
William D. Redford

Subscribed and sworn to before me
this 16th day of November, 2001

Audrey L. Gilliatt
Notary Public, Oakland County
My Commission expires:  07/06/02

2

# PURCHASE ORDER

CHRYSLER CORPORATION

Mo. / Day / Yr.

10 / 22 / 70

Supplier ... 0234

Order No. OE238167-C

To WAGNER ELECT... CORP... DEBAKER
12720 PROSPEC...
DEARBORN MIC ...

Terms     NET 25...ROX

Deliver               Ship Via
PER WRITTEN RELEASE   CUR CPTICN

F.O.B. CARRIER... ...RS PLANT
       ST LOUI...

BLANKET ORDE... FROM 04-05-68... UR PLANT-S I
AS PER CLAU... 22X ON CUR STANDARD CLAUSE F

...PORT /EASTE...
...ASSEMBLY PLTS AND PACKING
... TRUCK

THIS IS A COMBINED UNITED STATES/CANADIAN P
...UNITED STATES... ...OF
CANADIAN PURCHASE ORDER  ID... ...
...A PART OF THIS ORDER.

PART FURNISHED UNDER THIS ORDER, BEIN... CAR
...CALL FOR SPECIAL ATTENTION TO QUALIT
...THEIR MANUFACTURE  IN...

SUPPLIERS ATTENTION IS DRAWN TO THE ...
CHRYSLERS SAFETY... ... ...DANCE STANDARD
TO THESE PARTS AND TH... ...SSOCIE EFFECT UPON
...HEALTH AND ... ...STANDARDS.

R.E. REDFORD

Order No. OE238167-C

# PURCHASE ORDER

CHRYSLER CORPORATION

DETROIT, MICHIGAN

Mo. / Day / Yr.
D. 10 / 22 / 70

23A    Order No. OE238167-C

To WAGNER ELECTRIC CORP
12720 PROSPECT
DEARBORN MICH

Delivery        Ship Via

Terms

.O.B.

URCHASE ORDER GENERAL TERMS

| Item | | | | Price |
|------|------|------|------|-------|
| | CLAUSES ON | | | |
| | 057   023 | | | |
| | REASON FOR | | | |
| | ADD H SERIE | | | |
| | SHIP TO: A | RELEASE | | |

PAGE   2    2        BUYER  W.C. REG        Order No. OE238167-C

TTACH  SS                        SEE-234

# PURCHASE ORDER



**CHRYSLER CORPORATION**

DETROIT, MICHIGAN

| | Mo. | Day | Yr |
|---|---|---|---|
| Date | 20 | 08 | 70 |

Supplier No. 95023A

Order No. 0E238169-C

To WAGNER ELECTRIC CORP STUDEBAKER
12720 PROSPECT
DEARBORN MICH 48126

| | | Delivery | Ship Via |
|---|---|---|---|
| Terms | NET 25TH PROX | PER WRITTEN RELEASE | OUR OPTION |

F.O.B. CARRIER-SELLERS PLANT
ST LOUIS MO

Purchaser agrees to purchase and Seller agrees to furnish the articles or services described herein in ACCORDANCE WITH THE TERMS AND CONDITIONS HEREOF AND CHRYSLER CORPORATION PURCHASE ORDER GENERAL TERMS AND CONDITIONS ON FORM 84 806-1652 Rev. 7-68 ...

| Description of Supplies and of Services Ordered | Price |
|---|---|
| BLANKET ORDER FROM 04-05-68 FOR PLANT-S INDICATED BELOW AS PER CLAUSE C82X ON OUR STANDARD CLAUSE FORM. | |
| EXPORT-IMPORT /EAST CORT ROAD/ US TRUCK ASSEMBLY PLTS AND WYOMING WINDSOR TRUCK | |
| 1-F PART # 2831560-1 ASSY-FRT WHL BRK-FED | |
| FINISH PER MATERIAL STANDARDS AND B/P CHANGE B | |
| SAMPLE FROM 0-05-68            T/C- 10 /1 | |
| 1 G ART # 2831560-1 ASSY-FRT WHL BRK-FED | |
| FINISH PER MATERIAL STANDARDS AND B/P CHANGE B | |
| T/C- 10 /1 | |
| REASON FOR AMEND-PRICE CHG-B12       EFF 07-01-70    PLUS  .18000 EA  V/L 5-25-70 | |
| THIS IS A COMBINED UNITED STATES/CANADIAN PURCHASE ORDER WITH PRICE STATED IN UNITED STATES FUNDS.  THE ATTACHED UNITED STATES/ CANADIAN PURCHASE ORDER RIDER (84-FORM NO. 84-18C-7310) SHALL BE CONSIDERED A PART OF THIS ORDER. | |
| PARTS FURNISHED UNDER THIS ORDER, BEING SAFETY/FED ITEMS, CALL FOR SPECIAL ATTENTION TO QUALITY CONTROL PROCEDURES DURING THEIR MANUFACTURE AND/OR ASSEMBLY. | |
| SUPPLIERS ATTENTION IS DRAWN TO THE APPLICATION OF CHRYSLERS SAFETY/FED PERFORMANCE STANDARD -ENCLOSED- TO THESE PARTS AND THE POSSIBLE EFFECT UPON THEM OF FEDERAL HEALTH AND SAFETY STANDARDS. | |
| CLAUSES ON FORM NUMBER 84-806-1616 (7-68) C57 C03 | |

| | | | | BUYER | R.C. REDFORD | 111114 | Order No. | 0E238169-C |
|---|---|---|---|---|---|---|---|---|
| UE | 1 | 2 | | | | | | |

565-1360

Case 1:01-cv-00197    Document 6    Filed in TXSD on 12/05/2001    Page 13 of 225

# PURCHASE ORDER

DETROIT, MICHIGAN



**CHRYSLER CORPORATION**

| M.. | Day | Yr. |
|-----|-----|-----|

Date 10 CE 7C.

Supplier No. 95023A

Order No. 0E236168-C

To WAGNER ELECTRIC CORP/STUDEBAKER
   12720 PROSPECT
   DEARBORN MICH 48126

Delivery

Ship Via

Terms

F.O.B.

Purchaser agrees to purchase and Seller agrees to furnish the supplies or services described herein IN ACCORDANCE WITH THE TERMS AND CONDITIONS HEREOF AND CHRYSLER CORPORATION PURCHASE ORDER GENERAL TERMS AND CONDITIONS ON FORM 84 806-1652 Rev. 7-68, and if the State Clauses in Chrysler Corporation Forms referenced below, which are numbered and/or otherwise identified, all of which constitute the complete and final agreement of the Parties hereto. Terms of

| Item | Description of Supplies and/or Services Ordered | Price |
|------|--------------------------------------------------|-------|
| | SHIP TO AND INVOICE TO "PER WRITTEN RELEASE" | |

BUYER  W. D. REDFORD          111114

Order No. 0E236168-C

ATTACH PS

565-1759



PURCHASE ORDER

Mo. / de / 70

DETROIT, MICHIGAN

Supplier No. 55023A

Order No. 0E238168-C

To WAGNER ELECTRIC CORP STUDEBAKER
12720 PROSPECT
DEARBORN MICH 48126

| | Delivery | Ship Via |
|---|---|---|
| erms    NET 25TH PROX | PER WRITTEN RELEASE | OUR OPTION |

F.O.B. CARRIER-SELLERS PLANT
ST LOUIS MO

Purchaser agrees to purchase and Seller agrees to furnish the supplies or services described herein IN ACCORDANCE WITH THE TERMS AND CONDITIONS HEREOF AND CHRYSLER CORPORATION PURCHASE ORDER GENERAL TERMS AND CONDITIONS ON FORM 84 810 1652 Rev 7 68 and further, those clauses in Chrysler Corporation forms referenced below which are numbered and com... copies of which constitute the complete and final agreement of the parties hereto. Forms referenced herein are available from Purchaser on request.

| Description of Supplies and Services Ordered | | Price |
|---|---|---|
| BLANKET ORDER FROM 04-05-68  FOR PLANT-S INDICATED BELOW<br>AS PER CLAUSE 082X ON OUR STANDARD CLAUSE FORM | | |
| EXPED IMPORT EAST EU<br>LS TRUCK ASSEMBLY PLTS  WYOMING<br>WINDSOR TRUCK | | |
| PART # 2831500-1 ASSY-FRT WHEEL-FED | | |
| FINISH PER MATERIAL STANDARDS AND B/P CHANGE A | | |
| SAMPLE FROM 05-15-68 | T/C-  50  /1 | |
| ART # 2831500-1 ASSY-FRT WHEEL-FED | | |
| FINISH PER MATERIAL STANDARDS AND B/P CHANGE A | | |
| | T/C-  50  /1 | |
| REASON FOR AMEND-PRICE CHG-E12  EFF 07-01-70 | PLUS  .23000 EA<br>V/L 5-25-70 | |
| THIS IS A COMBINED UNITED STATES/CANADIAN PURCHASE ORDER WITH<br>PRICE STATED IN UNITED STATES FUNDS.  THE ATTACHED UNITED STATES/<br>CANADIAN PURCHASE ORDER RIDER (FORM NO. 84-18C-7310) SHALL BE<br>CONSIDERED A PART OF THIS ORDER. | | |
| PARTS FURNISHED UNDER THIS ORDER BEING SAFETY/FED<br>ITEMS, CALL FOR SPECIAL ATTENTION TO QUALITY CONTROL<br>PROCEDURES DURING THEIR MANUFACTURE AND/OR ASSEMBLY. | | |
| SUPPLIERS ATTENTION IS DRAWN TO THE APPLICATION OF<br>CHRYSLERS SAFETY/FED PERFORMANCE STANDARD -ENCLOSED-<br>TO THESE PARTS AND THE POSSIBLE EFFECT UPON THEM OF<br>FEDERAL HEALTH AND SAFETY STANDARDS. | | |
| CLAUSES ON FORM NUMBER 84-806-1653 (7-68)<br>C57  C23 | | |

| 1 OF 2 | BUYER W.D. REDFORD | 111114 | Order No. 0E238168-C |

565-1358

PURCHASE ORDER

DET, MICHIGAN

**CHRYSLER** CORPORATION

Order No. CE238166-C ☐

To WAGNER ELECTRIC CORP-STUDEBAKER
12720 PROSPECT
DEARBORN MICH 48126

Delivery                           Ship Via

SHIPS

F.O.B.

PURCHASE ORDER GENERAL TERMS AND CONDITIONS OF FORM 84 PUR... ...ORDANCE WITH THE TERMS AND CONDITIONS HEREOF AND CHRYSLER CORPORATION

| Description of ... ...services Ordered | Price |
|---|---|
| SHIP TO AND INVOICE TO "PER ... ... RELEASE" | |

2 OF 2                    .. D. REDFORD        111..       Order No. OE238166-C ☐

+ ES                            565-1356

# PURCHASE ORDER

DETROIT, MICHIGAN

**CHRYSLER** CORPORATION

| Mo. | Day | Yr. | Supplier No. | Order No. |
|-----|-----|-----|-----|-----|
| | | | 023A | OE238163-C |

To WAGNER ELECTRIC CORP STUDEBAKER
12720 PROSPECT
DEARBORN MICH 48126

NET 25TH PROX

Delivery
PER WRITTEN RELEASE

Ship Via
OUR OPTION

F.O.B. CARRIER-SELLERS PLANT
ST LOUIS MO

Description of Supplies or Service Ordered

BLANKET ORDER FROM 04-05-68 FOR PART-S INDICATED BELOW
AS PER CLAUSE 023X ON OUR STANDARD CLAUSE FORM.

EXPORT-IMPORT/EASTERN
US TRUCK ASSEMBLY PLT-WYOMING
WINDSOR TRUCK

-F  PART #   2831562-2  ASSY-FRT WHL BRA-FED

FINISH PER MATERIAL STANDARDS AND E/P CHANGE B

SAMPLE FROM 05-15-68                       T/C-    10   /1

- PART #   2831562-3  ASSY-FRT WHL BRA-FED

FINISH PER MATERIAL STANDARDS AND E/P CHANGE B

                                          T/C-    10   /1

REASON FOR AMEND-MODEL CHG-612        07-01-70    PLUS  .19000 EA
                                          V/L 5-25-70

THIS IS A COMBINED UNITED STATES/CANADIAN PURCHASE ORDER WITH
PRICE STATED IN UNITED STATES FUNDS  THE ATTACHED UNITED STATES/
CANADIAN PURCHASE ORDER (SPTD NO. 84-180-7310) SHALL BE
CONSIDERED A PART OF THIS ORDER.

PARTS FURNISHED ON THIS ORDER BEING SAFETY/FED
ITEMS, CALL FOR SPECIAL ATTENTION IN QUALITY CONTROL
PROCEDURES DURING THEIR MANUFACTURE AND/OR ASSEMELY.

SUPPLIERS ATTENTION IS DRAWN TO THE APPLICATION OF
CHRYSLERS SAFETY/FED PERFORMANCE STANDARD -ENCLOSED-
TO THESE PARTS AND THE POSSIBLE EFFECT UPON THEM OF
FEDERAL HEALTH AND SAFETY STANDARDS.

CLAUSES ON FORM NUMBER 84-806-1652 (7-68)
C57  C23

| PAGE | BUYER | | Order No. |
|------|-------|---|-----------|
| 1 OF 2 | W.D. REDFER  111114 | | OE238163-C |

565-1349

Case 1:01-cv-00197   Document 6   Filed in TXSD on 12/05/2001   Page 17 of 225

# PURCHASE ORDER

DETROIT, MICHIGAN

**CHRYSLER CORPORATION**

No. / Day / Yr.

Supplier No. 95023A

Order No. OE238167-B

To WAGNER ELECTRIC CORP STUDEBAKER
   12720 PROSPECT
   DEARBORN MICH 48126

Terms     NET 25TH-PROX

Delivery
PER WRITTEN RELEASE

Ship Via
OUR OPTION

F.O.B.   CARRIER-SELLERS PLANT
         ST LOUIS MO

| Description of Supplies or Services Ordered | Price |
|---|---|

BLANKET ORDER FROM 04-05-68 FOR PLANT-S INDICATED BELOW
AS PER CLAUSE 022X ON OUR STANDARD CLAUSE FORM

        EXP      IMPORT ASSIST
        US THE ASSEMBLY TYPE   WYOMING
        WINDSOR TRUCK

-F  PART #   2953378-9  ASSY-RR WHL BRA

    FINISH PER MATERIAL STANDARDS AND B/P CHANGE A

                                        T/C-    10   /1

    PART #   2953378-9  ASSY-RR WHL BR

    FINISH PER MATERIAL STANDARDS AND B/P CHANGE A

                                        T/C-    10   /1

    REASON FOR AMEND-PRICE CHG-B12      EFF 07-01-70   PLUS 1.04000 EA
                                                       V/L 5-25-70

THIS IS A COMBINED UNITED STATES/CANADIAN PURCHASE ORDER WITH
PRICE STATED IN UNITED STATES FUNDS. THE ATTACHED UNITED STATES/
CANADIAN PURCHASE ORDER RIDER (FORM NO. 84-180-7310) SHALL BE
CONSIDERED A PART OF THIS ORDER.

CLAUSES ON FORM NUMBER 84-806-1653 (7-68)
057  C23

SHIP TO  AND INVOICE TO   "PER WRITTEN RELEASE"

1 OF 1

BUYER  R.D. REDFORD          111114

Order No. OE238167-B

H B                        565-1357



# PURCHASE ORDER

DETROIT, MICHIGAN

**CHRYSLER CORPORATION**

| Mo. | Day | Yr. |
|---|---|---|
| 07 | 16 | 70 |

Supplier No. 95023A

Order No. G 28398C

To WAGNER ELECTRIC CORP STUDEBAKER
12720 PROSPECT
DEARBORN MICH 48126

Terms    NET 25TH PROX

F.O.B. CARRIER-SELLERS PLANT
ST LOUIS MO

Delivery
PER WRITTEN RELEASE

Ship Via
OUR OPTION

THIS ORDER APPLIES TO OUR FOLLOWING PLANT REQUIREMENTS ONLY.

EXPORT-IMPORT /E T BURT ROAD/

850 PCS   PART # 295 78   BRAKE SHOE

FINISH PER MATERIAL STANDARDS AND E/F CHANGE AS RELEASED

T/C- SPECIAL

CLAUSES ON FORM NUMBER 84-806-1653 (7-68)
23

VENDOR # FD702   IA 2907502-3

SHIP TO:                          INVOICE TO:
BURT ROAD PL                     WYOMING PLANT
12640 BURT RCA                   P.C. BOX 1688
DETROIT, MICH.                   DETROIT, MICH. 48231

BUYER W.C. RED

11151

Order N. G 28398C

358-C15.

Case 1:01-cv-00197   Document 6   Filed in TXSD on 12/05/2001   Page 19 of 225

# PURCHASE ORDER   -

DETROIT, MICHIGAN

**CHRYSLER** CORPORATION

Date 07 / 16 / 70   Supplier No. 950234   Order No. G 283975

To WAGNER ELECTRIC CORP STUDEBAKER
   12720 PROSPECT
   DEARBORN  MICH  48126

Terms   NET 25TH PROX

Delivery **PER WRITTEN RELEASE**   Ship Via **OUR OPTION**

F.O.B. CARRIER- SELLERS PLANT
   ST LOUIS  MO

| Item | Description of Supplies and/or Services Ordered |
|---|---|
| | THIS ORDER APPLIES TO OUR FOLLOWING PLANT REQUIREMENTS ONLY. |
| | EXPORT-IMPORT /EAST BURT ROAD/ |
| 1-G | 700 PCS   PRT # 2908693   BRAKE SHOE |
| | FINISH PER  IAL STANDARDS AND B/P CHANGE AS RELEASED |
| | T/C- SPECIAL |
| | CLAUSES ON   NUMBER 84-806-1853 (7-68) |
| | 023 |
| | VENDOR # RES   PIA 283155E-9 |

SHIP TO:                    INVOICE TO:
BURT ROAD                   WYOMING PLANT
12640 BURT                  P.O. BOX 1688
DETROIT, :                  DETROIT, MICH. 48231

# PURCHASE ORDER

DETROIT MICHIGAN

**CHRYSLER CORPORATION**

| Date | Mo / Day / Yr | Supplier No. | Order No. |
|---|---|---|---|
| CE / 04 / 69 | | V5023A | OE238164 | C |

s. WAGNER ELECTRIC CORP STUDEBAKER
12720 PROSPECT
DEARBORN MICH  48126

Delivery: **PER WRITTEN RELEASE**   Ship Via: **OUR OPTION**

Terms   NET 25TH PROX

O.B.   CARRIER-SELLERS PLANT
ST LOUIS MO

IN ACCORDANCE WITH THE TERMS AND CONDITIONS HEREOF AND CHRYSLER CORPORATION
PURCHASE ORDER GENERAL TERMS AND CONDITIONS

Description of Supplies and/or Services Ordered

BLANKET ORDER FROM  C4-05-66  FOR PLANT-5 INDICATED BELOW
AS PER CLAUSE CE2X ON OUR STANDARD CLAUSE FORM.

        EXPORT-IMPORT /EAST BURT ROAD/
        US TRUCK ASSEMBLY PLTS AND WYOMING
        WINDSOR TRUCK

PART #   29C75C4-5  ASSY-RR WHEEL BRK

FINISH PER MATERIAL STANDARDS AND D/P CHANGE

SAMPLE FROM

PART #   29C75        ASSY-RR WHEEL BRK-FLH

FINISH PER MATERIAL STANDARD AND D/P CHANGE

SAMPLE FROM

PARTS FURNISHED UNDER THIS ORDER BEING SAFETY/EMISSION
ITEMS, CALL FOR SPECIAL ATTENTION TO QUALITY CONTROL
PROCEDURES DURING THEIR MANUFACTURE AND/OR ASSEMBLY.

SUPPLIERS ATTENTION IS DRAWN TO THE APPLICATION OF
CHRYSLER'S SAFETY/EMISSION PERFORMANCE STANDARD AND LATER
TO THESE PARTS AND THE POSSIBLE EFFECT UPON THEM OF
FEDERAL HEALTH AND SAFETY STANDARDS.

THIS IS A CONFIRMATION ORDER ... 
PRICE STATED IN UNITED STATES ... AND UNITED STATES/
CANADIAN CURRENCY ...  SHALL BE
CONSIDERED A PART OF THIS ORDER ...

CLAUSES ON FORM NUMBER  ON OUR CLAUSE (Z-66)
CE7  CE3

REASON FOR AMENDMENT
  HOLD EFF DATE ON AMENDED DROP SHIP TO 12-15-66 FOR 6 SERIES

| PG. 1 | OF 2 | BUYER | ROSS REDFORD | 13383 | Order No. | CE238164 |
| | | | 526-2272 | | PASS 2 OF 3 |

Case 1:01-cv-00197   Document 6   Filed in TXSD on 12/05/2001   Page 21 of 225

# PURCHASE ORDER

DETROIT, MICHIGAN

CHRYSLER CORPORATION

Date 06 / 04 / 65     Mo / Day / Yr

Supplier No. 55023A

Order No. CE23816

| C

To WAGNER ELECTRIC CORP STUDEBAKER
12720 PROSPECT
DEARBORN MICH 48126

Delivery      Ship Via

Terms

F O B

Purchase agreement of the and seller agrees to sell the supplies or services described herein IN ACCORDANCE WITH THE TERMS AND CONDITIONS HEREOF AND CHRYSLER CORPORATION PURCHASE ORDER GENERAL TERMS AND CONDITIONS 2-147-84 5PI-1852 Rev. 7-64 and the items of conditions in the provisions terms referenced below which are numbered and contained on noted all of which constitute the complete and final agreement of the parties hereto Form referenced herein is available from Purchaser on request.

| Item | Description of Supplies and/or Services Ordered | Price |
|---|---|---|
| | SHIP TO AND INVOICE TO "PER WRITTEN RELEASE" | |

PAGE 2 OF 2      BUYER W. C. REDFORD 11151      Order No. CE258164 | C

TTACH SE      520-2373      PASS 2 OF 5

Case 1:01-cv-00197 Document 6 Filed in TXSD on 12/05/2001 Page 22 of 225

Supplier No. 568424     Order No. DT523959

TO WAGNER DIV WAGNER EL STUDEBAKER
12720 PROSPECT AVE
DEARBORN MICH 48120

| | Delivery | Ship Via |
|---|---|---|
| Terms NET 25TH PROX | PER WRITTEN RELEASE | OUR OPTION |

F.O.B. CARRIER-SELLERS PLANT
ST LOUIS MO

Purchaser ... agrees to purchase and Seller agrees to furnish the supplies or services described herein IN ACCORDANCE WITH THE TERMS AND CONDITIONS HEREOF AND CHRYSLER CORPORATION PURCHASE ORDER GENERAL TERMS AND CONDITIONS ON FORM 84 806-1652 Rev. 7-65, and further, those clauses of Chrysler Corporation forms referenced below which are then below and ...

| Item | Description of Supplies and/or Services Ordered | Price |
|---|---|---|
| | BLANKET ORDER FROM 08-01-67 FOR PLANT-S INDICATED BELOW AS PER CLAUSE C82X ON OUR STANDARD CLAUSE FORM. | |
| | US TRUCK ASSEMBLY PLTS AND WYOMING EXPORT-IMPORT /EAST BURT ROAD/ | |
| 1-D | PART # 2231966 ASSY-BRAKE CYL-FED | |
| | FINISH PER MATERIAL STANDARDS AND B/P CHANGE | |
| | | /S- TRUCK |
| 1-E | PART # 2207965 ASSY-BRAKE CYL-FED | |
| | FINISH PER MATERIAL STANDARDS AND B/P CHANGE | |
| | | TON TRUCK |
| | REASON FOR AMEND-PRICE CHG-01 EFF 07-01- | .09600 EA |
| 1-F | PART # 2231966 ASSY-BRAKE CYL-FED | |
| | FINISH PER MATERIAL STANDARDS AND B/P CHANGE | |
| | | TON TRUCK |
| | REASON FOR AMEND-PRICE CHG-01 EFF 07-01- | .09600 EA |
| | PARTS COVERED UNDER THIS ORDER, BEING SAFETY ... IT ASSOCIATED SPECIAL ATTENTION TO QUALITY DU... PROCEDURE ... IN THE MANUFACTURE AND/OR ASS... | |
| | SUPPLIER ... GUARANTY TO THE APPLICATION CHRYSLER ... SAFETY-PERFORMANCE STANDARD -ENG ... TO THE ... WITH THE ADVERSE EFFECT UPON TH... FEDERAL MOTOR ... SAFETY STANDARDS. | |

PAGE 1ST     COVER A.D. RECORDS     PO No DT523959

Date 6/22/69   Supplier No. 95042A   Order No. DT523969

S WAGNER DIV WAGNER EL STUDEBAKER
12720 PROSPECT AVE
DEARBORN MICH 48126

Delivery                    Ship Via

F.O.B.

These apply to the supplies or services ordered herein IN ACCORDANCE WITH THE TERMS AND CONDITIONS MERLOT AND CHRYSLER CORPORATION PURCHASE ORDER GENERAL TERMS AND CONDITIONS ON FORM 84 806 1652 Rev 7 64, and further the agreement of the Parties hereto, the improvement of their entire agreement which are numbered or checked on the

| Item | Description of Supplies and/or Services Ordered | Price |
|---|---|---|
| | CLAUSES ON FORM NUMBER 84-806-1653 (7-68) | |
| | C57  C22 | |
| | SHIP TO: AND INVOICE TO:   *PER WRITTEN RELEASES* | |

BUYER   W D L RECHUAE          JR No. DT523969

526-21

Supplier No. 96842A          Order No. DT523965

To WAGNER DIV WAGNER EL STUDEBAKER
   12720 PROSPECT AVE
   CLAWSON  MICH  48126

Terms    NET  15TH PROX

F.O.B  CARRIER-SELLERS PLANT
       ST LOUIS  MO

Delivery                Ship Via
PER WRITTEN RELEASE   OUR OPTION

| Item | Description of Supplies and/or Services Ordered | Price |
|---|---|---|
| | BLANKET ORDER FROM  06-01-64  FOR PLANT-S INDICATED BELOW AS PER CLAUSE C82X ON OUR STANDARD CLAUSE FORM. | |
| | WYOMING | |
| | US TRUCK ASSEMBLY PLTS AND WYOMING | |
| 1-6 | PART #  1799712-3  ASSY-BRK SUPT R&L | |
| | FINISH PER MATERIAL STANDARDS AND B/P CHANGE C | |
| | T/C- TRUCK | |
| | CLAUSES ON PLAN NUMBER 64-906-1653 (7-68) 57  C23 | |
| | REASON FOR AMENDMENT CHGD EFF DATE OF AMEND E FROM 4-1-68 TO 12-15-64 | |
| | SHIP TAG AND INVOICE TO:  "PER WRITTEN RELEASE" | |

BUYER  W.C. REDFORD      12253      Order No. DT523968

520-2218

Case 1:01-cv-00197   Document 6   Filed in TXSD on 12/05/2001   Page 25 of 225

Date 05  05  69          Supplier No. 950233          Order No. OE238165   C

To WAGNER ELECTRIC CORP STUDEBAKER
   12720 PROSPECT
   DEARBORN  MICH  48126

|  | Delivery | Ship Via |
|---|---|---|
| Terms    NET  25TH PROX | PER WRITTEN RELEASE | OUR OPTION |

F.O.B.  CARRIER-SELLERS PLANT
        ST LOUIS  MO

Purchaser agrees to purchase and Seller agrees to furnish the supplies or services described herein IN ACCORDANCE WITH THE TERMS AND CONDITIONS HEREOF AND CHRYSLER CORPORATION PURCHASE ORDER GENERAL TERMS AND CONDITIONS ON FORM 84-806-1951 Rev. 7-68, and in either, those clauses in Chrysler Corporation form referenced below which are numbered and completed or noted, all of which constitute the complete and final agreement of the Parties hereto. Forms referenced herein are available from Purchaser on request.

| Item | Description of Supplies and/or Services Ordered | Price |
|---|---|---|
| | BLANKET ORDER FROM  04-05-68  FOR PLANT-S INDICATED BELOW AS PER CLAUSE 0823 ON OUR STANDARD CLAUSE FORM. | |
| | EXPORT-IMPORT /EAST BURT ROAD/ US TRUCK ASSEMBLY PLTS AND WYOMING WINDSOR TRUCK | |
| 01-E | PART #  2907502-3  ASSY-RR WHL BRK | |
| | FINISH PER MATERIAL STANDARDS AND B/P CHANGE B | * |
| | SAMPLE PROM 05-15-68                  T/C-    50 | |
| | REASON FOR AMEND-PRICE CHG-B1    EFF 12-15-68    PLUS  .110 V/R 12-12-68 | |
| 01-F | PART #  2907502-3  ASSY-RR WHL BRK-FED | |
| | FINISH PER MATERIAL STANDARDS AND B/P CHANGE C | |
| | SAMPLE PROM  5-15-68                  T/C-    50 | |
| | REASON FOR AMEND-PRICE CHG-B1    EFF 0000001 PC  PLUS  .1100 V/R 12-12-68 | |
| | THIS IS A COMBINED UNITED STATES/CANADIAN PURCHASE ORDER WITH PRICE STATED IN UNITED STATES FUNDS.  THE ATTACHED UNITED STATES CANADIAN PURCHASE ORDER RIDER "B"(FORM NO. 84-180-7310) SHALL BE CONSIDERED A PART OF THIS ORDER. | |
| | PARTS FURNISHED UNDER THIS ORDER, BEING SAFETY/FED ITEMS, CALL FOR SPECIAL ATTENTION TO QUALITY CONTROL PROCEDURES DURING THEIR MANUFACTURE AND/OR ASSEMBLY. | |
| | SUPPLIERS ATTENTION IS DRAWN TO THE APPLICATION OF CHRYSLERS SAFETY/FED PERFORMANCE STANDARD -ENCLOSED- TO THESE PARTS AND THE POSSIBLE EFFECT UPON THEM OF FEDERAL HEALTH AND SAFETY STANDARDS. | |

Invoice sample copy only required against this order and Packing Slips in duplicate except shipments to consolidation points require four copies, must bear Purchaser's order number, supplier number and ship letter, and/or non productive material code.

| PAGE   1 OF  2 | BUYER  W.D. REDFORD      11151 | Order No.  0 |

519-0032

Case 1:01-cv-00197   Document 6   Filed in TXSD on 12/05/2001   Page 26 of 225

'05  CS' 69

To WAGNER ELECTRIC CORP STUDEBAKER
   12720 PROSPECT
   DEARBORN  MICH  48126

Delivery                    Ship Via

Terms

F.O.B.

Purchaser agrees to purchase and Seller agrees to furnish the supplies or services described herein IN ACCORDANCE WITH THE TERMS AND CONDITIONS HEREOF AND CHRYSLER CORPORATION
PURCHASE ORDER GENERAL TERMS AND CONDITIONS ON FORM 84 806-1652 Rev. 7-68, and further, those clauses in Chrysler Corporation forms referenced below which are numbered and com-
pleted as noted, all of which constitute the complete and final agreement of the Parties hereto. Forms referenced herein are available from Purchaser on request.

| Item | Description of Supplies and/or Services Ordered | Price |
|---|---|---|
| | CLAUSES ON FORM NUMBER 84-806-1653 (7-68) | |
| | C57  C23 | |
| | | |
| | SHIP TO: AND INVOICE TO:  "PER WRITTEN RELEASE" | |

ATTACH  BS                              519-0033



# CHRYSLER
## CORPORATION

# PURCHASE ORDER

# TERMS AND CONDITIONS

# STANDARD CLAUSES

# RIDERS

**CORPORATE PURCHASING**
**JANUARY, 1971**

84-806-1696



**CHRYSLER**
**CORPORATION**

TO:    CHRYSLER BLANKET ORDER SUPPLIERS

SUBJECT:    STATE AND LOCAL SALES OR USE TAX
            REGISTRY NUMBERS

Gentlemen:

Chrysler Corporation has obtained new State and Local Sales or
Use Tax Direct Payment Permit Numbers for Ohio (Fostoria Foundry
Division) and South Carolina (Airtemp - Winnsboro.)  The Ohio
(Airtemp Dayton Plant) has now been divided into two separate
Direct Payment numbers - Ohio (Airtemp Division) and Ohio (Dayton
Plant I.)

These Direct Payment Permit Numbers enable the purchaser to be
tax exempt when the material is purchased for exempt purposes
(Clause 23) or allows the purchaser to assume liability for tax
payment (Clause 40.)

CLAUSE NO. 23

This material is purchased for resale or for an exempt purpose
and is therefore exempt from state and local sales or use taxes.
Retail License Nos.: California SZ-OHA-30-606877; Illinois 798-931;
Kentucky 108880; Michigan A38-0419960; Missouri 240-3907;
Pennsylvania 99-04171; Direct Payment Permit Nos.:  Indiana
101385-08; New York DP-000224; Ohio (Airtemp Division) 98-000291;
Ohio (Twinsburg Stamping Plant) 98-000293; Ohio (Amplex Van Wert)
98-000292; Ohio (Toledo Machining Plant) 98-000294; Ohio (Fostoria
Foundry Division) 98-001848; and Ohio (Dayton Plant I) 98-001782;
S. Carolina (Airtemp-Winnsboro Plant) 8132(19); and Pennsylvania
(New Stanton Assembly Plant) 00332.

CLAUSE NO. 40

Purchaser assuems liability for payment of applicable State and
Local Sales and Use Taxes and therefore no tax shall be invoiced
by seller.  Michigan Retail License No. A38-0419960; Direct Payment
Permit Nos.: Indiana 101385-08; New York DP-000224; Ohio (Airtemp
Division) 98-000291; Ohio (Twinsburg Stamping Plant) 98-000293;
Ohio (Amplex Van Wert Plant) 98-000292; Ohio (Toledo Machining Plant)
98-000294; Ohio (Fostoria Foundry Division) 98-001848; Ohio
(Dayton Plant I) 98-001782; S. Carolina (Airtemp-Winnsboro Plant)
8132(19) and Pennsylviana (New Stanton Assembly Plant) 00332.

Very Truly Yours,

A. S. Yarnold, Manager
Procedures & Central Processing
Corporate Purchasing Office

# EXPLANATION

We have collected together in this Publication the
Terms and Conditions, Standard Clauses and other
types of information that most frequently are refer-
enced in our Requests for Quotations and Purchase
Orders covering production parts, material and
related services.

Because of the continuing relationship Chrysler
Purchasing likes to foster with its Suppliers, the
requirements of our Orders, etc., become well-known
and do not require detailed repetition each time a
specific buying commitment is made.

Relating the references on our Requests for Quotation
and Purchase Orders to this Publication – We suggest
it be kept readily available in your Sales Office –
will contribute to our mutual interest in making
those documents as concise and clear as possible.

# INDEX

I      PURCHASE ORDER TERMS & CONDITIONS

II     REQUEST FOR QUOTATION - CLAUSES & REQUIREMENTS

III    STANDARD PURCHASE ORDER CLAUSES

IV     PURCHASE ORDER RIDERS

- 84-180-7309 (9-69)
  UNITED STATES/CANADIAN PURCHASE ORDER RIDER 'A'

- 84-180-7310
  UNITED STATES/CANADIAN PURCHASE ORDER RIDER 'B'

- DP-15 (10-66)
  DUTY-FREE ENTRY - CANADIAN SUPPLIES -RIDER 'D'

- 200-35-A (5-67)
  PF SAFETY/FED

- 806-1630 & 5592
  EXCISE TAX EXEMPTION

(1-71)

**I. TERMS AND CONDITIONS**

VII  CARRIER: Seller grants Purchaser the right to specify at any time the Carrier and/or the method of transportation to be employed in conveying any part or all of the supplies covered herein. Any changes by Purchaser to such a specified method will be subject to an equitable adjustment as provided in Clause XVI, Changes.

VIII  INSPECTION AND REJECTIONS: Purchaser shall have the right to inspect and test all supplies, special tooling, materials and workmanship to the extent practicable at all times and places, including the places and during period of manufacture. Seller shall also provide and maintain an adequate inspection system covering the supplies, fabrication methods, and special tooling hereunder. Seller shall make its inspection records of all work and material available to Purchaser during the performance of this order, and for such longer period as may be specified in this order.

In case any property delivered or service rendered hereunder is defective in material or workmanship or otherwise not in conformity with the requirements of this order, Purchaser shall have the right, notwithstanding payment or any prior inspection or test, either to reject it or to require its correction. Any service which is required to be corrected hereunder shall be corrected by and at the expense of Seller promptly after notice. Property which is rejected or required to be corrected shall be removed (if permitted or required by Purchaser) or corrected in place, by and at the expense of the Seller promptly after notice, and shall not thereafter be delivered hereunder unless the former rejection or requirement of correction is disclosed. If the Seller fails promptly to remove such property which is required to be removed, or promptly to replace or correct such property, or promptly to correct any such service, Purchaser either '(i) may by contract or otherwise replace or correct such property or service and charge to Seller the increased cost occasioned Purchaser thereby, or (ii) may effect a cancellation for default under Clause XIII. Unless the Seller is able to correct or replace such property or correct such service within the delivery schedule, Purchaser by written notice may accept the delivery of such property or accept such service subject to a reduction in price reflecting the reduced value attributable to non-conformance. Seller assumes the risk of damage to or loss of and all handling and transportation costs for defective property delivered hereunder.

IX  WARRANTY: Seller warrants that the supplies or services covered by this order will comply with the specifications, drawings, descriptions or samples furnished or specified by Purchaser and that the same will be merchantable, of good material and workmanship and free from defects. Seller warrants that any supplies furnished under this order that are designed by Seller will be fit and sufficient for the purposes intended. Seller specifically agrees to defend, indemnify and hold harmless Purchaser from and against any and all claims, losses, damages and settlement expenses resulting from or arising out of a breach of Seller's warranties and of which Purchaser notifies Seller at any time.

(1-71)

X     ASSIGNMENT OF PERFORMANCE BY SELLER: Seller agrees not to assign or delegate the performance of its duties under this order without the written consent of Purchaser.

XI     PROPERTY OF PURCHASER: Unless otherwise provided in this order or agreed to in writing, property of every description including all tools, equipment and material furnished or made available to Seller, title to which is in Purchaser, and any replacement thereof, shall be and remain the property of Purchaser. Property other than material, shall not be modified without the written consent of the Purchaser. Such property shall be plainly marked or otherwise adequately identified by Seller as property of Purchaser (by name) and shall be safely stored separately and apart from Seller's property. Seller shall not use such property except for performance of work hereunder or as authorized in writing by Purchaser. Such property while in Seller's possession or control shall be kept in good condition, shall be held at Seller's risk, and shall be kept insured by Seller, at its expense, in an amount equal to the replacement cost with loss payable to Purchaser. To the extent such property is not material consumed in the performance of this order, it shall be subject to inspection and removal by Purchaser and Purchaser shall have the right of entry for such purposes without any additional liability whatsoever to Seller. As and when directed by Purchaser, Seller shall disclose the location of such property and/or prepare it for shipment and ship it f.o.b. its plant to Purchaser in as good condition as originally received by Seller, reasonable wear and tear excepted.

XII     TERMINATION AT PURCHASER'S OPTION: The Purchaser may terminate performance of work under this order in whole or from time to time in part by written notice of termination whereupon Seller will stop work on the date and to the extent specified in the notice and terminate all orders and subcontracts to the extent they relate to the terminated work. Seller will promptly advise Purchaser of the quantities of applicable work and material on hand or purchased prior to termination and the most favorable disposition that Seller can make thereof. Seller will comply with Purchaser's instructions regarding transfer and disposition of title and possession of such work and material. (Releases, existing or subsequently received, against other purchase orders awarded Seller by Purchaser for the same or similar parts or materials are to be considered such instructions unless Seller is otherwise notified in writing.) Within 90 days after receipt of such notice of termination Seller will submit all its claims resulting from such termination. Purchaser will have the right to check such claims at any reasonable time or times by inspecting and auditing the records, facilities, work or materials of Seller and/or its subcontractors relating to this order.

(1-71)

Purchaser will pay Seller, without duplication, t.. order price for finished work accepted by Purchaser and the cost to Seller of work in process and raw material allocable to the terminated work, based on any audit Purchaser may conduct and generally accepted accounting principles; less, however, (1) the reasonable value or cost (whichever is higher) of any items used or sold by Seller without Purchaser's consent; (2) the agreed value of any items used or sold by Seller with Purchaser's consent; and (3) the cost of any defective, damaged or destroyed work or material. Purchaser will make no payments for finished work, work in process or raw material fabricated or procured by Seller in excess of any authorization required under Clause VI, Release Authorization. Notwithstanding the above, payments made under this clause, shall not exceed the aggregate price specified in this order less payments otherwise made or to be made, and adjustments shall be made reducing the payments hereunder for costs of work in process and raw material to reflect on a pro rata basis any indicated loss on the entire contract had it been completed. Payment made under this clause will constitute Purchaser's only liability in the event this order is terminated hereunder. Notwithstanding the fact that Purchaser and Seller may not have agreed upon the price to be paid to Seller for items to which Purchaser takes title under this Clause, title to all such items shall vest in Purchaser immediately upon notice to Seller to that effect, and Purchaser shall thereupon be entitled to possession of such items. Except as otherwise provided in this order, the provisions of this clause will not apply to any cancellation by Purchaser for default by Seller or for any other cause allowed by law or under this order.

XIII  CANCELLATION FOR DEFAULT: If Seller fails (i) to deliver the supplies or to perform the services at the time specified herein or any extension thereof authorized by Purchaser in writing, or (ii) to perform any of the other provisions of this order and does not cure such failure within a period of 10 days (or such longer period as Purchaser may authorize in writing) after receipt of notice from Purchaser specifying such failure. Purchaser may by written notice of default to Seller cancel the whole or any part of the supplies and services ordered without liability; except for completed services and completed supplies delivered and accepted and except under that portion of the order not cancelled. Provided, however, that with respect to finished, in-process or otherwise unfinished work under this order, Purchaser shall have the right to take full title to and possession of all or part of such work immediately upon notice to Seller to that effect, regardless of whether or not final price terms have been agreed upon. If, after notice of default under this clause, it is determined that Seller was not in default, work affected by the cancellation shall be deemed terminated pursuant to Clause XII above and the right and obligations of the parties shall be governed by such clause.

(1-71)

XIV   INSURANCE: Seller agrees to furnish acceptable certificates
      evidencing adequate workmen's compensation, public liability
      and property damage insurance coverage when requested by
      Purchaser.  Seller shall defend, indemnify and protect
      Purchaser against all claims, liabilities, losses and dam-
      ages due to injury to or death of any person and damage to
      or loss of any property arising out of improper performance
      or negligent work under this order or arising out of allegedly
      defective material or workmanship in the goods or services
      provided by this order or out of any act or omission of an
      employee or agent of Seller and its subcontractors while on
      Purchaser's property or in the course of their employment.
      When referenced by the purchase order, Clause No. 54 on
      "Chrysler Corporation Clauses," Form 84-806-1631 shall apply
      in lieu of this paragraph.

XV    SPECIAL TOOLING: The term "special tooling" as used in this
      clause shall be deemed to include all jigs, dies, fixtures,
      molds, patterns, special taps, special gauges, special test
      equipment, other special equipment and manufacturing aids, and
      drawings and any replacements of the foregoing, acquired or
      manufactured for use in the performance of this order, which
      are of such a specialized nature, that, without substantial
      modification or alteration, their use is limited to the
      production of the supplies or parts thereof or performance
      of the services of the type required by this order.  The term
      does not include (i) items of tooling or equipment heretofore
      acquired by Seller, or replacement thereof, whether or not
      altered or adopted for use in the performance of this order,
      (ii) consumable small tools, (iii) general or special machine
      tools or similar capital items, or (iv) tooling title to
      which is in Purchaser.

      Seller agrees that special tooling shall be retained and not
      used or reworked except for performance of work hereunder or
      as authorized in writing by Purchaser.  While in Seller's
      possession or control, Seller warrants that it will keep the
      special tooling in good condition, fully covered by insurance,
      free of liens and encumbrances at all times, and will replace
      it when lost, destroyed, or necessary for performance of work
      hereunder.  Upon cessation or termination of the work under
      this order for which the special tooling is required, Seller
      shall furnish Purchaser a list of the products, parts, or
      services for the manufacture or performance of which such
      special tooling was used or designed and a list indicating
      where each item of the special tooling is located, and shall
      transfer and/or dispose of title to and possession of the
      special tooling as Purchaser may direct in writing.  In
      addition, Purchaser shall have the right to take possession
      of, including the right of entry for such purposes, any special
      tooling, title to which Purchaser acquires hereunder, without
      any additional liability whatsoever to Seller.

XVI CHANGES: Purchaser may at any time, by a written order, and without notice to sureties, if any, make changes within the general scope of this order, in any one or more of the following: (i) drawings, designs, or specifications pertaining to this order; (ii) method of shipment or packing; (iii) place of delivery; and (iv) the amount of property to be made available by Purchaser for use by Seller in performance of this order. If any such change causes an increase or decrease in the cost of, or the time required for, performance of any part of the work under this order, whether changed or not changed by any such order, an equitable adjustment shall be made in the order price, or the delivery schedule, or both. Any claim by Seller for adjustment under this clause must be asserted within ninety (90) days from the date of receipt by Seller of the notification of change. Purchaser will have the right to check all claims hereunder at any reasonable time or times by inspecting and auditing the records, facilities, work or materials of Seller relating to this order. Where the cost of property made obsolete or excess by a change is either included in Seller's claim for adjustment or set-off against a claim for adjustment by Purchaser, Purchaser shall have the right to prescribe the manner of disposition of such property and the proceeds therefrom shall be paid to Purchaser. Nothing in this clause shall excuse Seller from proceeding with the order as changed.

XVII USE OF CHRYSLER'S NAME: (a) Seller shall not, without first obtaining the written consent of Purchaser, in any manner publish the fact that Seller has furnished or contracted to furnish Purchaser the articles herein mentioned, or use the name of Chrysler Corporation or any of its subsidiaries in Seller's advertising or other publication. (b) If the material specified within this order is peculiar to Purchaser's design, either as an assembly or component part of any assembly, or if the material bears Purchaser's Trade-Mark and/or Identifying Mark it shall not bear the Trade-Mark or other designation of the maker or seller and similar material shall not be sold or otherwise disposed of to anyone other than Purchaser.

XVIII MARKINGS: Unless otherwise agreed in writing, whenever Seller is requested by Purchaser so to do, by notation on blueprints or written instructions, Seller will place on the goods covered by this order in the manner specified by Purchaser such Trade-Mark and/or Identifying Mark as Purchaser may specify without expense to Purchaser.

Seller will not affix any restrictive markings upon any drawings or technical data furnished to Purchaser under or in connection with this Purchase Order, and if such markings are affixed, Purchaser shall, without liability, have the right at any time to modify, remove, or ignore any such markings.

(1-71)

XIX   PATENTS: Seller warrents that the sale or use of the articles, goods or material covered by this order, will not infringe or contribute to the infringement of any patents or copyrights, either in the U.S.A. or in Canada or in countries foreign thereto and that Seller covenants to defend every suit for any such alleged infringement which may be brought against Purchaser or its customers or other privities and to pay all expense and fees of counsel which shall be incurred in and about defending, and all costs, damages, profits or other recoveries in every such suit.

XX   FORCE MAJEURE: This order is subject to modification by Purchaser in event of fire, accidents, strikes, Government Acts or other conditions beyond Purchaser's control.

XXI   LABOR DISPUTES: Whenever Seller has knowledge that any actual or potential labor dispute is delaying or threatens to delay the timely performance of this Purchase Order Seller shall immediately give notice thereof, including all relevant information with respect thereto, to Purchaser.

XXII   RIGHTS, REMEDIES, AND CONSTRUCTION: The rights and remedies herein reserved to Purchaser shall be cumulative and additional to any other or further rights and remedies available at law or in equity. No waiver of a breach of any provision of this order shall constitute a waiver of any other breach or waiver of such provision.

XXIII   FAIR LABOR STANDARDS: Seller hereby agrees to comply with all applicable requirements of Sections 6, 7 and 12 of the Fair Labor Standards Act, as amended in the performance of work hereunder, and with all applicable regulations and orders issued under Section 14 thereof. All invoices (packing slips if no invoices are issued) shall contain the following written assurance:

>We hereby certify that these goods were produced in compliance with all applicable requirements of Sections 6, 7 and 12 of the Fair Labor Standards Act, as amended, and of regulations and orders of the United States Department of Labor issued under Section 14 thereof.

REQUEST FOR QUOTATION

II

## REQUEST FOR QUOTATION  -  CLAUSES & REQUIREMENTS

Clauses set forth on the page(s) immediately following, when referenced by corresponding numbers appearing on the face of the "Request for Quotation" are a part thereof and applicable thereto.  In addition the following general requirements must be complied with whenever quotations are being submitted in response to our written requests.

..  Quotation must be in writing or confirmed in writing by date shown.

..  Tooling costs, if applicable, are to be quoted independently from the piece price.  The piece price is to be based on annual volume usage and the tools are to be quoted to provide daily tooling capacity as shown.  The tooling will be used in industrial processing or directly in manufacturing tangible personal property for sale.  It is understood that sales and use taxes, if applicable, will be included in Seller's quoted price.

..  Prices, unless otherwise requested, are to be quoted for both FOB Shipping Points and FOB Chrysler Receiving plant(s).

..  Supplier must base his quotation on tooling and planned production capable of supplying a continuous <u>peak weekly</u> volume equal to 6.7 times the daily volume shown herein. (Daily volume x 6.7 = peak weekly requirement).  This is to provide mutual flexibility for covering higher schedules at certain periods or indefinitely, if required.

..  It will be understood that Seller agrees that in the event of receiving an order he will use Teletypes (or other tele-communications methods acceptable to Purchaser) in Purchaser's prescribed format, to furnish notification promptly of all shipments made to the Car Assembly, Windsor Assembly and/or Wyoming Plants, and such other location(s) as may subsequently be required, for the purposes of Chrysler's Dynamic Inventory Analysis System (DIAS).

..  Items qualified in our Request for Quotation as "SAFETY/FED" items involve special considerations and responsibilities in connection with enacted safety legislation.

Accordingly, in submitting his quotation, Seller agrees that in the event of receipt of an order, recognizing the implication of "The National Traffic and Motor Vehicle Safety Act of 1966" and "The Air Quality Act of 1967" and any regulation thereunder, he will furnish material components and/or services (including items provided by sub-sources) involved in the supply of referenced items in compliance with Purchaser's referenced standards and specifications, and will identify them as Safety or Fed items as part of their description when submitting initial samples for approval.

(1-71)

84-805-0191 (7-70)

## Specific Requirements:

4.  Quantity indicated required for current production.

6.  Furnish material weights and cost per pound.

17. Blanket requirements for Trucks from date of order and continuing on a year-to-year basis thereafter.

19. Include in Quotation:  die model and checking fixture cost, build time, source used and part tooling time after receipt of die model on each part.

20. Quote separate prices for U.S. requirements only, Canadian requirements only and total Corporate requirements as indicated.

20A. Quote separate prices for Canadian requirements only (Canadian currency), and total Corporate requirements as indicated (U.S. and Canadian currency).

21. Blanket requirements from date of order and continuing on a year-to-year basis thereafter.

22. Quantities indicated include Canadian requirements.

24. Furnish tool lineup and tool source.

27. Blanket requirements for our 1970 model year.

28. The attached "Assurance-Nonsegregated Facilities" is required by government regulation. Please execute and return one copy with your quotation.  Failure to comply will render your bid non-responsive.

30. Blanket requirements for our 1971 model year.

31. This requirement, which may continue for more than one model series/calendar year is intended for placement as an open-end Purchase Order.  Subject to Chrysler requirements and satisfactory performance of Seller following this award, Seller will continue furnishing the item(s) covered herein and is invited to prepare its Quotation based on this expectation.

33. Blanket requirements for our 1972 model year.

34. When quoting for special tools, include quotation for designing* and building gauge(s) - one set, to be built by Supplier or to his instructions at gauge source approved by Purchaser - necessary for proper inspection of finished part.

    Supplier will be required to certify that gauge(s) have been built to gauge design reviewed and approved by Purchaser.

    *If words "designing and" are to be omitted, reference Clause No. 34-M (modified).

35. Blanket order requirements for our 1973 model year.

                                                          (1-71)

# III. STANDARD CLAUSES

III

# CHRYSLER CORPORATION
# PURCHASE ORDER RIDER

## STANDARD CLAUSES

SELLER UNDERSTANDS THAT THOSE CLAUSES SET FORTH
HEREIN AND REFERENCED BY CORRESPONDING NUMBERS
APPEARING ON THE FACE OF THE PURCHASE ORDER ARE
A PART THEREOF AND APPLICABLE THERETO.

4 "Special tools required to produce the above mentioned part shall be furnished by and remain the property of the Seller. It is understood and agreed that these tools will not be destroyed or otherwise disposed of without Purchaser's written consent. Seller agrees not to alter the tool line-up in any respect, except with the consent of Purchaser in writing."

5 "Special tools required to produce the above part are covered by Purchase Order No. (Fill in Number)."

5-B "Action necessary to furnish special tools required for the above part(s) is to commence immediately. A separate tools purchase order No. (Fill in Number) will be issued upon completion of reviews currently in process."

14 "Tools, purchased under this order as an end item when completed and paid for by Purchaser, become Purchaser's property and are subject to all the provisions of Clause XI of this order. In addition, each tool is to be clearly stamped or stenciled with a tool number and Purchaser's part number of the part which the tool is intended to produce. In order to expedite payment, the following statement is to appear on Seller's invoice."

"The Tools included in this invoice are completed and have produced parts accepted by Purchaser; are stamped or stenciled with a tool number and Chrysler Corporation's part number and are clearly labeled 'Property of Chrysler Corporation'."

"Seller agrees not to alter the tool line-up in any respect except with the consent of the Purchaser in writing."

"Seller is to segregate and list as individual items on invoices all charges applying to designing and tryout costs, tooling aids cost (patterns, tool or die moulds, templates, Tamastone moulds, master hobs, etc.) and any overtime premium, which are a part of the price shown on this Purchase Order."

(1-71)

14-A    "This Purchase Order is issued as matter of record to
        cover the physical transfer of the following tools or
        pattern equipment, owned by Purchaser, to you for the
        production of our parts."

        "(It is not issued to cover the purchase or sale of
        any material or service.)"

        "It is understood and agreed that the above tools or
        equipment although transferred to you are to remain
        the property of Purchaser and to be maintained in
        accordance with Clause XI, under which Seller assumes
        responsibility for rigging, dismantling and loading
        costs.  Value of tools for insurance purposes $_____."

14-D    "The above tools when completed are to remain in
        Seller's possession as Seller's property under
        Seller's control, but otherwise the requirements
        of Clause XI shall apply."

14-E    "Pattern equipment provided or paid for by Purchaser
        remains Purchaser's property and is to be maintained
        by Seller as prescribed in Clause XI.  Minor repairs,
        when necessary, are to be made at Seller's expense;
        major overhauls and replacement of worn out equipment
        at Purchaser's expense."

14-F    "Cost of tooling (or patterns) in the amount of (Fill
        in total dollar amount) is to be amortized in the
        piece price at the rate of (Fill in unit amount of
        amortization) per (Fill in unit i.e., each, hundred,
        thousand) over the first (Fill in total number of
        units to which amortization is to be charged)."

14-G    "Tools or patterns used to make the above part when
        fully amortized are to become Purchaser's property and
        are to be maintained by Seller in accordance with
        Clause XI."

15      "Patterns used to make the above part are the property
        of Seller and are to be maintained in good working
        condition by the Seller to produce castings satisfactory
        to Purchaser's inspection.  Patterns are not to be
        destroyed without Purchaser's written approval."

                                                    (1-71)

"Seller is to segregate and list as individual items
on invoices all charges applying to designing and try-
out costs, tooling aids cost (patterns, tool or die
models, templates, Tamastone moulds, master hobs, etc.)
and any overtime premium, which are a part of the price
shown on this Purchase Order."

L⁄   "Invoice (s) covering tools and/or patterns, etc.,
on this order must show exact physical location by
City, Township or Village and State where the tools
will be used in production.  Should the tools on this
order be transferred to another location, this fact
must be reported to the buyer whose name appears on
the face of this order."

'−A   "Physical location of these tools will be at (Buyer
must fill in City and/or Township, or Village and
State).

"Any subsequent transfer of tools to another location
must be reported to Purchaser's buyer immediately."

1ㄴ   "Confirming Retroactive Price (Increase or Decrease)
not provided within Order No. (Fill In)   between
above dates."

9   "This material is shipped subject to Purchaser's
standard inspection practice and must be suitable
in temper, finish and/or physical characteristics
for the parts or use intended − otherwise material
will be returned for replacement or full credit."

ᵗ0   "Confirming (Letter of Adv. Authorization − Date)."

ᵗ1   "This Purchase Order incorporates terms of (Insert
Contract No. and date, or other descriptive infor-
mation).  If there is any conflict between the terms
of the respective documents, the terms of the
referenced (Insert Contract, Agreement, etc.)
shall govern."

(1-71)

23       "This material is purchased for resale or for an exempt purpose and is therefore exempt from state and local sales or use taxes. Retail licenses: California No. SZ-OHA-30-606877; Illinois No. 798-931; Michigan No. 102429; Missouri Code 120-3907; Direct Payment Permit Nos. Indiana 101385; New York DP-000224; Ohio (Airtemp Dayton Plant) T-169500; Ohio (Twinsburg Stamping Plant) T-170000; Ohio (Amplex Van Wert Plant) T-169980; and Ohio (Toledo Machining Plant) T-170050."

29       .Steel to be produced by (                ).

32       "Price established in this purchase order is based upon anticipated minimum released quantity for fabrication, collective for the plants referenced in the release (and excepting first and/or final release*) of (\_\_\_\_) pieces."

33       "Price established in this purchase order is based upon anticipated minimum released quantity for shipment, collective for the plants referenced in the release (and excepting first and/or final release*) of (\_\_\_\_) pieces."

38       "This order and price (or prices) cover this part (or these parts) as a <u>Special Equipment Item</u> (or items) only."

40       "Purchaser assumes liability for payment of applicable State and Local Sales and Use Taxes and therefore no tax shall be invoiced by Seller. Michigan Retail License No. 102429; Direct Payment Permit Nos.: Indiana 101385; New York DP-000224; Ohio (Airtemp Dayton Plant) T-169500; Ohio (Twinsburg Stamping Plant) T-170000; Ohio (Amplex Van Wert Plant) T-169980; and Ohio (Toledo Machining Plant) T-170050."

50       "This material will be used in industrial processing or directly in manufacturing tangible personal property for sale. It is understood that State and/or Local Sales or Use Taxes, if applicable, are included in the above price and must be shown, and identified by taxing jurisdiction, separately from the material price on the Seller's invoice."

50-A     "This material will be used in industrial processing or directly in manufacturing tangible tangible personal property for sale. It is understood that Provincial Sales or Use Taxes, if applicable, are included in the above price and must be shown, and identified by taxing jurisdiction, separately from the material price on the Seller's invoice."

53     "Purchaser may export packaged items prior to inspection. Seller agrees to indemnify Purchaser against shortages, defects or wrong material discovered upon arrival at ultimate destination, and against such additional costs, including repairs, transportation and duty, which may arise in connection therewith."

57     FEDERAL EXCISE TAX EXEMPTION CERTIFICATE

"Purchaser hereby certifies that it is a manufacturer or producer of articles taxable under Chapter 32, Sub-chapters A and B, of the Internal Revenue Code and of articles not taxable thereunder, and holds Certificate of Registry No. 163, issued by the District Director of Internal Revenue at Detroit, Michigan, that the article or articles specified in the accompanying order will be used by it as material in the manufacture or production of, or as a component part of, an article or articles to be manufactured or produced by Purchaser. It is understood that for all purposes Purchaser will be considered the manufacturer or producer of the articles purchased hereunder, and (except as specifically provided by law) must pay tax on resale or use, otherwise than as specified above, of the articles purchased hereunder. It is further understood that the fraudulent use of this certificate to secure exemption will subject Purchaser and all guilty parties to the penalties provided by law."

57-A     FEDERAL EXCISE TAX EXEMPTION CERTIFICATE

"Purchaser hereby certifies that it is a manufacturer
or producer of articles taxable under Chapter 32,
Sub-chapters A and B, of the Internal Revenue Code
and holds Certificate of Registry No. 163, issued by
the District Director of Internal Revenue at Detroit,
Michigan, and that the article or articles specified
in the accompanying order will be used by it as mate-
rial in the manufacture or production of, or as a
component part of such article or articles to be
manufactured or produced by Purchaser.  It is under-
stood that for all purposes Purchaser will be considered
the manufacturer or producer of the articles purchased
hereunder, and (except as specifically provided by law)
must pay tax on resale or use, otherwise than as
specified above, of the articles purchased hereunder.
It is further understood that the fraudulent use of
this certificate to secure exemption will subject
Purchaser and all guilty parties to the penalties
provided by law."

59-A     "The Federal Excise Tax applying to this material
is a part of this purchase order and is to be in-
voiced to Purchaser and shown as a separate item on
the invoice; Seller will make and render the proper
return to the Federal Government, covering same."

60       "$10.00 minimum billing per shipment.  Material to be
shipped must be $10.00 value notwithstanding any less
quantity shown on the release issued by Production
Control.  Subsequent shipments to be made only when
cumulative released quantity for each plant exceeds
quantity already shipped."

62       "An 'Inspection Conformance Certificate for Material
Shipped' on forms furnished by Purchaser will be
completed and returned by Seller for each part when
required by our Production Control Department, and our
Riders entitled 'Government Contract Provisions'
(Form No. 801-8021 (5-69)  and 'Duty-Free Entry –
Canadian Suppliers' (Form No. DP-15 (10-66) shall be
considered a part of this purchase order."

(1-71)

63      "Each shipment against this purchase order must be
        accompanied by (1) Special Customs Invoice (Form
        No. 5515) in triplicate, (2) Commercial Invoice in
        triplicate, and (3) all documents must bear the
        notation 'For Customs Clearance Purposes – Notify
        (Insert name of Customs Broker)'."

64      "Purchaser reserves the right to increase quantities
        called for herein by an additional quantity of not
        more than 100%.  Such additional quantities can be
        authorized by written release from Production
        Control specifying quantity and contract number
        for which released.  The price of the additional
        quantities shall be no higher than the unit price
        set forth in this purchase order.  This option
        expires no later than one year after date of this
        purchase order."

64–A    "Purchaser reserves the right to increase quantities
        called for herein by an additional quantity of not more
        than 5%.  Such additional quantities can be authorized by
        written release from Production Control.  The price of
        the additional quantities shall be no higher than the
        unit price set forth in this purchase order."

66      "This Purchase Order is cancelled with no cost to
        Chrysler effective _____."

68      "Seller shall indemnify and hold Purchaser harmless
        from and against any and all claims, losses,
        liabilities, damages and expenses, sustained or
        incurred by Purchaser as a result of Seller's failure
        to deliver the supplies or perform the services covered
        hereunder, or any part thereof, in accordance with the
        provisions of this order.  It is mutually understood
        and agreed that this clause in not intended to limit
        in any way Purchaser's rights and remedies against
        Seller and is in addition to any other or further
        rights and remedies available to Purchaser, including,
        but not limited to, the rights and remedies of Purchaser
        under Paragraph XIII, 'Cancellation for Default' of the
        Terms and Conditions of this order."

Case 1:01-cv-00197   Document 6   Filed in TXSD on 12/05/2001   Page 51 of 225

72          FEDERAL EXCISE TAX
        "Domestic Destination:
        If the destination of the vehicle as indicated by the
        Government Bill of Lading is within the United States,
        the Federal excise tax applying to the truck bodies
        purchased hereunder is a part of this purchase order
        and is to be invoiced to Purchaser and shown as a
        separate item on the invoice."

        "Export Destination:
        If the destination of the vehicle as indicated by the
        Government Bill of Lading is within any foreign country
        or possession of the United States, Seller is notified
        that the truck bodies Purchased hereunder are purchased
        tax-free for export, or for resale for export, and will
        be exported in due course.  Therefore, no Federal excise
        tax is to be invoiced to Purchaser."

        "Unknown Destination:
        If the Seller is not informed as to whether the destination
        or the vehicle is within or without the United States,
        Seller is notified that the truck bodies purchased hereunder
        are purchased for export, or for resale for export.
        However, the applicable Federal excise tax is a part of
        this purchase order and is to be invoiced to Purchaser
        and shown as a separate item on the invoice pending
        submission by Purchaser to Seller of proof of exportation."

76      "Purchaser (Chrysler) owned containers are to be
        used to ship material to Seller and Seller shall
        use same containers to return material to Purchaser
        in the performance of this purchase order.  Seller's
        packing slips and invoices must indicate number of
        containers returned with shipment and plant (s) to
        which returned.  Purchaser will invoice Seller at
        Purchaser's standard cost for each container shipped
        and will refund same amount to Seller for each
        container returned."

78      Our Rider entitled United States/Canadian Purchase Order
        Rider "B" (Form No. 84-180-7310) shall be considered a
        part of this purchase order."

80      "Exempt from Federal Excise Tax."

82-A "Blanket order for approximate Chrysler percentage/ primary plant percentage of business shown below for our (<u>Fill in year</u>) model year.  In addition to plants shown, supplier is authorized to honor releases from Production Control for other Chrysler locations as may be required."

82-B "Blanket order for approximate Chrysler percentage/ primary plant percentage of business shown below from (date) to (date).  In addition to plants shown, supplier is authorized to honor releases from Production Control for other Chrysler locations as may be required.

82-D "Blanket order for a portion of Chrysler business for our (<u>Fill in year</u>) model year and the following plant requirements.  In addition to plants shown, supplier is authorized to honor releases from Production Control for other Chrysler locations as may be required."

82-J "This order applies primarily to our (following) plant requirements.  In addition to plants shown, supplier is authorized to honor releases from Production Control for other Chrysler locations as may be required."

82-X "Blanket order for approximately 65-100% of Chrysler requirements commencing from the date shown on the face of this order and continuing on a year to year basis thereafter.  This purchase order is automatically cancelled at no cost to Chrysler Corporation if no releases are issued under this order during any twelve month period.  In addition to plants shown, supplier is authorized to honor releases from Production Control for other Chrysler locations as may be required."

82-Y "Blanket order for a portion of Chrysler requirements commencing from the date on the face of this order and continuing on a year to year basis thereafter. This purchase order is automatically cancelled at no cost to Chrysler Corporation if no releases are issued under this order during any twelve month period.  In addition to plants shown,  supplier is authorized to honor releases from Production Control for other Chrysler locations as may be required."

(1-71)

83    "You are to purchase from Chrysler Corporation (<u>fill in description of Part</u>) at (<u>Fill in amount</u>) which is included in the above price."

85    "This purchase order cancels and supersedes our purchase order no. (Insert cancelled P.O. No.) dated (<u>Insert date of cancelled P.O.</u>) and assumes our obligation for any undelivered balances or unbilled charges due under the cancelled purchase order."

86    "This order covers requirements for indicated material on a blanket open-end basis with notice of a potential (not firm) annual volume up to the number of pieces stated below, to be released in the normal course under the terms of this order.

              _____ Pieces."

92    (Non-Returnable Containers)   "Non-Returnable Container-Materials ordered will be shipped in or on Seller's adequate non-returnable containers.  Containers will be shown as a separate item on Seller's invoice at $(<u>Fill in amount</u>) each."

94    (Returnable Containers, Except Reels and Spools Over $150 - F.O.B. Chrysler Plant)
      "Returnable Container - Materials ordered will be shipped in or on Seller's adequate returnable containers, each container to be plainly identified as such in accordance with Purchaser's Packaging and Shipping Instructions and so referenced on Supplier's packing slips.  Containers will be invoiced by Seller at $(<u>Fill in amount</u>) each. A Seller within immediate vicinity of Purchaser's plant will be notified to pick up empty containers. Upon failure by Seller to pick up empty containers after notification and where Seller is located outside immediate vicinity of Purchaser's plant, Purchaser will ship containers to Seller, F.O.B. Purchaser's Plant. Seller will refund to Purchaser $(<u>Fill in amount</u>)for each container.  Seller will reimburse Purchaser for any prepaid freight and shipping costs from F.O.B. point."

94-A    (Returnable Air Cushion Dunnage Bags – Seller's Plant)
"Returnable Air Cushion Dunnage Bags – Materials ordered
will be shipped protected by Seller's air cushion dunnage
bag(s), each bag to be plainly identified as such in accordance
with Purchaser's Packaging and Shipping Instructions and so
referenced on Supplier's packing slips.  Bags will be
invoiced by Seller at (see below) each and returned by Pur-
chaser to Seller, F.O.B. Seller's Plant, normally in the
same rail cars or otherwise at Purchaser's expense.  Seller
will refund to Purchaser (See below) for each bag when
returned."

94-M    (Returnable Containers – F.O.B. Seller's Plant)
"Returnable Container – Materials ordered will be shipped
in or on Seller's adequate returnable containers, each con-
tainer to be plainly identified as such in accordance with
Purchaser's Packaging and Shipping Instructions and so
referenced on Supplier's packing slips.  Containers will
be invoiced by Seller at (see below) each.  Purchaser will
ship containers to Seller, F.O.B. Seller's Plant.  Seller
will refund to Purchaser (see below) for each container."

96      (Chrysler Returnable Containers)
"(Fill in name of Container) property of Chrysler
Corporation are to be used to deliver the material.
Seller will be responsible to account for such con-
tainers while they are in his care or under his
control.  In the event of damage, they are not to be
scrapped nor repairs effected that would be at
Purchaser's expense, without Purchaser's written
authorization.  Containers to be shipped to Seller,
F.O.B. (Fill in Purchaser's or Seller's Plant) and
invoiced by Purchaser at Purchaser's standard cost
for each container.  Purchaser will refund same amount
to Seller for each container returned to Purchaser."

97      (Returnable Containers in Assigned Rail Cars)
"Material shipped to Purchaser's plant in racks,
crates, trays or bins returnable free in the same
rail cars – Containers are to be returned in the same
rail cars at no charge to Purchaser.  If such containers
are returned by other means, Purchaser will be responsible
for return freight charges and Seller, upon presentation
of proof that it has paid any such charges on behalf of
Purchaser, shall be reimbursed by Purchaser therefor."

(1-71)

148     "Seller understands and agrees that payment by Purchaser of
        premium costs established under this purchase order is
        conditional upon satisfactory performance by Seller in
        accordance with the sample promise date most recently agreed
        and referenced herein.  (In the event that Seller does not
        provide acceptable samples by or on this date, payment of
        the premium costs is subject to reduction or cancellation.)
        Seller understands further that premium amounts invoiced in
        accordance with this order shall in no instance exceed the
        actual cost incurred by Seller, including charges incurred
        by Seller with any subcontractor whom Seller may employ."

149     "Charges incurred by Seller with any subcontractor are to be
        evidenced by copy of subcontractor's invoice which is to be
        submitted by Seller to Purchaser in support of Seller's
        charges."

152     "Seller must notify buyer, in writing, when a plating, heat
        treating or finishing source is changed."

153     "This purchase order originally issued unpriced is hereby
        amended to reflect a non-uniform price adjustment and set
        forth the resultant inclusive price for application at
        indicated effective date/point."  (add date, etc.)

100    "Chrysler Corporation to furnish (quantity) (description) subject to a Consigned Material Receipt Agreement executed by Seller (date)."

00-A  "Chrysler Corporation to furnish (see below) on consignment to Seller in the performance of this purchase order."

.18    "Set-Up Charges (per release/one only) -- (insert price)."

.33    "Seller understands and agrees that amounts invoiced under this purchase order shall be subject to audit and that Purchaser shall have access to and the right to examine, from time to time, any of Seller's books, documents and records pertaining to or supporting amounts invoiced. Purchaser shall have the right to refund of any amounts paid exceeding that determined by such audit or audits to be due Seller in accordance with this purchase order."

    "Upon receipt of checking fixture(s) from Car Assembly Group Unit, supplier is required, as its responsibility, immediately to coordinate it with the die model tooling aid and advise the Gauge Unit verbally and in writing in the event that the fixture(s) and the tooling aid are not compatible."

(4-71)

167    "This purchase order is issued on the understanding that
       Seller will complete the tooling and submit acceptable
       production samples not later than the date stated herein.
       Since Purchaser is authorizing Seller to begin building
       or obtaining tooling without having arrived at firm
       prices, it reserves the right to audit Supplier's tooling
       charges, which shall be based on actual cost.  It will be
       necessary for Supplier, or any subcontractor whom Supplier
       may be using, to maintain accurate records to facilitate
       such audit if required.  These records must be maintained
       irrespective of billings by the subcontractor(s), which
       cannot be accepted automatically by Purchaser as evidence
       of actual cost.  Upon finalizing price of the part(s) and
       cost of the tooling to mutual satisfaction, this order will
       be amended to include the piece price, at which time it is
       expected that this special audit requirement may be
       withdrawn."

168    "Seller understands and agrees that invoiced prices will
       be Seller's prices, as published for general use, and
       in effect at time of shipment, subject to any discount
       as contained herein.  Such prices are subject to review
       and audit verification for accuracy, by Purchaser as
       necessary.  Seller shall, upon request, make available to
       Purchaser such published prices and appropriate records
       supporting amounts invoiced."

173    "Seller must include following certification on shipping
       containers for above part:  'Seller certifies compliance
       with applicable United States Federal Regulations under
       Public Law 89-563.'"

175    "Seller understands and agrees that invoiced price for
       this steel will be Seller's price, as published for
       general use, in effect at time of shipment.  Such prices
       are subject to review and audit verification for accuracy,
       by Purchaser as necessary.  Seller shall, upon request,
       make available to Purchaser such published prices and
       appropriate records supporting amounts invoiced."

176    "Parts furnished under this order, being SAFETY/FED items,
       call for special attention to quality control procedures
       during their manufacture and/or assembly."

       Supplier's attention is drawn to the application of
       Chrysler's SAFETY/FED Performance Standard (Form 200-35-A)
       to these parts and the possible effect upon them of
       Federal Health and Safety Standards."

_77    "Substitute Chrysler Canada Ltd. throughout this
purchase order in place of Chrysler Corporation.

Price stated in Canadian funds.

Not subject to Ontario Sales Tax - Permit 57190003-G.

We certify that the goods ordered or imported hereby are
to be used in, wrought into, or attached to taxable goods
for sale and therefore are not subject to federal sales
and excise taxes.  Chrysler Canada Ltd. License S-6011.

The enclosed Certificate of Content, Form No. 11000 must
be completed and mailed promptly to Chrysler Canada Ltd.,
Customs and Taxes Department, 2450 Chrysler Center,
Windsor, Ontario."

178    "This is a combined United States/Canadian purchase order
with items priced both in Canadian and United States
funds.  Our United States/Canadian Purchase Order Rider
'A' (Form No. 84-180-7309) shall be considered a part
of this order."

_79    "This is a combined United States/Canadian purchase order
with price stated in United States funds.  Our United
States/Canadian Purchase Order Rider 'B' (Form 84-180-7310)
shall·be considered a part of this order."

183    "The attached special equipment description rider shall
be considered a part of this purchase order."

190    "In accepting this order, Seller agrees to use teletypes
(or such other telecommunications method approved by
Purchaser) in Purchaser's prescribed format to furnish
notification promptly of all shipments made to the Car
Assembly, Windsor Assembly and/or Wyoming plants, and
such other locations as may subsequently be required,
for the purpose of Chrysler's Dynamic Inventory Analysis
System (DIAS).  Seller further agrees that in the event
that unforeseen circumstances render it temporarily
impracticable for Seller to maintain this prescribed
method he will immediately contact Purchaser's appropriate
Production Control activity for alternate instructions."

(1-71)

193     "This order is issued on the understanding that Supplier
        will tool and plan production for this part so as to be
        capable of supplying a continuous peak weekly volume
        equal to 6.7 times the daily volume shown in our tool
        purchase order (Daily Volume x 6.7 = Peak Weekly Require-
        ment).  Supplier understands further that this coverage
        is precautionary to cover higher schedule requirements
        during certain periods of the year or indefinitely, if
        required."

240     "Contract Number (Fill in appropriate number)."

243     "Priority rating (Fill in rating) certified for national
        defense use under DMS, Regulation 1."

# IV. RIDERS

## UNITED STATES/CANADIAN PURCHASE ORDER RIDER 'A'

Concerning shipments to plants in Canada, substitute Chrysler Canada Ltd. throughout this order in place of Chrysler Corporation.

Price stated in Canadian funds for shipments to Canadian plants (applies to odd item numbers).

Price stated in United States funds for shipments to United States plants (applies to even item numbers).

Not subject to Ontario Sales Tax – Permit No. 57190003–G.

We certify that the goods ordered or imported hereby are to be used in, wrought into, or attached to taxable goods for sale and therefore are not subject to Federal Sales and Excise Taxes, Chrysler Canada Ltd. License No. S–6011.

Customs clearance for account of consignee.

Each United States shipment against this purchase order must be accompanied by: (1) Special Customs Invoice, Form No.5515, in triplicate, (2) Commercial Invoice, in triplicate, and (3) all documents must bear the statement "For United States Customs Clearance Purposes – Notify *(see below)," unless otherwise covered by special instructions from Purchaser.

 *Shipment into U.S. through Detroit    -The J.D. Richardson Co.
 *Shipment into U.S. through Port Huron-John V. Carr & Son,Inc.
 *Shipment into U.S. through Buffalo    -C. J. Tower & Son

  If for some reason it is necessary to ship through a U.S. port other than Detroit, Port Huron or Buffalo, please contact the Tax Supervisor – Customs, Tax Department, Chrysler Corporation.

Covering shipments to Chrysler Canada plants only, Supplier must complete the enclosed Certificate of Content, Form No. 11000, and mail it promptly to Chrysler Canada Ltd., Customs and Taxes Department, 2450 Chrysler Center, Windsor, Ontario.

**(1–71)**

Form No. 84–180–7309

Case 1:01-cv-00197   Document 6   Filed in TXSD on 12/05/2001   Page 62 of 225

# CHRYSLER CORPORATION PERFORMANCE STANDARD

GENERAL (Continued)

* 3 - Date of manufacture requirements must be followed if specified on the drawing of Federal Standard Items.

  4 - Suppliers of Federal Standard Items must procure and maintain a file of all pertinent Chrysler Engineering Standards for these items. The sources for this, and other information are shown below.

* 5 - The quality control procedures information will be conveyed to suppliers by the Chrysler Purchasing Office.

| TYPE OF SPECIFICATION | SOURCE/ADDRESS |
|---|---|
| Engineering Standards - MS, PS, and PF | *** Engineering Standards and Data Department |
| Standard Parts -   200183<br>9250001 | |
| Chrysler Plastic Number - CPN | *** Rubber and Plastics Laboratory |
| Chrysler Aluminum Finish - CAF | **** Mastering Department |
| Chrysler Pattern Material - CPM | |
| Chrysler Plated Finish - CPF | |
| Styling Mastering Numbers - C-1005<br>BAY2B4 | |
| SAE Rubber Standard - R-630-BDKN | SAE Handbook |

An interpretation of Chrysler's use of SAE and ASTM Rubber Specifications is contained in Chrysler Material Standard MS-(Supplement) Z-75 and Z-77.

| Non-Productive Material Standard - | MMA-2405 | Chrysler Corporation |
|---|---|---|
| | NP-6053 | Manufacturing Engineering Office |
| | NPEA-100 | Production Engineering Service |
| | PTM 2.101 | 6334 Lynch Road |
| | 3005-T-123 | Detroit, Michigan  48234 |

*** Chrysler Corporation Engineering Office
    12800 Oakland Avenue
    Highland Park, Michigan  48203

**** Chrysler Corporation Styling Office
     13000 Oakland Avenue
     Highland Park, Michigan  48203

# # # # # # # # #

TE: The above standards and/or specifications are for use in supplying orders of Chrysler Corporation or its subsidiaries. Suppliers should determine the currency of their copies prior to use. The risk of compliance with the current standards and/or specifications is on the suppliers. Distribution hereof to others, whether paid or free, is for information only.
Copies are available from the Engineering Standards and Data Department, Engineering Office.

VOLUME Y

PAGE 10(2)

200-35-B (5/67)                                          (1-71)

CHRYSLER CORPORATION

FEDERAL EXCISE TAX

MANUFACTURER OF LUBRICATING OIL CERTIFICATE

(For tax-free purchases of lubricating oil, otherwise subject
to the tax under section 4091 of the Internal Revenue Code of
1954, as amended, by manufacturers for resale as provided in
section 4093 of the Code.)

The purchaser certifies that he is a manufacturer or
producer of lubricating oil; that he is registered with
the District Director under Certificate of Registry No.
2538; and, that the lubricating oil covered by the
accompanying order is purchased for resale.

The purchaser understands that he will be considered to
be the manufacturer of the lubricating oil so purchased
for resale and liable for tax imposed under section 4091
unless specifically exempted by law.

(1-71)

5592   (1/66)

## CHRYSLER CORPORATION

## FEDERAL EXCISE TAX

### EXEMPTION CERTIFICATE – LUBRICATING OIL

### SELDOM USED AS A LUBRICANT

(For use by purchaser of lubricating oil, otherwise sub-
ject to tax under section 4091 of the Internal Revenue
Code of 1954, as amended, which the Commissioner of
Internal Revenue has determined to be seldom used as a
lubricant, for use by the purchaser for nonlubricating
purposes or for resale for nonlubricating use.)

The purchaser certifies that he is a manufacturer of
automobiles, trucks, etc., and that the oil covered by
the accompanying order is a type which the Commissioner
has determined to be seldom used as a lubricant and is
purchased for the nonlubricating purposes specified
therein.

The purchaser understands that, if any of the oil pur-
chased tax free by use of this certificate is resold by
him for nonlubricating use or for further resale for such
use, he must obtain a similar certificate from his vendee.
The purchaser further understands that he must be pre-
pared to establish by satisfactory evidence the actual
use or disposition made of such oil, and that upon use
of the oil for a lubricating purpose, or sale for a
lubricating purpose, he is required to notify the vendor.
The purchaser also understands that if his vendee notifies
him that the oil covered by this certificate has been
used for a lubricating purpose or sold for a lubricating
purpose he is required to so notify the vendor from whom
he purchased the oil covered by this certificate. In
addition, the purchaser understands that the above listed
oils which are purchased tax free by use of this certifi-
cate do not qualify for the tax credit or refund under
sections 39(a)(3) and 6424 of the Code.

The purchaser understands that he and all guilty parties
will, for fraudulent use of this certificate for the
purpose of purchasing oil tax free, be subject to a fine
of not more than $10,000, or imprisonment for not more
than 5 years, or both, together with the costs of prose-
cution.

806–163D

ENGINEERING OFFICE                                          PF .SAFETY

## CHRYSLER CORPORATION PERFORMANCE STANDARD          CHANGE - E

### IDENTIFICATION OF SAFETY ITEMS

A - UNDERLINE PURPOSE OF THIS STANDARD

    1 - To provide a means of identifying parts, assemblies, or vehicle assembly operations that are designated "Safety Items".

    2 - This standard calls for special attention by suppliers and corporate manufacturing plants to quality control procedures during the manufacture and/or assembly of parts so identified.

B - GENERAL

    1 - All parts, assemblies, or vehicle assembly operations for which this standard is designated require special attention by suppliers and corporate manufacturing plants to quality control procedures in respect to the material, manufacture and/or assembly.

  * 2 - Supplier Approval

    a - Supplier Capability

        (1) - All prime suppliers of Safety Items must be approved by representatives of the Chrysler Engineering Office and Purchasing Office, and when manufacture or assembly controls are pertinent to standard compliance, by representatives of the Chrysler Vehicle Safety, Quality and Service Office.

        (2) - Subcontractors who produce Safety Items are subject to approval by the Corporate Source Evaluation Team -- comprised of representatives of Chrysler Engineering Office, Purchasing Office, and Vehicle Safety, Quality and Service Office -- whenever the Chrysler Engineering Office and/or Vehicle Safety, Quality and Service Office determine(s) the need for approval. This approval shall not derogate the prime supplier's obligation to approve of his subcontractors.

    b - Part Performance Approval

        All prime suppliers quality systems must be approved by representatives of the Chrysler plant and/or Group Quality Control Office.

(Continued)

* Denotes area of change from previous issue.

| DATE | EFF.CODE | P C R NO. | CHANGE | RELEASES - CHANGES AND CANCELLATIONS |
|------|----------|-----------|--------|--------------------------------------|
| 12-9-69 | 3/NC | | E | Standard updated |
| 2-5-68 | 3/NC | | D | Complete revision |
| 6-8-66 | | | | Date Issued (Dept. 2310) |

VOLUME  I

PAGE  8(1)

NOTE: The above standards and/or specifications are for use in supplying orders of Chrysler Corporation or its subsidiaries. Suppliers should determine the currency of their copies prior to use. The risk of compliance with the current standards and/or specifications is on the suppliers. Distribution hereof to others, whether paid or free, is for information only.
    Copies are available from the Engineering Standards and Data Department, Engineering Office.

200-3S-A (5/67)

# NOTES



# CHRYSLER CORPORATION

# PURCHASE ORDER

# TERMS AND CONDITIONS

# STANDARD CLAUSES

# RIDERS

**CORPORATE PURCHASING**

MARCH, 1972

FORM NO. 84-806-1696 (3-

## EXPLANATION

We have collected together in this Publication the
Terms and Conditions, Standard Clauses and other
types of information that most frequently are refer-
enced in our Requests for Quotations and Purchase
Orders covering production parts, material and
related services.

Because of the continuing relationship Chrysler
Purchasing likes to foster with its Suppliers, the
requirements of our Orders, etc., become well-known
and do not require detailed repetition each time a
specific buying commitment is made.

Relating the references on our Requests for Quotation
and Purchase Orders to this Publication - We suggest
it be kept readily available in your Sales Office -
will contribute to our mutual interest in making
those documents as concise and clear as possible.

INDEX


I       PURCHASE ORDER TERMS & CONDITIONS

II      REQUEST FOR QUOTATION - CLAUSES & REQUIREMENTS

III     STANDARD PURCHASE ORDER CLAUSES

IV      PURCHASE ORDER RIDERS

        • 84-180-7309 (9-69)
          UNITED STATES/CANADIAN PURCHASE ORDER RIDER 'A'

        • 84-180-7310
          UNITED STATES/CANADIAN PURCHASE ORDER RIDER 'B'

        • DP-15 (10-66)
          DUTY-FREE ENTRY - CANADIAN SUPPLIES -RIDER 'D'

        • 200-35-A (5-67)
          PF SAFETY/FED

        • 806-1630 & 5592
          EXCISE TAX EXEMPTION

(3-72)

# I.  TERMS AND CONDITIONS

I. TERMS AND CONDITIONS

# CHRYSLER CORPORATION

## PURCHASE ORDER GENERAL TERMS AND CONDITIONS

I   PROMPTNESS: Delivery of supplies and performance of services at the time specified are of the essence of this order.

II   ACCEPTANCE: This order is not binding until accepted in writing or by a delivery, the rendering of services, or commencement of work on supplies to be specially manufactured for Purchaser, pursuant to this order.

III   MODIFICATIONS: Any modification of this order, to be valid, must be in writing and signed by Purchaser's authorized representative.  Only the Purchaser's signed consent will bind it to any terms hereafter transmitted in any form by the Seller.  Purchaser will consider Seller's requests for changes only if such requests are in writing and are directed to specific provisions of this order.

IV   RESPONSIBILITY FOR PACKING, MARKING AND DELIVERY: Unless otherwise provided in this order, Seller, for the price as stated in this order, shall (i) pack and mark the supplies covered by this order in accordance with Purchaser's Packaging & Shipping Instructions so as to secure the lowest transportation rates, meet carrier requirements and assure arrival at "ship to" point free of damage and deterioration, and (ii) be responsible for the supplies until delivery at the designated (f.o.b.) delivery point, regardless of point of inspection.  Unless otherwise provided, (i) the price as stated in this order shall include all charges and expenses with respect to containers, packing and crating, and for transportation to f.o.b. point, and (ii) all containers, packing and crating material shall become property of Purchaser. Seller shall process shipping documents and route shipment from f.o.b. point, as directed by Purchaser.

V   EXPRESS SHIPMENTS: Purchaser shall have the right to require special, express or air shipment if Seller fails to meet the delivery requirements of this order.  Seller shall reimburse Purchaser for any resulting additional transportation costs unless due solely to causes beyond the control and without the fault or negligence of Seller.

VI   RELEASE AUTHORIZATION: When it is specified on the face hereof that deliveries are to be in accordance with Purchaser's written releases, Seller shall not fabricate or assemble any supplies covered by this order, or procure required materials, or ship any supplies to Purchaser, except to the extent authorized by such written releases or special provisions of this order specifying minimum fabrication or delivery quantities.

(3-72)

VII   CARRIER: Seller grants Purchaser the right to specify at any
time the Carrier and/or the method of transportation to be
employed in conveying any part or all of the supplies covered
herein.  Any changes by Purchaser to such a specified method
will be subject to an equitable adjustment as provided in
Clause XVI, Changes.

VIII  INSPECTION AND REJECTIONS: Purchaser shall have the right to
inspect and test all supplies, special tooling, materials and
workmanship to the extent practicable at all times and places,
including the places and during period of manufacture.  Seller
shall also provide and maintain an adequate inspection system
covering the supplies, fabrication methods, and special tool-
ing hereunder.  Seller shall make its inspection records of all
work and material available to Purchaser during the performance
of this order, and for such longer period as may be specified
in this order.

In case any property delivered or service rendered hereunder
is defective in material or workmanship or otherwise not in
conformity with the requirements of this order, Purchaser shall
have the right, notwithstanding payment or any prior inspection
or test, either to reject it or to require its correction.  Any
service which is required to be corrected hereunder shall be
corrected by and at the expense of Seller promptly after notice.
Property which is rejected or required to be corrected shall be
removed (if permitted or required by Purchaser) or corrected
in place, by and at the expense of the Seller promptly after
notice, and shall not thereafter be delivered hereunder unless
the former rejection or requirement of correction is disclosed.
If the Seller fails promptly to remove such property which is
required to be removed, or promptly to replace or correct such
property, or promptly to correct any such service, Purchaser
either (i) may by contract or otherwise replace or correct such
property or service and charge to Seller the increased cost
occasioned Purchaser thereby, or (ii) may effect a cancellation
for default under Clause XIII.  Unless the Seller is able to
correct or replace such property or correct such service within
the delivery schedule, Purchaser by written notice may accept
the delivery of such property or accept such service subject to
a reduction in price reflecting the reduced value attributable
to non-conformance.  Seller assumes the risk of damage to or
loss of and all handling and transportation costs for defective
property delivered hereunder.

IX    WARRANTY: Seller warrants that the supplies or services covered
by this order will comply with the specifications, drawings,
descriptions or samples furnished or specified by Purchaser
and that the same will be merchantable, of good material and
workmanship and free from defects.  Seller warrants that any
supplies furnished under this order that are designed by Seller
will be fit and sufficient for the purposes intended.  Seller
specifically agrees to defend, indemnify and hold harmless
Purchaser from and against any and all claims, losses, damages
and settlement expenses resulting from or arising out of a
breach of Seller's warranties and of which Purchaser notifies
Seller at any time.

(3-72)

Purchaser will pay Seller, without duplication, the order price for finished work accepted by Purchaser and the cost to Seller of work in process and raw material allocable to the terminated work, based on any audit Purchaser may conduct and generally accepted accounting principles; less, however, (1) the reasonable value or cost (whichever is higher) of any items used or sold by Seller without Purchaser's consent; (2) the agreed value of any items used or sold by Seller with Purchaser's consent; and (3) the cost of any defective, damaged or destroyed work or material. Purchaser will make no payments for finished work, work in process or raw material fabricated or procured by Seller in excess of any authorization required under Clause VI, Release Authorization. Notwithstanding the above, payments made under this clause, shall not exceed the aggregate price specified in this order less payments otherwise made or to be made, and adjustments shall be made reducing the payments hereunder for costs of work in process and raw material to reflect on a pro rata basis any indicated loss on the entire contract had it been completed. Payment made under this clause will constitute Purchaser's only liability in the event this order is terminated hereunder. Notwithstanding the fact that Purchaser and Seller may not have agreed upon the price to be paid to Seller for items to which Purchaser takes title under this Clause, title to all such items shall vest in Purchaser immediately upon notice to Seller to that effect, and Purchaser shall thereupon be entitled to possession of such items. Except as otherwise provided in this order, the provisions of this clause will not apply to any cancellation by Purchaser for default by Seller or for any other cause allowed by law or under this order.

XIII CANCELLATION FOR DEFAULT: If Seller fails (i) to deliver the supplies or to perform the services at the time specified herein or any extension thereof authorized by Purchaser in writing, or (ii) to perform any of the other provisions of this order and does not cure such failure within a period of 10 days (or such longer period as Purchaser may authorize in writing) after receipt of notice from Purchaser specifying such failure. Purchaser may by written notice of default to Seller cancel the whole or any part of the supplies and services ordered without liability; except for completed services and completed supplies delivered and accepted and except under that portion of the order not cancelled. Provided, however, that with respect to finished, in-process or otherwise unfinished work under this order, Purchaser shall have the right to take full title to and possession of all or part of such work immediately upon notice to Seller to that effect, regardless of whether or not final price terms have been agreed upon. If, after notice of default under this clause, it is determined that Seller was not in default, work affected by the cancellation shall be deemed terminated pursuant to Clause XII above and the right and obligations of the parties shall be governed by such clause.

(3-72)

XIV   INSURANCE: Seller agrees to furnish acceptable certificates
evidencing adequate workmen's compensation, public liability
and property damage insurance coverage when requested by
Purchaser. Seller shall defend, indemnify and protect
Purchaser against all claims, liabilities, losses and dam-
ages due to injury to or death of any person and damage to
or loss of any property arising out of improper performance
or negligent work under this order or arising out of allegedly
defective material or workmanship in the goods or services
provided by this order or out of any act or omission of an
employee or agent of Seller and its subcontractors while on
Purchaser's property or in the course of their employment.
When referenced by the purchase order, Clause No. 54 on
"Chrysler Corporation Clauses," Form 84-806-1631 shall apply
in lieu of this paragraph.

XV   SPECIAL TOOLING: The term "special tooling" as used in this
clause shall be deemed to include all jigs, dies, fixtures,
molds, patterns, special taps, special gauges, special test
equipment, other special equipment and manufacturing aids, and
drawings and any replacements of the foregoing, acquired or
manufactured for use in the performance of this order, which
are of such a specialized nature, that, without substantial
modification or alteration, their use is limited to the
production of the supplies or parts thereof or performance
of the services of the type required by this order.  The term
does not include (i) items of tooling or equipment heretofore
acquired by Seller, or replacement thereof, whether or not
altered or adopted for use in the performance of this order,
(ii) consumable small tools, (iii) general or special machine
tools or similar capital items, or (iv) tooling title to
which is in Purchaser.

Seller agrees that special tooling shall be retained and not
used or reworked except for performance of work hereunder or
as authorized in writing by Purchaser.  While in Seller's
possession or control, Seller warrants that it will keep the
special tooling in good condition, fully covered by insurance,
free of liens and encumbrances at all times, and will replace
it when lost, destroyed, or necessary for performance of work
hereunder.  Upon cessation or termination of the work under
this order for which the special tooling is required, Seller
shall furnish Purchaser a list of the products, parts, or
services for the manufacture or performance of which such
special tooling was used or designed and a list indicating
where each item of the special tooling is located, and shall
transfer and/or dispose of title to and possession of the
special tooling as Purchaser may direct in writing.  In
addition, Purchaser shall have the right to take possession
of, including the right of entry for such purposes, any special
tooling, title to which Purchaser acquires hereunder, without
any additional liability whatsoever to Seller.

(3-72)

XVI   CHANGES: Purchaser may at any time, by a written order, and
without notice to sureties, if any, make changes within the
general scope of this order, in any one or more of the
following:  (i) drawings, designs, or specifications pertain-
ing to this order; (ii) method of shipment or packing; (iii)
place of delivery; and (iv) the amount of property to be
made available by Purchaser for use by Seller in performance
of this order.  If any such change causes an increase or
decrease in the cost of, or the time required for, performance
of any part of the work under this order, whether changed or
not changed by any such order, an equitable adjustment shall
be made in the order price, or the delivery schedule, or
both.  Any claim by Seller for adjustment under this clause
must be asserted within ninety (90) days from the date of
receipt by Seller of the notification of change.  Purchaser
will have the right to check all claims hereunder at any reasonable
time or times by inspecting and auditing the records, facili-
ties, work or materials of Seller relating to this order.
Where the cost of property made obsolete or excess by a
change is either included in Seller's claim for adjustment
or set-off against a claim for adjustment by Purchaser,
Purchaser shall have the right to prescribe the manner of
disposition of such property and the proceeds therefrom shall
be paid to Purchaser.  Nothing in this clause shall excuse
Seller from proceeding with the order as changed.

XVII  USE OF CHRYSLER'S NAME: (a) Seller shall not, without first
obtaining the written consent of Purchaser, in any manner
publish the fact that Seller has furnished or contracted to
furnish Purchaser the articles herein mentioned, or use the
name of Chrysler Corporation or any of its subsidiaries in
Seller's advertising or other publication.  (b) If the mat-
erial specified within this order is peculiar to Purchaser's
design, either as an assembly or component part of any
assembly, or if the material bears Purchaser's Trade-Mark
and/or Identifying Mark it shall not bear the Trade-Mark or
other designation of the maker or seller and similar material
shall not be sold or otherwise disposed of to anyone other
than Purchaser.

XVIII MARKINGS: Unless otherwise agreed in writing, whenever Seller
is requested by Purchaser so to do, by notation on blueprints
or written instructions, Seller will place on the goods
covered by this order in the manner specified by Purchaser
such Trade-Mark and/or Identifying Mark as Purchaser may
specify without expense to Purchaser.

Seller will not affix any restrictive markings upon any draw-
ings or technical data furnished to Purchaser under or in
connection with this Purchase Order, and if such markings
are affixed, Purchaser shall, without liability, have the
right at any time to modify, remove, or ignore any such
markings.

**XIX** PATENTS: Seller warrents that the sale or use of the articles, goods or material covered by this order, will not infringe or contribute to the infringement of any patents or copyrights, either in the U.S.A. or in Canada or in countries foreign thereto and that Seller covenants to defend every suit for any such alleged infringement which may be brought against Purchaser or its customers or other privities and to pay all expense and fees of counsel which shall be incurred in and about defending, and all costs, damages, profits or other recoveries in every such suit.

**XX** FORCE MAJEURE: This order is subject to modification by Purchaser in event of fire, accidents, strikes, Government Acts or other conditions beyond Purchaser's control.

**XXI** LABOR DISPUTES: Whenever Seller has knowledge that any actual or potential labor dispute is delaying or threatens to delay the timely performance of this Purchase Order Seller shall immediately give notice thereof, including all relevant information with respect thereto, to Purchaser.

**XXII** RIGHTS, REMEDIES, AND CONSTRUCTION: The rights and remedies herein reserved to Purchaser shall be cumulative and additional to any other or further rights and remedies available at law or in equity. No waiver of a breach of any provision of this order shall constitute a waiver of any other breach or waiver of such provision.

**XXIII** FAIR LABOR STANDARDS: Seller hereby agrees to comply with all applicable requirements of Sections 6, 7 and 12 of the Fair Labor Standards Act, as amended in the performance of work hereunder, and with all applicable regulations and orders issued under Section 14 thereof. All invoices (packing slips if no invoices are issued) shall contain the following written assurance:

> We hereby certify that these goods were produced in compliance with all applicable requirements of Sections 6, 7 and 12 of the Fair Labor Standards Act, as amended, and of regulations and orders of the United States Department of Labor issued under Section 14 thereof.

(3-72)

# II. REQUEST FOR QUOTATION

II. REQUEST FOR QUOTATION

## II
### REQUEST FOR QUOTATION  –  CLAUSES & REQUIREMENTS

Clauses set forth on the page(s) immediately following, when referenced by corresponding numbers appearing on the face of the "Request for Quotation" are a part thereof and applicable thereto.  In addition the following general requirements must be complied with whenever quotations are being submitted in response to our written requests.

.. Quotation must be in writing or confirmed in writing by date shown.

.. Tooling costs, if applicable, are to be quoted independently from the piece price.  The piece price is to be based on annual volume usage and the tools are to be quoted to provide daily tooling capacity as shown.  The tooling will be used in industrial processing or directly in manufacturing tangible personal property for sale.  It is understood that sales and use taxes, if applicable, will be included in Seller's quoted price.

.. Prices, unless otherwise requested, are to be quoted for both FOB Shipping Points and FOB Chrysler Receiving plant(s).

.. Supplier must base his quotation on tooling and planned production capable of supplying a continuous <u>peak weekly</u> volume equal to 6.7 times the daily volume shown herein. (Daily volume x 6.7 = peak weekly requirement).  This is to provide mutual flexibility for covering higher schedules at certain periods or indefinitely, if required.

.. It will be understood that Seller agrees that in the event of receiving an order he will use Teletypes (or other tele-communications methods acceptable to Purchaser) in Purchaser's prescribed format, to furnish notification promptly of all shipments made to the Car and Truck Assembly and Wyoming Plants, and such other location(s) as may subsequently be required, for the purposes of Chrysler's Dynamic Inventory Analysis System (DIAS).

.. Items qualified in our Request for Quotation as "SAFETY/FED" items involve special considerations and responsibilities in connection with enacted safety legislation.

Accordingly, in submitting his quotation, Seller agrees that in the event of receipt of an order, recognizing the implication of "The National Traffic and Motor Vehicle Safety Act of 1966" and "The Air Quality Act of 1967" and any regulation thereunder, he will furnish material components and/or services (including items provided by sub-sources) involved in the supply of referenced items in compliance with Purchaser's referenced standards and specifications, and will identify them as Safety or Fed items as part of their description when submitting initial samples for approval.

(3-72)

Specific Requirements:

4. Quantity indicated required for current production.

6. Furnish material weights and cost per pound.

17. Blanket requirements for Trucks from date of order and continuing on a year-to-year basis thereafter.

19. Include in Quotation: die model and checking fixture cost, build time, source used and part tooling time after receipt of die model on each part.

20. Quote separate prices for U.S. requirements only, Canadian requirements only and total Corporate requirements as indicated.

20A. Quote separate prices for Canadian requirements only (Canadian currency), and total Corporate requirements as indicated (U.S. and Canadian currency).

21. Blanket requirements from date of order and continuing on a year-to-year basis thereafter.

22. Quantities indicated include Canadian requirements.

24. Furnish tool lineup and tool source.

28. The attached "Assurance-Nonsegregated Facilities" is required by government regulation.  Please execute and return one copy with your quotation.  Failure to comply will render your bid non-responsive.

31. This requirement, which may continue for more than one model series/calendar year, is intended for placement as an open-end Purchase Order.  Subject to Chrysler requirements and satisfactory performance of Seller following this award, Seller will continue furnishing the item(s) covered herein and is invited to prepare its quotation based on this expectation.

33. Blanket requirements for our 1972 model year.

34. When quoting for special tools, include quotation for *designing and building gauge(s) - one set, to be built by Supplier or to his instructions at gauge source approved by Purchaser - necessary for proper inspection of finished part.

   Supplier will be required to certify that gauge(s) have been built to gauge design reviewed and approved by Purchaser.

      *If words "designing and" are to be omitted, reference Clause No. 34-M (modified).

(3-72)

35. Blanket order requirements for our 1973 model year.

36. Equal opportunity certifications - by submission of this bid or proposal, offeror certifies as follows:

    1. Except as noted below, up to the date of this offer, no advice, information or notice has been received by the offeror from any Federal Government Agency or representative thereof that the offeror or any of its divisions or affiliates or known first-tier subcontractors is in violation of any of the provisions of Executive Order No. 11246 of September 24, 1965, Executive Order No. 11375 of October 13, 1967, or rules and regulations of the Secretary of Labor (41 CFR, Chapter 60) and specifically as to not having an acceptable affirmative action program or being in noncompliance with any other aspect of the Equal Employment Opportunity Program. It is further certified and agreed that should there be any change in the status of circumstances certified to above between this date and the date of expiration of this offer or any extension thereof, the Government Contracting Officer cognizant of this procurement will be notified forthwith.

    2. Offeror has complied with all applicable rules and regulations of the United States Department of Labor concerning the establishment and implementation of an affirmative action compliance program, including, but not limited to, all requirements of "Order No. 4" of the United States Department of Labor (41CFR 60-2).

37. Payment for supplier tooling assumes that parts made therefrom will be acceptable both dimensionally and functionally. Purchaser reserves the right to withhold payment for tooling on this part until samples from such tooling are fully approved, as evidenced by signed Initial Sample Inspection Report, Form No. 84-235-4434, and also Initial Sample Laboratory Report, Form No. 84-235-4435.

38. Quote to materials standards of unexposed surface finish, Class B; I; U; or of exposed surface Class UT. Your quotation must specify Class to which quoted.

38A. Unless otherwise precluded by surface specifications or manufacturing processes, quote to material standards of exposed surface finish Class UT, or of equal quality. Your quotation must specify Class to which quoted.

39. This assembly although its design, engineering and/or component parts and materials are controlled by Supplier, must conform in all respects as a complete operational unit to Chrysler engineering standards as applicable. Chrysler Corporation must be given prior notification of any intended changes to this assembly in accordance with the terms of applicable purchase order(s).

40. This request for quotation is based upon advance specification and volume data; therefore, any resulting purchase order will be subject to review and the price subject to renegotiation in the event the specifications and volume when formally established are different from those now contemplated and reflected herein.

41. In the event of an order resulting from this quotation, the "terms and conditions" of Purchaser's order will prevail over any "terms and conditions" of Supplier's quotation and confirmation of order.

42. Blanket order requirements for our 1974 model year.

197. Seller is to reflect firm labor economics in his quotation.

206A. (a) The Seller represents that to the best of his knowledge and belief he is in complete compliance with Executive Orders 11615 and 11627 and any amended regulations thereto. Further, the Seller warrants that the amounts invoiced under this purchase order will not exceed the lower of (1) the purchase order price, or (2) the maximum levels established in accordance with said Executive Orders.

    (b) The Seller agrees to insert the substance of this clause, including this paragraph (b), in all subcontracts for supplies or services issued under this purchase order.

211. Includes commitment for potential service requirements of Purchaser's Parts Division. Special packaging for service, if required and not specified herein, will be separately requested and negotiated. Canadian suppliers must mark service requirements appropriately, "Made in Canada". To ensure proper identification of shipments, Seller's packing slips shall always include applicable Chrysler release number.

259. Seller agrees to establish and conduct a "Small Business Subcontracting Program" in compliance with the provisions of ASPR 7-104.14(B) and a 'Labor Surplus Area Subcontracting Program' in compliance with the provisions of ASPR 7-104.20(B).

(3-72)

# III.  STANDARD CLAUSES

III. STANDARD CLAUSES

III

# CHRYSLER CORPORATION
# PURCHASE ORDER RIDER

## STANDARD CLAUSES

SELLER UNDERSTANDS THAT THOSE CLAUSES SET FORTH

HEREIN AND REFERENCED BY CORRESPONDING NUMBERS

APPEARING ON THE FACE OF THE PURCHASE ORDER ARE

A PART THEREOF AND APPLICABLE THERETO.

"Special tools required to produce the above mentioned part shall be furnished by and remain the property of the Seller. It is understood and agreed that these tools will not be destroyed or otherwise disposed of without Purchaser's written consent.  Seller agrees not to alter the tool line-up in any respect, except with the consent of Purchaser in writing."

5      "Special tools required to produce the above part are covered by purchase order number (fill in number)."

5B     "Action necessary to furnish special tools required for the above part(s) is to commence immediately.  A separate tool purchase order number (fill in number) will be issued upon completion of reviews currently in process."

14     "Tools, purchased under this order as an end item when completed and paid for by Purchaser, become Purchaser's property and are subject to all the provisions of Clause XI of this order.  In addition, each tool is to be clearly stamped or stenciled with a tool number and Purchaser's part number of the part which the tool is intended to produce.  In order to expedite payment, the following statement is to appear on Seller's invoice.

The tools included in this invoice are completed and have produced parts accepted by Purchaser; are stamped or stenciled with a tool number and Chrysler Corporation's part number and are clearly labeled 'Property of Chrysler Corporation'.

Seller agrees not to alter the tool line-up in any respect except with the consent of the Purchaser in writing.

Seller is to segregate and list as individual items on invoices all charges applying to designing and tryout costs, tooling aids cost (patterns, tool or die moulds, templates, Tamastone moulds, master hobs, etc.) and any overtime premium, which are a part of the price shown on this purchase order."

14A    "This purchase order is issued as matter of record to cover the physical transfer of the following tools or pattern equipment, owned by Purchaser, to you for the production of our parts.

(It is not issued to cover the purchase or sale of any material or service.)

It is understood and agreed that the above tools or equipment although transferred to you are to remain the property of Purchaser and to be maintained in accordance with Clause XI, under which Seller assumes responsibility for rigging, dismantling and loading costs.  Value of tools for insurance purposes $(fill in dollar amount of value)."

(3-72)

14D    "The above tools when completed are to remain in Seller's possession as Seller's property under Seller's control, but otherwise the requirements of Clause XI shall apply."

14E    "Pattern equipment provided or paid for by Purchaser remains Purchaser's property and is to be maintained by Seller as prescribed in Clause XI.  Minor repairs, when necessary, are to be made at Seller's expense; major overhauls and replacement of worn out equipment at Purchaser's expense."

14F    "Cost of tooling (or patterns) in the amount of (fill in total dollar amount) is to be amortized in the piece price at the rate of (fill in unit amount of amortization) per (fill in unit i.e., each, hundred, thousand) over the first (fill in total number of units to which amortization is to be charged)."

14G    "Tools or patterns used to make the above part when fully amortized are to become Purchaser's property and are to be maintained by Seller in accordance with Clause XI."

14K    "The above zinc alloy tools when completed are to remain in Seller's possession as Seller's property subject to this clause.  Such tools are to be used exclusively on Purchaser's orders and are to be stored, maintained so as to furnish parts satisfactory to Purchaser's inspection and fully covered by insurance at all times without expense to Purchaser; and may not be destroyed or otherwise disposed of without Purchaser's written consent for a minimum period of six (6) months after completion and acceptance of the parts produced from these tools.  Any subsequent proposal to dispose of such tools must be submitted in writing to and approved by Purchaser.  Purchaser will not, without its written consent, be liable for any additional charge in connection with the retention of the tools by the Seller.

At its option, Purchaser may buy and take possession of the above tools at any time upon payment to Seller for the zinc alloy used in the tools based on the weight of the finished tools and prevailing market price of prime zinc on the East St. Louis Prime Western Zinc Market at the time of purchase.

Each tool is to be clearly stamped or stenciled with a tool number and Purchaser's part number so as to make it identifiable with Purchaser's part which it is intended to produce."

"Patterns used to make the above part are the property of Seller and are to be maintained in good working condition by the Seller to produce castings satisfactory to Purchaser's inspection.  Patterns are not to be destroyed without Purchaser's written approval."

16     "Seller is to segregate and list as individual items on invoices all charges applying to designing and tryout costs, tooling aids cost (patterns, tool or die models, templates, Tamastone moulds, master hobs, etc.) and any overtime premium, which are a part of the price shown on this purchase order."

17     "Invoice(s) covering tools and/or patterns, etc., on this order must show exact physical location by City, Township or Village and State where the tools will be used in production.  Should the tools on this order be transferred to another location, this fact must be reported to the buyer whose name appears on the face of this order."

17A    "Physical location of these tools will be at (buyer must fill in City and/or Township, or Village and State)."

Any subsequent transfer of tools to another location must be reported to Purchaser's buyer immediately."

"Confirming Retroactive Price (increase or decrease) not provided within Order No. (fill in) between above dates."

19     "This material is shipped subject to Purchaser's standard inspection practice and must be suitable in temper, finish and/or physical characteristics for the parts or use intended – otherwise material will be returned for replacement or full credit."

20     "Confirming (letter of adv. authorization – date)."

21     "This purchase order incorporates terms of (insert contract number and date, or other descriptive information).  If there is any conflict between the terms of the respective documents, the terms of the referenced (insert contract number, agreement, etc.) shall govern."

(3–72)

3    "This material is purchased for resale or for an exempt
     purpose and is therefore exempt from state and local
     sales or use taxes.  Retail License Nos.:  California
     SZ-OHA-30-606877; Illinois 798-931; Kentucky 108880;
     Michigan A38-0419960; Missouri 240-3907; Pennsylvania
     99-04171; Direct Payment Permit Nos.:  Indiana 101385;
     New York DP-000224; Ohio (Airtemp Dayton Plt.) 98-000291;
     Ohio (Twinsburg Stamping Plt.) 98-000293; Ohio (Amplex
     Van Wert Plt.) 98-000292; and Ohio (Toledo Machining Plt.)
     98-000294."

29   "Steel to be produced by (                    )."

32   "Price established in this purchase order is based upon
     anticipated minimum released quantity for fabrication,
     collective for the plants referenced in the release (and
     excepting first and/or final release ) of (    ) pieces."

33   "Price established in this purchase order is based upon
     anticipated minimum released quantity for shipment,
     collective for the plants referenced in the release (and
     excepting first and/or final release ) of (    ) pieces."

34   "The above is to comply with specifications and be satis-
     factory to our inspection.  You warrant this unit to give
     satisfactory performance in service and when applied to
     our chassis you undertake and assume full responsibility
     for the satisfactory performance of any such chassis so
     converted, to the extent that the operation and performance
     is affected by such conversion.  You also agree to provide
     at a reasonable price, any part required for servicing
     over a period of five years from delivery date."

35P  "Seller's added cost to process for Purchaser's Parts
     Division as per 'Vendors Processing Specifications',
     dated (fill in date and   buyer's name)."

35M  "Above item reflects Service Parts Division requirements."

38   "This order and price (or prices) cover this part (or
     these parts) as a Special Equipment Item (or items) only."

40   "Purchaser assumes liability for payment of applicable
     State and Local Sales and Use Taxes and therefore no tax
     shall be invoiced by Seller.  Michigan Retail License No. A38-
     0419960; Direct Payment Permit Nos.:  Indiana 101385;
     New York DP-000224; Ohio (Airtemp Dayton Plt.) 98-000291;
     Ohio (Twinsburg Stamping Plt.) 98-000293; Ohio (Amplex
     Van Wert Plt.) 98-000292; Ohio (Toledo Machining Plt.)
     98-000294; Pennsylvania (New Stanton Assembly Plt.) 00332."

                                             (3-72)

"Do not invoice Michigan Motor Fuel Tax or Michigan Diesel Motor Fuel Tax as Purchaser is responsible for determining taxable usage and remitting payment thereon to the Michigan State Tax Authorities under Distributor License No. 471 or User License No. D-2371, as appropriate."

50 "This material will be used in industrial processing or directly in manufacturing tangible personal property for sale. It is understood that State and/or Local Sales or Use Taxes, if applicable, are included in the above price and must be shown, and identified by taxing jurisdiction, separately from the material price on the Seller's invoice."

0A "This material will be used in industrial processing or directly in manufacturing tangible personal property for sale. It is understood that Provincial Sales or Use Taxes, if applicable, are included in the above price and must be shown, and identified by taxing jurisdiction, separately from the material price on the Seller's invoice."

3 "Purchaser may export packaged items prior to inspection. Seller agrees to indemnify Purchaser against shortages, defects or wrong material discovered upon arrival at ultimate destination, and against such additional costs, including repairs, transportation and duty, which may arise in connection therewith."

6 "This material is subject to applicable State Motor Fuel Tax and Inspection Fees of the jurisdiction to which shipment is made which must appear as separate items on your invoice. Seller affirms that he will make the necessary tax return to the state."

57 "Purchaser hereby certifies that it is a manufacturer or producer of articles taxable under Chapter 32, Sub-chapters A and B, of the Internal Revenue Code and of articles not taxable thereunder, and holds Certificate of Registry No. 163, issued by the District Director of Internal Revenue at Detroit, Michigan, and that the article or articles specified in the accompanying order will be used by it as material in the manufacture or production of, or as a component part of such article or articles to be manufactured or produced by Purchaser. It is understood that for all purposes Purchaser will be considered the manufacturer or producer of the articles purchased hereunder, and (except as specifically provided by law) must pay tax on resale or use, otherwise than as specified above, of the articles purchased hereunder. It is further understood that the fraudulent use of this certificate to secure exemption will subject Purchaser and all guilty parties to the penalties provided by law."

(3-72)

57A     FEDERAL EXCISE TAX EXEMPTION CERTIFICATE

"Purchaser hereby certifies that it is a manufacturer or
producer of articles taxable under Chapter 32, Sub-chapters
A and B, of the Internal Revenue Code and holds Certificate
of Registry No. 163, issued by the District Director of
Internal Revenue at Detroit, Michigan, and that the article
or articles specified in the accompanying order will be
used by it as material in the manufacture or production of,
or as a component part of such article or articles to be
manufactured or produced by Purchaser. It is understood
that for all purposes Purchaser will be considered the
manufacturer or producer of the articles purchased here-
under, and (except as specifically provided by law) must
pay tax on resale or use, otherwise than as specified above,
of the articles purchased hereunder. It is further under-
stood that the fraudulent use of this certificate to
secure exemption will subject Purchaser and all guilty
parties to the penalties provided by law."

58      PREFERENCE FOR CERTAIN DOMESTIC COMMODITIES

"The Contractor agrees that there will be delivered under
this contract only such articles of cotton, woven silk
and woven silk blends, spun silk yarn for cartridge cloth,
or wool (whether in the form of fiber or yarn or contained
in fabrics, materials or manufactured articles) as have
been grown, reprocessed, reused, or produced in the United
States, its possessions, or Puerto Rico; provided that
this clause shall have no effect to the extent that the
Secretary has determined as to any such articles that a
satisfactory quality and sufficient quantity cannot be
procured as and when needed at United States market prices."

59A     "The Federal Excise Tax applying to this material is a
part of this purchase order and is to be invoiced to
Purchaser and shown as a separate item on the invoice;
Seller will make and render the proper return to the
Federal Government, covering same."

60      "$10.00 minimum billing per shipment. Material to be
shipped must be $10.00 value notwithstanding any less
quantity shown on the release issued by Production Control.
Subsequent shipments to be made only when cumulative
released quantity for each plant exceeds quantity already
shipped."

(3-72)

"The Insurance Provisions of the Plant Engineering General Conditions shall apply in lieu of Item XIV of the 'Terms and Conditions' entitled 'Insurance' on Form 84-806-1652."

62     "An 'Inspection Conformance Certificate for Material Shipped' on forms furnished by Purchaser will be completed and returned by Seller for each part when required by our Production Control Department, and our Riders entitled 'Government Contract Provisions' (Form No. 801-8021 (5-71) and 'Duty-Free Entry - Canadian Supplies' (Form No. DP-15 (4-71) shall be considered a part of this purchase order."

63     "Each shipment against this purchase order must be accompanied by (1) Special Customs Invoice (Form No. 5515) in triplicate, (2) Commercial Invoice in triplicate, and (3) all documents must bear the notation 'For Customs Clearance Purposes - Notify (Insert name of Customs Broker)'."

64     "Purchaser reserves the right to increase quantities called for herein by an additional quantity of not more than 100%.  Such additional quantities can be authorized by written release from Production Control specifying quantity and contract number for which released.  The price of the additional quantities shall be no higher than the unit price set forth in this purchase order.  This option expires no later than one year after date of this purchase order."

64A    "Purchaser reserves the right to increase quantities called for herein by an additional quantity of not more than 5%. Such additional quantities can be authorized by written release from Production Control.  The price of the additional quantities shall be no higher than the unit price set forth in this purchase order."

66     "This Purchase Order is cancelled with no cost to Chrysler effective (                    )."

66A    "This item is cancelled effective (                    )."

68     "Seller shall indemnify and hold Purchaser harmless from and against any and all claims, losses, liabilities, damages and expenses, sustained or incurred by Purchaser as a result of Seller's failure to deliver the supplies or perform the services covered hereunder, or any part thereof, in accordance with the provisions of this order.  It is mutually understood and agreed that this clause is not intended to limit in any way Purchaser's rights and remedies against Seller and is in addition to any other or further rights and remedies available to Purchaser, including, but not limited to, the rights and remedies of Purchaser under Paragraph XIII, 'Cancellation for Default' of the Terms and Conditions of this order."

(3-72)

69    "Do not invoice Missouri Motor Fuel Tax as Purchaser is
      responsible for determining taxable usage and remitting
      payment thereon to the Missouri Department of Revenue
      under authority of Distributor's License No. 885.
      Compliance with the Missouri Oil Inspection Law, inclu-
      ding payment of inspection fees, will be made by Seller
      prior to delivery."

72    FEDERAL EXCISE TAX

      "Domestic Destination:
      If the destination of the vehicle as indicated by the
      Government Bill of Lading is within the United States,
      the Federal excise tax applying to the truck bodies
      purchased hereunder is a part of this purchase order and
      is to be invoiced to Purchaser and shown as a separate
      item on the invoice."

      "Export Destination:
      If the destination of the vehicle as indicated by the
      Government Bill of Lading is within any foreign country or
      possession of the United States, Seller is notified that
      the truck bodies purchased hereunder are purchased tax-
      free for export, or for resale for export, and will be
      exported in due course.  Therefore, no Federal excise tax
      is to be invoiced to Purchaser."

      "Unknown Destination:
      If the Seller is not informed as to whether the destination
      or the vehicle is within or without the United States,
      Seller is notified that the truck bodies purchased here-
      under are purchased for export, or for resale for export.
      However, the applicable Federal excise tax is a part of
      this purchase order and is to be invoiced to Purchaser and
      shown as a separate item on the invoice pending submission
      by Purchaser to Seller of proof of exportation."

76    "Purchaser (Chrysler) owned containers are to be used to
      ship material to Seller and Seller shall use same containers
      to return material to Purchaser in the performance of this
      purchase order:  Seller's packing slips and invoices must
      indicate number of containers returned with shipment and
      plant(s) to which returned.  Purchaser will invoice Seller
      at Purchaser's standard cost for each container shipped
      and will refund same amount to Seller for each container
      returned."

78    "Our Rider entitled United States/Canadian Purchase Order
      Rider 'B' (Form No. 84-180-7310) shall be considered a
      part of this purchase order."

80    "Exempt from Federal Excise Tax."

o2-A  "Blanket order for approximate Chrysler percentage/
      primary plant percentage of business shown below for
      our (Fill in year) model year. In addition to plants
      shown, supplier is authorized to honor releases from
      Production Control for other Chrysler locations as
      may be required."

A2-B  "Blanket order for approximate Chrysler percentage/
      primary plant percentage of business shown below from
      (date) to (date). In addition to plants shown, sup-
      plier is authorized to honor releases from Production
      Control for other Chrysler locations as may be required.

P2-D  "Blanket order for a portion of Chrysler business for
      our (Fill in year) model year and the following plant
      requirements. In addition to plants shown, supplier
      is authorized to honor releases from Production Control
      for other Chrysler locations as may be required."

      "This order applies primarily to our (following) plant
      requirements. In addition to plants shown, supplier
      is authorized to honor releases from Production Control
      for other Chrysler locations as may be required."

32-X  "Blanket order for approximately 65-100% of Chrysler
      requirements commencing from the date shown on the
      face of this order and continuing on a year to year
      basis thereafter. This purchase order is automatically
      cancelled at no cost to Chrysler Corporation if no
      releases are issued under this order during any twelve
      month period. In addition to plants shown, supplier
      is authorized to honor releases from Production Control
      for other Chrysler locations as may be required."

3 -Y  "Blanket order for a portion of Chrysler requirements
      commencing from the date on the face of this order
      and continuing on a year to year basis thereafter.
      This purchase order is automatically cancelled at no
      cost to Chrysler Corporation if no releases are issued
      under this order during any twelve month period. In
      addition to plants shown, supplier is authorized to
      honor releases from Production Control for other
      Chrysler locations as may be required."

                                                (3-72)

•A

**(Returnable Air Cushion Dunnage Bags - Seller's Plant)**

"Returnable Air Cushion Dunnage Bags - Materials ordered will be shipped protected by Seller's air cushion dunnage bag(s), each bag to be plainly identified as such in accordance with Purchaser's Packaging and Shipping Instructions and so referenced on Supplier's packing slips. Bags will be invoiced by Seller at (see below) each and returned by Purchaser to Seller, F.O.B. Seller's Plant, normally in the same rail cars or otherwise at Purchaser's expense. Seller will refund to Purchaser (see below) for each bag when returned."

94M

**(Returnable Containers - F.O.B. Seller's Plant)**

"Returnable Container - Materials ordered will be shipped in or on Seller's adequate returnable containers, each container to be plainly identified as such in accordance with Purchaser's Packaging and Shipping Instructions and so referenced on Supplier's packing slips. Containers will be invoiced by Seller at (see below) each. Purchaser will ship containers to Seller, F.O.B. Seller's Plant. Seller will refund to Purchaser (see below) for each container."

95

**(Returnable Containers - Reels and Spools)**

"Returnable Container - Reels or Spools used to ship material ordered will be paid for at the invoiced price (in no event to exceed manufacturer's current published prices or $150.00 each, whichever is less) subject to return for credit at the same price, F.O.B. Purchaser's plant. Charges for Reels or Spools must be shown on Seller's invoice as a separate item. As a means of identification and to facilitate return, Reels or Spools must be plainly marked in accordance with Purchaser's Packaging and Shipping Instructions and so referenced on Supplier's packing slips."

96

**(Chrysler Returnable Containers)**

"(Fill in name of Container) property of Chrysler Corporation are to be used to deliver the material. Seller will be responsible to account for such containers while they are in his care or under his control. In the event of damage, they are not to be scrapped nor repairs effected that would be at Purchaser's expense, without Purchaser's written authorization. Containers to be shipped to Seller, F.O.B. (fill in Purchaser's or Seller's Plant) and invoiced by Purchaser at Purchaser's standard cost for each container. Purchaser will refund same amount to Seller for each container returned to Purchaser."

(3-72)

96M     "Fill in name of container) property of Chrysler
Corporation are to be used to ship the material ordered.
Seller's packing slips and invoices must indicate number
of containers returned with shipments.  In the event of
damage, they are not to be scrapped nor repairs effected
that would be at Purchaser's expense, without Purchaser's
written authorization.  Containers to be shipped to Seller,
F.O.B. Seller's plant.  Purchaser will invoice Seller at
(see below) for each container shipped and will refund
same amount to Seller for each container returned."

97     (Returnable Containers in Assigned Rail Cars)
"Material shipped to Purchaser's plant in racks, crates,
trays or bins returnable free in the same rail cars -
containers are to be returned in the same rail cars at no
charge to Purchaser.  If such containers are returned by
other means, Purchaser will be responsible for return
freight charges and Seller, upon presentation of proof
that it has paid any such charges on behalf of Purchaser,
shall be reimbursed by Purchaser therefor."

98     "In consideration of the payment for the design, develop-
ment and/or other services set forth in this purchase
order, Seller hereby grants unto Purchaser a royalty-free
non-exclusive, non-cancellable license under any patent
or patents now or hereinafter owned or controlled by
Seller to manufacture, have manufactured, use and/or sell
devices and to practice methods or processes utilizing
any and all inventions included in or useful in the
production of any device designed, developed, drawn, devised
or produced under this purchase order, as well as under
any copyright acquired by the Seller on work performed
under this purchase order."

100     "Chrysler Corporation to furnish (quantity)  (description)
subject to a 'Consigned Material Receipt Agreement'
executed by Seller (date)."

100A     "Chrysler Corporation to furnish (see below) on consign-
ment to Seller in the performance of this purchase order."

102     (Revised)
"In accepting this order, Seller certifies that it is
qualified as a public warehouse in accordance with appli-
cable federal and state laws and that Seller will reimburse
the Purchaser for such amount of property tax and appro-
priate penalties and interest, etc., which the Purchaser
may be required to pay on personal property intended for
shipment out of the state, stored in Seller's warehouse,
and on which property the exemption for taxation is not
allowed by the taxing authorities on the basis that Seller's
warehouse does not meet the qualifications as set forth
above."

(3-72)

111     "Copy of packing slip must accompany Seller's invoice on
        shipments to other than Purchaser's plants."

        "Immediately upon receipt of material for performance under
        this purchase order, Seller shall furnish a receiving
        report reflecting this order number, and including part
        number, quantity and condition of material to Purchaser's
        invoicing address."

.18     "Set-up charges (per release/one only)  (insert price)."

133     "Seller understands and agrees that amounts invoiced under
        this purchase order shall be subject to audit and that
        Purchaser shall have access to and the right to examine,
        from time to time, any of Seller's books, documents and
        records pertaining to or supporting amounts invoiced.
        Purchaser shall have the right to refund of any amounts
        paid exceeding that determined by such audit or audits to
        to due Seller in accordance with this purchase order."

134     "Chrysler Corporation will furnish all finished Art Work
        required hereunder.  Printing plates shall be furnished
        and paid for by (insert Seller or Chrysler) as designated
        with Clause No. 134 on purchase order.  When furnished and
        paid for by Seller, Chrysler Corporation reserves the right,
        at its option, to purchase said plates subsequently at a
        mutually agreed price.  Seller further agrees to advise
        Chrysler Corporation of the location and user of said plates
        at all times during the life of this order.  Seller also
        agrees upon termination of this order for any reason, to
        advise Chrysler Corporation in writing of the status,
        including inventory, of any and all printing and printed
        matter, including but not limited to printing plates and
        containers for material, bearing the trademark and/or marking
        involving Chrysler Corporation identification.  Seller will
        take necessary steps to assure that no unauthorized or
        improper use of said trademark and/or marking identification
        of Chrysler Corporation is made, and to advise Chrysler Corpo-
        ration in writing of location and final disposition of all
        such material, including plates not subsequently purchased
        by Chrysler Corporation, and steps taken to deliver to
        Chrysler Corporation or destroy such material in the event
        that remarking or relabeling of same so as to eliminate any
        Chrysler Corporation identification is not possible."

138     "On all invoices, packing slips and shipping containers,
        Seller must prefix part number with (      )."

139     "Immediately upon receipt of consigned material, a receiving
        report properly signed, verifying quantities and condition of
        material must be mailed to Parts Division, Accounting,
        Box 2716, Detroit, Michigan 48231, Attn:  Accounts Payable-
        Supervisor.

        You will, upon completion of this order, automatically return
        and indicate on your shipper all excess materials properly
        segregated and identified to Chrysler Parts Division,
        Centerline, Michigan."

                                                        (3-72)

140   "Overshipments of service requirements are not to exceed five percent.  Any excess will be returned at Supplier's expense."

141   "Price is based on fabrication at one time of entire quantity on order to be released by procurement for shipment within a period of (insert number) months from date beginning (insert date) which is the requested initial shipment date.  All balances due on order not released for shipment during this period will be shipped automatically at the end of the (insert ending) month."

142   "Supplier to advise Carrier that freight bills must be made up as follows:

        Consign to:  Chrysler Corporation, Parts Division
                     P.O. Box 1718, Detroit, Michigan 48231
                     C/O (insert Parts Div. or Receiving Firm)."

143   "Run with production."

146   "Upon receipt of checking fixture(s) from Car Assembly Group Gauge Unit, Supplier is required, as its responsibility, immediately to coordinate it with the die model tooling aid and advise the Gauge Unit verbally and in writing in the event that the fixture(s) and the tooling aid are not compatible."

148   "Seller understands and agrees that payment by Purchaser of premium costs established under this purchase order is conditional upon satisfactory performance by Seller in accordance with the sample promise date most recently agreed and referenced herein.  (In the event that Seller does not provide acceptable samples by or on this date, payment of the premium costs is subject to reduction or cancellation.) Seller understands further that premium amounts invoiced in accordance with this order shall in no instance exceed the actual cost incurred by Seller, including charges incurred by Seller with any subcontractor whom Seller may employ."

149   "Charges incurred by Seller with any subcontractor are to be evidenced by copy of subcontractor's invoice, which is to be submitted by Seller to Purchaser in support of Seller's charges."

152   "Seller must notify buyer, in writing, when a plating, heat treating or finishing source is changed."

                                                      (3-72)

‾ɔ     "This purchase order originally issued unpriced is hereby amended to reflect a non-uniform price adjustment and set forth the resultant inclusive price for application at indicated effective date/point.    (add date, etc.)"

154     "You are to purchase component parts listed below from (insert component supplier name(s) and address)."

155     "Prices, as stated, to change letters indicated, have been included in the above assembly price.   Samples to change letters indicated will be available to you as noted. Follow up for timely submission of samples to indicated change letter, as well as for subsequent changes, will be your responsibility.   (Insert component part number, change letter, price and sample date.)"

156     "Prices 'to be determined' will be transmitted to you when finalized."

157     "You are alerted that changes to the assembly through (insert latest change letter aware of) are currently being processed to you by Material Change Notices."

ᴇ‾     "Initial samples from production tooling to the latest possible change that can be incorporated within our timing requirements, promised (insert date)."

60     "Engineering changes, affecting price of above component parts and cost of related tooling, beyond the change letter indicated are to be negotiated and finalized by you directly with the component supplier."

161     "This order having been placed on advance specifications and volume data, it is agreed between Seller and Purchaser that the contract is subject to review and the price may be renegotiated in the event the specifications and volume, when formally established, are different from those now contemplated and reflected herein."

162     "Payment for supplier tooling assumes that parts made there-from will be acceptable both dimensionally and functionally. Purchaser reserves right to withhold payment for tooling on this part until samples from such tooling are fully approved as evidenced by signed Initial Sample Inspection Report, Form No. 84-235-4434, and also Initial Sample Laboratory Report, Form No. 84-235-4435."

167   "This purchase order is issued on the understanding that Seller will complete the tooling and submit acceptable production samples not later than the date stated herein. Since Purchaser is authorizing Seller to begin building or obtaining tooling without having arrived at firm prices, it reserves the right to audit Supplier's tooling charges, which shall be based on actual cost. It will be necessary for Supplier, or any subcontractor whom Supplier may be using, to maintain accurate records to facilitate such audit if required. These records must be maintained irrespective of billings by the subcontractor(s), which cannot be accepted automatically by Purchaser as evidence of actual cost. Upon finalizing price of the part(s) and cost of the tooling to mutual satisfaction, this order will be amended to include the piece price, at which time it is expected that this special audit requirement may be withdrawn."

168   "Seller understands and agrees that invoiced prices will be Seller's prices, as published for general use, and in effect at time of shipment, subject to any discount as contained herein. Such prices are subject to review and audit verification for accuracy, by Purchaser as necessary. Seller shall, upon request, make available to Purchaser such published prices and appropriate records supporting amounts invoiced."

173   "Seller must include following certification on shipping containers for above part: 'Seller certifies compliance with applicable United States Federal Regulations under Public Law 89-563.'"

175   "Seller understands and agrees that invoiced price for this steel will be Seller's price, as published for general use, in effect at time of shipment. Such prices are subject to review and audit verification for accuracy, by Purchaser as necessary. Seller shall, upon request, make available to Purchaser such published prices and appropriate records supporting amounts invoiced."

176   "Parts furnished under this order, being SAFETY/FED items, call for special attention to quality control procedures during their manufacture and/or assembly."

Supplier's attention is drawn to the application of Chrysler's SAFETY/FED Performance Standards (Form 200-35-A,B) to these parts and the possible effect upon them of Federal Health and Safety Standards."

(3-72)

177   "Substitute Chrysler Canada Ltd. throughout this purchase order in place of Chrysler Corporation.

Price stated in Canadian funds.

Not subject to Ontario Sales Tax - Permit 57190003-G.

We certify that the goods ordered or imported hereby are to be used in, wrought into, or attached to taxable goods for sale and therefore are not subject to federal sales and excise taxes.  Chrysler Canada Ltd. License S-6011.

The enclosed Certificate of Content, Form No. 11000 must be completed and mailed promptly to Chrysler Canada Ltd., Customs and Taxes Department, 2450 Chrysler Center, Windsor, Ontario."

178   "This is a combined United States/Canadian purchase order with items priced both in Canadian and United States funds. Our United States/Canadian Purchase Order Rider 'A' (Form No. 84-180-7309) shall be considered a part of this order."

179   "This is a combined United States/Canadian purchase order with price stated in United States funds.  Our United States/Canadian Purchase Order Rider 'B' (Form 84-180-7310) shall be considered a part of this order."

180   "Seller will be required to furnish certification of compliance with applicable governmental requirements as required by statute, in the manner and location established in the specifications pertaining hereto."

183   "The attached special equipment description rider shall be considered a part of this purchase order."

190   "In accepting this order, Seller agrees to use teletypes (or such other telecommunications method  approved by Purchaser) in Purchaser's prescribed format to furnish notification promptly of all shipments made to the Car and Truck Assembly plants, and such other locations as may subsequently be required, for the purpose of Chrysler's Dynamic Inventory Analysis System (DIAS).  Seller further agrees that in the event that unforeseen circumstances render it temporarily impracticable for Seller to maintain this prescribed method he will immediately contact Purchaser's appropriate Production Control activity for alternate instructions."

(3-72)

193     "This order is issued on the understanding that Supplier
        will tool and plan production for this part so as to be
        capable of supplying a continuous peak weekly volume equal
        to 6.7 times the daily volume shown in our tool purchase
        order (Daily Volume x 6.7 = Peak Weekly Requirement).
        Supplier understands further that this coverage is pre-
        cautionary to cover higher schedule requirements during
        certain periods of the year or indefinitely, if required."

197A    "The price in this order reflects firm labor economics."

200     "A monthly summary of charges must be mailed to the
        Purchasing Department to the attention of the buyer, showing
        the monthly billing by plant applicable to this purchase order."

201     PRICES CURRENT AT DATE OF ORDER
        "Seller understands and agrees that invoiced prices will
        be Seller's prices, as published for general use, and in
        effect at date of this order.  Such prices are subject to
        review and audit verification for accuracy, by Purchaser as
        necessary.  Seller shall, upon request, make available to
        Purchaser such published prices and appropriate records
        supporting amounts invoiced."

202     PRICES CURRENT AT TIME OF SHIPMENT
        " Seller understands and agrees that invoiced prices will be
        Seller's prices, as published for general use, and in effect
        at time of shipment, subject to any discount as contained
        herein.  Such prices are subject to review and audit veri-
        fication for accuracy, by Purchaser as necessary.  Seller
        shall, upon request, make available to Purchaser such
        published prices and appropriate records supporting amounts
        invoiced."

203     FOR SERVICE
        "Seller understands and agrees that invoiced prices will be
        Seller's normal charge for this service, based upon costs
        at time of performance and subject to any discount as contained
        herein.  Such prices are subject to review and audit veri-
        fication for accuracy by Purchaser as necessary and Seller
        shall, upon request, make available to Purchaser appropriate
        records supporting amounts invoiced."

204    "Not longer than nine months from date of this order and from date of any extension thereof, Seller is to furnish to Purchaser's buyer a listing of items supplied, stating quantities if so requested."

205    (See Purchaser Order Riders - Section IV)

206    "Seller is fully aware of all government regulations and guidelines issued pursuant to Executive Orders 11615 and 11627 and represents to Purchaser that the prices for goods/services specified in this purchase order do not violate the provisions thereof."

206A    "The Seller represents that to the best of his knowledge and belief he is in complete compliance with Executive Orders 11615 and 11627 and any amended regulations thereto. Further, the Seller warrants that the amounts invoiced under this purchase order will not exceed the lower of (1) the purchase order price, or (2) the maximum levels established in accordance with said executive orders.

The Seller agrees to insert the substance of this clause, including this paragraph, in all subcontracts for supplies or services issued under this purchase order."

210    REVISED
"Seller is fully aware of government regulations and guidelines used pursuant to Executive Orders 11615 and 11627 and that additional regulations may be issued related thereto. Accordingly, Seller and Purchaser agree that the price specified in this order for the 1973 model year is based on best current information available as to economics and is a provisional price subject to renegotiation downwards if necessary prior to first shipment."

211    "Includes commitment for potential service requirements of Purchaser's Parts Division. Special packaging for service, if required and not specified herein, will be separately requested and negotiated. Canadian suppliers must mark service requirements appropriately 'Made in Canada'. To ensure proper identification of shipments, Seller's packing slips shall always include applicable Chrysler release number."

240    "Contract number (insert appropriate number)."

243    "Priority rating (insert rating) certified for national defense use under DMS, Regulation 1."

(3-72)

136 THE PRE␣␣M PRICE COVERED IN THIS PU␣␣ASE ORDER HAS NOT BEEN COMPETE␣ EVALUATED BY PURCHASER AND IS SUBJECT TO FURTHER REVIEW AND RENEGOTIATION, IF WARRENTED.

144 THIS (ORDER) OR (CHANGE) HAVING BEEN (PLACED) OR (AUTHORIZED) PRIOR TO THE ESTABLISHMENT OF A FIRM PRICE. IT IS AGREED BETWEEN SELLER AND PURCHASER THAT THE INTERIM PRICE SHOWN HEREIN UPON CONCLUSION OF FURTHER NEGOTIATION WILL BE RETROACTIVELY ADJUSTED ACCORDINGLY.

209 THE PRICE SPECIFIED IN THIS PURCHASE ORDER PROVIDES FOR AN INCREASE IN PRICE OF THE PRODUCT/SERVICE BECAUSE OF EXTREME HARDSHIP THAT WOULD RESULT TO SELLER'S BUSINESS WITHOUT SUCH INCREASE, AND IS GRANTED DUE TO HIS FIRM REFUSAL TO SHIP SUCH GOODS OR PERFORM SUCH SERVICE WITHOUT THE INCREASE. SELLER REPRESENTS THIS IS NOT IN VIOLATION OF EXECUTIVE ORDER NO. 11730.

212 PRICE INCLUDES PROCESSING TO "VENDOR PROCESSING SPECIFICATIONS" DATED ( ).

214 THIS PART WAS GENERATED BY A MID-YEAR (RUNNING) PRODUCT CHANGE. PLEASE DIRECT ALL QUESTIONS AND INFORMATION CONCERNING CAR ASSY RELEASE AUTHORIZATIONS, SAMPLES AND PRODUCTION PART AVAILABILITY TO PRE-PRODUCTION CONTROL CHRYSLER HIGHLAND PARK PHONE 956-2706/7.

217 PART-S COVERED BY THIS REQUEST FOR QUOTATION/PURCHASE ORDER REQUIRES SHORT TERM DURABILITY TESTING BY SELLER. REFER TO SPECIAL RIDER, FORM NO. 84-806-1735 ENCLOSED HEREWITH OR PREVIOUSLY FURNISHED, AND IMPLEMENTING INSTRUCTIONS TO BE OBTAINED FROM CORPORATE PURCHASING RESEARCH.

218A IF PORTION(S) OF WIRING ASSEMBLIES COVERED BY THIS INQUIRY/PURCHASE ORDER WILL BE MOULDED FROM MULTIPLE CAVITY TOOLING, INITIAL SAMPLES OF SUCH PROTION(S) FROM EACH CAVITY MOULD MUST BE SUBMITTED APPROPRIATELY IDENTIFIED BY CAVITY FOR PURCHASER'S APPROVAL PRIOR TO PRODUCTION RUNS.

219 UNDER COVERAGE OF THIS PURCHASE ORDER A LIMITED NUMBER OF PARTS AS ADVISED BY PURCHASER'S RELEASES MAY BE REQUIRED FOR PRE-PRODUCTION ASSEMBLIES. IF THE INITIAL SAMPLE PROMISE DATE AS SHOWN IN THIS ORDER OR SUBSEQUENTLY REVISED IS LATER THAN THE FIRST DAY OF MAY PRECEDING MODEL LAUNCH, SELLER IS HEREBY AUTHORIZED AND MUST PROVIDE THESE PRE-PRODUCTION PARTS SIMULTANEOUSLY WITH AND TO THE SAME DRAWING CHANGE LETTER AS THE INITIAL SAMPLES, WITHOUT WAITING FOR SUCH SAMPLES TO BE FORMALLY APPROVED AT PURCHASER'S PLANT.

220A SUPPLIER AGREES TO HOLD QUOTED PRICE FIRM FOR MODEL YEAR.

220B SUPPLIER AGREES TO HOLD LABOR ECONOMICS FIRM FOR MODEL YEAR.

84-806-1757 (Beck)

# IV. RIDERS

## UNITED STATES/CANADIAN PURCHASE ORDER RIDER 'A'

Concerning shipments to plants in Canada, substitute Chrysler
Canada Ltd. throughout this order in place of Chrysler
Corporation.

Price stated in Canadian funds for shipments to Canadian
plants (applies to odd item numbers).

Price stated in United States funds for shipments to United
States plants (applies to even item numbers).

Not subject to Ontario Sales Tax - Permit No. 57190003-G.

We certify that the goods ordered or imported hereby are to
be used in, wrought into, or attached to taxable goods for
sale and therefore are not subject to Federal Sales and Excise
Taxes, Chrysler Canada Ltd. License No. S-6011.

Customs clearance for account of consignee.

Each United States shipment against this purchase order must
be accompanied by: (1) Special Customs Invoice, Form No.5515,
in triplicate, (2) Commercial Invoice, in triplicate, and (3)
all documents must bear the statement "For United States
Customs Clearance Purposes - Notify *(see below)," unless
otherwise covered by special instructions from Purchaser.

   *Shipment into U.S. through Detroit    -The J.D. Richardson Co.
   *Shipment into U.S. through Port Huron-John V. Carr & Son,Inc.
   *Shipment into U.S. through Buffalo   -C. J. Tower & Son

   If for some reason it is necessary to ship through a U.S.
   port other than Detroit, Port Huron or Buffalo, please
   contact the Tax Supervisor - Customs, Tax Department,
   Chrysler Corporation.

Covering shipments to Chrysler Canada plants only, Supplier
must complete the enclosed Certificate of Content, Form
No. 11000, and mail it promptly to Chrysler Canada Ltd.,
Customs and Taxes Department, 2450 Chrysler Center, Windsor,
Ontario.

(3-72)

Form No. 84-180-7309

# CHRYSLER CORPORATION
# PURCHASE ORDER RIDER

**14F**  COST OF TOOLING /OR/ PATTERNS IN THE AMOUNT OF $(      )
IS TO BE AMORTIZED IN THE PIECE PRICE AT THE RATE OF
$(      ) PER (      ) OVER THE FIRST (      ).

**27**  INVOICE ON THEORETICAL WEIGHTS BASIS.

**27A**  INVOICE ON ACTUAL WEIGHT BASIS.

**31**  SELLER SHALL INVOICE ON ACTUAL METER READING BASIS AT TIME
OF DELIVERY.

**60A**  MINIMUM BILLING (      ).

**65**  SELLER SHALL SHOW PURCHASER'S INTERNAL REVENUE SERVICE
EMPLOYER IDENTIFICATION NO. 38-0419960 ON ALL INVOICES
SUBMITTED TO UNITED STATES CUSTOMS.

**76A**  PURCHASER OWNED CONTAINERS ARE TO BE USED TO SHIP MATERIAL
TO SELLER.  SELLER WILL BE RESPONSIBLE FOR SUCH CONTAINERS
WHILE IN HIS CARE OR UNDER HIS CONTROL.  PURCHASER WILL
INVOICE SELLER AT PURCHASER'S STANDARD COST FOR EACH
CONTAINER SHIPPED AND WILL REFUND THE SAME AMOUNT TO
SELLER FOR EACH CONTAINER RETURNED TO PURCHASER'S SHIPPING
PLANT F.O.B. (      ).

**86**  THIS ORDER PERTAINS TO SAFETY/EMISSIONS REQUIRED ITEM.
IN ACCEPTING THE ORDER, SELLER AGREES TO IDENTIFY ALL
RELATED SHIPPING CONTAINERS WITH PURCHASER'S "SAFETY" ITEM"
IDENTIFICATION LABEL AND TO ENTER ON ALL RELATED PACKING
SLIPS THE FOLLOWING CERTIFICATION: "MATERIAL IN THIS
SHIPMENT COMPLIES WITH CHRYSLER'S REQUIREMENTS FOR CONTROLLING
THE QUALITY OF SAFETY/EMISSIONS ITEMS".

**88**  THE ATTACHED VEHICLE SAFETY/EMISSIONS ITEM NOTICE RIDER
SHALL BE CONSIDERED A PART OF THIS PURCHASE ORDER.

**90**  SAME AS OLD TRIM NUMBER (      ).

**101**  YOU WILL UPON COMPLETION OF THIS ORDER, AUTOMATICALLY
RETURN AND INDICATE ON YOUR SHIPPER ALL EXCESS MATERIALS
PROPERLY SEGREGATED AND IDENTIFIED TO CHRYSLER PARTS
DIVISION, CENTER LINE, MICHIGAN.

**118**  SET-UP CHARGE --- (      ).

**118A**  SET-UP CHARGE --- (      ) PER RELEASE.

**118B**  SET-UP CHARGE --- (      ) ONE TIME ONLY.

**118C**  SET-UP CHARGE --- (      ) PER SHIPMENT.

**118D**  SET-UP CHARGE ---

# CHRYSLER CORPORATION
# PURCHASE ORDER RIDER

### CLAUSE NO. 205

### SPECIAL TERMS AND CONDITION RIDER -
### BLACK BOX ITEMS

Suppliers of "Black Box" (supplier-designed) items must deliver such items in accordance with applicable Chrysler Engineering Standards pertaining to design, appearance, performance, SAFETY/FED characteristics and/or quality as represented by approved production samples.

The intended purpose of this rider is to discourage all but absolutely necessary changes at other than model change-over time.  However, it is to be understood that changes for reason of product improvement and/or cost reduction are solicited.

Suppliers are required to furnish notification in advance (completing and forwarding Form No. 84-806-1609) to Chrysler Purchasing for all proposed design, material or manufacturing changes.

Changes that might affect design, appearance, performance, SAFETY/FED characteristics and/or quality and/or involve costs or the revision of a Chrysler drawing, should not be incorporated until approval is provided through Chrysler Purchasing.

If an emergency changes (including component or material sources) which Chrysler might conceivably question as to effect on design, appearance, performance, quality or cost are placed in production by the supplier without prior notification, this will be at his own risk.  For such changes, Chrysler Engineering will request samples and/or test data from the supplier and reserve the right to make final decision on acceptability of the change or to direct that the change be rescinded.

The announcement or lack of announcement of a change does not relieve the supplier from his responsibility to furnish shipments which he can certify as meeting the required standards.  The detection of any failure to meet this responsibility may result in the rejection of shipments and any warranty and associated costs resulting from such failures will be directed to him.

Form No. 84-806-1714

(3-72)

## UNITED STATES/CANADIAN PURCHASE ORDER RIDER 'B'

Concerning shipments to plants in Canada, substitute Chrysler Canada Ltd. throughout this order in place of Chrysler Corporation.

Canadian Customs MA Invoices must be prepared in quadruplicate and provided for all shipments to Canada in accordance with the following instructions:

1. All billing and shipping documents for Canadian shipments must clearly identify the addressee as Chrysler Canada Ltd. and include the name of the destination plant.

2. Canadian Customs Invoices must show our purchase order number, part number, complete description, quantity of goods shipped, and number of containers and weights.

3. Canadian Customs Invoices must also show the fair market value and selling price for each part number. If the material is "No Charge", the fair market value must still be indicated.

4. The Exporter's Invoice Declaration must be completed and signed in ink.

5. If shipment is via transport or railway express to a consolidation point in the United States for further-ance or direct to destination, the Customs Invoice must accompany the shipment.

6. If shipment is by rail or parcel post, mail the Customs Invoice to Box 368, Walkerville Post Office, Windsor, Ontario, the same day shipment is made.

7. If shipment is to our Rexdale, Ontario, plant or to Dominion Gasket, Toronto, Ontario, by truck via Buffalo, New York, by parcel post or by express, mail Customs Invoices to Box 368, Walkerville Post Office, Windsor, Ontario.

8. By Canadian Customs Law, Customs Invoices must not differ from Settlement Invoices as to value.

> WARNING: If Customs Invoices are not received in time for arrival of shipment, goods will not enter Canada.

(3-72)

Form No. 84-180-7310

## DUTY-FREE ENTRY -- CANADIAN SUPPLIES

a)  Except as otherwise approved by Purchaser, no amount is or will be included in the purchase order price on account of duty with respect to:

    (i)  All end items which constitute "Canadian end products" (as defined in paragraph 6-101 of the Armed Services Procurement Regulations) to be delivered under this purchase order; and

    (ii)  All supplies (including, without limitation, raw materials, components and intermediate assemblies) produced or made in Canada which are to be incorporated in the end items to be delivered under this purchase order provided, that such end items are made in the United States or Canada;

    except supplies imported into the United States prior to the date of this purchase order, or, in the case of supplies imported by a first or lower-tier subcontractor hereunder, prior to the date of his subcontract.

(b)  The Seller warrants that all such Canadian supplies, for which such duty-free entry is to be claimed, are intended to be delivered to the Government or incorporated in the end items to be delivered under this purchase order, and that duty shall be paid by the Seller to the extent that such supplies, or any portion thereof, (if not scrap or salvage), are diverted to nongovernment use other than as a result of a competitive sale made, directed or authorized by the Government through the Purchaser.

(c)  Purchaser certifies that the Government has agreed to execute duty-free entry certificates and to afford such assistance as appropriate in order to obtain the duty-free entry of Canadian end products or supplies as to which the shipping documents bear the notation specified in paragraph (d) below, except as the Seller may otherwise agree.

d)  All shipping documents submitted to Customs, covering such Canadian end products or supplies for which duty-free entry is to be claimed, shall bear the following information:

    (i)  Government prime contract number;

    (ii)  Identification of carrier;

(iii) The notation: "UNITED STATES DEPARTMENT OF DEFENSE DUTY-FREE ENTRY TO BE CLAIMED pursuant to Schedule 8, Part 3, Item No. 832.00, Tariff Schedules of the United States. Upon arrival of shipment at port of entry, District Director of Customs, kindly release the shipments under 8.59GP and notify the Director, Defense Contract Administration Services Region, Detroit, 1580 E. Grand Blvd., Detroit, Michigan 48211, who will execute Customs Forms 7501 and 7501A and the Duty-Free Entry Certificate";

(iv) Gross weight in pounds (if freight is based on space tonnage, state cubic feet in addition to gross shipping weight); and

(v) Estimated value in United States dollars.

(e) The Seller agrees to instruct the foreign supplier to prepare a sufficient number of copies of the bill of lading (or other shipping document) so that at least two of the copies accompanying the shipment will be available for use by the District Director of Customs at the port of entry.

(f) The Seller agrees to notify the Purchaser in writing of any purchases by the Seller of Canadian supplies that are to be imported into the United States for delivery to the Government or for incorporation in end items to be delivered under this purchase order. Such notice shall be furnished to the Purchaser immediately upon the award by the Seller to the Canadian supplier. The notice shall identify (i) the Canadian supplies, (ii) the purchase order number and the Government prime contract number, and (iii) the scheduled delivery date(s).

(g) This clause shall not apply to purchases of Canadian supplies in connection with this purchase order if (i) such Canadian supplies are identical in nature with supplies purchased by the Seller or any subcontractor hereunder in connection with his commercial business, and (ii) it is not economical or feasible to account for such supplies so as to assure that the amount of such supplies for which duty-free entry is claimed pursuant to this clause does not exceed the amount thereof purchased in connection with this purchase order.

(h) The Seller agrees to insert the substance of this clause, including this paragraph (h), in all subcontracts for supplies hereunder that exceed $2,500. Each such subcontract shall require the subcontractor to identify the Government prime contract under which this purchase order is issued by the prime contract number on any shipping documents submitted to Customs covering supplies for which duty-free entry is to be claimed pursuant to this clause.

ENGINEERING OFFICE                                                    PF - FED

# CHRYSLER CORPORATION PERFORMANCE STANDARD        CHANGE - A

IDENTIFICATION OF FEDERAL STANDARD ITEMS

A - PURPOSE OF THIS STANDARD

    1 - To provide a means of identifying parts, assemblies, or vehicle assembly operations that are affected by Federal Health and Safety Standards and are not included in the PF-SAFETY program.

    2 - This standard calls for special attention by suppliers and corporate manufacturing plants to quality control procedures during the manufacture and/or assembly of parts so identified.

B - GENERAL

    1 - All parts, assemblies, or vehicle assembly operations for which this standard is designated require special attention by suppliers and corporate manufacturing plants to quality control procedures in respect to the material, manufacture and/or assembly.

    * 2 - Supplier Approval

        a - Supplier Capability

            (1) - All prime suppliers of Federal Standard Items must be approved by representatives of the Chrysler Engineering Office and Purchasing Office, and when manufacture or assembly controls are perinent to standard compliance, by representatives of the Chrysler Vehicle Safety, Quality and Service Office.

            (2) - Subcontractors who produce Federal Standard Items are subject to approval by the Corporate Source Evaluation Team -- comprised of representatives of Chrysler Engineering Office, Purchasing Office, and Vehicle Safety, Quality and Service Office -- whenever the Chrysler Engineering Office and/or Vehicle Safety, Quality and Service Office determine(s) the need for approval. This approval shall not derogate the prime supplier's obligation to approve of his subcontractors.

        b - Part Performance Approval

        All prime suppliers quality systems must be approved by representatives of the Chrysler plant and/or Group Quality Control Office.

---



NOTICE TO SUPPLIERS-
CHRYSLER ENGINEERING STANDARDS

Parts must be furnished to the correct Chrysler Engineering Standards (latest revision thereof, unless otherwise specified).

To assist in this, Chrysler suppliers should avail themselves of the Standards Subscription Service, which provides regular mailings of new and revised standards, and of index revisions.

The service is available from the Technical Data Department, Chrysler Engineering Office (Tel. Ext. 4204).

---

**(3-72)**

Case 1:01-cv-00197   Document 6   Filed in TXSD on 12/05/2001   Page 111 of 225

## CHRYSLER CORPORATION PERFORMANCE STANDARD

B - GENERAL (Continued)

* 3 - Date of manufacture requirements must be followed if specified on the drawing of Federal Standard Items.

  4 - Suppliers of Federal Standard Items must procure and maintain a file of all pertinent Chrysler Engineering Standards for these items. The sources for this, and other information are shown below.

* 5 - The quality control procedures information will be conveyed to suppliers by the Chrysler Purchasing Office.

| TYPE OF SPECIFICATION | SOURCE/ADDRESS |
|---|---|
| Engineering Standards - MS, PS, and PF | *** Engineering Standards and Data Department |
| Standard Parts -   200183<br>9250001 | |
| Chrysler Plastic Number - CPN | *** Rubber and Plastics Laboratory |
| Chrysler Aluminum Finish - CAF | **** Mastering Department |
| Chrysler Pattern Material - CPM | |
| Chrysler Plated Finish - CPF | |
| Styling Mastering Numbers - C-1005<br>BAY2B4 | |
| SAE Rubber Standard - R-630-BDKN | SAE Handbook |

An interpretation of Chrysler's use of SAE and ASTM Rubber Specifications is contained in Chrysler Material Standard MS-(Supplement) Z-75 and Z-77.

| Non-Productive Material Standard - MMA-2405 | Chrysler Corporation |
|---|---|
| NP-6053 | Manufacturing Engineering Office |
| NPEA-100 | Production Engineering Service |
| PTM 2.101 | 6334 Lynch Road |
| 3005-T-123 | Detroit, Michigan   48234 |

*** Chrysler Corporation Engineering Office
    12800 Oakland Avenue
    Highland Park, Michigan   48203

**** Chrysler Corporation Styling Office
     13000 Oakland Avenue
     Highland Park, Michigan   48203

# # # # # # # # #

NOTE: The above standards and/or specifications are for use in supplying orders of Chrysler Corporation or its subsidiaries. Suppliers should determine the currency of their copies prior to use. The risk of compliance with the current standards and/or specifications is on the suppliers. Distribution hereof to others, whether paid or free, is for information only.

Copies are available from the Engineering Standards and Data Department, Engineering Office.

Case 1:01-cv-00197   Document 6   Filed in TXSD on 12/05/2001   Page 112 of 225

## CHRYSLER CORPORATION PERFORMANCE STANDARD

### IDENTIFICATION OF SAFETY ITEMS

A - <u>PURPOSE OF THIS STANDARD</u>

    1 - To provide a means of identifying parts, assemblies, or vehicle assembly operations that are designated "Safety Items".

    2 - This standard calls for special attention by suppliers and corporate manufacturing plants to quality control procedures during the manufacture and/or assembly of parts so identified.

B - <u>GENERAL</u>

    1 - All parts, assemblies, or vehicle assembly operations for which this standard is designated require special attention by suppliers and corporate manufacturing plants to quality control procedures in respect to the material, manufacture and/or assembly.

    ★ 2 - <u>Supplier Approval</u>

        a - <u>Supplier Capability</u>

            (1) - All prime suppliers of Safety Items must be approved by representatives of the Chrysler Engineering Office and Purchasing Office, and when manufacture or assembly controls are pertinent to standard compliance, by representatives of the Chrysler Vehicle Safety, Quality and Service Office.

            (2) - Subcontractors who produce Safety Items are subject to approval by the Corporate Source Evaluation Team -- comprised of representatives of Chrysler Engineering Office, Purchasing Office, and Vehicle Safety, Quality and Service Office -- <u>whenever</u> the Chrysler Engineering Office and/or Vehicle Safety, Quality and Service Office determine(s) the need for approval. This approval shall not derogate the prime supplier's obligation to approve of his subcontractors.

        b - <u>Part Performance Approval</u>

        All prime suppliers quality systems must be approved by representatives of the Chrysler plant and/or Group Quality Control Office.

(Continued)

* Denotes area of change from previous issue.

| DATE | EFF. CODE | P C R NO. | CHANGE | RELEASES - CHANGES AND CANCELLATIONS |
|------|-----------|-----------|--------|--------------------------------------|
| 12-9-69 | 3/NC | | E | Standard updated |
| 2-5-68 | 3/NC | | D | Complete revision |
| 6-8-66 | | | | Date Issued (Dept. 2310) |

VOLUME  Y

PAGE  8(1)

NOTE: The above standards and/or specifications are for use in supplying orders of Chrysler Corporation or its subsidiaries. Suppliers should determine the currency of their copies prior to use. The risk of compliance with the current standards and/or specifications is on the suppliers. Distribution hereof to others, whether paid or free, is for information only.
    Copies are available from the Engineering Standards and Data Department, Engineering Office.

200-25-A (3/67)

# CHRYSLER CORPORATION

## FEDERAL EXCISE TAX

### EXEMPTION CERTIFICATE – LUBRICATING OIL

### SELDOM USED AS A LUBRICANT

(For use by purchaser of lubricating oil, otherwise sub-
ject to tax under section 4091 of the Internal Revenue
Code of 1954, as amended, which the Commissioner of
Internal Revenue has determined to be seldom used as a
lubricant, for use by the purchaser for nonlubricating
purposes or for resale for nonlubricating use.)

The purchaser certifies that he is a manufacturer of
automobiles, trucks, etc., and that the oil covered by
the accompanying order is a type which the Commissioner
has determined to be seldom used as a lubricant and is
purchased for the nonlubricating purposes specified
therein.

The purchaser understands that, if any of the oil pur-
chased tax free by use of this certificate is resold by
him for nonlubricating use or for further resale for such
use, he must obtain a similar certificate from his vendee.
The purchaser further understands that he must be pre-
pared to establish by satisfactory evidence the actual
use or disposition made of such oil, and that upon use
of the oil for a lubricating purpose, or sale for a
lubricating purpose, he is required to notify the vendor.
The purchaser also understands that if his vendee notifies
him that the oil covered by this certificate has been
used for a lubricating purpose or sold for a lubricating
purpose he is required to so notify the vendor from whom
he purchased the oil covered by this certificate.   In
addition, the purchaser understands that the above listed
oils which are purchased tax free by use of this certifi-
cate do not qualify for the tax credit or refund under
sections 39(a)(3) and 6424 of the Code.

The purchaser understands that he and all guilty parties
will, for fraudulent use of this certificate for the
purpose of purchasing oil tax free, be subject to a fine
of not more than $10,000, or imprisonment for not more
than 5 years, or both, together with the costs of prose-
cution.

(3-72)

-1630

CHRYSLER CORPORATION

FEDERAL EXCISE TAX

MANUFACTURER OF LUBRICATING OIL CERTIFICATE

(For tax-free purchases of lubricating oil, otherwise subject
to the tax under section 4091 of the Internal Revenue Code of
1954, as amended, by manufacturers for resale as provided in
section 4093 of the Code.)

The purchaser certifies that he is a manufacturer or
producer of lubricating oil; that he is registered with
the District Director under Certificate of Registry No.
2538;  and, that the lubricating oil covered by the
accompanying order is purchased for resale.

The purchaser understands that he will be considered to
be the manufacturer of the lubricating oil so purchased
for resale and liable for tax imposed under section 4091
unless specifically exempted by law.

(3-72)

559.2   (1/66)



August 9, 1974

TO:   CHRYSLER SUPPLIERS

Gentlemen,

**PURCHASE ORDER TERMS & CONDITIONS BOOKLET**

As you know, it is Chrysler Purchasing's practice
to make reference to our Terms and Conditions,
standard clauses and riders on purchase orders
mailed to you.

Most of these items are contained in our booklet,
form number 84-806-1696, a copy of which was
previously mailed to you.

We are now enclosing a copy of our latest issue
which includes revisions and clauses newly
established since our previous printings.

Enclosure



**CHRYSLER CORPORATION**

TO:   CHRYSLER BLANKET ORDER SUPPLIERS

Subject:   STATE AND LOCAL SALES OR USE TAX
              REGISTRY NUMBERS

Gentlemen:

Chrysler Corporation has obtained new State and Local Sales or
Use Tax Direct Payment Permit Numbers for Ohio (Fostoria Foundry
Division) and South Carolina (Airtemp - Winnsboro).  The Ohio
(Airtemp Dayton Plant) has now been divided into two separate
Direct Payment Permit numbers - Ohio (Airtemp Division) and
Ohio (Dayton Plant I).

These Direct Payment Permit Numbers enable the purchaser to be
tax exempt when the material is purchased for exempt purposes
(Clause 23) or allows the purchaser to assume liability for tax
payment (Clause 40).

## CLAUSE NO. 23

This material is purchased for resale or for an exempt purpose
and is therefore exempt from state and local sales or use taxes.
Retail License Nos.:  California SZ-OHA-30-606877; Illinois
798-931; Kentucky 108880; Michigan A38-0419960; Missouri 240-3907;
Pennsylvania 99-04171; Direct Payment Permit Nos.:  Indiana
101385-08; New York DP-000224; Ohio (Airtemp Division) 98-000291;
Ohio (Twinsburg Stamping Plt.) 98-000293; Ohio (Amplex Van Wert
Plt.) 98-000292; Ohio (Toledo Machining Plt.) 98-000294; Ohio
(Fostoria Foundry Division) 98-001848; and Ohio (Dayton Plant I)
98-001782; S. Carolina (Airtemp-Winnsboro Plt.) 8132(19); and
Pennsylvania (New Stanton Assembly Plt.) 00332.

## Clause No. 40

Purchaser assumes liability for payment of applicable State and
Local Sales and Use Taxes and therefore no tax shall be invoiced
by Seller.  Michigan Retail License No. A38-0419960; Direct Payment
Permit Nos.:  Indiana 101385-08; New York DP-000224; Ohio (Airtemp
Division) 98-000291; Ohio (Twinsburg Stamping Plt.) 98-000293;
Ohio (Amplex Van Wert Plt.) 98-000292; Ohio (Toledo Machining Plt.)
98-000294; Ohio (Fostoria Foundry Division) 98-001848; Ohio
(Dayton Plant I) 98-001782; S. Carolina (Airtemp-Winnsboro Plt.)
8132(19) and Pennsylvania (New Stanton Assembly Plt.) 00332.

Very truly yours,

M. F. Auch - Manager
Purchasing Administration
Corporate Purchasing Office

pl

# EXPLANATION

We have collected together in this Publication the Terms and Conditions, Standard Clauses and other types of information that most frequently are referenced in our Requests for Quotations and Purchase Orders covering production parts, material and related services.

Because of the continuing relationship Chrysler Purchasing likes to foster with its Suppliers, the requirements of our Orders, etc., become well-known and do not require detailed repetition each time a specific buying commitment is made.

Relating the references on our Requests for Quotation and Purchase Orders to this Publication - We suggest it be kept readily available in your Sales Office - will contribute to our mutual interest in making those documents as concise and clear as possible.

# INDEX

I     PURCHASE ORDER TERMS & CONDITIONS
84-806-1652 (6-74)

II    REQUEST FOR QUOTATION – CLAUSE & REQUIREMENTS

III   STANDARD PURCHASE ORDER CLAUSES

IV   PURCHASE ORDER RIDERS

- 84-806-1725
  VEHICLE SAFETY/EMISSIONS ITEM NOTICE

- 84-180-7309 (4-70)
  UNITED STATES/CANADIAN PURCHASE ORDER RIDER 'A' (REVISED)

- 84-180-7310 (9-72)
  UNITED STATES/CANADIAN PURCHASE ORDER RIDER 'B'

- 84-806-1714
  CLAUSE NO. 205 – BLACK BOX ITEMS

- DP-15 (4-71)
  DUTY-FREE ENTRY – CANADIAN SUPPLIES

- 806-1630 AND 5592
  EXCISE TAX EXEMPTION

(6-74)

# I. TERMS AND CONDITIONS

# I
# CHRYSLER CORPORATION
## PURCHASE ORDER GENERAL TERMS AND CONDITIONS

**I**    **PROMPTNESS:** Delivery of supplies and performance of services at the time specified are of the essence of this order.

**II**    **ACCEPTANCE:** This order is not binding until accepted in writing or by a delivery, the rendering of services, or commencement of work on supplies to be specially manufactured for Purchaser, pursuant to this order.

**III**    **MODIFICATIONS:** Any modification of this order, to be valid, must be in writing and signed by Purchaser's authorized representative. Only the Purchaser's signed consent will bind it to any terms hereafter transmitted in any form by the Seller. Purchaser will consider Seller's requests for changes only if such requests are in writing and are directed to specific provisions of this order.

**IV**    **RESPONSIBILITY FOR PACKING, MARKING AND DELIVERY:** Unless otherwise provided in this order, Seller, for the price as stated in this order, shall (i) pack and mark the supplies covered by this order in accordance with Purchaser's Packaging & Shipping Instructions so as to secure the lowest transportation rates, meet carrier requirements and assure arrival at "ship to" point free of damage and deterioration, and (ii) be responsible for the supplies until delivery at the designated (f.o.b.) delivery point, regardless of point of inspection. Unless otherwise provided, (i) the price as stated in this order shall include all charges and expenses with respect to containers, packing and crating, and for transportation to f.o.b. point, and (ii) all containers, packing and crating material shall become property of Purchaser. Seller shall process shipping documents and route shipment from f.o.b. point, as directed by Purchaser.

**V**    **EXPRESS SHIPMENTS:** Purchaser shall have the right to require special, express or air shipment if Seller fails to meet the delivery requirements of this order. Seller shall reimburse Purchaser for any resulting additional transportation costs unless due solely to causes beyond the control and without the fault or negligence of Seller.

**VI**    **RELEASE AUTHORIZATION:** When it is specified on the face hereof that deliveries are to be in accordance with Purchaser's written releases, Seller shall not fabricate or assemble any supplies covered by this order, or procure required materials, or ship any supplies to Purchaser, except to the extent authorized by such written releases or special provisions of this order specifying minimum fabrication or delivery quantities.

**VII**    **CARRIER:** Seller grants Purchaser the right to specify at any time the Carrier and/or the method of transportation to be employed in conveying any part or all of the supplies covered herein. Any changes by Purchaser to such a specified method will be subject to an equitable adjustment as provided in Clause XVI, Changes.

**VIII**    **INSPECTION AND REJECTIONS:** Purchaser shall have the right to inspect and test all supplies, special tooling, materials and workmanship to the extent practicable at all times and places, including the places and during period of manufacture. Seller shall also provide and maintain an adequate inspection system covering the supplies, fabrication methods, and special tooling hereunder. Seller shall make its inspection records of all work and material available to Purchaser during the performance of this order, and for such longer period as may be specified in this order.

In case any property delivered or service rendered hereunder is defective in material or workmanship or otherwise not in conformity with the requirements of this order, Purchaser shall have the right, notwithstanding payment or any prior inspection or test, either to reject it or to require its correction. Any service which is required to be corrected hereunder shall be corrected by and at the expense of Seller promptly after notice. Property which is rejected or required to be corrected shall be removed (if permitted or required by Purchaser) or corrected in place, by and at the expense of the Seller promptly after notice, and shall not thereafter be delivered hereunder unless the former rejection or requirement of correction is disclosed. If the Seller fails promptly to remove such property which is required to be removed, or promptly to replace or correct such property, or promptly to correct any such service, Purchaser either (i) may by contract or otherwise replace or correct such property or service and charge to Seller the increased cost occasioned Purchaser thereby, or (ii) may effect a cancellation for default under Clause XIII. Unless the Seller is able to correct or replace such property or correct such service subject to a reduction in price reflecting the reduced value attributable to non-conformance. Seller assumes the risk of damage to or loss of and all handling and transportation costs for defective property delivered hereunder.

**IX**    **WARRANTY:** Seller warrants that the supplies or services covered by this order will comply with the specifications, drawings, descriptions or samples furnished or specified by Purchaser and that the same will be merchantable, of good material and workmanship and free from defects. Seller warrants that any supplies furnished under this order that are designed by Seller will be fit and sufficient for the purposes intended. Seller specifically agrees to defend, indemnify and hold harmless Purchaser from and against any and all claims, losses, damages and settlement expenses resulting from or arising out of a breach of Seller's warranties and of which Purchaser notifies Seller at any time.

**X**    **ASSIGNMENT OF PERFORMANCE BY SELLER:** Seller agrees not to assign or delegate the performance of its duties under this order without the written consent of Purchaser.

**XI**    **PROPERTY OF PURCHASER:** Unless otherwise provided in this order or agreed to in writing, property of every description including all tools, equipment and material furnished or made available to Seller, title to which is in Purchaser, and any replacement thereof, shall be and remain the property of Purchaser. Property other than material, shall not be modified without the written consent of the Purchaser. Such property shall be plainly marked or otherwise adequately identified by Seller as property of Purchaser (by name) and shall be safely stored separately and apart from Seller's property. Seller shall not use such property except for performance of work hereunder or as authorized in writing by Purchaser. Such property while in Seller's possession or control shall be kept in good condition, shall be held at Seller's risk, and shall be kept insured by Seller, at its expense, in an amount equal to the replacement cost with loss payable to Purchaser. To the extent such property is not material c. assumed in the performance of this order, it shall be subject to inspection and removal by Purchaser and Purchaser shall have the right of entry for such purposes without any additional liability whatsoever to Seller. As and when directed by Purchaser, Seller shall disclose the location of such property and/or prepare it for shipment and ship f.o.b. its plant to Purchaser in as good condition as originally received by Seller, reasonable wear and tear excepted.

84-806-1652

(6-74)

# II.  REQUEST FOR QUOTATION

REQUEST FOR QUOTATION

40 .   This request for quotation is based upon advance specification and volume data; therefore, any resulting purchase order will be subject to review and the price subject to renegotiation in the event the specifications and volume when formally established are different from those now contemplated and reflected herein.

41   In the event of an order resulting from this quotation, the "terms and conditions" of Purchaser's order will prevail over any "terms and conditions" of Supplier's quotation and confirmation of order.

42   Blanket order requirements for our 1974 model year.

44   Blanket order requirements for our 1975 model year.

162   Payment for supplier tooling assumes that parts made therefrom will be acceptable both dimensionally and functionally. Purchaser reserves the right to withhold payment for tooling on this part until samples from such tooling are fully approved, as evidenced by signed Initial Sample Inspection Report, Form No. 84-235-4434, and also Initial Sample Laboratory Report, Form No. 84-235-4435.

197   Seller is to reflect firm labor economics in his quotation for 1976 model year requirements.

211   Includes commitment for potential service requirements of Purchaser's Parts Division. Special packaging for service, if required and not specified herein, will be separately requested and negotiated. Canadian suppliers must mark service requirements appropriately, "Made in Canada". To ensure proper identification of shipments, Seller's packing slips shall always include applicable Chrysler release number.

214   Quotation to be based upon current material and labor economics and thereby not reflect any anticipatory cost increases.

217   Part(s) covered by this request for quotation/purchase order requires short term durability testing by Seller. Refer to special rider, Form No. 84-806-1735 enclosed herewith or previously furnished, and implementing instructions to be obtained from Corporate Purchasing Research.

218   If portion(s) of wiring assemblies covered by this inquiry/purchase order will be moulded from multiple cavity tooling, initial samples of such portion(s) from each cavity mould must be submitted appropriately identified by cavity for Purchaser's approval prior to production runs.

259   Seller agrees to establish and conduct a "Small Business Subcontracting Program" in compliance with the provisions of ASPR 7-104.14(B) and a 'Labor Surplus Area Subcontracting Program' in compliance with the provisions of ASPR 7-104.20(B).

(6-74)



# III.  STANDARD CLAUSES

# III

# CHRYSLER CORPORATION

## PURCHASE ORDER RIDER

### STANDARD CLAUSES

**SELLER UNDERSTANDS THAT THOSE CLAUSES SET FORTH HEREIN AND REFERENCED BY CORRESPONDING NUMBERS APPEARING ON THE FACE OF THE PURCHASE ORDER ARE A PART THEREOF AND APPLICABLE THERETO.**

# PURCHASE ORDER CLAUSES

**4**   Special tools required to produce the above mentioned part shall be furnished by and remain the property of the Seller. It is understood and agreed that these tools will not be destroyed or otherwise disposed of without Purchaser's written consent. Seller agrees not to alter the tool line-up in any respect, except with the consent of Purchaser in writing.

**5**   Special tools required to produce the above part are covered by purchase order number (fill in number).

**REVISED**

**5B**   Action necessary to furnish special tools required for the above part(s) is to commence immediately. A separate tool purchase order No. _____ is being issued.

**8**   In accepting this purchase order, Seller agrees to furnish to Chrysler inspection location sample parts made from the tooling established hereby, in accordance with Purchaser's Initial Sample Shipping Instructions, Form No. 83-175-0014 and applicable Sample Due Date. Seller further agrees that such samples will be accompanied appropriately by applicable checking devices and by covering documentation in Purchaser's prescribed format.

**14**   Tools, purchased under this order as an end item when completed and paid for by Purchaser, become Purchaser's property and are subject to all the provisions of Clause XI of this order. In addition, each tool is to be clearly stamped or stenciled with a tool number and Purchaser's part number of the part which the tool is intended to produce. In order to expedite payment, the following statement is to appear on Seller's invoice.

Tools as invoiced are completed, stamped as to Chrysler's tool and part number, and labeled "Property of Chrysler Corporation".

Seller agrees not to alter the tool line-up in any respect except with the consent of the Purchaser in writing.

Seller is to segregate and list as individual items on invoices all charges applying to designing and tryout costs, tooling aids cost (patterns, tool or die moulds, templates, Tamastone moulds, master hobs, etc.) and any overtime premium, which are a part of the price shown on this purchase order.

**14A**   This purchase order is issued as matter of record to cover the physical transfer of the following tools or pattern equipment, owned by Purchaser, to you for the production of our parts.

(It is not issued to cover the purchase or sale of any material or service.)

It is understood and agreed that the above tools or equipment although transferred to you are to remain the property of Purchaser and to be maintained in accordance with Clause XI, under which Seller assumes responsiblity for rigging, dismantling and loading costs. Value of tools for insurance purposes $(fill in dollar amount of value).

**14B**   Equipment to produce the above part, having been completed and paid for by Purchaser is Purchaser's property and is to be maintained in accordance with Clause XI. All repairs and replacement of such equipment is to be at Seller's own expense, but any cost resulting from engineering changes shall be at Purchaser's expense.

**14D**   The above tools when completed are to remain in Seller's possession as Seller's property under Seller's control, but otherwise the requirements of Clause XI shall apply.

**14E**   Pattern equipment provided or paid for by Purchaser remains Purchaser's property and is to be maintained by Seller as prescribed in Clause XI. Minor repairs, when necessary, are to be made at Seller's expense; major overhauls and replacement of worn out equipment at Purchaser's expense.

**14F**   Cost of tooling (or patterns) in the amount of (fill in total dollar amount) is to be amortized in the piece price at the rate of (fill in unit amount of amortization) per (fill in unit i.e., each, hundred, thousand) over the first (fill in total number of units to which amortization is to be charged).

**14G**   Tools or patterns used to make the above part when fully amortized are to become Purchaser's property and are to be maintained by Seller in accordance with Clause XI.

**14H**   Tools or patterns when fully amortized are the property of the Seller but are to be maintained in accordance with the provisions of Clause XI.

**14K**   The above zinc alloy tools when completed are to remain in Seller's possession as Seller's property subject to this clause. Such tools are to be used exclusively on Purchaser's orders and are to be stored, maintained so as to furnish parts satisfactory to Purchaser's inspection and fully covered by insurance at all times without expense to Purchaser; and may not be destroyed or otherwise disposed of without Purchaser's written consent for a minimum period of six (6) months after completion and acceptance of the parts produced from these tools. Any subsequent proposal to dispose of such tools must be submitted in writing to and approved by Purchaser. Purchaser will not, without its written consent, be liable for any additional charge in connection with the retention of the tools by the Seller.

At its option, Purchaser may buy and take possession of the above tools at any time upon payment to Seller for the zinc alloy used in the tools based on the weight of the finished tools and prevailing market price of prime zinc on the East St. Louis Prime Western Zinc Market at the time of purchase.

Each tool is to be clearly stamped or stenciled with a tool number and Purchaser's part number so as to make it identifiable with Purchaser's part which it is intended to produce.

**14M**   This order/change is authorization to modify, supplement and/or adapt tools that are Purchaser's property and subject to all provisions of Purchaser's General Terms and Conditions Clause XI. Payment for work authorized will be on basis Net 30th Inst., 10th & 20th Prox. In order to permit acceptance and expedite payment of Seller's invoice, the following assurance statement must appear thereon: "Seller hereby assures that the modifications, additions and/or services to special tooling included in this invoice have been completed in accordance with Seller's referenced purchase order or purchase order change."

**15**   Patterns used to make the above part are the property of Seller and are to be maintained in good working condition by the Seller to produce castings satisfactory to Purchaser's inspection. Patterns are not to be destroyed without Purchaser's written approval.

**16**   Seller is to segregate and list as individual items on invoices all charges applying to designing and tryout costs, tooling aids cost (patterns, tool or die models, templates, Tamastone moulds, master hobs, etc.) and any overtime premium, which are a part of the price shown on this purchase order.

(6-74)

17  Invoice(s) covering tools and/or patterns, etc., on this order must show exact physical location by City, Township or Village and State where the tools will be used in production. Should the tools on this order be transferred to another location, this fact must be reported to the buyer whose name appears on the face of this order.

17A  Physical location of these tools will be at (buyer must fill in City and/or Township, or Village and State).

Any subsequent transfer of tools to another location must be reported to Purchaser's buyer immediately.

18  Confirming Retroactive Price (increase or decrease) not provided within Order No. (fill in) between above dates.

19  This material is shipped subject to Purchaser's standard inspection practice and must be suitable in temper, finish and/or physical characteristics for the parts or use intended - otherwise material will be returned for replacement or full credit.

20  Confirming (letter of adv. authorization - date).

21  This purchase order incorporates terms of (insert contract number and date, or other descriptive information). If there is any conflict between the terms of the respective documents, the terms of the referenced (insert contract number, agreement, etc.) shall govern.

23  This material is purchased for resale or for an exempt purpose and is therefore exempt from state and local sales or use taxes. Retail License Nos.: California SZ-OHA-30-606877; Illinois 798-931; Kentucky 108880; Michigan A38-0419960; Missouri 240-3907; Pennsylvania 99-04171; Direct Payment Permit Nos.: Indiana 101385; New York DP-000224; Ohio (Airtemp Dayton Plt.) 98-000291; Ohio (Twinsburg Stamping Plt.) 98-000293; Ohio (Amplex Van Wert Plt.) 98-000292; and Ohio (Toledo Machining Plt.) 98-000294; Ohio (Fostoria Foundry Division) 98-001848; and Pennsylvania (New Stanton Assembly Plant) 00332.

27  Invoice on theoretical weights basis.

27A  Invoice on actual weight basis.

29  Steel to be produced by (                    ).

31  Seller shall invoice on actual meter reading basis at time of delivery.

32  Price established in this purchase order is based upon anticipated minimum released quantity for fabrication, collective for the plants referenced in the release (and excepting first and/or final release) of (          ) pieces.

33  Price established in this purchase order is based upon anticipated minimum released quantity for shipment, collective for the plants referenced in the release (and excepting first and/or final release) of (          ) pieces.

34  The above is to comply with specifications and be satisfactory to our inspection. You warrant this unit to give satisfactory performance in service and when applied to our chassis you undertake and assume full responsibility for the satisfactory performance of any such chassis so converted, to the extent that the operation and performance is affected by such conversion. You also agree to provide at a reasonable price, any part required for servicing over a period of five years from delivery date.

35M  Above item reflects Service Parts Supply Division requirements.

35P  Seller's added cost to process for Purchaser's Parts Supply Division as per "Vendors Processing Specifications", dated (fill in date and buyer's name).

38  This order and price (or prices) cover this part (or these parts) as a *Special Equipment Item* (or items) only.

40  Purchaser assumes liability for payment of applicable State and Local Sales and Use Taxes and therefore no tax shall be invoiced by Seller. Michigan Retail License No. A38-0419960; Direct Payment Permit Nos.: Indiana 101385; New York DP-000224; Ohio (Airtemp Dayton Plt.) 98-000291; Ohio (Twinsburg Stamping Plt.) 98-000293; Ohio (Amplex Van Wert Plt.) 98-000292; Ohio (Toledo Machining Plt.) 98-000294; Ohio (Fostoria Foundry Division) 98-001848; Pennsylvania (New Stanton Assembly Plant) 00332.

41  Do not invoice Michigan Motor Fuel Tax or Michigan Diesel Motor Fuel Tax as Purchaser is responsible for determining taxable usage and remitting payment thereon to the Michigan State Tax Authorities under Distributor License No. 471 or User License No. D-2371, as appropriate.

50  This material will be used in industrial processing or directly in manufacturing tangible personal property for sale. It is understood that State and/or Local Sales or Use Taxes, if applicable, are included in the above price and must be shown, and identified by taxing jurisdiction, separately from the material price on the Seller's invoice.

50A  This material will be used in industrial processing or directly in manufacturing tangible personal property for sale. It is understood that Provincial Sales or Use Taxes, if applicable, are included in the above price and must be shown, and identified by taxing jurisdiction, separately from the material price on the Seller's invoice.

53  Purchaser may export packaged items prior to inspection. Seller agrees to indemnify Purchaser against shortages, defects or wrong material discovered upon arrival at ultimate destination, and against such additional costs, including repairs, transportation and duty, which may arise in connection therewith.

56  This material is subject to applicable State Motor Fuel Tax and Inspection Fees of the jurisdiction to which shipment is made which must appear as separate items on your invoice. Seller affirms that he will make the necessary tax return to the state.

57  FEDERAL EXCISE TAX EXEMPTION CERTIFICATE: Purchaser hereby certifies that it is a manufacturer or producer of articles taxable under Chapter 32, Sub-chapters A and B, of the Internal Revenue Code and of articles not taxable thereunder, and holds Certificate of Registry No. 38 73 9507 A, issued by the District Director of Internal Revenue at Detroit, Michigan, and that the article or articles specified in the accompanying order will be used by it as material in the manufacture or production of, or as a component part of such article or articles to be manufactured or produced by Purchaser. It is understood that for all purposes Purchaser will be considered the manufacturer or producer of the articles purchased hereunder, and (except as specifically provided by law) must pay tax on resale or use, otherwise that as specified above, of the articles purchased hereunder.It is further understood that the fraudulent use of this certificate to secure exemption will subject Purchaser and all guilty parties to the penalties provided by law.

57A  FEDERAL EXCISE TAX EXEMPTION CERTIFICATE: Purchaser hereby certifies that it is a manufacturer or producer of articles taxable under Chapter 32, Sub-chapters A and B, of the Internal Revenue Code and holds Certificate of Registry No. 38 73 0507 A, issued by the District Director of Internal Revenue at Detroit, Michigan, and that the article or articles specified in the accompanying order will be used by it as material in the manufacture or production of, or as a component part of such article or articles to be manufactured or produced by Purchaser. It is understood that for all purposes Purchaser will be considered the manufacturer or producer of the articles purchaser hereunder, and (except as specifically provided by law) must pay tax on resale or use, otherwise

(6-74)

than as specified above, of the articles purchased hereunder. It is further understood that the fraudulent use of this certificate to secure exemption will subject Purchaser and all guilty parties to the penalties provided by law.

58    PREFERENCE FOR CERTAIN DOMESTIC COMMODITIES: The Contractor agrees that there will be delivered under this contract only such articles of cotton, woven silk and woven silk blends, spun silk yarn for cartridge cloth, or wool (whether in the form of fiber or yarn or contained in fabrics, materials or manufactured articles) as have been grown, reprocessed, reused, or produced in the United States, its possessions, or Puerto Rico; provided that this clause shall have no effect to the extent that the Secretary has determined as to any such articles that a satisfactory quality and sufficient quantity cannot be procured as and when needed at United States market prices.

59A    The Federal Excise Tax applying to this material is a part of this purchase order and is to be invoiced to Purchaser and shown as a separate item on the invoice; Seller will make and render the proper return to the Federal Government, covering same.

60    $10.00 minimum billing per shipment. Material to be shipped must be $10.00 value notwithstanding any less quantity shown on the release issued by Production Control. Subsequent shipments to be made only when cumulative released quantity for each plant exceeds quantity already shipped.

60A    Minimum billing ($    ).

61    The Insurance Provisions of the Plant Engineering General Conditions shall apply in lieu of Item XIV of the "Terms and Conditions" entitled "Insurance" on Form 84-806-1652.

62    An "Inspection Conformance Certificate for Material Shipped" on forms furnished by Purchaser will be completed and returned by Seller for each part when required by our Production Control Department, and our Riders entitled "Government Contract Provisions" (Form No. 801-8021 (5-71) and "Duty-Free Entry - Canadian Supplies" (Form No. DP-15 (4-71) shall be considered a part of this purchase order.

63    Each shipment against this purchase order must be accompanied by (1) Special Customs Invoice (Form No. 5515) in triplicate, (2) Commercial Invoice in triplicate, and (3) all documents must bear the notation "For Customs Clearance Purposes - Notify (Insert name of Customs Broker)".

64    Purchaser reserves the right to increase quantities called for herein by an additional quantity of not more than 100%. Such additional quantities can be authorized by written release from Production Control specifying quantity and contract number for which released. The price of the additional quantities shall be no higher than the unit price set forth in this purchase order. This option expires no later than one year after date of this purchase order.

65    Seller shall show purchaser's Internal Revenue Service Employer Identification No. 38-0419960 on all invoices submitted to United States Customs.

66    This Purchase Order is cancelled with no cost to Chrysler effective (    ).

66A    This item is cancelled effective (    ).

68    Seller shall indemnify and hold Purchaser harmless from and against any and all claims, losses, liabilities, damages and expenses, sustained or incurred by Purchaser as a result of Seller's failure to deliver the supplies or perform the services covered hereunder, or any part thereof, in accordance with the provisions of this order. It is mutually understood and agreed that this clause is not intended to limit in any way Purchaser's rights and remedies against Seller and is in addition to any other or further rights and remedies available to Purchaser, including, but not limited to, the rights and remedies of Purchaser under Paragraph XIII, "Cancellation for Default" of the Terms and Conditions of this order.

69    Do not invoice Missouri Motor Fuel Tax as Purchaser is responsible for determining taxable usage and remitting payment thereon to the Missouri Department of Revenue under authority of Distributor's License No. 885. Compliance with the Missouri Oil Inspection Law, including payment of inspection fees, will be made by Seller prior to delivery.

72    FEDERAL EXCISE TAX
DOMESTIC DESTINATION: If the destination of the vehicle as indicated by the Government Bill of Lading is within the United States, the Federal excise tax applying to the truck bodies purchased hereunder is a part of this purchase order and is to be invoiced to Purchaser and shown as a separate item on the invoice.

EXPORT DESTINATION: If the destination of the vehicle as indicated by the Government Bill of Lading is within any foreign country or possession of the United States, Seller is notified that the truck bodies purchased hereunder are purchased tax-free for export, or for resale for export, and will be exported in due course. Therefore, no Federal excise tax is to be invoiced to Purchaser.

UNKNOWN DESTINATION: If the Seller is not informed as to whether the destination or the vehicle is within or without the United States, Seller is notified that the truck bodies purchased hereunder are purchased for export, or for resale for export. However, the applicable Federal excise tax is a part of this purchase order and is to be invoiced to Purchaser and shown as a separate item on the invoice pending submission by Purchaser to Seller of proof of exportation.

76    Purchaser (Chrysler) owned containers are to be used to ship material to Seller and Seller shall use same containers to return material to Purchaser in the performance of this purchase order. Seller's packing slips and invoices must indicate number of containers returned with shipment and plant(s) to which returned. Purchaser will invoice Seller at Purchaser's standard cost for each container shipped and will refund same amount to Seller for each container returned.

76A    Purchaser owned containers are to be used to ship material to Seller. Seller will be responsible for such containers while in his care or under his control. Purchaser will invoice Seller at Purchaser's standard cost for each container shipped and will refund the same amount to Seller for each container returned to Purchaser's shipping plant F.O.B. (    ).

78    Our Rider entitled United States/Canadian Purchase Order Rider 'B' (Form No. 84-180-7310) shall be considered a part of this purchase order.

80    Exempt from Federal Excise Tax.

82A    Blanket order for the approximate percentage as indicated below for our following Plant requirements for our_____Model Year.

82B    Blanket order for the approximate percentage as indicated below for our following plant requirements from_____to_____.

82C    Blanket order for approximately 65-100% of our following plant requirements for our_____Model Year. In addition to plants shown, supplier is authorized to honor releases from issuing activities for other Chrysler locations as may be required.

'82D      Blanket order for a portion of our following plant requirements for our_____ Model Year.

82E      Blanket order for approximately 65-100% of our following plants requirements from_____ to_____ . In addition to plants shown, supplier is authorized to honor releases from issuing activities for other Chrysler locations as may be required.

82F      Blanket order for a portion of our following plant requirements from_____ to_____ ;

82J      This order applies to our following plant requirements only.

82X      Blanket order for approximately 65-100% of Chrysler requirements commencing from the date shown on the face of this order and continuing on a year to year basis thereafter. This purchase order is automatically cancelled at no cost to Chrysler Corporation if no releases are issued under this order during any twelve month period. In addition to plants shown, supplier is authorized to honor releases from Production Control for other Chrysler locations as may be required.

82Y      Blanket order for a portion of Chrysler requirements commencing from the date on the face of this order and continuing on a year to year basis thereafter. This purchase order is automatically cancelled at no cost to Chrysler Corporation if no releases are issued under this order during any twelve month period. In addition to plants shown, supplier is authorized to honor releases from Production Control for other Chrysler locations as may be required.

83      You are to purchase from Chrysler Corporation (fill in description of part) at (fill in amount) which is included in the above price.

84      **REVISED**
     Gauges, layouts, tooling aids, etc., necessary to inspect the production part must be supplied in conjunction with sample part submissions for certification. Additionally, requirements as reflected on the attached (or previously provided) Receiving Inspection Gauge Notice must be fulfilled to complete the gauge requirements of this order.

85      This purchase order cancels and supersedes our purchase order number (insert cancelled P.O. No.) and assumes our obligation for any undelivered balances or unbilled charges due under the cancelled purchase order.

86      This order pertains to Safety/Emissions required item. In accepting the order, Seller agrees to identify all related shipping containers with Purchaser's "Safety Item" identification label and to enter on all related packing slips the following certification "Material in this shipment" complies with Chrysler's requirements for controlling the quality of Safety/Emissions items".

88      The attached Vehicle Safety/Emissions Item Notice Rider shall be considered a part of this purchase order.

92      NON-RETURNABLE CONTAINERS: Non-Returnable Container-Materials will be shipped in or on Seller's adequate non-returnable containers. Containers will be shown as a separate item on Seller's invoice at $(fill in amount) each.

94      RETURNABLE CONTAINERS, EXCEPT REELS AND SPOOLS OVER $150 - F.O.B. CHRYSLER PLANT: Returnable Container - Materials ordered will be shipped in or on Seller's adequate returnable containers, each container to be plainly identified as such in accordance with Purchaser's Packaging and Shipping Instructions and so referenced on Supplier's packing slips. Containers will be invoiced by Seller at $(fill in amount) each. A Seller within immediate vicinity of Purchaser's plant will be notified to pick up empty containers. Upon failure by Seller to pick up empty containers after notification and where Seller is located outside immediate vicinity of Purchaser's plant, Purchaser will ship containers to Seller, F.O.B. Purchaser's Plant. Seller will refund to Purchaser $(fill in amount) for each container. Seller will reimburse Purchaser for any prepaid freight and shipping costs from F.O.B. point.

94A      RETURNABLE AIR CUSHION DUNNAGE BAGS - SELLER'S PLANT: Returnable Air Cushion Dunnage Bags - Materials ordered will be shipped protected by Seller's cushion dunnage bag(s), each bag to be plainly identified as such in accordance with Purchaser's Packaging and Shipping Instructions and so referenced on Supplier's packing slips. Bags will be invoiced by Seller at (see below) each and returned by Purchaser to Seller, F.O.B. Seller's Plant, normally in the same rail cars or otherwise at Purchaser's expense. Seller will refund to Purchaser (see below) for each bag when returned.

94M      RETURNABLE CONTAINERS – F.O.B. SELLER'S PLANT: Returnable Container - Materials ordered will be shipped in or on Seller's adequate returnable containers, each container to be plainly identified as such in accordance with Purchaser's Packaging and Shipping Instructions and so referenced on Supplier's packing slips. Containers will be invoiced by Seller at (see below) each. Purchaser will ship containers to Seller, F.O.B. Seller's Plant. Seller will refund to Purchaser (see below) for each container.

95      RETURNABLE CONTAINER - REELS AND SPOOLS: Returnable Container - Reels or Spools used to ship material ordered will be paid for at the invoiced price (in no event to exceed manufacturer's current published prices or $150.00 each, whichever is less) subject to return for credit at the same price, F.O.B. Purchaser's plant. Charges for Reels or Spools must be shown on Seller's invoice as a separate item. As a means of identification and to facilitate return, Reels or Spools must be plainly marked in accordance with Purchaser's Packaging and Shipping Instructions and so referenced on Supplier's packing slips.

96      CHRYSLER RETURNABLE CONTAINERS: (Fill in name of Container) property of Chrysler Corporation are to be used to deliver the material. Seller will be responsible to account for such containers while they are in his care or under his control. In the event of damage, they are not to be scrapped nor repairs effected that would be at Purchaser's expense, without Purchaser's written authorization. Containers to be shipped to Seller, F.O.B. (fill in Purchaser's or Seller's Plant) and invoiced by Purchaser at Purchaser's standard cost for each container. Purchaser will refund same amount to Seller for each container returned to Purchaser.

96M      (Fill in name of container) property of Chrysler Corporation are to be used to ship the material ordered. Seller's packing slips and invoices must indicate number of containers returned with shipments. In the event of damage, they are not to be scrapped nor repairs effected that would be at Purchaser's expense, without Purchaser's written authorization. Containers to be shipped to Seller, F.O.B. Seller's plant. Purchaser will invoice Seller at (see below) for each container shipped and will refund same amount to Seller for each container returned.

97      RETURNABLE CONTAINERS IN ASSIGNED RAIL CARS: Material shipped to Purchaser's plant in racks, crates, trays or bins - returnable free in the same rail cars - containers are to be returned in the same rail cars at no charge to Purchaser. If such containers are returned by other means, Purchaser will be responsible for return freight charges and Seller, upon presentation of proof that it has paid any such charges on behalf of Purchaser, shall be reimbursed by Purchaser therefor.

98      In consideration of the payment for the design, development and/or other services set forth in this purchase order, Seller hereby grants unto Purchaser a royalty-free non-exclusive, non-cancellable license under any patent or patents now or hereinafter owned or controlled by Seller to manufacture, have manufactured, use and/or sell devices and to practice methods or processes utilizing any and all inventions included in or useful in the production of any device designed, developed, drawn, devised or produced under this purchase order, as well as under any copyright acquired by the Seller on work performed under this purchase order.

(6-74)

100   .   Chrysler Corporation to furnish (quantity) (description) subject to a 'Consigned Material Receipt Agreement' executed by Seller (date).

100A   Chrysler Corporation to furnish (see below) on consignment to Seller in the performance of this purchase order.

101   You will upon completion of this order, automatically return and indicate on your shipper all excess materials properly segregated and identified to Chrysler Parts Supply Division, Center Line, Michigan.

102   In accepting this order, Seller certifies that it is qualified as a public warehouse in accordance with applicable federal and state laws and that Seller will reimburse the Purchaser for such amount of property tax and appropriate penalties and interest, etc., which the Purchaser may be required to pay on personal property intended for shipment out of the state, stored in Seller's warehouse, and on which property the exemption for taxation is not allowed by the taxing authorities on the basis that Seller's warehouse does not meet the qualifications as set forth above.

111   Copy of packing slip must accompany Seller's invoice on shipments to other than Purchaser's plants.

112   Immediately upon receipt of material for performance under this purchase order, Seller shall furnish a reveiving report reflecting this order number, and including part number, quantity and condition of material to Purchaser's invoicing address.

118   Set-up charges (insert "per release" or "one only") (insert price).

118A   Set-up charges (insert dollars) per release.

118B   Set-up charges (insert dollars) one time only.

118C   Set-up charges (insert dollars) per shipment.

118D   Set-up charge (insert dollars or work "Allowed") followed by buyer's instruction.

127   Seller shall prepackage Export-Import Division shipments in accordance with Purchaser approved specifications and bill as separate item on invoice at (see below) each part.

132   The increase in price covered in this purchase order amendment has not been completely evaluated by Purchaser. Accordingly, the price is subject to further review and renegotiation, if warranted, with the understanding that any agreed-upon price adjustment may be made retroactively to the effective date of this price adjustment.

133   Seller understands and agrees that amounts invoiced under this purchase order shall be based on actual cost incurred and shall be subject to audit, including charges incurred by Seller with any subcontractor whom Seller may employ. Purchaser shall have access to and the right to examine, as necessary, any of the books, documents and records, of the Seller or subcontractors employed, pertaining to or supporting amounts invoiced. Purchaser shall have the right to refund of any amounts paid exceeding that determined by such audit or audits to be due Seller in accordance with the purchase order. The words "Subject to Audit" shall also be added in the price column of the requisition and purchase order.

134   Chrysler Corporation will furnish all finished Art Work required hereunder. Printing plates shall be furnished and paid for by (insert Seller or Chrysler) as designated with Clause No. 134 on purchase order. When furnished and paid for by Seller, Chrysler Corporation reserves the right, at its option, to purchase said plates subsequently at a mutually agreed price. Seller further agrees to advise Chrysler Corporation of the location and user of said plates at all times during the life of this order. Seller also agrees upon termination of this order for any reason, to advise Chrysler Corporation in writing of the status, including inventory, of any and all printing and printed matter, including but not limited to printing plates and containers for material, bearing the trademark and/or marking involving Chrysler Corporation identification. Seller will take necessary steps to ensure that no unauthorized or improper use of said trademark and/or marking identification of Chrysler Corporation is made, and to advise Chrysler Corporation in writing of location and final disposition of all such material, including plates not subsequently purchased by Chrysler Corporation, and steps taken to deliver to Chrysler Corporation or destroy such material in the event that remarking or relabeling of same so as to eliminate any Chrysler Corporation identification is not possible.

138   On all invoices, packing slips and shipping containers, Seller must prefix part number with (        ).

139   Immediately upon receipt of consigned material, a receiving report properly signed, verifying quantities and condition of material must be mailed to Parts Supply Division, Accounting, Box 2716, Detroit, Michigan 48231, Attn: Accounts Payable-Supervisor:

You will, upon completion of this order, automatically return and indicate on your shipper all excess materials properly segregated and identified to Chrysler Parts Supply Division, Center Line, Michigan.

140   Overshipments of service requirements are not to exceed five percent. Any excess will be returned at Supplier's expense.

141   Price is based on fabrication at one time of entire quantity on order to be released by procurement for shipment within a period of (insert number) months from date beginning (insert date) which is the requested initial shipment date. All balances due on order not released for shipment during this period will be shipped automatically at the end of the (insert ending) month.

142   Supplier to advise Carrier that freight bills must be made up as follows: Consign to: Chrysler Corporation, Parts Supply Division, P.O. Box 1718, Detroit, Michigan 48231, C/O (Parts Supply Div. or Receiving Firm).

143   Run with production.

144   This (order) or (change) having been (placed) or (authorized) prior to the establishment of a firm price, it is agreed between Seller and Purchaser that the interim price shown herein upon conclusion of further negotiation will be retroactively adjusted accordingly.

148   Seller understands and agrees that payment by Purchaser of premium costs established under this purchase order is conditional upon satisfactory performance by Seller in accordance with the sample promise date most recently agreed and referenced herein. (In the event that Seller does not provide acceptable samples by or on this date, payment of the premium costs is subject to reduction or cancellation.) Seller understands further that prmium amounts invoiced in accordance with this order shall in no instance exceed the actual cost incurred by Seller, including charges incurred by Seller with any subcontractor whom Seller may employ.

149   Charges incurred by Seller with any subcontractor are to be evidenced by copy of subcontractor's invoice, which is to be submitted by Seller to Purchaser in support of Seller's charges.

51   Payment for the above tooling and changes thereto is contingent upon approval of samples from this tooling, as specified on the above referenced part purchase order, and will be made directly by Chrysler. Any negotiation pertaining thereto will be handled by the undersigned buyer.

152   Seller must notify buyer, in writing, when a plating, heat treating or finishing source is changed.

(6-74)

153    This purchase order originally issued unpriced is hereby amended to reflect a non-uniform price adjustment and set forth the resultant inclusive price for application at indicated effective date/point. (add date, etc.)

154    You are to purchase component parts listed below from (insert component supplier name(s) and address).

155    Prices, as stated, to change letters indicated, have been included in the above assembly price. Samples to change letters indicated will be available to you as noted. Follow up for timely submission of samples to indicated change letter, as well as for subsequent changes, will be your responsibility. (Insert component part number, change letter, price and sample date.)

156    Prices, "to be determined" will be transmitted to you when finalized.

157    You are alerted that changes to the assembly through *(insert latest change letter aware of)* are currently being processed to you by Material Change Notices.

158    Initial samples from production tooling to the latest possible change that can be incorporated within our timing requirements, promised (insert date).

160    Engineering changes, affecting price of above component parts and cost of related tooling, beyond the change letter indicated to be negotiated and finalized by you directly with the component supplier.

161    This order having been placed on advance specifications and volume data, it is agreed between Seller and Purchaser that the contract is subject to review and the price may be renegotiated in the event the specifications and volume, when formally established, are different from those now contemplated and reflected herein.

162A    Payment for supplier tooling assumes that parts made therefrom will be acceptable both dimensionally and functionally. Purchaser reserves right to withhold payment for tooling on this part until samples from such tooling are fully approved as evidenced by signed Initial Sample Inspection Report. Form No. 84-235-4434, and also Initial Sample Laboratory Report, Form No. 84-235-4435.

163    Partial payment of_____ % / $_____ (to be made) (has been made) upon approval of Purchaser's Purchasing Agent. Balance of_____ % / $_____ payable net upon approval of samples from the tooling. Notwithstanding the first sentence of Clause No. 14, full title to all tooling respecting which Purchaser has made partial payment will vest in Purchaser immediately upon such payment, and the terms and conditions of the purchase order governing shall apply.

167    **REVISED**
This purchase order is issued on the understanding that Seller will complete the tooling and submit acceptable production samples not later than the date stated herein. Purchaser reserves the right to audit Supplier's tooling charges, which shall be based on actual cost. It will be necessary for Supplier, *or any subcontractor whom Supplier may be using*, to maintain accurate records consisting of, but not limited to, such documents as employee clock cards, time tickets, job summaries, payroll records, purchase orders, vendor invoices and material requisitions. These records must be maintained irrespective of billings by the sub-contractor(s), which cannot be accepted automatically by Purchaser as evidence of actual cost.

168    Seller understands and agrees that invoiced prices will be Seller's prices, as published for general use, and in effect at time of shipment, subject to any discount as contained herein. Such prices are subject to review and audit verification for accuracy, by Purchaser as necessary. Seller shall, upon request, make available to Purchaser such published prices and appropriate records supporting amounts invoiced.

171    Price agreed to as contained herein will provide the basis for a purchase order to be issued to you by our assembly supplier(s) for our Car Assembly Group requirements.

Said purchase order(s) will be issued for the component to the part price and engineering change letter as agreed with you by the assembly supplier. Release for these parts, and subsequent engineering changes thereto, will be processed to you by our assembly supplier(s).

Any revision to part price necessary due to engineering changes subsequent to those specified herein, will be negotiated by you with our assembly supplier(s) and, as applicable, will also be reflected in an amendment to this order. (Insert assembly supplier(s) name(s), address(es) and code number(s))

172    Changes to parts made from the tooling covered by this purchase order subsequent to those specified herein will be processed to you by the assembly supplier listed below. Any revision to tool costs necessitated by such changes will be negotiated by you with the assembly supplier. Payment for such changes, if required, will be made by Chrysler to said assembly supplier. (Add supplier's name and address)

173    Seller must include following certification on shipping containers for above part: "Seller certifies compliance with applicable United States Federal Regulations under Public Law 89-563".

175    Seller understands and agrees that invoiced price for this steel will be Seller's price, as published for general use, in effect at time of shipment. Such prices are subject to review and audit verification for accuracy, by Purchaser as necessary. Seller shall, upon request, make available to Purchaser such published prices and appropriate records supporting amounts invoiced.

176    Parts furnished under this order, being SAFETY/EMISSIONS items, call for special attention to quality control procedures during their manufacture and/or assembly.

Supplier's attention is drawn to the application of Chrysler's SAFETY/EMISSIONS Performance Standard (enclosed) to these parts and the possible effect upon them of Federal Health and Safety Standards.

177    Substitute Chrysler Canada Ltd. throughout this purchase order in place of Chrysler Corporation.

Price stated in Canadian funds.

Not subject to Ontario Sales Tax - Permit 57190003-G.

We certify that the goods ordered or imported hereby are to be used in, wrought into, or attached to taxable goods for sale and therefore are not subject to federal sales and excise taxes. Chrysler Canada Ltd. License S-6011.

The enclosed Certificate of Content, Form No. 11000 must be completed and mailed promptly to Chrysler Canada Ltd., Customs and Taxes Department, 2450 Chrysler Center, Windsor, Ontario.

178    This is a combined United States/Canadian purchase order with items priced both in Canadian and United States funds. Our United States/Canadian Purchase Order Rider 'A' (Revised), Form No. 84-180-7309 shall be considered a part of this order.

(6-74)

179    This is a combined United Stat    .adian purchase order with price stated in United St    .nds. Our United States/Canadian Purchase Order Rider 'B', Form No. 84-180-7310 shall be considered a part of this order.

180    Seller will be required to furnish certification of compliance with applicable governmental requirements as required by statute, in the manner and location established in the specifications pertaining hereto.

183    The attached special equipment description rider shall be considered a part of this purchase order.

0    In accepting this order, Seller agrees to use teletypes (or such other telecommunications method approved by Purchaser) in Purchaser's prescribed format to furnish notification promptly of all shipments made to the Car and Truck Assembly and/or Wyoming plants, and such other locations as may subsequently be required, for the purpose of Chrysler's Dynamic Inventory Analysis System (DIAS). Seller further agrees that in the event that unforeseen circumstances render it temporarily impracticable for Seller to maintain this prescribed method he will immediately contact Purchaser's appropriate Production Control activity for alternate instructions.

193    This order is issued on the understanding that Supplier will tool and plan production for this part so as to be capable of supplying a continuous peak weekly volume equal to 6.7 times the daily volume shown in our tool purchase order (Daily Volume x 6.7 = Peak Weekly Requirement). Supplier understands further that this coverage is precautionary to cover higher schedule requirements during certain periods of the year or indefinitely, if required.

197A    The price in this order reflects firm model year labor economics.

200    A monthly summary of charges must be mailed to the Purchasing Department to the attention of the buyer, showing the monthly billing *by plant* applicable to this purchase order.

201    PRICES CURRENT AT DATE OF ORDER: Seller understands and agrees that invoiced prices will be Seller's prices, as published for general use, and in effect at date of this order. Such prices are subject to review and audit verification for accuracy, by Purchaser as necessary. Seller shall, upon request, make available to Purchaser such published prices and appropriate records supporting amounts invoiced.

202    PRICES CURRENT AT TIME OF SHIPMENT: Seller understands and agrees that invoiced prices will be Seller's prices, as published for general use, and in effect at time of shipment, subject to any discount as contained herein. Such prices are subject to review and audit verification for accuracy, by Purchaser as necessary. Seller shall, upon request, make available to Purchaser such published prices and appropriate records supporting amounts invoiced.

203    FOR SERVICE: Seller understands and agrees that invoiced prices will be Seller's normal charge for this service, based upon costs at time of performance and subject to any discount as contained herein. Such prices are subject to review and audit verification for accuracy by Purchase as necessary and Seller shall, upon request, make available to Purchaser appropriate records supporting amounts invoiced.

204    Not longer than nine months from date of this order and from date of any extension thereof, Seller is to furnish to Purchaser's buyer a listing of items supplied, stating quantities if so requested.

205    (See Purchase Order Riders - Section IV in this booklet)

209,    The price specified in this purchase order provides for an increase in price of the product/service because of extreme hardship that
09A,    would result to Seller's business without such increase, and is granted due to his firm refusal to ship such goods or perform such
209B    service without the increase.
or
209C

211    Includes commitment for potential service requirements of Purchaser's Parts Supply Division. Special packaging for service, if required and not specified herein, must be separately requested and negotiated. Canadian suppliers must mark service requirements appropriately "Made in Canada". To ensure proper identification of shipments, Seller's packing slips shall always include applicable Chrysler release number.

212    Price includes processing to "Vendor Processing Specifications" dated (

214    This part was generated by mid-year (running) product change. Please direct all questions and information concerning Car Assembly release authorizations, samples and production part availability to Pre-Production Control, Chrysler Highland Park, phone 956-2706-7.

217    Part(s) covered by this Request for Quotation/Purchase Order requires short term durability testing by Seller. Refer to special rider, Form No. 84-806-1735 enclosed herewith or previously furnished, and implementing instructions to be obtained from Corporate Purchasing Research.

218A    If portion(s) of wiring assemblies covered by this Inquiry/Purchase Order will be moulded from multiple cavity tooling, initial samples of such portion(s) from each cavity mould must be submitted appropriately identified by cavity for Purchaser's approval prior to production runs.

219    Under coverage of this purchase order a limited number of parts as advised by Purchaser's releases may be required for pre-production assemblies. If the initial sample promise date as shown in this order or subsequently revised is later than the first day of May preceding model launch, Seller is hereby authorized and must provide these pre-production parts simultaneously with and to the same drawing change letter as the initial samples, without waiting for such samples to be formally approved at Purchaser's plant.

220A    Supplier agrees to hold quoted price firm for model year.

220B    Supplier agrees to hold labor economics firm for (    ) model year.

240    *Contract number (insert appropriate number).*

243    Priority rating (insert rating) certified for national defense use under DMS, Regulation 1.

IV. RIDERS

# IV. RIDERS



# REQUEST FOR QUOTATION AND PURCHASE ORDER RIDER

## VEHICLE SAFETY EMISSIONS ITEM NOTICE

Part(s) furnished under this inquiry/purchase order, being PF-SAFETY/ EMISSIONS designated items, call for special control measures during manufacture and/or assembly. Attention is drawn to the application of Chrysler's SAFETY/EMISSION Performance Standard(s) to these parts and the possible effect upon them of Federal Health and Safety Standards.

Your attention also is drawn to the booklet, "Supplier Vehicle Safety Program Guideline" issued to suppliers with previous mailings and/or enclosed, which details requirements in conforming to Chrysler Corporation's Vehicle Safety Program. Included in this booklet are certain requirements pertaining to the submission of control plans for the part(s) covered by this purchase order.

Whenever the part description in the purchase order is suffixed by an "S" and/or an "E" as appropriate, for each PF-SAFETY/EMISSIONS part number, the following action is required by the supplier:

1) All part and assembly drawings having the shield (        ) identification(s) must be reviewed in order to establish awareness of and assurance that compliance with Corporate and Federal Vehicle SAFETY/EMISSIONS requirements is being accomplished.

2) The supplier is required to submit a detailed control plan(s) for each specific part number covered by the purchase order. The formal control plan(s) is required to be submitted *within 30 days* of the purchase order date. (See the Supplier Vehicle Safety Program Guideline for additional instructions.)

3) All changes or revisions to the original control plan, as submitted to the Vehicle Safety Systems & Investigation Department, must be promptly submitted to that department for review and approval. Subsequent surveys at supplier plant locations will be oriented around the latest control plan on file in the Vehicle Safety Systems and Investigation Department at the time of the survey.

   The supplier is expected to review all subsequent amendments to purchase orders, changes to Engineering Drawings and/or Manufacturing Process Changes which may effect the approved control plan. The supplier is expected to use his best judgment on the particulars of those amendments and changes for any impact on control plan requirements.

4) Whenever a new model series purchase order is issued, the existing (on file with the Vehicle Safety Office) control plan(s) can be considered as a carry-over provided the "new" placement has not affected control plan detail requirements.

5) The supplier should direct all questions relative to this notice to: Manager, Vehicle Safety Systems & Investigation, Vehicle Safety & Quality Office, Chrysler Corporation - P.O. Box 2888, Detroit, Michigan 48231

# UNITED STATES/CANADIAN PURCHASE ORDER RIDER 'A'
## (REVISED)

Concerning shipments to plants in Canada, substitute Chrysler Canada Ltd. throughout this order in place of Chrysler Corporation.

Not subject to Ontario Sales Tax - Permit No. 57190003-G.

We certify that the goods ordered or imported hereby are to be used in, wrought into, or attached to taxable goods for sale and therefore are not subject to federal sales and excise taxes. Chrysler Canada Ltd. License No. S-6011.

Customs clearance for account of consignee.

Each United States shipment against this purchase order must be accompanied by -1- Special Customs Invoice, Form No. 5515, in triplicate, -2- Commercial Invoice, in triplicate, and -3- all documents must bear the statement - "For United States Customs Clearance Purposes - Notify *(see below), "unless otherwise covered by special instructions from purchaser.

The foregoing invoices are for Customs clearance only. Please refer to purchase order, or shipping release when so referenced in the order, for instructions on submitting invoices for payment (Accounts Payable) purposes.

*Shipment into U.S. through Detroit - The J.D. Richardson Co.
*Shipment into U.S. through Port Huron - John V. Carr & Son, Inc.
*Shipment into U.S. through Buffalo - C.J. Tower & Son

If for some reason it is necessary to ship through a U.S. port other than Detroit, Port Huron or Buffalo, please contact the Tax Supervisor - Customs, Tax Department, Chrysler Corporation.

Covering shipments to Chrysler Canada plants only, supplier must complete the enclosed Certificate of Content, Form No. 11000, and mail it promptly to Chrysler Canada Ltd., Customs and Taxes Department, 2450 Chrysler Center, Windsor, Ontario.

# UNITED STATES/CANADIAN PURCHASE ORDER RIDER 'B'

Concerning shipments to plants in Canada, substitute Chrysler Canada Ltd. throughout this order in place of Chrysler Corporation.

Canadian Customs MA invoices must be prepared in quadruplicate and provided for all shipments to Canada in accordance with the following instructions:

1. Do not ship goods, regardless of value, unless Canada Customs MA invoices have been prepared in quadruplicate.

2. Canada Customs invoices *must* show our purchase order number, our part number, and our description, quantities of goods shipped, number of containers, weight, "ship to" plant in Canada and your vendor code number.

3. Canada Customs invoices *must* show Fair Market Value and Selling Price of each part number. If the material is "No Charge", the Fair Market Value must still be indicated.

4. The Exporter's Invoice Declaration must be completed and signed in ink.

5. If you ship via Transport or Railway Express to a consolidation point in the U.S.A. for furtherance to Canada or if you ship direct to Canada, the Customs invoice must accompany the shipment.

6. If you ship by Rail or Parcel Post, mail the Customs invoice to Box 368, Walkerville Post Office, Windsor, Ontario, *the same* day you ship the goods.

7. If you ship to our Parts Plant in Mississauga, Ontario by truck via Buffalo, New York, by Parcel Post or Express, mail the Customs invoices to Box 368, Walkerville Post Office, Windsor, Ontario.

8. If your shipment is valued at $10,000.00 or more (Canadian Funds), be sure you attach to the Customs invoices one copy of Form B31 Special Exporter's Declaration.

9. By Canadian Customs law, Customs invoices must not differ from your settlement invoice as to value.

WARNING — If we do not have Customs invoices at time of arrival of the goods, they will not enter Canada.

> **Revised to reflect declaration Form B31 requirements**

# CHRYSLER CORPORATION
# PURCHASE ORDER RIDER

### CLAUSE NUMBER 205

## SPECIAL TERMS AND CONDITION RIDER -
## BLACK BOX ITEMS

Suppliers of "Black Box" (supplier-designed) items must deliver such items in accordance with applicable Chrysler Engineering Standards pertaining to design, appearance, performance, SAFETY/FED characteristics and/or quality as represented by approved production samples.

The intended purpose of this rider is to discourage all but absolutely necessary changes at other than model change-over time. However, it is to be understood that changes for reason of product improvement and/or cost reduction are solicited.

Suppliers are required to furnish notification in advance (completing and forwarding Form No. 84-806-1609) to Chrysler Purchasing for all proposed design, material or manufacturing changes.

Changes that might affect design, appearance, performance, SAFETY/FED characteristics and/or quality and/or involve costs or the revision of a Chrysler drawing, should not be incorporated until approval is provided through Chrysler Purchasing.

If an emergency changes (including component or material sources) which Chrysler might conceivably question as to effect on design, appearance, performance, quality or cost are placed in production by the supplier without prior notification, this will be at his own risk. For such changes, Chrysler Engineering will request samples and/or test data from the supplier and reserve the right to make final decision on acceptability of the change or to direct that the change be rescinded.

The announcement or lack of announcement of a change does not relieve the supplier from his responsibility to furnish shipments which he can certify as meeting the required standards. The detection of any failure to meet this responsibility may result in the rejection of shipments and any warranty and associated costs resulting from such failures will be directed to him.

# DUTY-FREE ENTRY -- CANADIAN SUPPLIES

(a) Except as otherwise approved by Purchaser, no amount is or will be included in the purchase order price on account of duty with respect to:

    (i) All end items which constitute "Canadian end products" (as defined in paragraph 6-101 of the Armed Services Procurement Regulations) to be delivered under this purchase order; and

    (ii) All supplies (including, without limitation, raw materials, components and intermediate assemblies) produced or made in Canada which are to be incorporated in the end items to be delivered under this purchase order provided, that such end items are made in the United States or Canada;

except supplies imported into the United States prior to the date of this purchase order, or, in the case of supplies imported by a first or lower-tier subcontractor hereunder, prior to the date of his subcontract.

(b) The Seller warrants that all such Canadian supplies, for which such duty-free entry is to be claimed, are intended to be delivered to the Government or incorporated in the end items to be delivered under this purchase order, and that duty shall be paid by the Seller to the extent that such supplies, or any portion thereof, (if not scrap or salvage), are diverted to nongovernment use other than as a result of a competitive sale made, directed or authorized by the Government through the Purchaser.

(c) Purchaser certifies that the Government has agreed to execute duty-free entry certificates and to afford such assistance as appropriate in order to obtain the duty-free entry of Canadian end products or supplies as to which the shipping documents bear the notation specified in paragraph (d) below, except as the Seller may otherwise agree.

(d) All shipping documents submitted to Customs, covering such Canadian end products or supplies for which duty-free entry is to be claimed, shall bear the following information:

    (i) Government prime contract number;

    (ii) Identification of carrier;

    (iii) The notation: "UNITED STATES DEPARTMENT OF DEFENSE DUTY-FREE ENTRY TO BE CLAIMED pursuant to Schedule 8, Part 3, Item No. 832.00, Tariff Schedules of the United States. Upon arrival of shipment at port of entry, District Director of Customs, kindly release the shipments under 8.59GP and notify the Director, Defense Contract Administration Services Region, Detroit, 1580 E. Grand Blvd., Detroit, Michigan 48211, who will execute Customs Forms 7501 and 7501A and the Duty-Free Entry Certificate";

    (iv) Gross weight in pounds (if freight is based on space tonnage, state cubic feet in addition to gross shipping weight); and

    (v) Estimated value in United States dollars.

(e) The Seller agrees to instruct the foreign supplier to prepare a sufficient number of copies of the bill of lading (or other shipping document) so that at least two of the copies accompanying the shipment will be available for use by the District Director of Customs at the port of entry.

(f) The Seller agrees to notify the Purchaser in writing of any purchases by the Seller of Canadian supplies that are to be imported into the United States for delivery to the Government or for incorporation in end items to be delivered under this purchase order. Such notice shall be furnished to the Purchaser immediately upon the award by the Seller to the Canadian supplier. The notice shall identify (i) the Canadian supplies, (ii) the purchase order number and the Government prime contract number, and (iii) the scheduled delivery date(s).

(g) This clause shall not apply to purchases of Canadian supplies in connection with this purchase order if (i) such Canadian supplies are identical in nature with supplies purchased by the Seller or any subcontractor hereunder in connection with his commercial business, and (ii) it is not economical or feasible to account for such supplies so as to assure that the amount of such supplies for which duty-free entry is claimed pursuant to this clause does not exceed the amount thereof purchased in connection with this purchase order.

(h) The Seller agrees to insert the substance of this clause, including this paragraph (h), in all subcontracts for supplies hereunder that exceed $2,500. Each such subcontract shall require the subcontractor to identify the Government prime contract under which this purchase order is issued by the prime contract number on any shipping documents submitted to Customs covering supplies for which duty-free entry is to be claimed pursuant to this clause.

# CHRYSLER CORPORATION
# FEDERAL EXCISE TAX

## EXEMPTION CERTIFICATE -  LUBRICATING OIL
## SELDOM USED AS A LUBRICANT

(For use by purchaser of lubricating oil, otherwise subject to tax under section 4091 of the Internal Revenue Code of 1954, as amended, which the Commissioner of Internal Revenue has determined to be seldom used as a lubricant, for use by the purchaser for nonlubricating purposes or for resale for nonlubricating use.)

The purchaser certifies that he is a manufacturer of automobiles, trucks, etc., and that the oil covered by the accompanying order is a type which the Commissioner has determined to be seldom used as a lubricant and is purchased for the nonlubricating purposes specified therein.

The purchaser understands that, if any of the oil purchased tax free by use of this certificate is resold by him for nonlubricating use or for further resale for such use, he must obtain a similar certificate from his vendee. The purchaser further understands that he must be prepared to establish by satisfactory evidence the actual use or disposition made of such oil, and that upon use of the oil for a lubricating purpose, or sale for a lubricating purpose, he is required to notify the vendor. The purchaser also understands that if his vendee notifies him that the oil covered by this certificate has been used for a lubricating purpose or sold for a lubricating purpose he is required to so notify the vendor from whom he purchased the oil covered by this certificate. In addition, the purchaser understands that the above listed oils which are purchased tax free by use of this certificate do not qualify for the tax credit or refund under sections 39(a) (3) and 6424 of the Code.

The purchaser understands that he and all guilty parties will, for fraudulent use of this certificate for the purpose of purchasing oil tax free, be subject to a fine of not more than $10,000, or imprisonment for not more than 5 years, or both, together with the costs of prosecution.

(6-74)



**CHRYSLER**
**CORPORATION**

# REQUEST FOR QUOTATION

# PURCHASE ORDER

# TERMS AND CONDITIONS

# STANDARD CLAUSES

# RIDERS

CORPORATE PURCHASING
P.O. BOX 2866
DETROIT, MICHIGAN 48231

Oct. 1976
84-806-1696

# EXPLANATION

We have collected together in this Publication the Terms and Conditions, Standard Clauses and other types of information that most frequently are referenced in our Requests for Quotations and Purchase Orders covering production parts, material and related services.

Because of the continuing relationship Chrysler Purchasing likes to foster with its Suppliers, the requirements of our Orders, etc., become well-known and do not require detailed repetition each time a specific buying commitment is made.

Relating the references on our Request for Quotation and Purchase Orders to this Publication - We suggest it be kept readily available in your Sales Office - will contribute to our mutual interest in making those documents as concise and clear as possible.

# INDEX

I    PURCHASE ORDER TERMS & CONDITIONS
     84-806-1652 (7-76)

II   REQUEST FOR QUOTATION — CLAUSE & REQUIREMENTS

III  STANDARD PURCHASE ORDER CLAUSE

IV   PURCHASE ORDER RIDERS

- 84-806-1725
  VEHICLE SATETY/EMISSIONS ITEM NOTICE

- 84-180-7309
  UNITED STATES/CANADIAN PURCHASE ORDER RIDER 'A' (REVISED)

- 84-180-7310 (9-72)
  UNITED STATES /CANADIAN PURCHASE ORDER RIDER 'B'

- 84-806-1714
  CLAUSE NO. 205 — BLACK BOX ITEMS

- DP-15 (4-71)
  DUTY-FREE ENTRY — CANADIAN SUPPLIES

- DD-1 (4-1-72)
  MINORITY BUSINESS ENTERPRISES/SUBCONTRACTING PROGRAM

- DD-2 (6-72)
  UTILIZATION OF MINORITY BUSINESS ENTERPRISES

- 84-801-8021 (REV 4-74)
  GOVERNMENT CONTRACT PROVISIONS

(10-76)

# I. TERMS AND CONDITIONS

# I
# CHRYSLER CORPORATION
## PURCHASE ORDER GENERAL TERMS AND CONDITIONS

I  **PROMPTNESS:** Delivery of supplies and performance of services at the time specified are of the essence of this order.

II  **ACCEPTANCE:** This order is not binding until accepted in writing or by a delivery, the rendering of services, or commencement of work on supplies to be specially manufactured for Purchaser, pursuant to this order.

III  **MODIFICATIONS:** Any modification of this order, to be valid, must be in writing and signed by Purchaser's authorized representative. Only the Purchaser's signed consent will bind it to any terms hereafter transmitted in any form by the Seller. Purchaser will consider Seller's requests for changes only if such requests are in writing and are directed to specific provisions of this order.

IV  **RESPONSIBILITY FOR PACKING, MARKING AND DELIVERY:** Unless otherwise provided in this order, Seller, for the price as stated in this order, shall (i) pack and mark the supplies covered by this order in accordance with Purchaser's Packaging & Shipping Instructions so as to secure the lowest transportation rates, meet carrier requirements and assure arrival at "ship to" point free of damage and deterioration, and (ii) be responsible for the supplies until delivery at the designated (f.o.b.) delivery point, regardless of point of inspection. Unless otherwise provided, (i) the price as stated in this order shall include all charges and expenses with respect to containers, packing and crating, and for transportation to f.o.b. point, and (ii) all containers, packing and crating material shall become property of Purchaser. Seller shall process shipping documents and route shipment from f.o.b. point, as directed by Purchaser.

V  **EXPRESS SHIPMENTS:** Purchaser shall have the right to require special, express or air shipment if Seller fails to meet the delivery requirements of this order. Seller shall reimburse Purchaser for any resulting additional transportation costs unless due solely to causes beyond the control and without the fault or negligence of Seller.

VI  **RELEASE AUTHORIZATION:** When it is specified on the face hereof that deliveries are to be in accordance with Purchaser's written releases, Seller shall not fabricate or assemble any supplies covered by this order, or procure required materials, or ship any supplies to Purchaser, except to the extent authorized by such written releases or special provisions of this order specifying minimum fabrication or delivery quantities.

VII  **CARRIER:** Seller grants Purchaser the right to specify at any time the Carrier and/or the method of transportation to be employed in conveying any part or all of the supplies covered herein. Any changes by Purchaser to such a specified method will be subject to an equitable adjustment as provided in Clause XVI, Changes.

VIII  **INSPECTION AND REJECTIONS:** Purchaser shall have the right to inspect and test all supplies, special tooling, materials and workmanship to the extent practicable at all times and places, including the places and during period of manufacture. Seller shall also provide and maintain an adequate inspection system covering the supplies, fabrication methods, and special tooling hereunder. Seller shall make its inspection records of all work and material available to Purchaser during the performance of this order, and for such longer period as may be specified in this order.

(7-76)

In case any property delivered or service rendered hereunder is defective in material or workmanship or otherwise not in conformity with the requirements of this order, Purchaser shall have the right, notwithstanding payment or any prior inspection or test, either to reject it or to require its correction. Any service which is required to be corrected hereunder shall be corrected by and at the expense of Seller promptly after notice. Property which is rejected or required to be corrected shall be removed (if permitted or required by Purchaser) or corrected in place, by and at the expense of the Seller promptly after notice, and shall not thereafter be delivered hereunder unless the former rejection or requirement of correction is disclosed. If the Seller fails promptly to remove such property which is required to be removed, or promptly to replace or correct such property, or promptly to correct any such service, Purchaser either (i) may by contract or otherwise replace or correct such property or service and charge to Seller the increased cost occasioned Purchaser thereby, or (ii) may effect a cancellation for default under Clause XIII. Unless the Seller is able to correct or replace such property or correct such service within the delivery schedule, Purchaser by written notice may accept the delivery of such property or accept such service subject to a reduction in price reflecting the reduced value attributable to non-conformance. Seller assumes the risk of damage to or loss of and all handling and transportation costs for defective property delivered hereunder.

IX    WARRANTY: Seller warrants that the supplies or services covered by this order will comply with the specifications, drawings, descriptions or samples furnished or specified by Purchaser and that the same will be merchantable, of good material and workmanship and free from defects. Seller warrants that any supplies furnished under this order that are designed by Seller will be fit and sufficient for the purposes intended. Seller specifically agrees to defend, indemnify and hold harmless Purchaser from and against any and all claims, losses, damages and settlement expenses resulting from or arising out of a breach of Seller's warranties and of which Purchaser notifies Seller at any time.

X    ASSIGNMENT OF PERFORMANCE BY SELLER: Seller agrees not to assign or delegate the performance of its duties under this order without the written consent of Purchaser.

XI    PROPERTY OF PURCHASER: Unless otherwise provided in this order or agreed to in writing, property of every description including all tools, equipment and material furnished or made available to Seller, title to which is in Purchaser, and any replacement thereof, shall be and remain the property of Purchaser. Property other than material, shall not be modified without the written consent of the Purchaser. Such property shall be plainly marked or otherwise adequately identified by Seller as property of Purchaser (by name) and shall be safely stored separately and apart from Seller's property. Seller shall not use such property except for performance of work hereunder or as authorized in writing by Purchaser. Such property while in Seller's possession or control shall be kept in good condition, shall be held at Seller's risk, and shall be kept insured by Seller, at its expense, in an amount equal to the replacement cost with loss payable to Purchaser. To the extent such property is not material consumed in the performance of this order, it shall be subject to inspection and removal by Purchaser and Purchaser shall have the right of entry for such purposes without any additional liability whatsoever to Seller. As and when directed by Purchaser, Seller shall disclose the location of such property and/or prepare it for shipment and ship f.o.b. its plant to Purchaser in as good condition as originally received by Seller, reasonable wear and tear excepted.

XII    TERMINATION AT PURCHASER'S OPTION: The Purchaser may terminate performance of work under this order in whole or from time to time in part by written notice of termination whereupon Seller will stop work on the date and to the extent specified in the notice and terminate all orders and subcontracts to the extent they relate to the terminated work. Seller will promptly advise Purchaser of the quantities of applicable work and material on hand or purchased prior to termination and the most favorable disposition that Seller can make thereof. Seller will comply with Purchaser's instructions regarding transfer and disposition

of title and possession of such work and material. (Releases, existing or subsequently received, against other purchase orders aJD Seller by Purchaser for the same or similar parts or materials are to be considered such instructions unless Seller is otherwise notified in writing.) Within 90 days after receipt of such notice of termination Seller will submit all its claims resulting from such termination. Purchaser will have the right to check such claims at any reasonable time or times by inspecting and auditing the records, facilities, work or materials of Seller and/or its subcontractors relating to this order.

Purchaser will pay Seller, without duplication, the order price for finished work accepted by Purchaser and the cost to Seller of work in process and raw material allocable to the terminated work, based on any audit Purchaser may conduct and generally accepted accounting principles; less, however, (1) the reasonable value or cost °chever is higher) of any items used or sold by Seller without Purchaser's consent; (2) the agreed value of any items used or sold by Seller with Purchaser's consent; and (3) the cost of any defective, damaged or destroyed work or material. Purchaser will amke no payments for finished work, work in process or raw material fabricated or procured by Seller in excess of any authorization required under Clause VI, Release Authorization. Notwithstanding the above, payments made under this clause, shall not exceed the aggregate price specified in this order less payments otherwise made or to be made, and adjustments shall be made reducing the payments hereunder for costs of work in process and raw material to reflect on a pro rata basis any indicated loss on the entire contract had it been completed. Payment made under this clause will constitute Purchaser's only liability in the event this order is terminated hereunder. Notwithstanding the fact that Purchaser and Seller may not have agreed upon the price to be paid to Seller for items to which Purchaser takes title under this Clause, title to all such items shall vest in Purchaser immediately upon notice to Seller to that effect, and Purchaser shall thereupon be entitled to possession of such items. Except as otherwise provided in this order, the provisions of this clause will not apply to any cancellation by Purchaser for default by Seller or for any other cause allowed by law or under this order.

XIII    CANCELLATION FOR DEFAULT: If Seller fails (i) to deliver the supplies or to perform the services at the time specified herein or any extension thereof authorized by Purchaser in writing, or (ii) to perform any of the other provisions of this order and does not cure such failure within a period of 10 days (or such longer period as Purchaser may authorize in writing) after receipt of notice from Purchaser specifying such failure. Purchaser may by written notice of default to Seller cancel the whole or any part of the supplies and services ordered without liability; except for completed services and completed supplies delivered and accepted and except under that portion of the order not cancelled. Provided, however, that with respect to finished, in-process or otherwise unfinished work under this order, Purchaser shall have the right to take full title to and possession of all or part of such work immediately upon notice to Seller to that effect, regardless of whether or not final price terms have been agreed upon. If, after notice of default under this clause, it is determined that Seller was not in default, work affected by the cancellation shall be deemed terminated pursuant to Clause XII above and the right and obligations of the parties shall be governed by such clause.

XIV    INSURANCE: Seller agrees to furnish acceptable certificates evidencing adequate workmen's compensation, public liability and property damage insurance coverage when requested by Purchaser. Seller shall defend, indemnify and protect Purchaser against all claims, liabilities, losses and damages due to injury to or death of any person and damage to or loss of any property arising out of improper performance or negligent work under this order or arising out of allegedly defective material or workmanship in the goods or services provided by this order or out of any act or omission of an employee or agent of Seller and its subcontractors while on Purchaser's property or in the course of their employment. When referenced by the purchase order, Clause No. 54 on "Chrysler Corporation Clauses," Form 84-806-1631 shall apply in lieu of this paragraph.

XV    SPECIAL TOOLING: The term "special tooling" as used in this clause shall be deemed to in-

to Purchaser under or in connection with this Purchase Order, and if such markings are affixed, Purchaser shall, without liability, have the right at any time to modify, remove, or ignore any such markings.

XIX   PATENTS: Seller warrants that the sale or use of the articles, goods or material covered by this order, will not infringe or contribute to the infrigement of any patents or copyrights, either in the U.S.A. or in Canada or in countries foreign thereto and that Seller covenants to defend every suit for any such alledged infringement which may be brought against Purchaser or its customers or other privities and to pay all expense and fees of counsel which shall be incurred in and about defending, and all costs, damages, profits or other recoveries in every such suit.

XX   FORCE MAJEURE: This order is subject to modification by Purchaser in event of fire, accidents, strikes, Government Acts or other conditions beyond Purchaser's control.

XXI   LABOR DISPUTES: Whenever Seller has knowledge that any actual or potential labor dispute is delaying or threatens to delay the timely performance of this Purchase Order Seller shall immediately give notice thereof, including all relevant information with respect thereto, to Purchaser.

XXII   RIGHTS, REMEDIES, AND CONSTRUCTION: The rights and remedies herein reserved to Purchaser shall be cumulative and additional to any other or further rights and remedies available at law or in equity. No waiver of a breach of any provision of this order shall constitute a waiver of any other breach or waiver of such provision.

XXIII   FAIR LABOR STANDARDS: Seller hereby agrees to comply with all applicable requirements of Sections 6, 7 and 12 of the Fair Labor Standards Act, as amended in the performance of work hereunder, and with all applicable regulations and orders issued under Section 14 thereof. All invoices (packing slips if no invoices are issued) shall contain the following written assurance:

We hereby certify that these goods were produced in compliance with all applicable requirements of Sections 6, 7, and 12 of the Fair Labor Standards Act, as amended, and of regulations and orders of the United States Department of Labor issued under Section 14 thereof.

XXIV   GOVERNMENT REGULATIONS: EQUAL OPPORTUNITY: During the performance of the Purchase Order, Seller agrees to comply with all the provisions of the Equal Opportunity clause set forth in Title 41 of the Code of Federal Regulations 60-1.4(a). Wherever the term "contractor" is used in said clause, it will be deemed to refer to Seller.

XXV   GOVERNMENT REGULATIONS: OCCUPATIONAL HEALTH AND SAFETY ACT: To the extent that any of the items covered by this Purchase Order are to be used by Purchaser in connection with its manufacturing or assembly operations, including any activities incidental thereto, Seller hereby certifies and represents that said items comply with all applicable rules and regulations issued under the Occupational Health and Safety Act (Public Law 91-596), and Seller agrees to defend, indemnify and hold harmless Purchaser from and against any and all claims, losses, damages, costs and expenses resulting from or arising out of any failure of said items to so comply.

XXVI   GOVERNMENT REGULATIONS: HANDICAPPED, VETERANS, SMALL BUSINESS CONCERNS AND MINORITY BUSINESS ENTERPRISES: To the extent that any of the items covered by this Purchase Order are to be used by Purchaser for fulfillment of Government contracts, this Purchase Order incorporates by reference any applicable clause relating to employment of the handicapped, employment of Veterans, or utilization of Small Business concerns and Minority Business Enterprises which is required under governmental laws, orders, or regulations to be included in any such Purchase Order according to applicable conditions thereof.

# II. REQUEST FOR QUOTATION

II. REQUEST FOR QUOTATION

# II

## REQUEST FOR QUOTATION - CLAUSES & REQUIREMENTS

Clauses set forth on the page(s) immediately following, when referenced by corresponding numbers appearing on the face of the "Request for Quotation" are a part thereof and applicable thereto. In addition the following general requirements must be complied with whenever quotations are being submitted in response to our written requests.

. . . .  Quotation must be in writing or confirmed in writing by date shown.

. . . .  Tooling costs, if applicable, are to be quoted independently from the piece price. The piece price is to be based on annual volume usage and the tools are to be quoted to provide daily tooling capacity as shown. The tooling will be used in industrial processing or directly in manufacturing tangible personal property for sale. It is understood that sales and use taxes, if applicable, will be included in Seller's quoted price.

. . . .  Prices, unless otherwise requested, are to be quoted for both FOB Shipping Points and FOB Chrysler Receiving plant(s).

. . . .  Supplier must base his quotation on tooling and planned production capable of supplying a continous *peak weekly* volume equal to 6.7 times the daily volume shown in the request. (Daily volume x 6.7 = peak weekly requirement). This is to provide mutual flexibility for covering higher schedules at certain periods or indefinitely, if required. If there are any limiting factors that would prevent Supplier from increasing production, these must be identified at time of quoting.

. . . .  It is understood that, Seller agrees that in the event of receiving an order he will use "on-line" teletypes (or such other "on-line" telecommunications method approved by Purchaser) in Purchaser's prescribed format to furnish notification promptly of all shipments made to the Car and Truck Assembly and/or Wyoming plants, Parts Supply Division and such other locations as may subsequently be required, for the purpose of Chrysler's Dynamic Inventory Analysis System (DIAS). Seller further agrees that in the event that unforeseen circumstances render it temporarily impracticable for Seller to maintain this prescribed method he will immediately contact Purchaser's appropriate Production Control activity for alternate instructions.

. . . .  Items qualified in our Request for Quotation as "SAFETY/EMISSION" items involve special considerations and responsibilities in connection with enacted safety legislation.

Accordingly, in submitting his quotation, Seller agrees that in the event of receipt of an order, recognizing the implication of "The National Traffic and Motor Vehicle Safety Act of 1966" and "The Air Quality Act of 1967" and any regulation thereunder, he will furnish material components and/or services (including items provided by sub-sources) involved in the supply of referenced items in compliance with Purchaser's referenced standards and specifications, and will identify them as Safety or Fed items as part of their description when submitting initial samples for approval.

SPECIFIC REQUIREMENTS:

4    Quantity indicated required for current production.

6    Furnish material weights and cost per pound.

17    Blanket requirements for Trucks from date of order and continuing on a year-to-year basis thereafter.

19    Include in Quotation: die model and checking fixture cost, build time, source used and part tooling time after receipt of die model on each part.

20    Quote separate prices for U.S. requirements only, Canadian requirements only and total corporate requirements as indicated.

B4-805-0191                                                              (10-76)

20A    Quote separate prices for Canadian requirements only (Canadian currency), and total corporate requirements as indicated (U.S. & Canadian currency).

21    Blanket requirements from date of order and continuing on a year-to-year basis thereafter.

22    Quantities indicated include Canadian requirements.

24    Furnish tool lineup and tool source.

28    The attached "Assurance-Nonsegregated Facilities" is required by government regulation. Please execute and return one copy with your quotation. Failure to comply will render your bid non-responsive.

31    This requirement, which may continue for more than one model series/calendar year, is intended for placement as an open-end Purchase Order. Subject to Chrysler requirements and satisfactory performance of Seller following this award, Seller will continue furnishing the item(s) covered herein and is invited to prepare its quotation based on this expectation.

34    When quoting for special tools, include quotation for designing and building receiving inspection gauge(s) - one set to be built by supplier or to his instructions - as per requirements enclosed, Receiving Inspection Gauge Notice, Form No. 84-806-1737.

36    Equal opportunity certifications - by submission of this bid or proposal, offeror certifies as follows:

    1. Except as noted below, up to the date of this offer, no advice, information or notice has been received by the offeror from any Federal Government Agency or representative thereof that the offeror or any of its division or affiliates or known first-tier subcontractors is in violation of any of the provisions of Executive Order No. 11246 of September 24, 1965, Executive Order No. 11375 of October 13, 1967, or rules and regulations of the Secretary of Labor (41 CFR, Chapter 60) and specifically as to not having an acceptable affirmative action program or being in noncompliance with any other aspect of the Equal Employment Opportunity Program. It is further certified and agreed that should there be any change in the status of circumstances certified to above between this date and the date of expiration of this offer or any extension thereof, the Government Contracting Officer cognizant of this procurement will be notified forthwith.

    2. Offeror has complied with all applicable rules and regulations of the United States Department of Labor concerning the establishment and implementation of an affirmative action compliance program, including, but not limited to, all requirements of "Order No. 4" of the United States Department of Labor (41 CFR 60-2).

38    Quote to materials standards of unexposed surface finish, Class B;I;U; or of exposed surface Class UT. Your quotation must specify Class to which quoted.

38A    Unless otherwise precluded by surface specifications or manufacturing processes, quote to material standards of exposed surface finish Class UT, or of equal quality. Your quotation must specify Class to which quoted.

39    This assembly although its design, engineering and/or component parts and materials are controlled by Supplier, must conform in all respects as a complete operational unit to Chrysler engineering standards as applicable. Chrysler Corporation must be given prior notification of any intended changes to this assembly in accordance with the terms of applicable purchase order(s).

40    This request for quotation is based upon advance specification and volume data; therefore, any resulting purchase order will be subject to review and the price subject to renegotiation in the event the specifications and volume when formally established are different from those now contemplated and reflected herein.

41    In the event of an order resulting from this quotation, the "terms and conditions" of Purchaser's order will prevail over any "terms and conditions" of Supplier's quotation and confirmation of order.

74     The enclosed "Request for Quotation" rider — Form 84-806-1767 - Raw Material Data — must be completed and submitted with your quotation.

162    Payment for supplier tooling assumes that parts made therefrom will be acceptable both dimensionally and functionally. Purchaser reserves the right to withhold payment for tooling on this part until samples from such tooling are fully approved, as evidenced by signed Initial Sample Inspection Report, Form No. 84-235-4434, and also Initial Sample Laboratory Report, Form 84-235-4435.

166    "Clean Air and Water Certification - With submission of his bid or proposal, offeror will provide written certification as follows: (a) Any facility to be utilized in the performance of this proposed contract has □, has not □, been listed on the Environmental Protection Agency List of Violating Facilities. (b) Offeror will promptly notify Purchaser, prior to award, of the receipt of any communication from the Director, Office of Federal Activities, U.S. Environmental Protection Agency, indicating that any facility which he proposes to use for the performance of the contract is under consideration to be listed on the EPA List of violating Facilities. (c) Offeror will include substantially this solicitation certification, including this paragraph (c), in every nonexempt subcontract."

197    Seller is to reflect firm labor economics in his quotation.

208    "Seller agrees that during the performance of this Purchase Order he is bound by and will comply with all provisions of : (a) the EMPLOYMENT OF THE HANDICAPPED Clause set forth in S 741.3 of Title 20 of the Code of Federal Regulations and (b) the EMPLOYMENT OF VETERANS Clause set forth in S 50-250 of Title 41 of the Code of Federal Regulations."

211    Includes commitment for potential service requirements of Purchaser's Parts division. Special packaging for service, if required and not specified herein, will be separately requested and negotiated. Foreign suppliers must mark service requirements appropriately, "Made in (show country of origin)". To ensure proper identification of shipments, Seller's packing slips shall always include applicable Chrysler release number.

214    Quotation to be based upon current material and labor economics and thereby not reflect any anticipatory cost increases.

218    If portion(s) of wiring assemblies covered by this inquiry/purchase order will be moulded from multiple cavity tooling, initial samples of such portion(s) from each cavity mould must be submitted appropriately identified by cavity for Purchaser's approval prior to production runs.

259    "Seller agrees to establish and conduct a 'Small Business Subcontracting Program' in compliance with the provisions of ASPR 7-104.14(B); a 'Labor Surplus Area Subcontracting Program' in compliance with the provisions of ASPR 7-104.20(B); and a 'Minority Business Enterprises Subcontracting Program' in compliance with the provisions of riders entitled 'Minority Business Enterprises Subcontracting Program' (Form DD-1 (4-1-72)) and 'Utilization of Minority Business Enterprises' (Form DD-2 (6-72))."

260    "Previous part number (_____); Seller to advise feature cost differences."

# III. STANDARD CLAUSES

# III

# CHRYSLER CORPORATION

## PURCHASE ORDER RIDER

### STANDARD CLAUSES

**SELLER UNDERSTANDS THAT THOSE CLAUSES SET FORTH HEREIN AND REFERENCED BY CORRESPONDING NUMBERS APPEARING ON THE FACE OF THE PURCHASE ORDER ARE A PART THEREOF AND APPLICABLE THERETO.**

# PURCHASE ORDER CLAUSES

4 Special tools required to produce the above mentioned part shall be furnished by and remain the property of the Seller. It is understood and agreed that these tools will not be destroyed or otherwise disposed of without Purchaser's written consent. Seller agrees not to alter the tool line-up in any respect, except with the consent of Purchaser in writing.

5 Special tools required to produce the above part are covered by purchase order number (fill in number).

5B Action necessary to furnish special tools required for the above part(s) is to commence immediately. A separate tool purchase order No.———is being issued.

8 In accepting this purchase order, Seller agrees to furnish to Chrysler inspection location sample parts made from the tooling established hereby, in accordance with Purchaser's Initial Sample Shipping Instructions, Form No. 83-175-0014 and applicable Sample Due Date. Seller further agrees that such samples will be accompanied appropriately by applicable checking devices and by covering documentation in Purchaser's prescribed format.

14 Tools, purchased under this order as an end item when completed and paid for by Purchaser, become Purchaser's property and are subject to all the provisions of Clause XI of this order. In addition, each tool is to be clearly stamped or stenciled with a tool number and Purchaser's part number of the part which the tool is intended to produce. In order to expedite payment, the following statement is to appear on Seller's invoice.

 Tools as invoiced are completed, stamped as to Chrysler's tool and part number, and labeled "Property of Chrysler Corporation".

 Seller agrees not to alter the tool line-up in any respect except with the consent of the Purchaser in writing.

 Seller is to segregate and list as individual items on invoices all charges applying to designing and tryout costs, tooling aids cost (patterns, tool or die moulds, templates, Tamastone moulds, master hobs, etc.) and any overtime premium, which are a part of the price shown on this purchase order.

14A This purchase order is issued as matter of record to cover the physical transfer of the following tools or pattern equipment, owned by Purchaser, to you for the production of our parts.

 (It is not issued to cover the purchase or sale of any material or service.)

 It is understood and agreed that the above tools or equipment although transferred to you are to remain the property of Purchaser and to be maintained in accordance with Clause XI, under which Seller assumes responsibility for rigging, dismantling and loading costs. Value of tools for insurance purposes $(fill in dollar amount of value).

14B Equipment to produce the above part, having been completed and paid for by Purchaser is Purchaser's property and is to be maintained in accordance with Clause XI. All repairs and replacement of such equipment is to be at Seller's own expense, but any cost resulting from engineering changes shall be at Purchaser's expense.

14D The above tools when completed are to remain in Seller's possession as Seller's property under Seller's control, but otherwise the requirements of Clause XI shall apply.

14E Pattern equipment provided or paid for by Purchaser remains Purchaser's property and is to be maintained by Seller as prescribed in Clause XI. Minor repairs, when necessary, are to be made at Seller's expense; major overhauls and replacement of worn out equipment at Purchaser's expense.

14F Cost of tooling (or patterns) in the amount of (fill in total dollar amount) is to be amortized in the piece price at the rate of (fill in unit amount of amortization) per (fill in unit i.e., each, hundred, thousand) over the first (fill in total number of units to which amortization is to be charged).

(10-76)

**14G**   Tools or patterns used to make the above part when fully amortized are to become Purchaser's property and are to be maintained by Seller in accordance with Clause XI.

**14H**   Tools or patterns when fully amortized are the property of the Seller but are to be maintained in accordance with the provisions of Clause XI.

**14K**   The above zinc alloy tools when completed are to remain in Seller's possession as Seller's property subject to this clause. Such tools are to be used exclusively on Purchaser's orders and are to be stored, maintained so as to furnish parts satisfactory to Purchaser's inspection and fully covered by insurance at all times without expense to Purchaser; and may not be destroyed or otherwise disposed of,without Purchaser's written consent for a minimum period of six (6) months after completion and acceptance of the parts produced from these tools. Any subsequent proposal to dispose of such tools must be submitted in writing to and approved by Purchaser. Purchaser will not, without its written consent, be liable for any additional charge in connection with the retention of the tools by the Seller.

At its option, Purchaser may buy and take possession of the above tools at any time upon payment to Seller for the zinc alloy used in the tools based on the weight of the finished tools and prevailing market price of prime zinc on the East St. Louis Prime Western Zinc Market at the time of purchase.

Each tool is to be clearly stamped or stenciled with a tool number and Purchaser's part number so as to make it identifiable with Purchaser's part which it is intended to produce.

**14M**   This order/change is authorization to modify, supplement and/or adapt tools that are Purchaser's property and subject to all provisions of Purchaser's General Terms and Conditions Clause XI. Payment for work authorized will be on basis Net 30th Inst., 10th & 20th Prox. In order to permit acceptance and expedite payment of Seller's invoice, the following assurance statement must appear thereon: "Seller hereby assures that the modifications, additions and/or services to special tooling included in this invoice have been completed in accordance with Seller's referenced purchase order or purchase order change."

**15**   Patterns used to make the above part are the property of Seller and are to be maintained in good working condition by the Seller to produce castings satisfactory to Purchaser's inspection. Patterns are not to be destroyed without Purchaser's written approval.

**16**   Seller is to segregate and list as individual items on invoices all charges applying to designing and tryout costs, tooling aids cost (patterns, tool or die models, templates, Tamastone moulds, master hobs, etc.) and any overtime premium, which are a part of the price shown on this purchase order.

**17**   Invoice(s) covering tools and/or patterns, etc., on this order must show exact physical location by City, Township or Village and State where the tools will be used in production. Should the tools on this order be transferred to another location, this fact must be reported to the buyer whose name appears on the face of this order.

**17A**   "Physical location of these tools will be at (fill in city and/or township, or village and state). Any subsequent transfer of tools to another location must be reported to Purchaser's buyer immediately."

**18**   Confirming Retroactive Price (increase or decrease) not provided within Order No. (fill in) between above dates.

**19**   This material is shipped subject to Purchaser's standard inspection practice and must be suitable in temper, finish and/or physical characteristics for the parts or use intended - otherwise material will be returned for replacement or full credit.

**20**   Confirming (letter of adv. authorization - date).

**21**   This purchase order incorporates terms of (insert contract number and date, or other descriptive information). If there is any conflict between the terms of the respective documents, the terms of the referenced (insert contract number, agreement, etc.) shall govern.

(10-76)

23     This material is purchased for resale or for an exempt purpose and is therefore exempt from state and local sales or use taxes. Retail License Nos.: California SZ-OHA-30-606877; Illinois 798-931; Kentucky 108880; Michigan A38-0419960; Missouri 240-3907; Pennsylvania 99-04171; Direct Payment Permit Nos.: Indiana 101385-08; New York DP-000224; Ohio (Twinsburg Stamping Plt.) 98-000293; Ohio (Amplex Van Wert Plt.) 98-000292; Ohio (Toledo Machining Plt.) 98-000294; Ohio (Fostoria Foundry Division) 98-001848; and Ohio (Dayton Plant I) 98-001782.

27     Invoice on theoretical weight basis.

27A     Invoice on actual weight basis.

29     Steel to be produced by (     ).

31     Seller shall invoice on actual meter reading basis at time of delivery.

32     Price established in this purchase order is based upon anticipated minimum released quantity for fabrication, collective for the plants referenced in the release (and excepting first and/or final release) of (   ) pieces.

33     Price established in this purchase order is based upon anticipated minimum released quantity for shipment, collective for the plants referenced in the release (and excepting first and/or final release) of (   ) pieces.

34     The above is to comply with specifications and be satisfactory to our inspection. You warrant this unit to give satisfactory performance in service and when applied to our chassis you undertake and assume full responsibility for the satisfactory performance of any such chassis so converted, to the the extent that the operation and performance is affected by such conversion. You also agree to provide at a reasonable price, any part required for servicing over a period of five years from delivery date.

35L     Seller's added cost for Purchaser's Parts Division for (     ).

35M     Above item reflects Service Parts Supply Division requirements.

35P     Seller's added cost to process for Purchaser's Parts Supply Division as per "Vendors Processing Sepcifications", dated (fill in date and buyer's name).

38     This order and price (or prices) cover this part (or these parts) as a *Special Equipment Item* (or items) only.

40     Purchaser assumes liability for payment of applicable State and Local Sales and Use Taxes and therefore no tax shall be invoiced by Seller. Michigan Retail License No. A38-0419960; Direct Payment Permit Nos.: Indiana 101385-08; New York DP-000224; Ohio (Twinsburg Stamping Plt.) 98-000293; Ohio (Amplex Van Wert Plt.) 98-000292; Ohio (Toledo Machining Plt.) 98-000294; Ohio (Fostoria Foundry Divsion) 98-001848; Ohio (Dayton Plant I) 98-001782.

41     Do not invoice Michigan Motor Fuel Tax or Michigan Diesel Motor Fuel Tax as Purchaser is responsible for determining taxable usage and remitting payment thereon to the Michigan State Tax Authorities under Distributor License No. 471 or User License No. D-2371, as appropriate.

50     This material will be used in industrial processing or directly in manufacturing tangible personal property for sale. It is understood that State and/or Local Sales or Use Taxes, if applicable, are included in the above price and must be shown, and identified by taxing jurisdiction, separately from the material price on the Seller's invoice.

50A     This material will be used in industrial processing or directly in manufacturing tangible personal property for sale. It is understood that Provincial Sales or Use Taxes, if applicable, are included in the above price and must be shown, and identified by taxing jurisdiction, separately from the material price on the Seller's invoice.

(10-76)

53 Purchaser may export packaged items prior to inspection. Seller agrees to indemnify Purchaser against shortages, defects or wrong material discovered upon arrival at ultimate destination, and against such additional costs, including repairs, transportation and duty, which may arise in connection therewith.

56 This material is subject to applicable State Motor Fuel Tax and Inspection Fees of the jurisdiction to which shipment is made which must appear as separate items on your invoice. Seller affirms that he will make the necessary tax return to the state.

57 FEDERAL EXCISE TAX EXEMPTION CERTIFICATE: Purchaser hereby certifies that it is a manufacturer or producer of articles taxable under Chapter 32, Sub-chapters A and B, of the Internal Revenue Code and of articles not taxable thereunder, and holds Certificate of Registry No. 38 73 9507 A, issued by the District Director of Internal Revenue at Detroit, Michigan and that the article or articles specified in the accompanying order will be used by it as material in the manufacture or production of, or as a component part of such article or articles to be manufactured or produced by Purchaser. It is understood that for all purposes Purchaser will be considered the manufacturer or producer of the articles purchased hereunder, and (except as specifically provided by law) must pay tax on resale or use, otherwise that as specified above, of the articles purchased hereunder. It is further understood that the fraudulent use of this certificate to secure exemption will subject Purchaser and all guilty parties to the penalties provided by law.

57A FEDERAL EXCISE TAX EXEMPTION CERTIFICATE: Purchaser hereby certifies that it is a manufacturer or producer of articles taxable under Chapter 32, Sub-chapters A and B, of the Internal Revenue Code and holds Certificate of Registry No. 38 73 0507 A, issued by the District Director of Internal Revenue at Detroit, Michigan, and that the article or articles specified in the accompanying order will be used by it as material in the manufacture or production of, or as a component part of such article or articles to be manufactured or produced by Purchaser. It is understood that for all purposes Purchaser will be considered the manufacturer or producer of the articles purchased hereunder, and (except as specifically provided by law) must pay tax on resale or use, otherwise than as specified above, of the articles purchased hereunder. It is further understood that the fraudulent use of this certificate to secure exemption will subject Purchaser and all guilty parties to the penalties provided by law.

58 PREFERENCE FOR CERTAIN DOMESTIC COMMODITIES: The Contractor agrees that there will be delivered under this contract only such articles of cotton, woven silk and woven silk blends, spun silk yarn for cartridge cloth, or wool (whether in the form of fiber or yarn or contained in fabrics, materials or manufactured articles) as have been grown, reprocessed, reused, or produced in the United States, its possessions, or Puerto Rico; provided that this clause shall have no effect to the extent that the Secretary has determined as to any such articles that a satisfactory quality and sufficient quantity cannot be procured as and when needed at United States market prices.

59A The Federal Excise Tax applying to this material is a part of this purchase order and is to be invoiced to Purchaser and shown as a separate item on the invoice; Seller will make and render the proper return to the Federal Government, covering same.

60 $25.00 minimum billing per shipment. Material to be shipped must be $25.00 value notwithstanding any less quantity shown on the release issued by Production Control. Subsequent shipments to be made only when cumulative released quantity for each plant exceeds quantity already shipped.

60A Minimum billing ($          ).

61 The Insurance Provisions of the Plant Engineering General Conditions shall apply in lieu of Item XIV of the "Terms and Conditions" entitled "Insurance" on Form 84-806-1652.

(10-76)

62 An "Inspection Conformance Certificate for Material Shipped" on forms furnished by Purchaser will be completed and returned by Seller for each part when required by our Production Control Department, and our Riders entitled "Government Contract Provisions" (Form No. 801-8021 (4-74)) and "Duty-Free Entry - Canadian Supplies" (Form No. DP-15 (4-71)) shall be considered a part of this purchase order.

63 Each shipment against this purchase order must be accompanied by (1) Special Customs Invoice (Form No. 5515) in triplicate, (2) Commercial Invoice in triplicate, and (3) all documents must bear the notation "For Customers Clearance Purposes - Notify *(Insert name of Customs Broker)"*.

64 Purchaser reserves the right to increase quantities called for herein by an additional quantity of not more than 100%. Such additional quantities can be authorized by written release from Production Control specifying quantity and contract number for which released. The price of the additional quantities shall be no higher than the unit price set forth in this purchase order. This option expires no later than one year after date of this purchase order.

64B Purchaser reserves the right to increase quantities called for herein by an additional quantity of not more than 50%. Such additional quantities can be authorized by written release from Production Control specifying quantity and contract number for which released. The price of the additional quantities shall be no higher than the unit price set forth in this purchase order.

65 Seller shall show purchaser's Internal Revenue Service Employer Identification No. 38-0419960 on all invoices submitted to United States Customs.

66 This Purchase Order is cancelled with no cost to Chrysler effective (      ).

66A This item is cancelled effective (      ).

66B "This purchase order is being cancelled with no cost to Chrysler effective point to be determined by Production Control for (      )."

68 Seller shall indemnify and hold Purchaser harmless from and against any and all claims, losses, liabilities, damages and expenses, sustained or incurred by Purchaser as a result of Seller's failure to deliver the supplies or perform the services covered hereunder, or any part thereof, in accordance with the provisions of this order. It is mutually understood and agreed that this clause is not intended to limit in any way Purchaser's rights and remedies against Seller and is in addition to any other or further rights and remedies available to Purchaser, including, but not limited to, the rights and remedies of Purchaser under Paragraph XIII, "Cancellation for Default" of the Terms and Conditions of this order.

69 Do not invoice Missouri Motor Fuel Tax as Purchaser is responsible for determining taxable usage and remitting payment thereon to the Missouri Department of Revenue under authority of Distributor's License No. 885. Compliance with the Missouri Oil Inspection Law, including payment of inspection fees, will be made by Seller prior to delivery.

72 FEDERAL EXCISE TAX

DOMESTIC DESTINATION: If the destination of the vehicle as indicated by the Government Bill of Lading is within the United States, the Federal excise tax applying to the truck bodies purchased hereunder is a part of this purchase order and is to be invoiced to Purchaser and shown as a separate item on the invoice.

EXPORT DESTINATION: If the destination of the vehicle as indicated by the Government bill of Lading is within any foreign country or possession of the United States, Seller is notified that the truck bodies purchased hereunder are purchased tax-free for export, or for resale for export, and will be exported in due course. Therefore, no Federal excise tax is to be invoiced to Purchaser.

UNKNOWN DESTINATION: If the Seller is not informed as to whether the destination or

(10-76)

the vehicle is within or without the United States, Seller is notified that the truck bodies purchased hereunder are purchased for export, or for resale for export. However, the applicable Federal excise tax is a part of this purchase order and is to be invoiced to Purchaser and shown as a separate item on the invoice pending submission by Purchaser to Seller of proof of exportation.

76 Purchaser (Chrysler) owned containers are to be used to ship material to Seller and Seller shall use same containers to return material to Purchaser in the performance of this purchase order. Seller's packing slips and invoices must indicate number of containers returned with shipment and plant(s) to which returned. Purchaser will invoice Seller at Purchaser's standard cost for each container shipped and will refund same amount to Seller for each container returned.

76A Purchaser owned containers are to be used to ship material to Seller. Seller will be responsible for such containers while in his care or under his control. Purchaser will invoice Seller at Purchaser's standard cost for each container shipped and will refund the same amount to Seller for each container returned to Purchaser's shipping plant F.O.B. (          ).

78 Our Rider entitled United States/Canadian Purchase Order Rider 'B' (Form No. 84-180-7310) shall be considered a part of this purchase order.

80 Exempt from Federal Excise Tax.

82A Blanket order for the approximate percentage as indicated below for our following Plant requirements for our _____ Model Year.

82B Blanket order for the approximate percentage as indicated below for our following plant requirements from _____ to _____ .

82C Blanket order for approximately 65-100% of our following plant requirements for our Model Year.

82D Blanket order for a portion of our following plant requirements for our_____Model Year.

82E Blanket order for approximately 65-100% of our following plants requirements from _____ to _____ .

82F Blanket order for a portion of our following plant requirements from_____to_____.

82G "Blanket order for the approximate percentage as indicated below of our following plant requirements for Model Years_____through_____."

82J This order applies to our following plant requirements only.

82X Blanket order for approximately 65-100% of Chrysler requirements commencing from the date shown on the face of this order and continuing on a year to year basis thereafter. This purchase order is automatically cancelled at no cost to Chrysler Corporation if no releases are issued under this order during any twelve month period.

82Y Blanket order for a portion of Chrysler requirements commencing from the date on the face of this order and continuing on a year to year basis thereafter. This purchase order is automatically cancelled at no cost to Chrysler Corporation if no releases are issued under this order during any twelve month period.

83 You are to purchase from Chrysler Corporation (fill in description of part) at (fill in amount) which is included in the above price.

84 Gauges, layouts, tooling aids, etc., necessary to inspect the production part must be supplied in conjunction with sample part submissions for certification. Additionally, requirements as reflected on the attached (or previously provided) Receiving Inspection Gauge Notice must be fulfilled to complete the gauge requirements of this order.

(10-76)

85   This purchase order cancels and supersedes our purchase order number (insert cancelled P.O. No.) and assumes our obligation for any undelivered balances or unbilled charges due under the cancelled purchase order.

86   This order pertains to Safety/Emissions required item. In accepting the order, Seller agrees to identify all related shipping containers with Purchaser's "Safety Item" identification label and to enter on all related packing slips the following certification "Material in this shipment" complies with Chrysler's requirements for controlling the quality of Safety/Emissions items".

88   The Vehicle Safety/Emissions Item Notice Rider (Form No. 84-806-1725) shall be considered a part of this purchase order.

92   NON-RETURNABLE CONTAINERS: Non-Returnable Container-Materials ordered will be shipped in or on Seller's adequate non-returnable containers. Containers will be shown as a separate item on Seller's invoice at $(fill in amount) each.

94   RETURNABLE CONTAINERS, EXCEPT REELS AND SPOOLS OVER $600 - F.O.B. CHRYSLER PLANT: Returnable Container-Materials ordered will be shipped in or on Seller's adequate returnable containers, each container to be plainly identified as such in accordance with Purchaser's Packaging and Shipping Instructions and so referenced on Supplier's packing slips. Containers will be invoiced by Seller at $(fill in amount) each. Al Seller within immediate vicinity of Purchaser's plant will be notified to pick up empty containers. Upon failure by Seller to pick up empty containers after notification and where Seller is located outside immediate vicinity of Purchaser's plant, Purchaser will ship containers to Seller, F.O.B. Purchaser's Plant. Seller will refund to Purchaser $(fill in amount) for each container. Seller will reimburse Purchaser for any prepaid freight and shipping costs from F.O.B. point.

94A   RETURNABLE AIR CUSHION DUNNAGE BAGS - SELLER'S PLANT: Returnable Air Cushion Dunnage Bags - Materials ordered will be shipped protected by Seller's cushion dunnage bag(s), each bag to be plainly identified as such in accordance with Purchaser's Packaging and Shipping Instructions and so referenced on Supplier's packing slips. Bags will be invoiced by Seller at (see below) each and returned by Purchaser to Seller, F.O.B. Seller's Plant, normally in the same rail cars or otherwise at Purchaser's expense. Seller will refund to Purchaser (see below) for each bag when returned.

94M   RETURNABLE CONTAINERS - F.O.B. SELLER'S PLANT: Returnable Container - Materials ordered will be shipped in or on Seller's adequate returnable containers, each container to be plainly identified as such in accordance with Purchaser's Packaging and Shipping Instructions and so referenced on Supplier's packing slips. Containers will be invoiced by Seller at (see below) each. Purchaser will ship containers to Seller, F.O.B. Seller's Plant. Seller will refund to Purchaser (see below) for each container.

95   RETURNABLE CONTAINER - REELS AND SPOOLS: Returnable Container - Reels or Spools used to ship material ordered will be paid for at the invoiced price (in no event to exceed manufacturer's current published prices or $600.00 each, whichever is less) subject to return for credit at the same price, F.O.B. Purchaser's plant. Charges for Reels or Spools must be shown on Seller's invoice as a separate item. As a means of identification and to facilitate return, Reels or Spools must be plainly marked in accordance with Purchaser's Packaging and Shipping Instructions and so referenced on Supplier's packing slips.

96   CHRYSLER RETURNABLE CONTAINERS: (Fill in name of Container) property of Chrysler Corporation are to be used to deliver the material. Seller will be responsible to account for such containers while they are in his care or under his control. In the event of damage, they are not to be scrapped nor repairs effected that would be at Purchaser's expense, without Purchaser's written authorization. Containers to be shipped to Seller, F.O.B. (fill in Purchaser's or Seller's Plant) and invoiced by Purchaser at Purchaser's standard cost for each container. Purchaser will refund same amount to Seller for each container returned to Purchaser.

(10-76)

**96M** (Fill in name of container) property of Chrysler Corporation are to be used to ship the material ordered. Seller's packing slips and invoices must indicate number of containers returned with shipments. In the event of damage, they are not to be scrapped nor repairs effected that would be at Purchaser's expense, without Purchaser's written authorization. Containers to be shipped to Seller, F.O.B. Seller's plant. Purchaser will invoice Seller at (see below) for each container shipped and will refund same amount to Seller for each container returned.

**97** RETURNABLE CONTAINERS IN ASSIGNED RAIL CARS: Material shipped to Purchaser's plant in racks, crates, trays or bins returnable free in the same rail cars - containers are to be returned in the same rail cars at no charge to Purchaser. If such containers are returned by other means, Purchaser will be responsible for return freight charges and Seller, upon presentation of proof that it has paid any such charges on behalf of Purchaser, shall be reimbursed by Purchaser therefor.

**98** In consideration of the payment for the design, development and/or other services set forth in this purchase order, Seller hereby grants unto Purchaser a royalty-free non-exclusive, non-cancellable license under any patent or patents now or hereinafter owned or controlled by Seller to manufacture, have manufactured, use and/or sell devices and to practice methods or processes utilizing any and all inventions included in or useful in the production of any device designed, developed, drawn, devised or produced under this purchase order, as well as under any copyright acquired by the Seller on work performed under this purchase order.

**100** Chrysler Corporation to furnish (quantity) (description) subject to a 'Consigned Material Receipt Agreement' executed by Seller (date).

**100A** Chrysler Corporation to furnish (see below) on consignment to Seller in the performance of this purchase order.

**101** You will upon completion of this order, automatically return and indicate on your shipper all excess materials properly segregated and identified to Chrysler Parts Supply Division, Center Line, Michigan.

**102** In accepting this order, Seller certified that it is qualified as a public warehouse in accordance with applicable federal and state laws and that Seller will reimburse the Purchaser for such amount of property tax and appropriate penalties and interest, etc., which the Purchaser may be required to pay on personal property intended for shipment out of the state, stored in Seller's warehouse, and on which property the exemption for taxation is not allowed by the taxing authorities on the basis that Seller's warehouse does not meet the qualifications as set forth above.

**107** "Unless otherwise certified on this purchase order for specific states or certain of our receiving locations, this material is subject to applicable state and/or local sales or use tax, if imposed, of the jurisdiction to which shipment is made and must appear on your invoice as a separate item if Seller is authorized to collect such tax."

**111** Copy of packing slip must accompany Seller's invoice on shipments to other than Purchaser's plants.

**112** Immediately upon receipt of material for performance under this purchase order, Seller shall furnish a receiving report reflecting this order number, and including part number, quantity and condition of material to Purchaser's invoicing address.

**118A** Set-up charges (insert dollars) per release.

**118B** Set-up charges (insert dollars) one time only.

**118C** Set-up charges (insert dollars) per shipment.

**118D** Set-up charge (insert dollars or word "Allowed") followed by buyer's instruction.

**121** Bill the following as separate item(s) on your invoice (fill in)."

(10-76)

127    Seller shall prepackage Export-Import Division shipments in accordance with Purchaser approved specifications and bill as separate item on invoice at (see below) each part.

128    "Shipping Point (city) (province) (country)".

133    Seller understands and agrees that amounts invoiced under this purchase order shall be based on actual cost incurred and shall be subject to audit, including charges incurred by Seller with any subcontractor whom Seller may employ. Purchaser shall have access to and the right to examine, as necessary, any of the books, documents and records, of the Seller or subcontractors employed, pertaining to or supporting amounts invoiced. Purchaser shall have the right to refund of any amounts paid exceeding that determined by such audit or audits to be due Seller in accordance with the purchase order. The words "Subject to Audit" shall also be added in the price column of the requisition and purchase order.

134    Chrysler Corporation will furnish all finished Art Work required hereunder. Printing plates shall be furnished and paid for by (insert Seller or Chrysler) as designated with Clause No. 134 on purchase order. When furnished and paid for by Seller, Chrysler Corporation reserves the right, at its option, to purchase said plates subsequently at a mutually agreed price. Seller further agrees to advise Chrysler Corporation of the location and user of said plates at all times during the life of this order. Seller also agrees upon termination of this order for any reason, to advise Chrysler Corporation in writing of the status, including inventory, of any and all printing and printed matter, including but not limited to printing plates and containers for material, bearing the trademark and/or marking involving Chrysler Corporation identification of Chrysler Corporation identification. Seller will take necessary steps to assure that no unauthorized or improper use of said trademark and/or marking identification of Chrysler Corporation is made, and to advise Chrysler Corporation in writing of location and final disposition of all such material, including plates not subsequently purchased by Chrysler Corporation, and steps taken to deliver to Chrysler Corporation or destroy such material in the event that remarking or relabeling of same so as to eliminate any Chrysler Corporation identification is not possible.

138    On all invoices, packing slips and shipping containers, Seller must prefix part number with (    ).

139    Immediately upon receipt of consigned material, a receiving report properly signed, verifying quantities and condition of material must be mailed to Parts supply Division, Accounting, Box 2716, Detroit, Michigan 48231, Attn: Accounts Payable-Supervisor:

You will, upon completion of this order, automatically return and indicate on your shipper all excess materials properly segregated and identified to Chrysler Parts Supply Division, Center Line, Michigan.

140    Overshipments of service requirements are not to exceed five percent. Any excess will be returned at Supplier's expense.

141    Price is based on fabrication at one time of entire quantity on order to be released by procurement for shipment within a period of (insert number) months from date beginning (insert date) which is the requested initial shipment date. All balances due on order not released for shipment during this period will be shipped automatically at the end of the (insert ending) month.

142    Supplier to advise Carrier that freight bills must be made up as follows: Consign to: Chrysler Corporation, Parts Supply Division, P.O. Box 1718, Detroit, Michigan 48231, C/O (Parts Supply Div. or Receiving Firm).

143    Run with production.

146    "Service Material Code (    ).

148    Seller understands and agrees that payment by Purchaser of premium costs established under this purchase order is conditional upon satisfactory performance by Seller in accor-

dance with the sample promise date most recently agreed and referenced herein. (In the event that Seller does not provide acceptable samples by or on this date, payment of the premium costs is subject to reduction or cancellation). Seller understands further that premium amounts invoiced in accordance with this order shall in no instance exceed the actual cost incurred by Seller, including charges incurred by Seller with any subcontractor whom Seller may employ.

149    Charges incurred by Seller with any subcontractor are to be evidenced by copy of subcontractor's invoice, which is to be submitted by Seller to Purchaser in support of Seller's charges.

151    Payment for the above tooling and changes thereto is contingent upon approval of samples from this tooling, as specified on the above referenced part purchase order, and will be made directly by Chrysler. Any negotiation pertaining thereto will be handled by the undersigned buyer.

152    Seller must notify buyer, in writing, when a plating, heat treating or finishing source is changed.

153    This purchase order originally issued unpriced is hereby amended to reflect a non-uniform price adjustment and set forth the resultant inclusive price for application at indicated effective date/point. (add date, etc.)

154    You are to purchase component parts listed below from (insert component supplier name(s) and address).

155    Prices, as stated, to change letters indicated, have been included in the above assembly price. Samples to change letters indicated will be available to you as noted. Follow up for timely submission of samples to indicated change letter, as well as for subsequent changes, will be your responsibility. (Insert component part number, change letter, price and sample date.)

156    Prices, "to be determined" will be transmitted to you when finalized.

157    You are alerted that changes to the assembly through *(insert latest change letter aware of)* are currently being processed to you by Material Change Notices.

158    Initial samples from production tooling to the latest possible change that can be incorporated within our timing requirements, promised (insert date).

160    Engineering changes, affecting price of above component parts and cost of related tooling, beyond the change letter indicated to be negotiated and finalized by you directly with the component supplier.

161    This order having been placed on advance specifications and volume data, it is agreed between Seller and Purchaser that the contract is subject to review and the price may be renegotiated in the event the specifications and volume, when formally established, are different from those now contemplated and reflected herein.

162A    Payment for supplier tooling assumes that parts made therefrom will be acceptable both dimensionally and functionally. Purchaser reserves right to withhold payment for tooling on this part until samples from such tooling are fully approved as evidenced by signed Initial Sample Inspection Report. Form No. 84-235-4434, and also Initial Sample Laboratory Report, Form No. 84-235-4435.

163    Partial payment of____% / $____(to be made) (has been made) upon approval of Purchaser's Purchasing Agent. Balance of____% / $____payable net upon approval of samples from the tooling. Notwithstanding the first sentence of Clause No. 14, full title to all tooling respecting which Purchaser has made partial payment will vest in Purchaser immediately upon such payment, and the terms and conditions of the purchase order governing shall apply.

167    This purchase order is issued on the understanding that Seller will complete the tooling and submit acceptable production samples not later than the date stated herein. Purchaser reserves the right to audit Supplier's tooling charges, which shall be based on actual cost. It

(10-76)

will be necessary for Supplier, *or any subcontractor whom Supplier may be using,* to maintain accurate records consisting of, but not limited to, such documents as employee clock cards, time tickets, job summaries, payroll records, purchase orders, vendor invoices and material requisitions. These records must be maintained irrespective of billings by the sub-contractor(s), which cannot be accepted automatically by Purchaser as evidence of actual cost.

**168** Seller understands and agrees that invoiced prices will be Seller's prices, as published for general use, and in effect at time of shipment, subject to any discount as contained herein. Such prices are subject to review and audit verification for accuracy, by Purchaser as necessary. Seller shall, upon request, make available to Purchaser such published prices and appropriate records supporting amounts invoiced.

**171** Price agreed to as contained herein will provide the basis for a purchase order to be issued to you by our assembly supplier(s) for our Stamping & Assembly Division requirements.

Said purchase order(s) will be issued for the component to the part price and engineering change letter as agreed with you by the assembly supplier. Release for these parts, and subsequent engineering changes thereto, will be processed to you by our assembly supplier(s).

Any revision to part price necessary due to engineering changes subsequent to those specified herein, will be negotiated by you with our assembly supplier(s) and, as applicable, will also be reflected in an amendment to this order. (Insert assembly supplier(s) name(s), address(es) and code number(s).)

**172** Changes to parts made from the tooling covered by this purchase order subsequent to those specified herein will be processed to you by the assembly supplier listed below. Any revision to tool costs necessitated by such changes will be negotiated by you with the assembly supplier. Payment for such changes, if required, will be made by Chrysler to said assembly supplier. (Add supplier's name and address.)

**173** Seller must include following certification on shipping containers for above part: "Seller certifies compliance with applicable United States Federal Regulations under Public Law 89-563".

**175** Seller understands and agrees that invoiced price for this steel will be Seller's price, as published for general use, in effect at time of shipment. Such prices are subject to review and audit verification for accuracy, by Purchaser as necessary. Seller shall, upon request, make available to Purchaser such published prices and appropriate records supporting amounts invoiced.

**176** Parts furnished under this order, being SAFETY/EMISSIONS items, call for special attention to quality control procedures during their manufacture and/or assembly.

Supplier's attention is drawn to the application of Chrysler's SAFETY/EMISSIONS Performance Standard (enclosed) to these parts and the possible effect upon them of federal Health and Safety Standards.

**177** Substitute Chrysler Canada Ltd. throughout this purchase order in place of Chrysler Corporation.

Price stated in Canadian funds.

Not subject to Ontario Sales Tax - Permit 57190003-G.

We certify that the goods ordered or imported hereby are to be used in, wrought into, or attached to taxable goods for sale and therefore are not subject to federal sales and excise taxes. Chrysler Canada Ltd. License S-6011.

The enclosed Certificate of Content, Form No. 11000 must be completed and mailed promptly to Chrysler Canada Ltd., Customs and Taxes Department, 2450 Chrysler Center, Windsor, Ontario.

**178** This is a combined United States/Canadian purchase order with items priced both in Cana-

(10-76)

dian and United States funds. Our United States/Canadian Purchase Order Rider 'A' (Revised), Form No. 84-180-7309 shall be considered a part of this order.

179    This is a combined United States/Canadian purchase order with price stated in United States funds. Our United States/Canadian Purchase Order Rider 'B', Form No. 84-180-7310 shall be considered a part of this order.

180    Seller will be required to furnish certification of compliance with applicable governmental requirements as required by statute, in the manner and location established in the specifications pertaining hereto.

183    The attached special equipment description rider shall be considered a part of this purchase order.

190    In accepting this order, Seller agrees to use "on-line" teletypes (or such other "on-line" telecommunications method approved by Purchaser) in Purchaser's prescribed format to furnish notification promptly of all shipments made to the Car and Truck Assembly and/or Wyoming plants, Parts Supply Division and such other locations as may subsequently be required, for the purpose of Chrysler's Dynamic Inventory Analysis System (DIAS). Seller further agrees that in the event that unforeseen circumstances render it temporarily impracticable for Seller to maintain this prescribed method he will immediately contact Purchaser's appropriate Production Control activity for alternate instructions.

193    This order is issued on the understanding that Supplier will tool and plan production for this part so as to be capable of supplying a continuous peak weekly volume equal to 6.7 times the daily volume shown in our Request for Quotation or as subsequently notified. (Daily Volume x 6.7 = Peak Weekly Requirement). Supplier understands further that this coverage is precautionary to cover higher schedule requirements during certain periods of the year or indefinitely, if required.

197A    The price in this order reflects firm model year labor economics.

198    Included in piece price is packaging cost of (price & unit of measure).

200    A monthly summary of charges must be mailed to the Purchasing Department to the attention of the buyer, showing the monthly billing *by plant* applicable to this purchase order.

201    PRICES CURRENT AT DATE OF ORDER: Seller understands and agrees that invoiced prices will be Seller's prices, as published for general use, and in effect at date of this order. Such prices are subject to review and audit verification for accuracy, by Purchaser as necessary. Seller shall, upon request, make available to Purchaser such published prices and appropriate records supporting amounts invoiced.

202    PRICES CURRENT AT TIME OF SHIPMENT: Seller understands and agrees that invoiced prices will be Seller's prices, as published for general use, and in effect at time of shipment, subject to any discount as contained herein. Such prices are subject to review and audit verification for accuracy, by Purchaser as necessary. Seller shall, upon request, make available to Purchaser such published prices and appropriate records supporting amounts invoiced.

203    FOR SERVICE: Seller understands and agrees that invoiced prices will be Seller's normal charge for this service, based upon costs at time of performance and subject to any discount as contained herein. Such prices are subject to review and audit verification for accuracy by Purchase as necessary and Seller shall, upon request, make available to Purchaser appropriate records supporting amounts invoiced.

204    Not longer than nine months from date of this order and from date of any extension thereof, Seller is to furnish to Purchaser's buyer a listing of items supplied, stating quantities if so requested.

205    (See Purchase Order Riders - Section IV in this booklet).

206    "Charges for inland transportation (F.O.B. and shipping charges), freight and insurance to

(10-76)

be paid as per Seller's invoice subject to review by Purchaser's Traffic Office and renegotiation with Seller if required."

207 "This purchase order is issued jointly with Chrysler United States/Chrysler France Purchase order (select one) - Responsibility for control of both purchase orders is assigned to (name and title)."

208 "Seller agrees that during the performance of this Purchase Order he is bound by and will comply with all provisions of: (a) the EMPLOYMENT OF THE HANDICAPPED Clause set forth in S 741.3 of Title 20 of the Code of Federal Regulations and (b) the EMPLOYMENT OF VETERANS Clause set forth in S 50-250 of title 41 of the Code of Federal Regulations."

209 The price specified in this purchase order provides for an increase in price of Seller's product/service and is granted due to his firm refusal to ship such goods or perform such service without the increase.

210 "Part(s) must be released in increments of (quantity) (unit of measure)."

211 Includes commitment for potential service requirements of Purchaser's Parts Supply Division. Special packaging for service, if required and not specified herein, will be separately requested and negotiated. Foreign suppliers must mark service requirements appropriately "Made in (Show country of origin)." To ensure proper identification of shipments, Seller's packing slips shall always include applicable Chrysler release number.

212 Prices includes processing to "Vendor Processing Specifications" dated (      ).

218A If portion(s) of wiring assemblies covered by this Inquiry/Purchase Order will be moulded from multiple cavity tooling, initial samples of such portion(s) from each cavity mould must be submitted appropriately identified by cavity for Purchaser's approval prior to production runs.

219 Under coverage of this purchase order a limited number of parts as advised by Purchaser's releases may be required for Pre-Production Assemblies. If Supplier does not have sample approval by the 19th of April, he should ship pilot material requirements at the same time he submits samples. In all cases where parts have not been sample approved but supplier has been directed to ship production requirements, the supplier should also ship a representative sample of his production part and identify same as "Representative sample, but not official sample."

220A Supplier agrees to hold quoted price firm for model year.

220B "Supplier agrees to hold labor economics firm for model year."

221 You must furnish as a complete set on each shipment of imported steel the following documents:

1. Ocean Bill of Lading

2. Vendor Invoice

3. Packing Slip that discloses the number of coils plus the gross and net weight of each coil in pounds

4. Processed United States Customs Form 7543 (Certificate of delivery) with numbered copy of customs form 7501 (consumption entry)

Documents are to be directed to Chrysler Corporation P.O. Box 1919, Detroit, MI 48231 Attn: Mgr. Customs-Tax Dept.

222 If in filling this order Seller provides a part or assembly of which the major cost, either initially or at any time during the life of the order, comprises material or components that Seller purchased from a source in a country other than the U.S.A. or Canada, Seller shall notify Purchaser's buyer in writing of such material or components for purposes of Purchaser's internal records and appropriate government reports.

(10-76)

240     Contract number (insert appropriate number).

243     Priority rating (insert rating) certified for national defense use under DMS, Regulation 1.

259     Seller agrees to establish and conduct a 'Small Business Subcontracting Program' in compliance with the provisions of ASPR 7-104. 14(B); a 'Labor Surplus Area Subcontracting Program' in compliance with the provisions of ASPR 7-104.20(B); and a 'Minority Business Enterprises Subcontracting Program' in compliance with provisions of attached riders entitled 'Minority Business Enterprises Subcontracting Program' (Form DD-1 (Date)) and 'Utilization of Minority Business Enterprises' (Form DD-2 (Date)).

260     All shipments of parts and material to Purchaser's plants must include Packing Slips. Seller is required to provide two Packing Slips with each shipment sent directly to Purchaser's plant, and four Packing Slips with each shipment directed to a Consolidation Point when Purchaser may so designate. Whenever shipment is made by truck, one of the Packing Slips (or Packing Slip sets for multiple item shipments) is to be enclosed in an envelope and recorded on the bill of lading with written instructions for the carrier, or Seller's driver as appropriate, to make formal delivery of same to Seller's traffic representatives upon arrival at Seller's plant.

IV. RIDERS

# IV. RIDERS

# REQUEST FOR QUOTATION AND PURCHASE ORDER RIDER

## VEHICLE SAFETY EMISSIONS ITEM NOTICE

Part(s) furnished under this inquiry/purchase order, being PF-SAFETY/EMISSIONS designated items, call for special control measures during manufacture and/or assembly. Attention is drawn to the application of Chrysler's SAFETY/EMISSION Performance Standard(s) to these parts and the possible effect upon them of Federal Health and Safety Standards.

Your attention also is drawn to the booklet, "Supplier Vehicle Safety Program Guideline" issued to suppliers with previous mailings and/or enclosed, which details requirements in conforming to Chrysler Corporation's Vehicle Safety Program. Included in this booklet are certain requirements pertaining to the submission of control plans for the part(s) covered by this purchase order.

Whenever the part description in the purchase order is suffixed by an "S" and/or and "E" as appropriate, for each PF-SAFETY/EMISSIONS part number, the following action is required by the supplier:

1)  All part and assembly drawings having the shield ( ) identification(s) must be reviewed in order to establish awareness of and assurance that compliance with Corporate and Federal Vehicle SAFETY/EMISSIONS requirements is being accomplished.

2)  The supplier is required to submit a detailed control plan(s) for each specific part number covered by the purchase order. The formal control plan(s) is required to be submitted *within 30 days* of the purchase order date. (See the Supplier Vehicle Safety Program Guideline for additional instructions.)

3)  All changes or revisions to the original control plan, as submitted to the Vehicle Safety Systems & Investigation Department, must be promptly submitted to that department for review and approval. Subsequent surveys at supplier plant locations will be oriented around the latest control plan on file in the Vehicle Safety Systems and Investigation Department at the time of the survey.

    The supplier is expected to review all subsequent amendments to purchase orders, changes to Engineering Drawings and/or Manufacturing Process Changes which may effect the approved control plan. The supplier is expected to use his best judgment on the particulars of those amendments and changes for any impact on control plan requirements.

4)  Whenever a new model series purchase order is issued, the existing (on file with the Vehicle Safety Office) control plan(s) can be considered as a carry-over provided the "new" placement has not affected control plan detail requirements.

5)  The supplier should direct all questions relative to this notice to: Manager, Vehicle Safety Systems & Investigation, Vehicle Safety & Quality Office, Chrysler Corporation - P.O. Box 2888, Detroit, Michigan 48231

# UNITED STATES/CANADIAN PURCHASE ORDER RIDER 'A'

## (REVISED)

Concerning shipments to plants in Canada, substitue Chrysler Canada Ltd. throughout this order in place of Chrysler Corporation.

Not subject to Ontario Sales Tax - Permit No. 57190003-G.

We certify that the goods ordered or imported hereby are to be used in, wrought into, or attached to taxable goods for sale and therefore are not subject to federal sales and excise taxes. Chrysler Canada Ltd. License No. S-6011.

Customers clearance for account of consignee.

Each United States shipment against this purchase order must be accompanied by -1- Special Customs Invoice, Form No. 5515, in triplicate, -2- Commercial Invoice, in triplicate, and -3- all documents must bear the statement - "For United States Customs Clearance Purposes - Notify *(see below), " unless otherwise covered by special instructions from purchaser.

The foregoing invoices are for Customs clearance only. Please refer to purchase order, or shipping release when so referenced in the order, for instructions on submitting invoices for payment (Accounts Payable) purposes.

    *Shipment into U.S. through Detroit - The J.D. Richardson Co.
    *Shipment into U.S. through Port Huron - John V. Carr & Son, Inc.
    *Shipment into U.S. through Buffalo - C. J. Tower & Son

If for some reason it is necessary to ship through a U.S. port other than Detroit, Port Huron or Buffalo, please contact the Tax Supervisor - Customs, Tax Department, Chrysler Corporation.

Covering shipments to Chrysler Canada plants only, supplier must complete the enclosed Certificate of Content, Form No. 11000, and mail it promptly to Chrysler Canada Ltd., Customs and Taxes Department, 2450 Chrysler Center, Windsor, Ontario.

# UNITED STATES/CANADIAN PURCHASE ORDER RIDER 'B'

Concerning shipments to plants in Canada, substitute Chrysler Canada Ltd. throughout this order in place of Chrysler Corporation.

Canadian Customs MA invoices must be prepared in quadruplicate and provided for all shipments to Canada in accordance with the following instructions:

1. Do not ship goods, regardless of value, unless Canada Customs MA invoices have been prepared in quadruplicate.

2. Canada Customs invoices *must* show our purchase order number, our part number, and our description, quantities of goods shipped, number of containers, weight, "ship to" plant in Canada and your vendor code number.

3. Canada Customs invoices *must* show Fair Market Value and Selling Price of each part number. If the material is "No Charge", the Fair Market Value must still be indicated.

4. The Exporter's Invoice Declaration must be completed and signed in ink.

5. If you ship via Transport or Railway Express to a consolidation point in the U.S.A. for furtherance to Canada or if you ship direct to Canada, the Customs invoice must accompany the shipment.

6. If you ship by Rail or Parcel Post, mail the Customs invoice to Box 368, Walkerville Post Officer, Windsor, Ontario, the *same* day you ship the goods.

7. If you ship to our Parts Plant in Mississauga, Ontario by truck via Buffalo, New York, by Parcel Post or Express, mail the Customs invoices to Box 368, Walkerville Post Office, Windsor, Ontario.

8. If your shipment is valued at $10,000.00 or more (Canadian Funds), be sure you attach to the Customs invoices one copy of Form B31 Special Exporter's Declaration.

9. By Canadian Customs law, Customs invoices must not differ from your settlement invoice as to value.

**WARNING** - If we do not have Customs invoices at time of arrival of the goods, they will not enter Canada.

| Revised to reflect declaration Form B31 requirements |
| --- |

# DUTY-FREE ENTRY -- CANADIAN SUPPLIES

(a) Except as otherwise approved by Purchaser, no amount is or will be included in the purchase order price on account of duty with respect to:

   (i) All end items which constitute "Canadian end products" (as defined in paragraph 6-101 of the Armed Services Procurement Regulations) to be delivered under this purchase order; and

   (ii) All supplies (including, without limitation, raw materials, components and intermediate assemblies) produced or made in Canada which are to be incorporated in the end items to be delivered under this purchase order provided, that such end items are made in the United States or Canada;

() except supplies imported into the United States prior to the date of this purchase order, or, in the case of supplies imported by a first or lower-tier subcontractor hereunder, prior to the date of his subcontract.

(b) The Seller warrants that all such Canadian supplies, for which such duty-free entry is to be claimed, are intended to be delivered to the Government or incorporated in the end items to be delivered under this purchase order, and that duty shall be paid by the Seller to the extent that such supplies, or any portion thereof, (if not scrap or salvage), are diverted to nongovernment use other than as a result of a competitive sale made, directed or authorized by the Government through the Purchaser.

(c) Purchaser certifies that the Government has agreed to execute duty-free entry certificates and to afford such assistance as appropriate in order to obtain the duty-free entry of Canadian end products or supplies as to which the shipping documents bear the notation specified in paragraph (d) below, except as the Seller may otherwise agree.

(d) All shipping documents submitted to Customs, covering such Canadian end products or supplies for which duty-free entry is to be claimed, shall bear the following information:

   (i) Government prime contract number;

   (ii) Identification of carrier;

   (iii) The notation: "UNITED STATES DEPARTMENT OF DEFENSE DUTY-FREE ENTRY TO BE CLAIMED pursuant to Schedule 8, Part 3, Item No. 832.00, Tariff Schedules of the United States. Upon arrival of shipment at port of entry, District Director of Customs, kindly release the shipments under 8.59GP and notify the Director, Defense Contract Administration Services Region, Detroit, 1580 E. Grand Blvd., Detroit, Michigan 48211, who will execute Customs Forms 7501 and 7501A and the Duty-Free Entry Certificate";

   (iv) Gross weight in pounds (if freight is based on space tonnage, state cubic feet in addition to gross shipping weight); and

   (v) Estimated value in United States dollars.

(e) The Seller agrees to instruct the foreign supplier to prepare a sufficient number of copies of the bill of lading (or other shipping document) so that at least two of the copies accompanying the shipment will be available for use by the District Director of Customs at the port of entry.

(f) The Seller agrees to notify the Purchaser in writing of any purchases by the Seller of Canadian supplies that are to be imported into the United States for delivery to the Government or for incorporation in end items to be delivered under this purchase order. Such notice shall be furnished to the Purchaser immediately upon the award by the Seller to the Canadian supplier. The notice shall identify (i) the Canadian supplies, (ii) the purchase order number and the Government prime contract number, and (iii) the scheduled delivery date(s).

(g) This clause shall not apply to purchases of Canadian supplies in connection with this purchase order if (i) such Canadian supplies are identical in nature with supplies purchased by the Seller

or any subcontractor hereunder in connection with his commercial business, and (ii) it is not economical or feasible to account for such supplies so as to assure that the amount of such supplies for which duty-free entry is claimed pursuant to this clause does not exceed the amount thereof purchased in connection with this purchase order.

(h)    The Seller agrees to insert the substance of this clause, including this paragraph (h), in all subcontracts for supplies hereunder that exceed $2,500. Each such subcontract shall require the subcontractor to identify the Government prime contract under which this purchase order is issued by the prime contract number on any shipping documents submitted to Customs covering supplies for which duty-free entry is to be claimed pursuant to this clause.

(23) Duty-Free Entry — ASPR 7-104.32 (Applies to Purchase Orders in excess of $2,500)

(24) Examination of Records — ASPR 7-104.15

(c) That where the terms "Contracting" and "Contracting Officer" are used in the Clauses referred to in (b) above, the term "Contractor" shall be deemed to mean "Seller" and the term "Contracting Officer" shall be deemed to mean "Purchaser" and that wherever the term "this contract" is used, it shall be deemed to refer to this purchase order; than when the word "Government" is used in the clauses, it shall be deemed to mean "Purchaser", and any reference to a "Disputes" clause in the clauses, shall be deemed to be deleted.

(d) That Seller shall require all of its subcontractors to agree to a provision substantially similar to this clause (1) "Statutory and ASPR Requirements" including this paragraph (d).

## 2. LABOR DISPUTES

(a) Whenever Seller has knowledge that any actual or potential labor dispute is delaying or threatens to delay the timely performance of this Purchase Order, Seller shall immediately give notice thereof, including all relevant information with respect thereto, to Purchaser.

(b) Seller agrees to insert the substance on this clause, including this paragragh (b) in any subcontract or purchase order hereunder as to which a labor dispute may delay the timely performance of this Purchase Order; except that each such subcontract or purchase order shall provide that in the event its timely performance is delayed or threatened by delay by any actual or potential labor dispute, the subcontractor shall immediately notify its next high tier subcontractor of all relevant information with respect to such dispute.

## 3. INSPECTION, ACCEPTANCE OR REJECTION

All supplies, special tooling, materials and workmanship shall be subject to inspection and test by Purchaser and/or the Government to the extent practicable at all times and places and period of manufacture. In case any suppliers or lots of supplies are defective in material or workmanship or otherwise not in conformity with the requirements of this purchase order. Purchaser shall have the right either to reject them (with or without instruction as to their disposition) or to require their correction. For this purpose, Purchaser and/or the Government Representatives shall have free access to the operations and areas in which work on this Purchase Order is being performed, and Seller shall furnish all reasonable facilities and assistance for the safety and convenience of the representatives conducting the inspection or test. Seller shall also provide and maintain an inspection system acceptable to Purchase covering the supplies, fabricating methods, and special tooling hereunder. Seller shall make its records of all inspection work available to Purchaser and/or the Government during the performance of this Purchase Order, and for such longer period as may be specified in this Purchase Order. Notwithstanding payment or any prior inspection or test, final inspection and acceptance or rejection shall be made by Purchaser as promptly as practicable after delivery. Unless otherwise expressly provided in this Purchase Order, Seller assumes the risk of and all handling and transportation costs for defective property delivered hereunder.

## 4. MATERIAL, INSPECTION AND RECEIVING REPORTS

Unless this Purchase Order is for standard off-the-shelf items, Seller agrees to prepare all necessary Material, Inspection and Receiving Reports in accordance with the forms and procedures prescribed by the Government and/or the Purchaser.

## 5. PRICE REDUCTION FOR DEFECTIVE COST OR PRICING DATA

If the Contracting Officer, for the prime contract under which this order is issued, determines any price or fee paid or to be paid by the Government was overstated or increased by any significant sums because Seller furnished incomplete or inaccurate cost or pricing data concerning items covered by this order, then the price or prices (or fee) stated on this order shall be

reduced accordingly to offset such overstatement or such increase and this order shall be modified in writing to reflect such adjustment.

## 6. EQUAL OPPORTUNITY

The following clause is applicable unless the contract is exempt under the rules and regulations of the Secretary of Labor. Exemptions include contracts and subcontracts not exceeding $10,000 and work to be performed outside the United States is involved. See ASPR 12-805 for exemption. (Also see ASPR 12-804)

During the performance of this contract, the Seller agrees as follows:

(a) The Seller will not discriminate against any employee or applicant for employment because of race, color, religion, sex, or national origin. The Seller will take affirmative action to ensure that applicants are employed and that employees are treated during employment, without regard to their race, color, religion, sex, or national origin. Such action shal include but not be limited to the following: Employment, upgrading, demotion, or transfer, recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation, and selection for training including apprenticeship. The Seller agrees to post in conspicuous places, available to employees and applicants for employment, notices to be provided by the Contracting Officer setting forth the provisions of this nondiscriminiation clause.

(b) The Seller will, in all solicitations or advertisements for employees placed by or on behalf of the Seller, state that all qualified applicants will receive consideration for employment without regard to race, color, religion, sex, or national origin.

(c) The Seller will send to each labor union or representative of workers with which he has a collective bargaining agreement or other contract or understanding, a notice to be provided by the agency Contracting Officer, advising the labor union or workers' representative of the Seller's commitments under the Equal Opportunity Clause, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

(d) The Seller will comply with all provisions of Executive Order 11246 of September 24, 1965, as amended by Executive Order 11375 of October 13, 1967, and of the rules, regulations, and relevant orders of the Secretary of Labor.

(e) The Seller will furnish all information and reports required by Executive Order 11246 of September 24, 1965, as amended by Executive Order 11375 of October 13, 1967, and by the rules and regulations, and orders of the Secretary of Labor or pursuant thereto, and will permit access to his books, records, and accounts by the contracting agency and the Secretary of Labor for purposes of investigation to ascertain compliance with such rules, regulations, and orders.

(f) In the event of the Seller's noncompliance with the Equal Opportunity Clause of this contract or with any of such rules, regulations, or orders, this contract may be cancelled, terminated or suspended in whole or in part, and the Seller may be declared ineligible for further Government contracts in accordance with procedures authorized in Executive Order 11246 of September 24, 1965, as amended by Executive Order 11375 of October 13, 1967, and such other sanctions may be imposed and remedies invoked as provided in Executive Order 11246 of September 24, 1965, as amended by Executive Order 11375 of October 13, 1967, or by rule, regulation, or order of the Secretary of Labor, or as otherwise provided by law.

(g) The Seller will include the provisions of Paragraph (a) through (g) in every subcontract or purchase order unless exempted by rules, regulations, or orders of the Secretary of Labor issued pursuant to Section 204 of Executive Order 11246 of September 24, 1965, as amended by Executive Order 11375 of October 13, 1967, so that such provisions will be binding upon each subcontractor or vendor. The Seller will take such action with respect to any subcontract or purchase order as the contracting agency may direct as a means of enforcing such provisions including sanctions for noncompliance: Provided, however, that in the event the Seller becomes involved in or is threatened with, litigation with a subcontractor or vendor as a result of such direction by the contracting agency, the Seller may request the United States to enter into such litigation to protect the interests of the United States.

84-801-8021 REV 4/74

January, 1979

_Mail 1/8/79_

TO:   PRODUCTION MATERIAL SUPPLIERS

Gentlemen:

We have collected together in the enclosed publication the Terms and Conditions, Standard Clauses and other types of information that most frequently are referenced in our Requests for Quotation and Purchase Orders covering production parts, material and related services.

Because of the continuing relationship Chrysler Purchasing likes to foster with its suppliers, the requirements of our orders, etc., become well-known and do not require detailed repetition each time a specific buying commitment is made.

Relating the references on our Requests for Quotation and Purchase Orders to this publication--we suggest it be kept readily available in your Sales Office--will contribute to our mutual interest in making those documents as concise and clear as possible.

This October, 1978 issue supersedes our previous publication dated October, 1976.

Very truly yours,

K. B. Foley
Manager,
Administration & Financial
Planning
Purchasing Office

KBF/RCR/ls

Enclosure

# I. TERMS AND CONDITIONS

I. TERMS AND CONDITIONS

# I

# CHRYSLER CORPORATION

## PURCHASE ORDER GENERAL TERMS AND CONDITIONS

I    PROMPTNESS: Delivery of supplies and performance of services at the time specified are of the essence of this order.

II    ACCEPTANCE: This order is not binding until accepted in writing or by a delivery, the rendering of services, or commencement of work on supplies to be specially manufactured for Purchaser, pursuant to this order.

III    MODIFICATIONS: Any modification of this order, to be valid, must be in writing and signed by Purchaser's authorized representative. Only the Purchaser's signed consent will bind it to any terms hereafter transmitted in any form by the Seller. Purchaser will consider Seller's requests for changes only if such requests are in writing and are directed to specific provisions of this order.

IV    RESPONSIBILITY FOR PACKING, MARKING AND DELIVERY: Unless otherwise provided in this order, Seller, for the price as stated in this order, shall (i) pack and mark the supplies covered by this order in accordance with Purchaser's Packaging & Shipping Instructions so as to secure the lowest transportation rates, meet carrier requirements and assure arrival at "ship to" point .free of damage and deterioration, and (ii) be responsible for the supplies until delivery at the designated (f.o.b.) delivery point, regardless of point of inspection. Unless otherwise provided, (i) the price as stated in this order shall include all charges and expenses with respect to containers, packing and crating, and for transportation to f.o.b. point, and (ii) all containers, packing and crating material shall become property of Purchaser. Seller shall process shipping documents and route shipment from f.o.b. point, as directed by Purchaser.

V    EXPRESS SHIPMENTS: Purchaser shall have the right to require special, express or air shipment if Seller fails to meet the delivery requirements of this order. Seller shall reimburse Purchaser for any resulting additional transportation costs unless due solely to causes beyond the control and without the fault or negligence of Seller.

VI    RELEASE AUTHORIZATION: When it is specified on the face hereof that deliveries are to be in accordance with Purchaser's written releases, Seller shall not fabricate or assemble any supplies covered by this order, or procure required materials, or ship any supplies to Purchaser, except to the extent authorized by such written releases or special provisions of this order specifying minimum fabrication or delivery quantities.

VII    CARRIER: Seller grants Purchaser the right to specify at any time the Carrier and/or the method of transportation to be employed in conveying any part or all of the supplies covered herein. Any changes by Purchaser to such a specified method will be subject to an equitable adjustment as provided in Clause XVI, Changes.

VIII    INSPECTION AND REJECTIONS: Purchaser shall have the right to inspect and test all supplies, special tooling, materials and workmanship to the extent practicable at all times and places, including the places and during period of manufacture. Seller shall also provide and maintain an adequate inspection system covering the supplies, fabrication methods, and special tooling hereunder. Seller shall make its inspection records of all work and material available to Purchaser during the performance of this order, and for such longer period as may be specified in this order.

In case any property delivered or service rendered hereunder is defective in material or workmanship or otherwise not in conformity with the requirements of this order, Purchaser shall have the right, notwithstanding payment or any prior inspection or test, either to reject it or to require its correction. Any service which is required to be corrected hereunder shall be corrected by and at the expense of Seller promptly after notice. Property which is rejected or required to be corrected shall be removed (if permitted or required by Purchaser) or corrected in place, by and at the expense of the Seller promptly after notice, and shall not thereafter be delivered hereunder unless the former rejection or requirement of correction is disclosed. If the Seller fails promptly to remove such property which is required to be removed, or promptly to replace or correct such property, or promptly to correct any such service, Purchaser either (i) may by contract or otherwise replace or correct such property or service and charge to Seller the increased cost occasioned Purchaser thereby, or (ii) may effect a cancellation for default under Clause XIII. Unless the Seller is able to correct or replace such property or correct such service within the delivery schedule, Purchaser by written notice may accept the delivery of such property or accept such service subject to a reduction in price reflecting the reduced value attributable to non-conformance. Seller assumes the risk of damage to or loss of and all handling and transportation costs for defective property delivered hereunder.

IX   WARRANTY: Seller warrants that the supplies or services covered by this order will comply with the specifications, drawings, descriptions or samples furnished or specified by Purchaser and that the same will be merchantable, of good material and workmanship and free from defects. Seller warrants that any supplies furnished under this order that are designed by Seller will be fit and sufficient for the purposes intended. Seller specifically agrees to defend, indemnify and hold harmless Purchaser from and against any and all claims, losses, damages and settlement expenses resulting from or arising out of a breach of Seller's warranties and of which Purchaser notifies Seller at any time.

X   ASSIGNMENT OF PERFORMANCE BY SELLER: Seller agrees not to assign or delegate the performance of its duties under this order without the written consent of Purchaser.

XI   PROPERTY OF PURCHASER: Unless otherwise provided in this order or agreed to in writing, property of every description including all tools, equipment and material furnished or made available to Seller, title to which is in Purchaser, and any replacement thereof, shall be and remain the property of Purchaser. Property other than material, shall not be modified without the written consent of the Purchaser. Such property shall be plainly marked or otherwise adequately identified by Seller as property of Purchaser (by name) and shall be safely stored separately and apart from Seller's property. Seller shall not use such property except for performance of work hereunder or as authorized in writing by Purchaser. Such property while in Seller's possession or control shall be kept in good condition, shall be held at Seller's risk, and shall be kept insured by Seller, at its expense, in an amount equal to the replacement cost with loss payable to Purchaser. To the extent such property is not material consumed in the performance of this order, it shall be subject to inspection and removal by Purchaser and Purchaser shall have the right of entry for such purposes without any additional liability whatsoever to Seller. As and when directed by Purchaser, Seller shall disclose the location of such property and/or prepare it for shipment and ship f.o.b. its plant to Purchaser in as good condition as originally received by Seller, reasonable wear and tear excepted.

XII   TERMINATION AT PURCHASER'S OPTION: The Purchaser may terminate performance of work under this order in whole or from time to time in part by written notice of termination whereupon Seller will stop work on the date and to the extent specified in the notice and terminate all orders. and subcontracts to the extent they relate to the terminated work. Seller will promptly advise Purchaser of the quantities of applicable work and material on hand or purchased prior to termination and the most favorable disposition that Seller can make thereof. Seller will comply with Purchaser's instructions regarding transfer and disposition of title and possession of such work and material. (Releases, existing or subsequently received, against other purchase orders awarded Seller

by Purchaser for the same or similar parts or materials are to be considered such instructions unless Seller is otherwise notified in writing.) Within 90 days after receipt of such notice of termination Seller will submit all its claims resulting from such termination. Purchaser will have the right to check such claims at any reasonable time or times by inspecting and auditing the records, facilities, work or materials of Seller and/or its subcontractors relating to this order.

Purchaser will pay Seller, without duplication, the order price for finished work accepted by Purchaser and the cost to Seller of work in process and raw material allocable to the terminated work, based on any audit Purchaser may conduct and generally accepted accounting principles; less, however, (1) the reasonable value or cost (whichever is higher) of any items used or sold by Seller without Purchaser's consent; (2) the agreed value of any items used or sold by Seller with Purchaser's consent; and (3) the cost of any defective, damaged or destroyed work or material. Purchaser will make no payments for finished work, work in process or raw material fabricated or procured by Seller in excess of any authorization required under Clause VI, Release Authorization. Notwithstanding the above, payments made under this clause, shall not exceed the aggregate price specified in this order less payments otherwise made or to be made, and adjustments shall be made reducing the payments hereunder for costs of work in process and raw material to reflect on a pro rata basis any indicated loss on the entire contract had it been completed. Payment made under this clause will constitute Purchaser's only liability in the event this order is terminated hereunder. Notwithstanding the fact that Purchaser and Seller may not have agreed upon the price to be paid to Seller for items to which Purchaser takes title under this Clause, title to all such items shall vest in Purchaser immediately upon notice to Seller to that effect, and Purchaser shall thereupon be entitled to possession of such items. Except as otherwise provided in this order, the provisions of this clause will not apply to any cancellation by Purchaser for default by Seller or for any other cause allowed by law or under this order.

XIII   CANCELLATION FOR DEFAULT: If Seller fails (i) to deliver the supplies or to perform the services at the time specified herein or any extension thereof authorized by Purchaser in writing, or (ii) to perform any of the other provisions of this order and does not cure such failure within a period of 10 days (or such longer period as Purchaser may authorize in writing) after receipt of notice from Purchaser specifying such failure, Purchaser may by written notice of default to Seller cancel the whole or any part of the supplies and services ordered without liability; except for completed services and completed supplies delivered and accepted and except under that portion of the order not cancelled. Provided, however, that with respect to finished, in-process or otherwise unfinished work under this order, Purchaser shall have the right to take full title to and possession of all or part of such work immediately upon notice to Seller to that effect, regardless of whether or not final price terms have been agreed upon. If, after notice of default under this clause, it is determined that Seller was not in default, work affected by the cancellation shall be deemed terminated pursuant to Clause XII above and the right and obligations of the parties shall be governed by such clause.

XIV   INSURANCE: Seller agrees to furnish acceptable certificates evidencing adequate workmen's compensation, public liability and property damage insurance coverage when requested by Purchaser. Seller shall defend, indemnify and protect Purchaser against all claims, liabilities, losses and damages due to injury to or death of any person and damage to or loss of any property arising out of improper performance or negligent work under this order or arising out of allegedly defective material or workmanship in the goods or services provided by this order or out of any act or omission of an employee or agent of Seller and its subcontractors while on Purchaser's property or in the course of their employment. When referenced by the purchase order, Clause No. 54 on "Chrysler Corporation Clauses," Form 84-806-1631 shall apply in lieu of this paragraph.

XV   SPECIAL TOOLING: The term "special tooling" as used in this clause shall be deemed to include all jigs, dies, fixtures, molds, patterns, special taps, special gauges, special test equipment, other special equipment and manufacturing aids, and drawings and any replacements of the foregoing, acquired or manufactured for use in the performance of this order, which are of such a specialized nature, that, without substantial modification or alteration, their use is limited to the production of

the supplies or parts thereof or performance of the services of the type required by this order. The term does not include (i) items of tooling or equipment heretofore acquired by Seller, or replacement thereof, whether or not altered or adopted for use in the performance of this order, (ii) consumable small tools, (iii) general or special machine tools or similar capital items, or (iv) tooling title to which is in Purchaser.

Seller agrees that special tooling shall be retained and not used or reworked except for performance of work hereunder or as authorized in writing by Purchaser. While in Seller's possession or control, Seller warrants that it will keep the special tooling in good condition, fully covered by insurance, free of liens and encumbrances at all times, and will replace it when lost, destroyed, or necessary for performance of work hereunder. Upon cessation or termination of the work under this order for which the special tooling is required, Seller shall furnish Purchaser a list of the products, parts, or services for the manufacture or performance of which such special tooling was used or designed and a list indicating where each item of the special tooling is located, and shall transfer and/or dispose of title to and possession of the special tooling as Purchaser may direct in writing. In addition, Purchaser shall have the right to take possession of, including the right of entry for such purposes, any special tooling, title to which Purchaser acquires hereunder, without any additional liability whatsoever to Seller.

XVI   CHANGES: Purchaser may at any time, by a written order, and without notice to sureties, if any, make changes within the general scope of this order, in any one or more of the following: (i) drawings, designs, or specifications pertaining to this order; (ii) method of shipment or packing; (iii) place of delivery; and (iv) the amount of property to be made available by Purchaser for use by Seller in performance of this order. If any such change causes an increase or decrease in the cost of, or the time required for, performance of any part of the work under this order, whether changed or not changed by any such order, an equitable adjustment shall be made in the order price, or the delivery schedule, or both. Any claim by Seller for adjustment under this clause must be asserted within ninety (90) days from the date of receipt by Seller of the notification of change. Purchaser will have the right to check all claims hereunder at any reasonable time or times by inspecting and auditing the records, facilities, work or materials of Seller relating to this order. Where the cost of property made obsolete or excess by a change is either included in Seller's claim for adjustment or set-off against a claim for adjustment by Purchaser, Purchaser shall have the right to prescribe the manner of disposition of such property and the proceeds therefrom shall be paid to Purchaser. Nothing in this clause shall excuse Seller from proceeding with the order as changed.

XVII   USE OF CHRYSLER'S NAME: (a) Seller shall not, without first obtaining the written consent of Purchaser, in any manner publish the fact that Seller has furnished or contracted to furnish Purchaser the articles herein mentioned, or use the name of Chrysler Corporation or any of its subsidiaries in Seller's advertising or other publication. (b) if the material specified within this order is peculiar to Purchaser's design, either as an assembly or component part of any assembly, or if the material bears Purchaser's Trade-Mark and/or Identifying Mark it shall not bear the Trade-Mark or other designation of the maker or seller and similar material shall not be sold or otherwise disposed of to anyone other than Purchaser.

XVIII   MARKINGS: Unless otherwise agreed in writing, whenever Seller is requested by Purchaser so to do, by notation on blueprints or written instructions, Seller will place on the goods covered by this order in the manner specified by Purchaser such Trade-Mark and/or Identifying Mark as Purchaser may specify without expense to Purchaser.

Seller will not affix any restrictive markings upon any drawings or technical data furnished to Purchaser under or in connection with this Purchase Order, and if such markings are affixed, Purchaser shall, without liability, have the right at any time to modify, remove, or ignore any such markings.

XIX   PATENTS: Seller warrants that the sale or use of the articles, goods or material covered by this order, will not infringe or contribute to the infringement of any patents or copyrights, either in the

U.S.A. or in Canada or in countries foreign thereto and that Seller covenants to defend every suit for any such alledged infringement which may be brought against Purchaser or its customers or other privities and to pay all expense and fees of counsel which shall be incurred in and about defending, and all costs, damages, profits or other recoveries in every such suit.

XX   FORCE MAJEURE: This order is subject to modification by Purchaser in event of fire, accidents, strikes, Government Acts or other conditions beyond Purchaser's control.

XXI   LABOR DISPUTES: Whenever Seller has knowledge that any actual or potential labor dispute is delaying or threatens to delay the timely performance of this Purchase Order Seller shall immediately give notice thereof, including all relevant information with respect thereto, to Purchaser.

XXII   RIGHTS, REMEDIES, AND CONSTRUCTION: The rights and remedies herein reserved to Purchaser shall be cumulative and additional to any other or further rights and remedies available at law or in equity. No waiver of a breach of any provision of this order shall constitute a waiver of any other breach or waiver of such provision.

XXIII   FAIR LABOR STANDARDS: Seller hereby agrees to comply with all applicable requirements of Sections 6, 7 and 12 of the Fair Labor Standards Act, as amended in the performance of work hereunder, and with all applicable regulations and orders issued under Section 14 thereof. All invoices (packing slips if no invoices are issued) shall contain the following written assurance:

We hereby certify that these goods were produced in compliance with all applicable requirements of Sections 6, 7, and 12 of the Fair Labor Standards Act, as amended, and of regulations and orders of the United States Department of Labor issued under Section 14 thereof.

XXIV   GOVERNMENT REGULATIONS: EQUAL OPPORTUNITY: During the performance of the Purchase Order, Seller agrees to comply with all the provisions of the Equal Opportunity clause set forth in Title 41 of the Code of Federal Regulations 60-1.4(a). Wherever the term "contractor" is used in said clause, it will be deemed to refer to Seller.

XXV   GOVERNMENT REGULATIONS: OCCUPATIONAL HEALTH AND SAFETY ACT: To the extent that any of the items covered by this Purchase Order are to be used by Purchaser in connection with its manufacturing or assembly operations, including any activities incidental thereto, Seller hereby certifies and represents that said items comply with all applicable rules and regulations issued under the Occupational Health and Safety Act (Public Law 91-596), and Seller agrees to defend, indemnify and hold harmless Purchaser from and against any and all claims, losses, damages, costs and expenses resulting from or arising out of any failure of said items to so comply.

XXVI   GOVERNMENT REGULATIONS: HANDICAPPED, VETERANS, SMALL BUSINESS CONCERNS AND MINORITY BUSINESS ENTERPRISES: To the extent that any of the items covered by this Purchase Order are to be used by Purchaser for fulfillment of Government contracts, this Purchase Order incorporates by reference any applicable clause relating to employment of the handicapped, employment of Veterans, or utilization of Small Business concerns and Minority Business Enterprises which is required under governmental laws, orders, or regulations to be included in any such Purchase Order according to applicable conditions thereof.

# II. REQUEST FOR QUOTATION

II. REQUEST FOR QUOTATION

# II

## REQUEST FOR QUOTATION - CLAUSES & REQUIREMENTS

Clauses set forth on the page(s) immediately following, when referenced by corresponding numbers appearing on the face of the "Request for Quotation" are a part thereof and applicable thereto. In addition the following general requirements must be complied with whenever quotations are being submitted in response to our written requests.

### GENERAL REQUIREMENTS

... Quotation must be in writing or confirmed in writing by date shown.

... Tooling costs, if applicable, are to be quoted independently from the piece price. The piece price is to be based on annual volume usage and the tools are to be quoted to provide daily tooling capacity as shown. The tooling will be used in industrial processing or directly in manufacturing tangible personal property for sale. It is understood that sales and use taxes, if applicable, will be included in Seller's quoted price.

... Prices, unless otherwise requested, are to be quoted for both FOB Shipping Points and FOB Chrysler Receiving plant(s).

... It is understood that, Seller agrees that in the event of receiving an order he will use "on-line" teletypes (or such other "on-line" telecommunications method approved by Purchaser) in Purchaser's prescribed format to furnish notification promptly of all shipments made to the Car and Truck Assembly and/or Export-Import plants, Service & Parts Division and such other locations as may subsequently be required, for the purpose of Chrysler's Dynamic Inventory Analysis System (DIAS). Seller further agrees that in the event that unforeseen circumstances render it temporarily impracticable for Seller to maintain this prescribed method he will immediately contact Purchaser's appropriate Production Control activity for alternate instructions.

... Items qualified in our Request for Quotation as "SAFETY/EMISSION" items involve special considerations and responsibilities in connection with enacted safety legislation.

Accordingly, in submitting his quotation, Seller agrees that in the event of receipt of an order, recognizing the implication of "The National Traffic and Motor Vehicle Safety Act of 1966" and "The Air Quality Act of 1967" and any regulation thereunder, he will furnish material components and/or services (including items provided by sub-sources) involved in the supply of referenced items in compliance with Purchaser's referenced standards and specifications, and will identify them as Safety or Fed items as part of their description when submitting initial samples for approval.

... PACKING SLIPS MUST BE SUBMITTED WITH EVERY SHIPMENT

- Direct Shipments — One copy of the packing slip is to be firmly attached to the outside of one of the containers in the shipment and be readily accessible upon receipt. The second copy of the packing slip should be tendered to the carrier along with his copy of the bill of lading. A second copy of the bill of lading is required for Chrysler use.

- Shipments Moving Through A Consolidation Point — Packing slips must be prepared in sets of four. One copy of the packing slip should be firmly attached to the outside of one of the containers in the shipment and be readily accessible. The other three copies of the packing slip should be tendered to the carrier along with his copy of the bill of lading.

... This request requires you to tell us the cost you have included for packaging — i.e., the cost of the carton, box or other container including any labor directly used in its manufacture and labeling, but not subsequent handling and/or transportation costs.

### SPECIFIC REQUIREMENTS (Clauses)

4    Quantity indicated required for current production.

14J    If zinc alloy tools are contemplated, please quote on basis of pouring and finishing charges only, with option in Purchaser to make additional payments for zinc alloy at prevailing market prices and take title to tools.

17    Blanket requirements for Trucks from date of order and continuing on a year-to-year basis thereafter.

19    Include in Quotation: die model and checking fixture cost, build time, source used and part tooling time after receipt of die model on each part.

20    Quote separate prices for U.S. requirements only, Canadian requirements only and total corporate requirements as indicated. (Shipments from Canadian locations to be quoted both in U.S. and Canadian currency).

20A    Quote separate prices for Canadian requirements only (Canadian currency), and total corporate requirements as indicated (U.S. & Canadian currency).

21    Blanket requirements from date of order and continuing on a year-to-year basis thereafter.

22    Quantities indicated include Canadian requirements.

24    Furnish tool lineup and tool source.

25.    State minimum quantity shipment at price(s) quoted.

31    This requirement, which may continue for more than one model series/calendar year, is intended for placement as an open-end Purchase Order. Subject to Chrysler requirements and satisfactory performance of Seller following this award, Seller will continue furnishing the item(s) covered herein and is invited to prepare its quotation based on this expectation.

34    When quoting for special tools, include quotation for designing and building receiving inspection gauge(s) - one set to be built by supplier or to his instructions - as per requirements enclosed, Receiving Inspection Gauge Notice, Form No. 84-806-1737.

38    Quote to materials standards of unexposed surface finish, Class B;I;U; or of exposed surface Class UT. Your quotation must specify Class to which quoted.

38A    Unless otherwise precluded by surface specifications or manufacturing processes, quote to material standards of exposed surface finish Class UT, or of equal quality. Your quotation must specify Class to which quoted.

39    This assembly although its design, engineering and/or component parts and materials are controlled by Supplier, must conform in all respects as a complete operational unit to Chrysler engineering standards as applicable. Chrysler Corporation must be given prior notification of any intended changes to this assembly in accordance with the terms of applicable purchase order(s).

40    This request for quotation is based upon advance specification and volume data; therefore, any resulting purchase order will be subject to review and the price subject to renegotiation in the event the specifications and volume when formally established are different from those now contemplated and reflected herein.

41    In the event of an order resulting from this quotation, the "terms and conditions" of Purchaser's order will prevail over any "terms and conditions" of Supplier's quotation and confirmation of order.

47    Blanket order requirements for model year as indicated on quotation.

74    The enclosed "Request for Quotation" rider — Form 84-806-1767 - Raw Material Data — must be completed and submitted with your quotation.

162    Payment for supplier tooling assumes that parts made therefrom will be acceptable both dimensionally and functionally. Purchaser reserves the right to withhold payment for tooling on this part until samples from such tooling are fully approved. as evidenced by signed Initial Sample Inspection Report, Form No. 84-235-4434, and also Initial Sample Laboratory Report, Form No. 84-235-4435.

197    Seller is to reflect firm labor economics in his quotation.

211    Includes commitment for potential service requirements of Purchaser's Service and Parts Division. Special packaging for service, if required and not specified herein, will be separately requested and

negotiated. Foreign suppliers must mark service requirements appropriately, "Made in (show country of origin)". To ensure proper identification of shipments, Seller's packing slips shall always include applicable Chrysler release number.

214    Quotation to be based upon current material and labor economics and thereby not reflect any anticipatory cost increases.

218    If portion(s) of wiring assemblies covered by this inquiry/purchase order will be moulded from multiple cavity tooling, initial samples of such portion(s) from each cavity mould must be submitted appropriately identified by cavity for Purchaser's approval prior to production runs.

226    Alternative quotations FOB Carrier, Seller's Plant and FOB Chrysler plants as indicated (Your Delivery) must be submitted. Quotations are to be based upon full railcar/truckload lots and explained as applicable.

260    Previous part number (_____); Seller to advise feature cost differences.

# III. RIDER - REQUEST FOR QUOTATION

III. RIDER - REQUEST FOR QUOTATION



# REQUEST FOR QI  TATION RIDER
## WEIGHT AND RAW MATERIAL DATA

BUYER DECK/NAME _____

SUPPLIER NAME _____

SUPPLIER CODE _____ DATE PREPARED _____ MODEL YEAR _____

PART NO. (ASSY). _____ PART NAME (ASSY) _____

PART NO. (DETAIL) _____ PART NAME (DETAIL) _____

NOTE: USE COLOR NUMBERS WHERE THESE HAVE BEEN ASSIGNED

## 1. DATA REQUIRED, 100% OF QUOTATIONS

| GROSS/ROUGH WT. | LBS. EACH | NET/FINISHED WT. | LBS. EACH | RECOVERABLE SCRAP WT. | LBS. EACH |
|---|---|---|---|---|---|
| MAJOR RAW MATERIAL | | | CHRYSLER MAT. STD. (MS) | | |

## 2. ADDITIONAL DATA FOR METAL PARTS

PROCESSING/EXTRAS (DESCRIBE)

☐ YES ☐ COST
☐ NO. ☐ ADDED $

| | | | | RAW MATERIAL * COST (INCLUDING ANY EXTRAS) $ | ☐ LB. ☐ CWT. |
|---|---|---|---|---|---|
| | ☐ LB. ☐ CWT. | | | SCRAP PRICE REFLECTED IN QUOTATION $ | ☐ LB. ☐ CWT. |
| BLANK SIZE | METAL TYPE | | CLASS | GAUGE | QUALITY |

## 3. ADDITIONAL DATA FOR MULTI-MATERIAL PARTS AND/OR ASSEMBLIES

| CHRYSLER PART NO. | MATERIAL | M.S. | WT. (GROSS) LBS. | WT. (NET) LBS. | SCRAP WT. | MATERIAL COST $ PER LB. | SCRAP VALUE $ PER LB. | COMMENTS |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

INSTRUCTIONS /  EVERSE SIDE

R4 BMG 1797 (8/7

REQUEST FOR QUOTATION RIDER — Y   ~HTS AND RAW MATERIAL DATA

WHENEVER THIS RIDER FORM HAS BEEN ENCLOSED WITH THE REQUEST FOR QUOTATION, CHRYSLER IS ASKING FOR INFORMATION ON THE MATERIAL YOU PROPOSE USING AND ITS COST. THEREFORE, IT IS MANDATORY THAT THE FORM BE APPROPRIATELY FILLED OUT AND RETURNED AS ATTACHMENT TO YOUR QUOTATION.

A)   PART NO (ASSEMBLY) — IF THE PART NUMBER ON WHICH YOU ARE QUOTING IS AN ASSEMBLY, ENTER THE PART NUMBER ON THIS LINE. IF MULTIPLE MATERIALS AND/OR COMPONENT PARTS ARE INVOLVED, COMPLETE THE LOWER PORTION OF THE FORM AND LIST DATA FOR EACH MATERIAL/DETAIL ON A SEPARATE LINE, OR ALTERNATIVELY ADD SUPPLEMENTARY FORMS, APPROPRIATELY REFERENCED.

B)   PART NO (DETAIL) — IF THE PART NUMBER ON WHICH YOU ARE QUOTING IS NOT AN ASSEMBLY, ENTER THE PART NUMBER HERE.

C)   SECTION 1 — "ROUGH WEIGHT" IS DEFINED AS THE AMOUNT OF MATERIAL REQUIRED TO PRODUCE THE PART, INCLUDING OFFAL, OXIDATION, ETC., BUT NOT INCLUDING TRIMMINGS RECYCLED IN YOUR OWN SHOP. ENTER THE WEIGHT FOR EACH DETAIL PART IN POUNDS PER FINISHED PART.

"PROCESSING/EXTRAS COST" — IF YOU INCUR SUCH COSTS, CHECK "YES" AND ENTER THE AMOUNT OF SUCH COST IN THE "COST ADDED" BOX.

PROCESSING COST WOULD BE FOR SUCH AS THERMAL OR SURFACE TREATMENTS — SUCH AS BLAST CLEANING, PICKLING, OILING, OR LIME OR PHOSPHATE COATING. EXTRAS CAN COMPRISE VARIOUS FACTORS AFFECTING COST OVER AND BEYOND BASE PRICE — E.G., TEMPORARY SUCH AS "SCRAP EXTRA" OR MORE USUALLY SEMIPERMANENT FACTORS RELATED TO PROCESSING, GRADE, SIZE, QUANTITY, CUTTING, PACKAGING OR MARKING.

"NET/FINISHED WEIGHT" IS DEFINED AS THE WEIGHT OF THE PART WHEN READY TO SHIP. THIS WEIGHT MAY OR MAY NOT BE THE SAME AS THE "ROUGH WEIGHT" DEPENDING ON THE KIND OF PART AND PROCESS INVOLVED.

"RECOVERABLE SCRAP WEIGHT" — USUALLY THE (APPROXIMATE) DIFFERENCE BETWEEN ROUGHT STAMPED PART WEIGHT AND FINISHED PART WEIGHT.

D)   SECTION 2 — PLEASE COMPLETE AS PER THE FOLLOWING DEFINITIONS:

"METAL TYPE" — CHARACTER OF MATERIAL SUCH AS COLD ROLL, HOT ROLL, GALVANIZED, ALUMINIZED, STAINLESS OR TERNE.

"METAL CLASS" — GENERALLY REFERS TO QUALITIES SUCH AS FOR COLD ROLL: CLASS 1 FOR EXPOSED APPLICA-TIONS; CLASS 2 FOR UNEXPOSED (LESS EXPENSIVE) APPLICATIONS.

"METAL QUALITY" — E.G., COMMERCIAL, SPECIAL, MERCHANT-BAR OR STRUCTURAL QUALITY, ETC.

E)   SECTION 3 — "ADDITIONAL DATA FOR MULTI-MATERIAL PARTS AND/OR ASSEMBLIES." — THIS SECTION PROVIDES A CONVENIENT WAY TO LIST THE MATERIALS INVOLVED IN A MULTI-MATERIAL PART SUCH AS A RADIATOR AND/OR THE MULTIPLE COMPONENT PARTS IN AN ASSEMBLY. SHOW THE CHRYSLER PART NUMBER AND USE A SEPARATE LINE FOR EACH COMPONENT/MATERIAL.

IN THE EVENT THAT DATA WOULD BE IDENTICAL TO INFORMATION BEING SUBMITTED OR PREVIOUSLY SUBMITTED FOR ANOTHER — E.G., SUPERSEDED — PART OR ASSEMBLY, COMPLETE THE FORM NEVERTHELESS, SHOWING NEW PART NUMBER AND "SAME AS PART NO I    I".

## REQUIREMENTS PECULIAR TO GOVERNMENT CONTRACTS

Those clauses set forth below are a part of the Request for Quotation if the material/service quoted fit into the circumstances noted below:

**WHEN ORDER IS EXPECTED TO EXCEED $10,000 AND SUPPLIER HAS NOT SENT AN "ASSURANCE" WITHIN THE PAST YEAR.**

28.   "The attached assurance - nonsegregated facilities is required by Government regulation. Please execute and return one copy with your quotation. Failure to comply will render your bid non-responsive."

**WHEN ORDER IS EXPECTED TO EXCEED $10,000**

36.   "Equal Opportunity Certifications — By submission of this bid or proposal, offeror certifies as follows:

1.   Except as noted below, up to the date of this offer, no advice, information or notice has been received by the offeror from any Federal Government agency or representative thereof that the offeror or any of its divisions or affiliates or known first-tier subcontractors is in violation of any of the provisions of Executive Order No. 11246 of September 24, 1965, Executive Order No. 11375 of October 13, 1967, or rules and regulations of the Secretary of Labor (41 CFR, Chapter 60) and specifically as to not having an acceptable affirmative action program or being in noncompliance with any other aspect of the Equal Employment Opportunity Program. It is further certified and agreed that should there be any change in the status of circumstances certified to above between this date and the date of expiration of this offer or any extension thereof, the Government Contracting Officer cognizant of this procurement will be notified forthwith.

2.   Offeror has complied with all applicable rules and regulations of the United States Department of Labor concerning the establishment and implementation of an affirmative action compliance program, including, but not limited to, all requirements of 'Order No. 4' of the United States Department of Labor (41 CFR 60-2)."

**WHEN ORDER IS EXPECTED TO EXCEED $100,000**

166.   "Clear Air and Water Certification — With submission of his bid or proposal, offeror will provide written certification as follows:

(a)   Any facility to be utilized in the performance of this proposed contract has ☐ or, has not ☐ been listed on the Environmental Protection Agency List of Violating Facilities.

(b)   Offeror will promptly notify Purchaser, prior to award, of the receipt of any communication from the Director, Office of Federal Activities, U.S. Environmental Protection Agency, indicating that any facility which he proposes to use for the performance of the contract is under consideration to be listed on the EPA List of Violating Facilities.

(c)   Offeror will include substantially this solicitation certification, including this paragraph (c), in every nonexempt subcontract."

**WHEN ORDER IS EXPECTED TO EXCEED $2,500**

208.   "Seller agrees that during the performance of this Purchase Order he is bound by and will comply with all provisions of: (a) the EMPLOYMENT OF THE HANDICAPPED Clause set forth in §741.3 of Title 20 of the Code of Federal Regulations and (b) the EMPLOYMENT OF VETERANS Clause set forth in § 50-250 of Title 41 of the Code of Federal Regulations."

WHEN NATIONAL DEFENSE CONTRACTS IS EXPECTED TO EXCEED $100,000

213. "Cost Accounting Standard Requirements as specified in Section 331.et seq in Title 4 of the U.S. Code of Federal Regulations."

WHEN ORDER IS EXPECTED TO EXCEED $500,000

259. "Seller agrees to establish and conduct a "Small Business Subcontracting Program" in compliance with the provisions of ASPR 7-104.14 (B); a "Labor Surplus Area Subcontracting Program" in compliance with the provisions of ASPR 7-104.20 (B); and a "Minority Business Enterprises Sub-contracting Program" in compliance with the provisions of attached riders entitled "Minority Business Enterprises Subcontracting Program" (Form DD-1 4-1-72) and "Utilization of Minority Business Enterprises" (Form DD-2 6-72)."

# ASSURANCE
## NONSEGREGATED FACILITIES

By the submission of this bid, the bidder, offeror, applicant, or subcontractor certifies that he does not maintain or provide for his employees any segregated facilities at any of his establishments, and that he does not permit his employees to perform their services at any location, under his control, where segregated facilities are maintained. He certifies further that he will not maintain or provide for his employees any segregated facilities at any of his establishments, and that he will not permit his employees to perform their services at any location, under his control, where segregated facilities are maintained. The bidder, offeror, applicant, or subcontractor agrees that a breach of this certification is a violation of the Equal Opportunity clause in Purchaser's purchase order. As used in this certification, the term "segregated facilities" means any waiting rooms, work areas, rest rooms and wash rooms, restaurants and other eating areas, time clocks, locker rooms and other storage or dressing areas, parking lots, drinking fountains, recreation or entertainment areas, transportation, and housing facilities provided for employees which are segregated by explicit directive or are in fact segregated on the basis of race, creed, color, or national origin, because of habit, local custom or otherwise. He further agrees that (except where he has obtained identical certifications from proposed subcontractors for specific time periods) he will obtain identical certifications from proposed subcontractors prior to the award of subcontracts exceeding $10,000 which are not exempt from the provisions of the Equal Opportunity clause; that he will retain such certifications in his files; and that he will forward the following notice to such proposed subcontractors (except where the proposed subcontractors have submitted identical certifications for specific time periods): NOTICE TO PROSPECTIVE SUBCONTRACTORS OF REQUIREMENT FOR CERTIFICATIONS OF NONSEGREGATED FACILITIES (OCTOBER 1971). A Certification of Nonsegregated Facilities must be submitted prior to the award of a subcontract exceeding $10,000 which is not exempt from the provisions of the Equal Opportunity clause. The certification may be submitted either for each subcontract or for all subcontracts during a period (i.e., quarterly, semi-annually, or annually). (Note: The penalty for making false statements in offers is prescribed in 18 U.S.C. 1001.)

The above Certification is applicable to this and/or subsequent bids relating to performance under any Government Contract and is effective for one year from date below or for such longer period as may be permitted by law unless it is earlier revoked by written notice to Chrysler Corporation. The certifier agrees that he shall notify Chrysler Corporation immediately upon the occurrence of any change in conditions which invalidates this Certification.

COMPANY
NAME _____   SIGNED _____


STREET _____   TITLE _____

CITY &
STATE _____   DATE _____


## OUR COMPANY IS CLASSIFIED AS A:

☐ SMALL
☐ LARGE
☐ MINORITY BUSINESS

IV. STANDARD CLAUSES

# IV. STANDARD CLAUSES

# PURCHASE ORDER CLAUSES

4    Special tool required to produce the above mentioned part shall be furnished by and remain the property of the Seller. It is understood and agreed that these tools will not be destroyed or otherwise disposed of without Purchaser's written consent. Seller agrees not to alter the tool line-up in any respect, except with the consent of Purchaser in writing.

5    Special tools required to produce the above part are covered by purchase order number (fill in number).

5B    Action necessary to furnish special tools required for the above part(s) is to commence immediately. A separate tool purchase order No. _____ is being issued.

5C    Action to furnish tools for the part(s) is to commence immediately with a maximum cost of (      ). A separate tool order No. (_____) is being issued and will be distributed upon return of the completed supplier tool record. Prompt return in an acceptable form is required to insure timely payment of your tooling invoice.

8    In accepting this purchase order, Seller agrees to furnish to Chrysler inspection location sample parts made from the tooling established hereby, in accordance with Purchaser's Initial Sample Shipping Instructions, Form No. 83-175-0014 and applicable Sample Due Date. Seller further agrees that such samples will be accompanied appropriately by applicable checking devices and by covering documentation in Purchaser's prescribed format.

14    Tools, purchased under this order as an end item when completed and paid for by Purchaser, become Purchaser's property and are subject to all the provisions of Clause XI of this order. In addition, each tool is to be clearly stamped or stenciled with a tool number and Purchaser's part number of the part which the tool is intended to produce. In order to expedite payment, the following statement is to appear on Seller's invoice.

Tools as invoiced are completed, stamped as to Chrysler's tool and part number, and labeled "Property of Chrysler Corporation".

Seller agrees not to alter the tool line-up in any respect except with the consent of the Purchaser in writing.

Seller is to segregate and list as individual items on invoices all charges applying to designing and tryout costs, tooling aids cost (patterns, tool or die moulds, templates, Tamastone moulds, master hobs, etc.) and any overtime premium, which are a part of the price shown on this purchase order.

14A    This purchase order is issued as matter of record to cover the physical transfer of the following tools or pattern equipment, owned by Purchaser, to you for the production of our parts.

*(It is not issued to cover the purchase or sale of any material or service.)*

It is understood and agreed that the above tools or equipment although transferred to you are to remain the property of Purchaser and to be maintained in accordance with Clause XI, under which Seller assumes responsibility for rigging, dismantling and loading costs. Value of tools for insurance purposes $ (fill in dollar amount of value).

14B    All repairs and replacement of above tools/equipment is to be at Seller's own expense, but any cost resulting from engineering changes shall be at Purchaser's expense.

14D    The above tools when completed are to remain in Seller's possession as Seller's property under Seller's control, but otherwise the requirements of Clause XI shall apply.

14E    Pattern equipment provided or paid for by Purchaser remains Purchaser's property and is to be maintained by Seller as prescribed in Clause XI. Minor repairs, when necessary, are to be made at Seller's expense; major overhauls and replacement of worn out equipment at Purchaser's expense.

14F    Cost of tooling (or patterns) in the amount of (fill in total dollar amount) is to be amortized in the piece price at the rate of (fill in unit amount of amortization) per (fill in unit i.e., each, hundred, thousand) over the first (fill in total number of units to which amortization is to be charged).

(10-78)

**14G** Tools or patterns used to make the above part when fully amortized are to become Purchaser's property and are to be maintained by Seller in accordance with Clause XI.

**14H** Tools or patterns when fully amortized are the property of the Seller but are to be maintained in accordance with the provisions of Clause XI.

**14K** The above zinc alloy tools when completed are to remain in Seller's possession as Seller's property subject to this clause. Such tools are to be used exclusively on Purchaser's orders and are to be stored, maintained so as to furnish parts satisfactory to Purchaser's inspection and fully covered by insurance at all times without expense to Purchaser; and may not be destroyed or otherwise disposed of without Purchaser's written consent for a minimum period of six (6) months after completion and acceptance of the parts produced from these tools. Any subsequent proposal to dispose of such tools must be submitted in writing to and approved by Purchaser. Purchaser will not, without its written consent, be liable for any additional charge in connection with the retention of the tools by the Seller.

At its option, Purchaser may buy and take possession of the above tools at any time upon payment to Seller for the zinc alloy used in the tools based on the weight of the finished tools and prevailing market price of prime zinc on the East St. Louis Prime Western Zinc Market at the time of purchase.

Each tool is to be clearly stamped or stenciled with a tool number and Purchaser's part number so as to make it identifiable with Purchaser's part which it is intended to produce.

**14M** This order/change is authorization to modify, supplement and/or adapt tools that are Purchaser's property and subject to all provisions of Purchaser's General Terms and Conditions Clause XI. Payment for work authorized will be on basis Net 30th Inst., 10th & 20th Prox. In order to permit acceptance and expedite payment of Seller's invoice, the following assurance statement must appear thereon: "Seller hereby assures that the modifications, additions and/or services to special tooling included in this invoice have been completed in accordance with Seller's referenced purchase order or purchase order change."

**15** Patterns used to make the above part are the property of Seller and are to be maintained in good working condition by the Seller to produce castings satisfactory to Purchaser's inspection. Patterns are not to be destroyed without Purchaser's written approval.

**16** Seller is to segregate and list as individual items on invoices all charges applying to designing and tryout costs, tooling aids cost (patterns, tool or die models, templates, Tamastone moulds, master hobs, etc.) and any overtime premium, which are a part of the price shown on this purchase order.

**17** Invoice(s) covering tools and/or patterns, etc., on this order must show exact physical location by City, Township or Village and State where the tools will be used in production. Should the tools on this order be transferred to another location, this fact must be reported to the buyer whose name appears on the face of this order.

**17A** Physical location of these tools will be at (fill in city and/or township, or village and state). Any subsequent transfer of tools to another location must be reported to Purchaser's buyer immediately.

**18** Confirming Retroactive Price (increase or decrease) not provided within Order No. (fill in) between above dates.

**19** This material is shipped subject to Purchaser's standard inspection practice and must be suitable in temper, finish and/or physical characteristics for the parts or use intended - otherwise material will be returned for replacement or full credit.

**20** Confirming (letter of adv. authorization - date).

**21** This purchase order incorporates terms of (insert contract number and date, or other descriptive information). If there is any conflict between the terms of the respective documents, the terms of the referenced (insert contract number, agreement, etc.) shall govern.

**23** This material is purchased for resale or for an exempt purpose and is therefore exempt from state and local sales or use taxes. Retail License Numbers:
California SZ-OHA-30-606877; Illinois 798-931; Kentucky 108880; Michigan A38-0419960;

**(10-78)**

Missouri 240-3907; Pennsylvania 99-04171; Direct Payment Permit Nos.: Indiana 101385-08; New York DP-000224; Ohio (Twinsburg Stamping Plant) 98-000293; Ohio (Amplex Van Wert Plant) 98-000292; Ohio (Toledo Machining Plant) 98-000294; Ohio (Fostoria Foundry Division) 98-001848; and Ohio (Dayton Plant I) 98-001782; Wisconsin (Chrysler Outboard) 98239; Indiana (Michigan City Molded Products) 415694-03; Ohio (Sandusky Vinyl Products Div.) 98-001753; and Ohio (Lima Tank Plant) Sales Tax Account No. 99-009094

| | |
|---|---|
| 27 | Invoice on theoretical weight basis. |
| 27A | Invoice on actual weight basis. |
| 29 | Steel to be produced by (          ). |
| 31 | Seller shall invoice on actual meter reading basis at time of delivery. |
| 32 | Price established in this purchase order is based upon anticipated minimum released quantity for fabrication, collective for the plants referenced in the release (and excepting first and/or final release) of (          ) pieces. |
| 33 | Price established in this purchase order is based upon anticipated minimum released quantity for shipment, collective for the plants referenced in the release (and expecting first and/or final release of (          ) pieces. |
| 34 | The above is to comply with specifications and be satisfactory to our inspection. You warrant this unit to give satisfactory performance in service and when applied to our chassis you undertake and assume full responsibility for the satisfactory performance of any such chassis so converted, to the extent that the operation and performance is affected by such conversion. You also agree to provide at a reasonable price, any part required for servicing over a period of five years from delivery date. |
| 35L | Seller's added cost for Purchaser's Service and Parts Division for (          ). |
| 35M | Above item reflects Service and Parts Division finished per latest material standard and blueprint change. |
| 35P | Seller's added cost to process for Purchaser's Service & Parts Division as per "Vendors Processing Specifications", dated (fill in date and buyer's name). |
| 38 | This order and price (or prices) cover this part (or these parts) as a *Special Equipment Item* (or items) only. |
| 40 | Purchaser assumes liability for payment of applicable State and Local Sales and Use Taxes and therefore no tax shall be invoiced by Seller. Michigan Retail License No. A38-0419960. |
| | Direct Payment Permit Nos.: Indiana 101385-08; New York DP-000224; Ohio (Twinsburg Stamping Plant) 98-000293; Ohio (Amplex Van Wert Plant) 98-000292; Ohio (Toledo Machining Plant) 98-000294; Ohio (Fostoria Foundry Division) 98-001848; and Ohio (Dayton Plant I) 98-001782; Indiana (Michigan City Molded Products) 415694-03; Ohio (Sandusky Vinyl Products Div.) 98-001753 and Michigan (Chrysler Transport) A38-2143117. |
| 41 | Do not invoice Michigan Motor Fuel Tax or Michigan Diesel Motor Fuel Tax as Purchaser is responsible for determining taxable usage and remitting payment thereon to the Michigan State Tax Authorities under Distributor License No. 471 or User License No. D-2371, as appropriate. |
| 50 | This material will be used in industrial processing or directly in manufacturing tangible personal property for sale. It is understood that State and/or Local Sales or Use Taxes, if applicable, are included in the above price and must be shown, and identified by taxing jurisdiction, separately from the material price on the Seller's invoice. |
| 50A | This material will be used in industrial processing or directly in manufacturing tangible personal property for sale. It is understood that Provincial Sales or Use Taxes, if applicable, are included in the above price and must be shown, and identified by taxing jurisdiction, separately from the material price on the Seller's invoice. |

(10-78)

53    Purchaser may export packaged items prior to inspection. Seller agrees to indemnify Purchaser against shortages, defects or wrong material discovered upon arrival at ultimate destination, and against such additional costs, including repairs, transportation and duty, which may arise in connection therewith.

56    This material is subject to applicable State Motor Fuel Tax and Inspection Fees of the jurisdiction to which shipment is made which must appear as separate items on your invoice. Seller affirms that he will make the necessary tax return to the state.

57    FEDERAL EXCISE TAX EXEMPTION CERTIFICATE: Purchaser hereby certifies that it is a manufacturer or producer of articles taxable under Chapter 32, Sub-chapters A and B, of the Internal Revenue Code and of articles not taxable thereunder, and holds Certificate of Registry No. 38 73 0507 A, issued by the District Director of Internal Revenue at Detroit, Michigan and that the article or articles specified in the accompanying order will be used by it as material in the manufacture or production of, or as a component part of such article or articles to be manufactured or produced by Purchaser. It is understood that for all purposes Purchaser will be considered the manufacturer or producer of the articles purchased hereunder, and (except as specifically provided by law) must pay tax on resale or use, otherwise than as specified above, of the articles purchased hereunder. It is further understood that the fraudulent use of this certificate to secure exemption will subject Purchaser and all guilty parties to the penalties provided by law.

57A   FEDERAL EXCISE TAX EXEMPTION CERTIFICATE: Purchaser hereby certifies that it is a manufacturer or producer of articles taxable under Chapter 32, Sub-chapters A and B, of the Internal Revenue Code and holds Certificate of Registry No. 38 73 0507 A, issued by the District Director of Internal Revenue at Detroit, Michigan, and that the article or articles specified in the accompanying order will be used by it as material in the manufacture or production of, or as a component part of such article or articles to be manufactured or produced by Purchaser. It is understood that for all purposes Purchaser will be considered the manufacturer or producer of the articles purchased hereunder, and (except as specifically provided by law) must pay tax on resale or use, otherwise than as specified above, of the articles purchased hereunder. It is further understood that the fraudulent use of this certificate to secure exemption will subject Purchaser and all guilty parties to the penalties provided by law.

58    PREFERENCE FOR CERTAIN DOMESTIC COMMODITIES: The Contractor agrees that there will be delivered under this contract only such articles of cotton, woven silk and woven silk blends, spun silk yarn for cartridge cloth, or wool (whether in the form of fiber or yarn or contained in fabrics, materials or manufactured articles) as have been grown, reprocessed, reused, or produced in the United States, its possessions, or Puerto Rico; provided that this clause shall have no effect to the extent that the Secretary has determined as to any such articles that a satisfactory quality and sufficient quantity cannot be procured as and when needed at United States market prices.

59A   The Federal Excise Tax applying to this material is a part of this purchase order and is to be invoiced to Purchaser and shown as a separate item on the invoice; Seller will make and render the proper return to the Federal Government, covering same.

60    $25.00 minimum billing per shipment. Material to be shipped must be $25.00 value notwithstanding any less quantity shown on the release issued by Production Control. Subsequent shipments to be made only when cumulative released quantity for each plant exceeds quantity already shipped.

60A   Minimum billing ($           ).

61    The Insurance Provisions of the Plant Engineering General Conditions shall apply in lieu of Item XIV of the "Terms and Conditions" entitled "Insurance" on Form 84-806-1652.

62    An "Inspection Conformance Certificate for Material Shipped" on forms furnished by Purchaser will be completed and returned by Seller for each part when required by our Production Control Department, and our Riders entitled "Government Contract Provisions" [Form No. 801-8021 (4-74) and "Duty-Free Entry - Canadian Supplies" (Form No. DP-15 (6-74)] shall be considered a part of this purchase order.

(10-78)

63    Each shipment against this purchase order must be accompanied by (1) Special Customs Invoice (Form No. 5515) in triplicate, (2) Commercial Invoice in triplicate, and (3) all documents must bear the notation "For Customers Clearance Purposes - Notify *(Insert name of Customs Broker)"*.

64    Purchaser reserves the right to increase quantities called for herein by an additional quantity of not more than 100%. Such additional quantities can be authorized by written release from Production Control specifying quantity and contract number for which released. The price of the additional quantities shall be no higher than the unit price set forth in this purchase order. This option expires no later than one year after date of this purchase order.

64B   Purchaser reserves the right to increase quantities called for herein by an additional quantity of not more than 50%. Such additional quantities can be authorized by written release from Production Control specifying quantity and contract number for which released. The price of the additional quantities shall be no higher than the unit price set forth in this purchase order.

65    Seller shall show purchaser's Internal Revenue Service Employer Identification No. 38-0419960 on all invoices submitted to United States Customs.

66    This Purchase Order is cancelled with no cost to Chrysler effective (          ).

66A   This item is cancelled effective (          ).

66B   This purchase order is being cancelled with no cost to Chrysler effective point to be determined by Production Control for (          )

68    Seller shall indemnify and hold Purchaser harmless from and against any and all claims, losses, liabilities, damages and expenses, sustained or incurred by Purchaser as a result of Seller's failure to deliver the supplies or perform the services covered hereunder, or any part thereof, in accordance with the provisions of this order. It is mutually understood and agreed that this clause is not intended to limit in any way Purchaser's rights and remedies against Seller and is in addition to any other or further rights and remedies available to Purchaser, including, but not limited to, the rights and remedies of Purchaser under Paragraph XIII, "Cancellation for Default" of the Terms and Conditions of this order.

69    Do not invoice Missouri Motor Fuel Tax as Purchaser is responsible for determining taxable usage and remitting payment thereon to the Missouri Department of Revenue under authority of Distributor's License No. 885. Compliance with the Missouri Oil Inspection Law, including payment of inspection fees, will be made by Seller prior to delivery.

72    FEDERAL EXCISE TAX

      DOMESTIC DESTINATION: If the destination of the vehicle as indicated by the Government Bill of Lading is within the United States, the Federal excise tax applying to the truck bodies purchased hereunder is a part of this purchase order and is to be invoiced to Purchaser and shown as a separate item on the invoice.

      EXPORT DESTINATION: If the destination of the vehicle as indicated by the Government bill of Lading is within any foreign country or possession of the United States, Seller is notified that the truck bodies purchased hereunder are purchased tax-free for export, or for resale for export, and will be exported in due course. Therefore, no Federal excise tax is to be invoiced to Purchaser.

      UNKNOWN DESTINATION: If the Seller is not informed as to whether the destination of the vehicle is within or without the United States, Seller is notified that the truck bodies purchased hereunder are purchased for export, or for resale for export. However, the applicable Federal excise tax is a part of this purchase order and is to be invoiced to Purchaser and shown as a separate item on the invoice pending submission by Purchaser to Seller of proof of exportation.

75    Seller's compliance with delivery date(s) indicated is absolutely essential for Purchaser's intended purpose for the items herein ordered. Purchaser reserves the right to withhold payment if delivery is not made by specified date(s).

(10-78)

76 Purchaser (Chrysler) owned containers are to be used to ship material to Seller and Seller shall use same containers to return material to Purchaser in the performance of this purchaser order. Seller's packing slips and invoices must indicate number of containers returned with shipment and plant(s) to which returned. Purchaser will invoice Seller at Purchaser's standard cost for each container shipped and will refund same amount to Seller for each container returned.

76A Purchaser owned containers are to be used to ship material to Seller. Seller will be responsible for such containers while in his care or under his control. Purchaser will invoice Seller at Purchaser's standard cost for such container shipped and will refund the same amount to Seller for each container returned to Purchaser's shipping plant F.O.B. (    ).

78 Our Rider entitled United States/Canadian Purchase Order Rider 'B' (Form No. 84-180-7310) shall be considered a part of this purchase order.

80 Exempt from Federal Excise Tax.

82A Blanket order for the approximate percentage as indicated below for our following Plant requirements for our _____ Model Year.

82B Blanket order for the approximate percentage as indicated below for our following plant requirements from _____ to _____ .

82C Blanket order for approximately 65-100% of our following plant requirements for our Model Year.

82D Blanket order for a portion of our following plant requirements for our _____ Model Year.

82E Blanket order for approximately 65-100% of our following plants requirements from _____ to _____ .

82F Blanket order for a portion of our following plant requirements from_____to_____ .

82G Blanket order for the approximate percentage as indicated below of our following plant requirements for Model Years _____ through _____ .

2J This order applies to our following plant requirements only.

82X Blanket order for approximately 65-100% of Chrysler requirements commencing from the date shown on the face of this order and continuing on a year to year basis thereafter. This purchase order is automatically cancelled at no cost to Chrysler Corporation if no releases are issued under this order during any twelve month period.

82Y Blanket order for a portion of Chrysler requirements commencing from the date on the face of this order and continuing on a year to year basis thereafter. This purchase order is automatically cancelled at no cost to Chrysler Corporation if no releases are issued under this order during any twelve month period.

83 You are to purchase from Chrysler Corporation (fill in description of part) at (fill in amount) which is included in the above price.

84 Gauges, layouts, tooling aids, etc., necessary to inspect the production part must be supplied in conjunction with sample part submissions for certification. Additionally, requirements as reflected on the attached (or previously provided) Receiving Inspection Gauge Notice must be fulfilled to complete the gauge requirements of this order.

85 This purchase order cancels and supersedes our purchase order number (insert cancelled P.O. No.) and assumes our obligation for any undelivered balances or unbilled charges due under the cancelled purchase order.

86 This order pertains to Safety/Emissions required item. In accepting the order, Seller agrees to identify all related shipping containers with Purchaser's "Safety Item" identification label and to enter on all related packing slips the following certification "Material in this shipment complies with Chrysler's requirements for controlling the quality of Safety/Emissions items.

The Vehicle Safety/Emissions Item Notice Rider (Form No. 84-806-1725) shall be considered a part of this purchase order.

(10-78)

92   NON-RETURNABLE CONTAINERS: Non-Returnable Container-Materials ordered will be shipped in or on Seller's adequate non-returnable containers. Containers will be shown as a separate item on Seller's invoice at $ (fill in amount) each.

93   Non-Returnable containers may only be used when returnable containers are not available per standard arrangment.

94   Returnable Container — Materials ordered will be shipped in or on Seller's adequate returnable containers, each container to be plainly identified as such in accordance with Purchaser's Packaging & Shipping Instructions and so referenced on Supplier's packing slips. Containers will be invoiced by Seller at $ (fill in amount) each. Purchaser will charge the same amount for each container returned. A Seller within immediate vicinity of Purchaser's plant will be notified to pick up empty containers. Upon failure by Seller to pick up empty containers after notification and where Seller is located outside immediate vicinity of Purchaser's plant, Purchaser will ship containers to Seller, F.O.B. Purchaser's Plant. Seller will reimburse Purchaser for any prepaid freight and shipping costs from F.O.B. point.

94A   Returnable Air Cushion Dunnage Bags — Materials ordered will be shipped protected by Seller's air cushion dunnage bag(s), each bag to be plainly identified as such in accordance with Purchaser's Packaging & Shipping Instructions and so referenced on Supplier's packing slips. Bags will be invoiced by Seller at (see below) each and Purchaser will charge same amount when returned, F.O.B. Seller's Plant, normally in the same rail cars or otherwise at Purchaser's expense.

94M   Returnable Container — Materials ordered will be shipped in or on Seller's adequate returnable containers, each container to be plainly identified as such in accordance with Purchaser's Packaging & Shipping Instructions and so referenced on Supplier's packing slips. Containers will be invoiced by Seller at (see below) each. Purchaser will ship containers to Seller, F.O.B. Seller's Plant. Purchaser will charge same amount for each container returned.

95   Returnable Container - Reels or Spools used to ship material ordered will be paid for at the invoiced price (in no event to exceed manufacturer's current published prices or $600.00 each, whichever is less) subject to return for credit at the same price, F.O.B. Purchaser's plant. Charges for Reels or Spools must be shown on Seller's invoice as a separate item. As a means of identification and to facilitate return, Reels or Spools must be plainly marked in accordance with Purchaser's Packaging and Shipping Instructions and so referenced on Supplier's packing slips.

96   (Fill in name of Container) property of Chrysler Corporation are to be used to deliver the material. Seller will be responsible to account for such containers while they are in his care or under his control. In the event of damage, they are not to be scrapped nor repairs effected that would be at Purchaser's expense, without Purchaser's written authorization. Containers to be shipped to Seller, F.O.B. (fill in Purchaser's or Seller's Plant) and invoiced by Purchaser at Purchaser's standard cost for each container. Purchaser will refund same amount to Seller for each container returned to Purchaser.

96M   (Fill in name of container) property of Chrysler Corporation are to be used to ship the material ordered. Seller's packing slips and invoices must indicate number of containers returned with shipments. In the event of damage, they are not to be scrapped nor repairs effected that would be at Purchaser's expense, without Purchaser's written authorization. Containers to be shipped to Seller, F.O.B. Seller's plant. Purchaser will invoice Seller at (see below) for each container shipped and will refund same amount to Seller for each container returned.

97   RETURNABLE CONTAINERS IN ASSIGNED RAIL CARS: Material shipped to Purchaser's plant in racks, crates, trays or bins returnable free in the same rail cars - containers are to be returned in the same rail cars at no charge to Purchaser. If such containers are returned by other means, Purchaser will be responsible for return freight charges and Seller, upon presentation of proof that it has paid any such charges on behalf of Purchaser, shall be reimbursed by Purchaser therefor.

98   In consideration of the payment for the design, development and/or other services set forth in this purchase order, Seller hereby grants unto Purchaser a royalty-free non-exclusive, non-cancellable

(10-78)

license under any patent or patents now or hereinafter owned or controlled by Seller to manufacture, have manufactured, use and/or sell devices and to practice methods or processes utilizing any and all inventions included in or useful in the production of any device designed, developed, drawn, devised or produced under this purchase order, as well as under any copyright acquired by the Seller on work performed under this purchase order.

100    Chrysler Corporation to furnish (quantity) (description) subject to a 'Consigned Material Receipt Agreement' executed by Seller (date).

100A    Chrysler Corporation to furnish (see below) on consignment to Seller in the performance of this purchase order.

101    You will upon completion of this order, automatically return and indicate on your shipper all excess materials properly segregated and identified to Chrysler Service & Parts Division, Center Line, Michigan.

102    In accepting this order, Seller certified that it is qualified as a public warehouse in accordance with applicable federal and state laws and that Seller will reimburse the Purchaser for such amount of property tax and appropriate penalties and interest, etc., which the Purchaser may be required to pay on personal property intended for shipment out of the state, stored in Seller's warehouse, and on which property the exemption for taxation is not allowed by the taxing authorities on the basis that Seller's warehouse does not meet the qualifications as set forth above.

107    Unless otherwise certified on this purchase order for specific states or certain of our receiving locations, this material is subject to applicable state and/or local sales or use tax, if imposed, of the jurisdiction to which shipment is made and must appear on your invoice as a separate item if Seller is authorized to collect such tax.

111    Copy of packing slip must accompany Seller's invoice on shipments to other than Purchaser's plants.

112    Immediately upon receipt of material for performance under this purchase order, Seller shall furnish a receiving report reflecting this order number, and including part number, quantity and condition of material to Purchaser's invoicing address.

118A    Set-up charges (insert dollars) per release.

118B    Set-up charges (insert dollars) one time only.

118C    Set-up charges (insert dollars) per shipment.

118D    Set-up charge (insert dollars or word "Allowed") followed by buyer's instruction.

121    Bill the following as separate item(s) on your invoice (fill in)

127    Seller shall prepackage Export-Import Division shipments in accordance with Purchaser approved specifications and bill as separate item on invoice at (see below) each part.

128    Shipping Point (city) (province) (country).

128A    Foreign freight equalization point: (city) (province) (country)

128B    U.S. Shipping point: (city) (state) (zip code)

128C    U.S. freight equalization point: (city) (state) (zip code)

132    The increase in price covered in this purchase order amendment has not been completely evaluated by purchaser. Accordingly, the price is subject to further review and renegotiation, if warranted, with the understanding that any agreed-upon price adjustment may be made retroactively to the effective date of this price adjustment.

138    On all invoices, packing slips and shipping containers, Seller must prefix part number with (       ).

139    Immediately upon receipt of consigned material, a receiving report properly signed, verifying

(10-78)

177    Substitute Chrysler Canada Ltd. throughout this purchase order in place of Chrysler Corporation.

Price stated in Canadian funds.

Not subject to Ontario Sales Tax - Permit 57190003-G.

We certify that the goods ordered or imported hereby are to be used in, wrought into, or attached to taxable goods for sale and therefore are not subject to federal sales and excise taxes. Chrysler Canada Ltd. License S-6011.

179    This is a combined United States/Canadian purchase order with price stated in United States funds. Our United States/Canadian Purchase Order Rider "B", Form No. 84-180-7310 shall be considered a part of this order.

180    Seller will be required to furnish certification of compliance with applicable governmental requirements as required by statute, in the manner and location established in the specifications pertaining hereto.

183    The attached special equipment description rider shall be considered a part of this purchase order.

190    In accepting this order, Seller agrees to use "on-line" teletypes (or such other "on-line" telecommunications method approved by Purchaser) in Purchaser's prescribed format to furnish notification promptly of all shipments made to the Car and Truck Assembly and/or Export-Import plants, Service and Parts Division and such other locations as may subsequently be required, for the purpose of Chrysler's Dynamic Inventory Analysis System (DIAS). Seller further agrees that in the event that unforeseen circumstances render it temporarily impracticable for Seller to maintain this prescribed method he will immediately contact Purchaser's appropriate Production Control activity for alternate instructions.

190A   Seller agrees that in performance of orders requiring shipment to the Export-Import Div. (Browns-town-Wyoming) Plants he will upon purchaser's request respond by telecommunicated message to advise of quantity and promise date(s) at which seller's next shipment(s) will be made. This tele-communicated message, when required, is in addition to the normal "DIAS" shipment notification.

197A   The price in this order reflects firm model year labor economics.

198    Included in piece price is packaging cost of (price & unit of measure).

200    A quarterly summary of charges must be mailed to the Purchasing Department to the attention of the buyer, showing the monthly billing *by plant* applicable to this purchase order.

201    PRICES CURRENT AT DATE OF ORDER: Seller understands and agrees that invoiced prices will be Seller's prices, as published for general use, and in effect at date of this order. Such prices are subject to review and audit verification for accuracy, by Purchaser as necessary. Seller shall, upon request, make available to Purchaser such published prices and appropriate records supporting amounts invoiced.

203    FOR SERVICES: Seller understands and agrees that invoiced prices will be Seller's normal charge for this service, based upon costs at time of performance and subject to any discount as contained herein. Such prices are subject to review and audit verification for accuracy by Purchaser as necessary and Seller shall, upon request, make available to Purchaser appropriate records supporting amounts invoiced.

205    (See Purchase Order Riders - Section V in this booklet).

206    Charges for inland transportation (F.O.B. and shipping charges), freight and insurance to be paid as per Seller's invoice subject to review by Purchaser's Traffic Office and renegotiation with Seller if required.

208    Seller agrees that during the performance of this Purchase Order he is bound by and will comply with all provisions of: (a) the EMPLOYMENT OF THE HANDICAPPED Clause set forth in §741.3 of Title 20 of the Code of Federal Regulations and (b) the EMPLOYMENT OF VETERANS Clause set forth in § 50-250 of Title 41 of the Code of Federal Regulations.

(10-78)

243   Priority rating (insert rating) certified for national defense use under DMS, Regulation I.

244   This is a combined United States/Canadian purchase order with items priced in Canadian funds. Our United States/Canadian purchase order rider 'A' (revised), Form No. 84-180-7309 shall be considered a part of this order.

259   Seller agrees to establish and conduct a 'Small Business Subcontracting Program' in compliance with the provisions of ASPR 7-104. 14(B); a 'Labor Surplus Area Subcontracting Program' in compliance with the provisions of ASPR 7-104.20 (B); and a 'Minority Business Enterprises Subcontracting Program' in compliance with provisions of attached riders entitled 'Minority Business Enterprises Subcontracting Program' (Form DD-1 (Date) and 'Utilization of Minority Business Enterprises' (Form DD-2 (Date)).

260   All shipments of parts and material to Purchaser's plants must include Packing Slips. Seller is required to provide two Packing Slips with each shipment sent directly to Purchaser's plant, and four Packing Slips with each shipment directed to a Consolidation Point when Purchaser may so designate. Whenever shipment is made by truck, one of the Packing Slips (or Packing Slip sets for multiple item shipments) is to be enclosed in an envelope and recorded on the bill of lading with written instructions for the carrier, or Seller's driver as appropriate, to make formal delivery of same to Purchaser's traffic representatives upon arrival at Purchaser's plant.

270   Special F.O.B.: (                )

271   Special condition: (                )

272   Special freight terms: (                )

273   Special qualifying freight terms: (                )

274   See qualifying freight terms — attachment enclosed.

275   Permit to use radioactive material no. (            )

276   Nuclear regulatory commission board license no. (            )

# V. RIDERS - PURCHASE ORDERS

# REQUEST FOR QUOTATION AND PURCHASE ORDER RIDER



## VEHICLE SAFETY EMISSIONS ITEM NOTICE

Part(s) furnished under this inquiry/purchase order, being PF-SAFETY/EMISSIONS designated items, call for special control measures during manufacture and/or assembly. Attention is drawn to the application of Chrysler's SAFETY/EMISSION Performance Standard(s) to these parts and the possible effect upon them of Federal Health and Safety Standards.

Your attention also is drawn to the booklet, "Supplier Vehicle Safety Program Guideline" issued to suppliers with previous mailings and/or enclosed, which details requirements in conforming to Chrysler Corporation's Vehicle Safety Program. Included in this booklet are certain requirements pertaining to the submission of control plans for the part(s) covered by this purchase order.

Whenever the part description in the purchase order is suffixed by an "S" and/or "E" as appropriate, for each PF-SAFETY/EMISSIONS part number, the following action is required by the supplier:

1) All part and assembly drawings having the shield (    ) identification(s) must be reviewed in order to establish awareness of and assurance that compliance with Corporate and Federal Vehicle SAFETY/EMISSIONS requirements is being accomplished.

2) The supplier is required to submit a detailed control plan(s) for each specific part number covered by the purchase order. The formal control plan(s) is required to be submitted *within 30 days* of the purchase order date. (See the Supplier Vehicle Safety Program Guideline for additional instructions.)

3) All changes or revisions to the original control plan, as submitted to the Vehicle Safety Systems & Investigation Department, must be promptly submitted to that department for review and approval. Subsequent surveys at supplier plant locations will be oriented around the latest control plan on file in the Vehicle Safety Systems and Investigation Department at the time of the survey.

   The supplier is expected to review all subsequent amendments to purchase orders, changes to Engineering Drawings and/or Manufacturing Process Changes which may affect the approved control plan. The supplier is expected to use his best judgment on the particulars of those amendments and changes for any impact on control plan requirements.

4) Whenever a new model series purchase order is issued, the existing (on file with the Vehicle Safety Office) control plan(s) can be considered as a carry-over provided the "new" placement has not affected control plan detail requirements.

5) The supplier should direct all questions relative to this notice to: Manager, Vehicle Safety Systems & Investigation, Vehicle Safety & Quality Office, Chrysler Corporation - P.O. Box 2888, Detroit, Michigan 48288.

## QUALIFYING FREIGHT TERMS

**TERM CODE**

**G**   Freight collect however supplier allows charge back when shipment is over (      ) lbs.

**H**   Freight collect however supplier allows charge back when shipment is under (      ) lbs.

**J**   Freight collect however supplier will prepay freight when shipment is over (      ) lbs. Chrysler will not reimburse.

**K**   Freight collect however supplier will prepay freight when shipment is under (      ) lbs. Chrysler will not reimburse.

**L**   Freight prepaid however Chrysler will reimburse supplier for charges from equalization point.

**M**   Freight prepaid however Chrysler will reimburse supplier for charges from equalization point when shipment is over (      ) lbs.

**N**   Freight prepaid however Chrysler will reimburse supplier for charges from equalization point when shipment is under (      ) lbs.

**P**   Freight collect however supplier allows Chrysler to charge for reimbursement from shipping point to equalization point.

**R**   Freight collect however supplier allows Chrysler to charge for reimbursement from shipping point to equalization point when shipment is over (      ) lbs.

**S**   Freight collect however supplier allows Chrysler to charge for reimbursement from shipping point to equalization point when shipment is under (      ) lbs.

**T**   Freight prepaid however Chrysler will reimburse supplier for charges from shipping point.

**SUPPLIER NOTE:**   Pound "Fillin" information is shown on the purchase order.

# UNITED STATES / CANADIAN PURCHASE ORDER RIDER 'A'

## (Revised)

Concerning shipments to plants in Canada, substitute Chrysler Canada Ltd. throughout this order in place of Chrysler Corporation.

Not subject to Ontario Sales Tax - Permit No. 57190003-G.

We certify that the goods ordered or imported hereby are to be used in, wrought into, or attached to taxable goods for sale and therefore are not subject to federal sales and excise taxes. Chrysler Canada Ltd. License No. S-6011.

Customers clearance for account of consignee.

Each United States shipment against this purchase order must be accompanied by -1- Special Customs Invoice, Form No. 5515, in triplicate, -2- Commercial Invoice, in triplicate, and -3- all documents must bear the statement - "For United States Customs Clearance Purposes - Notify *(see below)," unless otherwise covered by special instructions from purchaser.

The foregoing invoices are for Customs clearance only. Please refer to purchase order, or shipping release when so referenced in the order, for instructions on submitting invoices for payment (Accounts Payable) purposes.

    *Shipment into U.S. through Detroit - The J.D. Richardson Co.
    *Shipment into U.S. through Port Huron - John V. Carr & Son, Inc.
    *Shipment into U.S. through Buffalo - C. J. Tower & Son

If for some reason it is necessary to ship through a U.S. port other than Detroit, Port Huron or Buffalo, please contact the Tax Supervisor - Customs, Tax Department, Chrysler Corporation.

# UNITED STATES / CANADIAN PURCHASE ORDER RIDER 'B'

Concerning shipments to plants in Canada, substitute Chrysler Canada Ltd. throughout this order in place of Chrysler Corporation.

Canadian Customs MA invoices must be prepared in quadruplicate and provided for all shipments to Canada in accordance with the following instructions:

1. Do not ship goods, regardless of value, unless Canada Customs MA invoices have been prepared in quadruplicate.

2. Canada Customs invoices *must* show our purchase order number, our part number, and our description, quantities of goods shipped, number of containers, weight, "ship to" plant in Canada and your vendor code number.

3. Canada Customs invoices *must* show Fair Market Value and Selling Price of each part number. If the material is "No Charge", the Fair Market Value must still be indicated.

4. The Exporter's Invoice Declaration must be completed and signed in ink.

5. If you ship via Transport or Railway Express to a consolidation point in the U.S.A. for furtherance to Canada or if you ship direct to Canada, the Customs invoice must accompany the shipment.

6. If you ship by Rail or Parcel Post, mail the Customs invoice to Box 2368, Walkerville Postal Station, Windsor, Ontario N8Y 4S2 the *same* day you ship the goods.

7. If you ship to our Parts Plant in Mississauga, Ontario by truck via Buffalo, New York, by Parcel Post or Express, mail the Customs invoices to Box 2368, Walkerville Postal Station, Windsor, Ontario N8Y 4S2.

8. If your shipment is valued at $10,000.00 or more (Canadian Funds), be sure you attach to the Customs invoices one copy of Form B31 Special Exporter's Declaration.

9. By Canadian Customs law, Customs invoices must not differ from your settlement invoice as to value.

**WARNING** — If we do not have Customs invoices at time of arrival of the goods, they will not enter Canada.

---

**Revised to reflect declaration Form B31 requirements**

---

(10-78)

# CHRYSLER CORPORATION
# PURCHASE ORDER RIDER

### CLAUSE NUMBER 205

## SPECIAL TERMS AND CONDITION RIDER-
## BLACK BOX ITEMS

Suppliers of "Black Box" (supplier-designed) items must deliver such items in accordance with applicable Chrysler Engineering Standards pertaining to design, appearance, performance, SAFETY/FED characteristics and/or quality as represented by approved production samples.

The intended purpose of this rider is to discourage all but absolutely necessary changes at other than model change-over time. However, it is to be understood that changes for reason of product improvement and/or cost reduction are solicited.

Suppliers are required to furnish notification in advance (completing and forwarding Form No. 84-806-1609) to Chrysler Purchasing for all proposed design, material or manufacturing changes.

Changes that might affect design, appearance, performance, SAFETY/FED characteristics and/or quality and/or involve costs or the revision of a Chrysler drawing, should not be incorporated until approval is provided through Chrysler Purchasing.

If any emergency changes (including component or material sources) which Chrysler might conceivably question as to effect on design, appearance, performance, quality or cost are placed in production by the supplier without prior notification, this will be at his own risk. For such changes, Chrysler Engineering will request samples and/or test data from the supplier and reserve the right to make final decision on acceptability of the change or to direct that the changed be rescinded.

The announcement or lack of announcement of a change does not relieve the supplier from his responsibility to furnish shipments which he can certify as meeting the required standards. The detection of any failure to meet this responsibility may result in the rejection of shipments and any warranty and associated costs resulting from such failures will be directed to him.

# DUTY-FREE ENTRY — CANADIAN SUPPLIES

(a) Except as otherwise approved by Purchaser, no amount is or will be included in the purchase order price on account of duty with respect to:

    (i) All end items which constitute "Canadian end products" (as defined in paragraph 6-101 of the Armed Services Procurement Regulations) to be delivered under this purchase order; and

    (ii) All supplies (including, without limitation, raw materials, components and intermediate assemblies) produced or made in Canada which are to be incorporated in the end item to be delivered under this purchase order provided, that such end items are made in the United States or Canada;

except supplies imported into the United States prior to the date of this purchase order, or, in the case of supplies imported by a first or lower-tier subcontractor hereunder, prior to the date of his subcontract.

(b) The Seller warrants that all such Canadian supplies, for which such duty-free entry is to be claimed, are intended to be delivered to the Government or incorporated in the end items to be delivered under this purchase order, and that duty shall be paid by the Seller to the extent that such supplies, or any portion thereof, (if not scrap or salvage), are diverted to nongovernment use other than as a result of a competitive sale made, directed or authorized by the Government through the Purchaser.

(c) Purchaser certifies that the Government has agreed to execute duty-free entry certificates and to afford such assistance as appropriate in order to obtain the duty-free entry of Canadian end products or supplies as to which the shipping documents bear the notation specified in paragraph (d) below, except as the Seller may otherwise agree.

(d) All shipping documents submitted to Customs, covering such Canadian end products or supplies for which duty-free entry is to be claimed, shall bear the following information:

    (i) Government prime contract number;

    (ii) Identification of carrier;

    (iii) The notation: "UNITED STATES DEPARTMENT OF DEFENSE DUTY-FREE ENTRY TO BE CLAIMED pursuant to Schedule 8, part 3, Item No. 832.00, Tariff Schedules of the United States. Upon arrival of shipment at port of entry, District Director of Customs, kindly release the shipments under 8.59GP and notify the Director, Defense Contract Administration Services Region, Detroit, 1580 E. Grand Blvd., Detroit, Michigan 48211, who will execute Customs Forms 7501 and 7501A and the Duty-Free Entry Certificate";

    (iv) Gross weight in pounds (if freight is based on space tonnage, state cubic feet in addition to gross shipping weight); and

    (v) Estimated value in United States dollars.

(e) The Seller agrees to instruct the foreign supplier to prepare a sufficient number of copies of the bill of lading (or other shipping document) so that at least two of the copies accompanying the shipment will be available for use by the District Director of Customs at the port of entry.

(f) The Seller agrees to notify the Purchase in writing of any purchases by the Seller of Canadian supplies that are to be imported into the United States for delivery to the Government or for incorporation in end items to be delivered under this purchase order. Such notice shall be furnished to the Purchaser immediately upon the award by the Seller to the Canadian supplier. The notice shall identify (i) the Canadian supplies, (ii) the purchase order number and the Government prime contract number, and (iii) the scheduled delivery date(s).

(g) This clause shall not apply to purchases of Canadian supplies in connection with this purchase order if (i) such Canadian supplies are identical in nature with supplies purchased by the Seller or any subcontractor hereunder in connection with his commercial business, and (ii) it is not economical or feasible to account for such supplies so as to assure that the amount of such supplies for which duty-free entry is claimed pursuant to this clause does not exceed the amount thereof purchased in connection with this purchase order.

(h) The Seller agrees to insert the substance of this clause, including this paragraph (h), in all subcontracts for supplies hereunder that exceed $2,500. Each such subcontract shall require the subcontractor to identify the Government prime contract under which this purchase order is issued by the prime contract number on any shipping documents submitted to Customs covering supplies for which duty-free entry is to be claimed pursuant to this clause.

# MINORITY BUSINESS ENTERPRISES / SUBCONTRACTING PROGRAM

## (1971 NOV.)

(a) The Seller agrees to establish and conduct a program which will enable minority business enterprises (as defined in the clause, entitled, "Utilization of Minority Business Enterprises"), ASPR-1-332.3, to be considered fairly as subcontractors and suppliers under this contract. In this connection, the Seller shall:

(1) Designate a liaison officer who will administer the Seller's Minority Business Enterprises Program."

(2) Provide adequate and timely consideration of the potentialities of known minority business enterprises in all "make-or-buy" decisions.

(3) Assure that known minority business enterprises will have an equitable opportunity to compete for subcontracts, particularly by arranging solicitations, time for the preparation of bids, quantities, specifications, and delivery schedules so as to facilitate the participation of minority business enterprises.

(4) Maintain records showing (i) procedures which have been adopted to comply with the policies set forth in this clause, including the establishment of a source list of minority business enterprises, (ii) awards to minority business enterprises on the source list, and (iii) specific efforts to identify and award contracts to minority business enterprises.

(5) Include the "Utilization of Minority Business Enterprises" clause in subcontracts which offer substantial minority business enterprise subcontracting opportunities.

(6) Cooperate with the Purchaser in any studies and surveys of the Seller's minority business enterprises, procedures, and practices that the Government may from time to time conduct.

(7) Submit periodic reports of subcontracting to known minority business enterprises with respect to the records referred to in subparagraph (4) above in such form and manner and at such time (not more often than quarterly) as the Purchaser may prescribe.

(b) The Seller further agrees to insert, in any subcontract hereunder which may exceed $500,000 provisions which shall conform substantially to the language of this clause, including this paragraph (b), and to notify the Purchaser of the names of such subcontractors.

FORM DD-1                                                                                    (4-1-72)

---

# UTILIZATION OF MINORITY BUSINESS ENTERPRISES (1971 NOV.)

(a) It is the policy of the Government that Minority Business Enterprises shall have the maximum practicable opportunity to participate in the performance of Government contracts.

(b) The Seller agrees to use his best efforts to carry out this policy in the award of his subcontracts to the fullest extent consistent with the efficient performance of this contract. As used in this contract, the term "minority business enterprises" means a business, at least 50 percent which is owned by minority group members or, in case of publicly-owned businesses, at least 51 percent of the stock of which is owned by minority group members. For the purposes of this definition, minority group members are Negroes, Spanish-speaking American persons, American-Orientals, American-Indians, American Eskimos, and American Aleuts. Contractors may rely on written representations by subcontractors regarding their status as minority business enterprises in lieu of an independent investigation.

FORM DD-2                                                                                    (6-72)

# GOVERNMENT CONTRACT PROVISIONS

In the event there is any conflict between provisions in the terms and conditions (Form 84-806-1652) of the Purchase Order of which this is a part and provisions in the following terms and conditions, the latter will control.

1. STATUTORY AND ASPR REQUIREMENTS
   Seller agrees:

   (a) That all supplies and services herein ordered will be manufactured or performed and furnished in accordance with all applicable requirements of the following statutes and they are hereby incorporated by reference all representations and stipulations required by said statutes and the regulations issued thereunder by the Secretary of Labor, whose applicable rulings and interpretations are binding on Seller:

   (1) Walsh-Healy Act (Act of June 30, 1936, as amended; 41 U.S. Code 35-45)

   (2) Davis-Bacon Act (Act of March 3, 1931, as amended; 40 U.S. Code 276a)

   (3) Copeland Act (18 U.S. Code 874 and 40 U.S. Code 276c)

   (b) That the contract clauses in the following ASPR paragraphs, effective as of the date of this order, are hereby incorporated by reference:

   (1) Buy American Act — ASPR 7-104.3

   (2) Renegotiation — ASPR 7-103.13

   (3) Default — ASPR 7-103.11

   (4) Notice and Assistance Regarding Patent and Copyright Infringement — ASPR 7-103.23

   (5) Certification of Nonsegregated Facilities — ASPR 12-806b

   (6) Required Source for Jewel Bearings — ASPR 7-104.37

   (7) Listing of Employment Openings for Veterans — ASPR 7-103.27

   (8) Required Sources for Miniature and Instrument Ball Bearings — ASPR 7-104.38

   (9) Termination — ASPR 7-103.21(b)

   (10) Rights in Technical Data — Government and Purchaser Rights — ASPR 7-104.9(a)

   (11) Utilization of Small Business Concerns — ASPR 7-104.14(a)

   (12) Utilization of Labor Surplus Area Concerns — ASPR 7-104.20(a)

   (13) Government Property — ASPR 7-104.24(a)

   (14) Contract Work Hours and Safety Standards Act — Overtime Compensation — ASPR 7-103.16

   (15) Military Security — ASPR 7-104.12

   (16) Audit by Department of Defense — ASPR 7-104.41(a)

   (17) Subcontractor Cost and Pricing Data — ASPR 7-104.42(a) and (b)

   (18) Price Reduction for Defective Cost or Pricing Data — ASPR 7-104.29(a) and (b)

   (19) Priorities, Allocations and Allotments — ASPR 7-104.18

   (20) Stop Work Orders — ASPR 7-105.3

   (21) Preference for Domestic Specialty Metals — ASPR 6-305(b)

   (22) Labor Disputes — ASPR 7-104.4

(23) Duty-Free Entry — ASPR 7-104.32 (Applies to Purchase Orders in excess of $2,500)

(24) Examination of Records — ASPR 7-104.15

(c) That where the terms "Contracting" and "Contracting Officer" are used in the Clauses referred to in (b) above, the term "Contractor" shall be deemed to mean "Seller" and the term "Contracting Officer" shall be deemed to mean "Purchaser" and that wherever the term "this contract" is used, it shall be deemed to refer to this purchase order; than when the word "Government" is used in the clauses, it shall be deemed to mean "Purchaser", and any reference to a "Disputes" clause in the clauses, shall be deemed to be deleted.

(d) That Seller shall require all of its subcontractors to agree to a provision substantially similar to this clause (1) "Statutory and ASPR Requirements" including this paragraph (d).

2.  LABOR DISPUTES

(a) Whenever Seller has knowledge that any actual or potential labor dispute is delaying or threatens to delay the timely performance of this Purchase Order, Seller shall immediately give notice thereof, including all relevant information with respect thereto, to Purchaser.

(b) Seller agrees to insert the substance on this clause, including this paragraph (b) in any subcontract or purchase order hereunder as to which a labor dispute may delay the timely performance of this Purchase Order; except that each such subcontract or purchase order shall provide that in the event its timely performance is delayed or threatened by delay by any actual or potential labor dispute, the subcontractor shall immediately notify its next high tier subcontractor of all relevant information with respect to such dispute.

3.  INSPECTION, ACCEPTANCE OR REJECTION

All supplies, special tooling, materials and workmanship shall be subject to inspection and test by Purchase and/or the Government to the extent practicable at all times and places and period of manufacture. In case any supplies or lots of supplies are defective in material or workmanship or otherwise not in conformity with the requirements of this purchase order. Purchaser shall have the right either to reject them (with or without instruction as to their disposition) or to require their correction. For this purpose, Purchaser and/or the Government Representatives shall have free access to the operations and areas in which work on this Purchase Order is being performed, and Seller shall furnish all reasonable facilities and assistance for the safety and convenience of the representatives conducting the inspection or test. Seller shall also provide and maintain an inspection system acceptable to Purchase covering the supplies, fabricating methods, and special tooling hereunder. Seller shall make its records of all inspection work available to Purchaser and/or the Government during the performance of this Purchase Order, and for such longer period as may be specified in this Purchase Order. Notwithstanding payment or any prior inspection or test, final inspection and acceptance or rejection shall be made by Purchaser as promptly as practicable after delivery. Unless otherwise expressly provided in this Purchase Order, Seller assumes the risk of and all handling and transportation costs for defective property delivered hereunder.

4.  MATERIAL, INSPECTION AND RECEIVING REPORTS

Unless this Purchase Order is for standard off-the-shelf items, Seller agrees to prepare all necessary Material, Inspection and Receiving Reports in accordance with the forms and procedures prescribed by the Government and/or the Purchaser.

5.  PRICE REDUCTION FOR DEFECTIVE COST OR PRICING DATA

If the Contracting Officer, for the prime contract under which this order is issued, determines any price or fee paid or to be paid by the Government was overstated or increased by any significant sums because Seller furnished incomplete or inaccurate cost or pricing data concerning items covered by this order, then the price or prices (or fee) stated on this order shall be reduced accordingly to offset such overstatement or such increase and this order shall be modified in writing to reflect such adjustment.

6. EQUAL OPPORTUNITY

The following clause is applicable unless the contract is exempt under the rules and regulations of the Secretary of Labor. Exemptions include contracts and subcontracts not exceeding $10,000 and work to be performed outside the United States is involved. See ASPR 12-805 for exemption. (Also see ASPR 12-804) During the performance of this contract, the Seller agrees as follows:

(a) The Seller will not discriminate against any employee or applicant for employment because of race, color, religion, sex, or national origin. The Seller will take affirmative action to ensure that applicants are employed and that employees are treated during employment, without regard to their race, color, religion, sex, or national origin. Such action shall include but not be limited to the following: Employment, upgrading, demotion, or transfer, recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation, and selection for training including apprenticeship. The Seller agrees to post in conspicuous places, available to employees and applicants for employment, notices to be provided by the Contracting Officer setting forth the provisions of this nondiscrimination clause.

(b) The Seller will, in all solications or advertisements for employees placed by or on behalf of the Seller, state that all qualified applicants will receive consideration for employment without regard to race, color, religion, sex, or national origin.

(c) The Seller will send to each labor union or representative of workers with which he has a collective bargaining agreement or other contract or understanding, a notice to be provided by the agency Contracting Officer, advising the labor union or workers' representative of the Seller's commitments under the Equal Opportunity Clause, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

(d) The Seller will comply with all provisions of Executive Order 11246 of September 24, 1965, as amended by Executive Order 11375 of October 13, 1967, and of the rules, regulations, and relevant orders of the Secretary of Labor.

(e) The Seller will furnish all information and reports required by Executive Order 11246 of September 24, 1965, as amended by Executive Order 11375 of October 13, 1967, and by the rules and regulations, and orders of the Secretary of Labor or pursuant thereto, and will permit access to his books, records, and accounts by the contracting agency and the Secretary of Labor for purposes of investigation to ascertain compliance with such rules, regulations, and orders.

(f) In the event of the Seller's noncompliance with the Equal Opportunity Clause of this contract or with any of such rules, regulations, or orders, this contract may be cancelled, terminated or suspended in whole or in part, and the Seller may be declared ineligible for further Government contracts in accordance with procedures authorized in Executive Order 11246 of September 24, 1965, as amended by Executive Order 11375 of October 13, 1967, and such other sanctions may be imposed and remedies invoked as provided in Executive Order 11246 of September 24, 1965, as amended by Executive Order 11375 of October 13, 1967, or by rule, regulation, or order of the Secretary of Labor, or as otherwise provided by law.

(g) The Seller will include the provisions of Paragraph (a) through (g) in every subcontract or purchase order unless exempted by rules, regulations, or orders of the Secretary of Labor issued pursuant to Section 204 of Executive Order 11246 of September 24, 1965, as amended by Executive Order 11375 of October 13, 1967, so that such provisions will be binding upon each subcontractor or vendor. The Seller will take such action with respect to any subcontract or purchase order as the contracting agency may direct as a means of enforcing such provisions including sanctions for noncompliance: Provided, however, that in the event the Seller becomes involved in or is threatened with, litigation with a subcontractor or vendor as a result of such direction by the contracting agency, the Seller may request the United States to enter into such litigation to protect the interests of the United States.

CHRYSLER

BLANKET

MA-960441

American Brakeblok Division          11347-A
Abex Corporation
900 W. Maple                         2808404
Troy, Michigan 48084
                                     MOPAR

                                     1

                                     October 29, 1969

PACKAGING AND PRICE REVISION:

2808404, Supplier No. 77-80, Disc Pad (Brake)          $   4.40 ea.      $   4.46 ea.
          NO MINIMUM QUANTITY

Purchase Order now reads:
       To be packaged in labeled cartons supplied by
       Chrysler MOPAR.  Supplier to imprint part number.


Change Purchase Order to read:

       To be packaged in supplier furnished plain white
       carton with label supplied by Chrysler MOPAR
       Supplier to imprint part number.


Copy-1

REASON FOR CHANGE

    To show and include packaging costs.  Ref:  Supplier letter of 10-21-69.

# CHRYSLER CORPORATION

                                                           R. C. Baker
                                                           BUYER
                2101
                                11160

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

In Re: Chapter 11

FEDERAL-MOGUL GLOBAL INC.,          Case No. 01-10578
T&N LIMITED, ET AL.,

          Debtors.

_____/

## AFFIDAVIT OF JACK RIDENOUR

STATE OF MICHIGAN    )
                       ) SS.
COUNTY OF WAYNE    )

I, Jack Ridenour, being first duly sworn, deposes and says as follows:

1.    I am Manager of Accident Reconstruction and Testing for Ford Motor Company and in such capacity am authorized to make this affidavit.

2.    The facts stated herein are true and correct and I would be competent to testify to the same if called as a witness in this cause.

3.    In the early 1980's, as part of my then responsibilities as a Design Analysis Engineer, I conducted research into the identity of the companies which had supplied Ford Motor Company with brake assemblies and brake linings over the years.

4.    A drum brake assembly consists of a brake drum, the brake lining, a wheel cylinder, a brake adjuster and a secondary shoe.

5.     A disc brake assembly consists of the rotor or disc, the brake lining and caliper.

6.     Historically, Ford Motor Company has never manufactured its own brake linings or the complete brake assemblies.  Ford Motor Company has purchased the complete disc and drum brake assemblies from suppliers.  It was, in both types of brake assemblies, the brake linings which contained asbestos.

7.     With regard to Wagner Electric ("Wagner"), my research indicates that Wagner supplied front and rear disc brake assemblies for passenger car models  of Ford Motor Company for model years from 1961 through 1982.  Wagner also supplied front and rear drum brake assemblies for Ford Motor Company passenger car models for the model years from 1960 through 1981.  Wagner supplied front and rear brake assemblies for Ford Motor Company's medium/heavy trucks from 1970 through 1982.  Wagner supplied brake assemblies to Ford Motor Company for its military trucks from 1962 through 1971.  Wagner supplied brake assemblies for MUTT vehicles from 1972 through the 1980's.  From 1960 through 1982, Wagner also supplied after-market drum and disc brake assemblies to Ford Motor  Company.

8.     With regard to Abex, it furnished Ford Motor Company with semi-metallic brake linings for Ford's passenger car models in 1982.  From 1976 through 1982, Abex supplied brake linings for Ford Motor Company's medium/heavy trucks.  From 1960 through 1982, Abex Corporation furnished after-market brake linings for both disc and drum brakes to Ford Motor Company.

9.     I was not able to determine suppliers prior to 1960 because records relating to prior model years were not available.

2

10.    Further, Deponent saith not.

Jack Ridenour

Subscribed and sworn to before me this
_19__ day of _November_, 2001.

Notary Public, Wayne County, Michigan

My Commission Expires:

ARNEDA L. BALL
Notary Public, Oakland County, Mich.
Acting in _Wayne_ County, Mich.
My Commission Expires September 4, 2003

DETROIT 99998-900 650741

3

**CHEVROLET MOTOR DIVISION**
General Motors Corporation

# Inter-Organization Letter

To    Mr. E. J. Badstuber                    Location    Central Office

:     M. R. Hottinger                        Location    Chevrolet Warren

Subject   Brake Lining Suppliers,           Date        August 17, 1979
          Chevrolet Warren Plant

In reply to your wire dated 8/10/79, please note the following information.

## ABEX CORPORATION

| ACTIVE MODEL YEARS | ANNUAL $ VOLUME |
|---|---|
| 1967-8-9-70 | $50,000 (est.) |
| 1971-2-3 | $60,000 (est.) |
| 1974 | $65,895.18 |
| 1975 | $102,675.41 |
| 1976 | $53,832.19 |
| 1977 | $37,775.13 |

● A copy of the most recent contract W-4089 dated 6-16-76 is attached.

● A copy of invoice 64627 dated 5-13-75 is attached.

● Shipping releases for ABEX have not been retained.

● Dollar volumes shown for 1974-77 are based upon actual financial statements, the balance are purchasing estimates.

● No warning of asbestos hazards was found.

## BENDIX CORPORATION

| ACTIVE MODEL YEARS | ANNUAL $ VOLUME |
|---|---|
| 1967 | $25,000 (est) |
| 1975 | $500,000 (est) |
| 1976 | $1,846,595.76 |
| 1977 | $1,387,482.30 |
| 1978 | $2,039,442.81 |
| 1979 | $998,656.51 (Through 7/31/79) |

● A copy of our current contract W-4961 dated 7/11/79 is attached.

● Copies of invoices 08-0004-5-6 dated 8/1/79 are attached.

● Copies of shipping releases dated 8/6/79 are attached.

● Dollar volumes for 1976-1979 are based upon actual financial statements, the balance are purchasing estimates.

● Bendix shipping containers are labeled with a warning about asbestos fibers (sample attached).  No other documents include such notice.

100821

L. 11-70

Agreement

**CHEVROLET MOTOR DIVISION**
General Motors Corporation

Buyer __D. F. McPhee__                                   No. __W-4089__

Agreement, dated the _____16th_____ day of _____June_____ 19 __76__, between
__Abex Corporation__
__American Brakeblok Division__
of __Troy, Michigan 48084__ _____, hereinafter called the "Seller", and
General Motors Corporation, a Corporation of the State of Delaware (Chevrolet Motor Division),
__Warren Plant, 23500 Mound Road__ hereinafter referred to as the "Buyer", Witnesseth

The Seller agrees to sell and the Buyer agrees to purchase, at the price and upon and subject to the terms and
conditions on the face and reverse side hereof, approximately the percentage shown below of the Buyer's requirements
of the following articles, hereinafter referred to as the "articles", between the dates of.

_____July 1, 1976_____ and _____June 30, 1977_____

| Percentage | Doc. Rec. | Part Number | Part Name | Price | Per |
|---|---|---|---|---|---|
| 100 | Y | 458885 | Facing - Front Brake Shoe Primary | 69.87 | C |
| 100 | Y | 458886 | Facing - Front Brake Shoe Secondary | 79.54 | C |

THIS CONTRACT CANCELS AND SUPERSEDES OUR CONTRACT W-3831 ON AND
AFTER JULY 1, 1977.

General Motors Parts Division, General Motors of Canada, Ltd., and GMC Truck and Coach Division have the option
of releasing against this contract. (Not Applicable to Contracts with Allied Divisions)

All parts (or materials) must be procured in accordance with the General Motors General Quality Standard For
Purchased Material. Sample submission must comply with Source Sample Submission Procedure, GP-3.

Terms of Payment: __Net 10th Prox.__
F.O.B. __Winchester, Virginia__

CHEVROLET MOTOR DIVISION
General Motors Corporation
__Warren Plant__
Plant

Abex Corporation
                                                    Seller

By __a. F. Schmidt__

R. S. Van Gorp                      Purchasing Agent

By _____

100824

CHEVROLET MOTOR DIVISION
General Motors Corporation

# Inter-Organization Letter

Mr. E. J. Badstuber

Mr R. E. Stach

Brake Linings

CHEV. CENTRAL OFF.
PROCUREMENT POLICIES C.O.W.A.

SEP 7 Loc. 08 PM '79 Detroit Gear & Axle Plant

Date                  August 30, 1979

Please accept the following as a supplement to our letter dated August 16, 1979. Original information furnished this office by our Financial Department was incorrect, therefore we are submitting corrections as follows:

1.  Copies of 1979 and 1980 Model Year Contract, Releases, and Invoices correct as forwarded to your office with letter of August 16, 1979.

2.  Model Year each company was a supplier to this location as follows: (Purchasing records available 1974 Model thru present.)

      A.  Abex:        1971 thru and including 1980 Model. (1970 - 1973 verification from Quality Control.)

      B.  Bendix:      1974 thru and including 1980 Model.

      C.  Thermoid:    1974 thru and including 1980 Model.

   *  D.  Marshall-Eclipse:   No records available

   *  E.  Raybestos-Manhattan:   No records available

   *      (No Purchasing, Financial, or Quality Control records available at this location, however it is known they have supplied this location in the past, however we are unable to determine Model Years, but it was prior to 1974 Model.)

008000 / 100800

GSD 129-W Rev. 11-70

3. Dollar value of purchases follows:

A. Abex:
| | | Total Purchases |
|---|---|---|
| 1978 | 1.969,394 | |
| 1977 | 3,474,444 | " ". |
| 1976 | 2,823,959 | " " |
| 1975 | 1,500,448 | " " |
| 1974 | 1,500,449 | " " |
| 1973 | 1,819,031 | " " |
| 1972 | 1,476,969 | " " |
| 1971 | 1,208,330 | " " |

As Financial unable to segregate lining purchases
we estimate 95% of above figures were lining
purchases.

B. Bendix:
| | | Total Purchases |
|---|---|---|
| 1978 | 5,754,444 | |
| 1977 | 5,623,207 | " " |
| 1976 | 4,887,693 | " " |
| 1975 | 3,877,509 | " " |
| 1974 | 2,703,101 | " " |

As Financial unable to segregate lining purchases,
we estimate 80% of above figures were lining
purchases.

C. Thermoid:
| | | Total Purchases |
|---|---|---|
| 1978 | 1,082,583 | |
| 1977 | 1,165,906 | " " |
| 1976 | 873,123 | " " |
| 1975 | 617,583 | " " |
| 1974 | 131,049 | " " |

As Financial unable to segregate lining purchases,
we estimate 45% of above figures were lining
purchases.

D. Marshall-Eclipse:    No history in Financial.

E. Raybesto-Manhattan:   No history in Financial

100801